United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 06, 2021
Nathan Ochsner, Clerk

THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 21-60065 |
| **TEXAS TAXI, INC.,** *et al.* | § | |
| | § | **(Jointly Administered)** |
| Debtors.[1] | § | |

ORDER APPROVING (I) PREVAILING BIDDER'S ASSET PURCHASE AGREEMENT
AND AUTHORIZING THE SALE OF ASSETS OUTSIDE THE ORDINARY COURSE
OF BUSINESS; (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
AND INTERESTS; AND (III) GRANTING RELATED RELIEF
(Relates to Docket No. 25)

Upon the motion (the "**Sale Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an order (this "**Sale Order**"): (i) approving Prevailing Bidder's Asset Purchase Agreement and authorizing the sale of assets outside the ordinary course of business, (ii) authorizing the sale of substantially all of the Debtors' assets free and clear of liens, claims, encumbrances, and interests, and (iii) granting related relief; and this Court having entered an order on July 22, 2021 [Docket No. 25] (the "**Bid Procedures Order**") approving the Bidding Procedures in connection with the Sale of all or substantially all of the Debtors' assets as set forth in the Asset Purchase Agreement attached to the Bid Procedures Order (the "**Bidding Procedures**"); and the Debtors having determined, after a competitive marketing

---

[1] The debtors (along with the last 4 digits of their respective federal tax identification numbers) in these chapter 11 cases jointly administered under Case No. 21-60065 (the "**Bankruptcy Case**") and filed on July 19, 2021 (the "**Petition Date**") are: (i) Texas Taxi, Inc. (#2786); (ii) Fiesta Cab Company (#2084), Greater Austin Transportation Company (#1038), Greater Houston Transportation Company (#1348), and Greater San Antonio Transportation Company (#9823) (collectively, the "**Debtors**").

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Order Approving Bidding Procedures ("**Bid Procedures Order**")(Docket No. 25) or the Asset Purchase Agreement, attached hereto as **Exhibit "1"** (Houston Assets), **Exhibit "2"** (Austin Assets), **Exhibit "3"** (San Antonio Assets)(together the "**Agreement**", attached hereto and incorporated herein for all purposes). To the extent there is a conflict between the capitalized terms in this Order, the Bid Procedures Order, and/or the Agreement, the meaning ascribed in the Agreement shall govern.

and sale process that WHC HTX, LLC, WHC ATX, LLC, and WHC STX, LLC (collectively the **"Buyer"**), has submitted the highest or otherwise best bid with respect to the Assets[3] and having selected Buyer as the Prevailing Bidder in accordance with the Bidding Procedures; and upon due, adequate, and sufficient notice of the Sale Motion, the Auction, the asset purchase agreements submitted by the Buyer (attached hereto as **Exhibits 1, 2, and 3** and collectively referred to as the "**Agreement**"), and all other related transactions contemplated thereunder and in this Sale Order; and upon the testimony at the hearing on the Sale Motion (the **"Sale Hearing"**); and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the Court having reviewed and considered the Sale Motion, the Agreement, and all relief related thereto and any objections and other responses thereto, and the arguments of counsel made, and the evidence adduced, at the Sale Hearing conducted by this Court on August 5, 2021 and the entire record of the Sale Hearing; and upon the full record in support of the relief requested by the Debtors in the Sale Motion; and this Court having core jurisdiction over this matter; and that this Court may enter a final order on the Sale and the Sale Motion consistent with Article III of the United States Constitution; and this Court having found that venue of the chapter 11 cases and the Sale Motion in this district is proper; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and upon the full record of this Bankruptcy Case and all other pleadings and proceedings, including but not limited to the Sale Motion; and after due deliberation thereon, the Court finds there is good and sufficient cause to grant the relief requested in the Sale Motion.

---

[3] "Assets" has the same meaning as "Purchased Assets" under the Agreement.

**ACCORDINGLY, THE COURT HEREBY FINDS THAT:**

**I.        JURISDICTION, FINAL ORDER, AND STATUTORY PREDICATES**

A.        This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §1334(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N), and (O).  This Court may enter a final order with respect to the Sale Motion, the Sale, and all related relief, in the Bankruptcy Case, consistent with Article III of the United States Constitution. Venue of these chapter 11 cases and the Sale Motion is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.        The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014.

C.        This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h), to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay, and expressly directs entry of an order as set forth herein. Time is of the essence in consummating the sale. There is no credible basis for concluding that a delay in the sale of the Assets would result in a higher or better offer for the Assets than the offer reflected in the Agreement.

**II.        NOTICE**

D.        Actual written notice of the Sale Motion and the Sale Hearing was given in accordance with the Federal Rules of Bankruptcy Procedure and the Bid Procedures Order and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief

requested therein and to the entry of this Sale Order, has been afforded to all known interested entities, including, but not limited to, the following parties (the "**Notice Parties**"): (i) counsel for the Debtors, Fuqua & Associates, P.C.; attention: Richard L. Fuqua; (ii) counsel for Notre Capital ("**DIP Lender**"); attention: Bruce Ruzinsky; (iii) counsel for the official committee of unsecured creditors appointed in the Debtors' Bankruptcy Case (the "**Creditors' Committee**"), if any; (iv) Office of the United States Trustee for the Southern District of Texas; attention: Ha Minh Nguyen; (v) counsel for Buyer, Jones Murray & Beatty LLP; attention: Erin E. Jones; (vi) the Internal Revenue Service; (vii) all parties who are known to possess or assert a lien, claim, encumbrance, or other interests in or upon any of the Assets; (viii) counterparties to Assumed Contracts, if any; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service.

E.     As further evidenced by the certificate(s) of service previously filed with the Court in this Bankruptcy Case [Docket No. 35], and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Sale Motion, the Bidding Procedures, the Auction, and the Sale Hearing, pursuant to this Sale Order has been provided in accordance with Bankruptcy Code sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, and 9014 and the Local Bankruptcy Rules and in compliance with the Bid Procedures Order.

### III.   CORPORATE AUTHORITY AND VALIDITY OF TRANSFER(S)

F.     The Debtors (collectively, the **"Sellers"**) (i) have full requisite corporate or other organizational power and authority to execute, deliver, and perform the Agreement, any other transactional documents required under the Agreement, and to consummate the transactions contemplated thereby, and such execution, delivery, and performance have been duly and validly

authorized by all necessary corporate or other organizational action of each of the Sellers; (ii) have taken all requisite corporate or other organizational action and formalities necessary to authorize and approve the execution, delivery, and performance of the Agreement, any other transactional documents required under the Agreement, and the consummation by the Sellers of the transactions contemplated thereby, including as required by their respective organizational documents, and, upon execution thereof, the Agreement executed by such Sellers and any other transactional documents required under the Agreement will be duly and validly executed and delivered by such Sellers and enforceable against such Sellers in accordance with its terms and constitutes a valid and binding obligation of such Sellers; (iii) no government, regulatory, or other consents or approvals, are required for the execution, delivery, and performance by the Sellers of the Agreement and any other transactional documents required under the Agreement, or the consummation of the transactions contemplated thereby; and (iv) have full requisite corporate or other organizational power and authority to cause any non-debtor subsidiaries, as applicable, to execute and deliver, or cause to be executed and delivered, all such documents and instruments, or take, or cause to be taken, all such other actions, as may be reasonably necessary to effectuate or evidence the transactions contemplated by the Agreement, any other transactional documents required under the Agreement, and consummation of the transactions contemplated by the Agreement.

G.     The transfer of the Assets to Buyer in the Sale will be a legal, valid, enforceable, and effective sale and transfer of the Assets and will vest Buyer with all legal, equitable, and beneficial right, title, and interest of the Sellers to the Assets free and clear of all Interests (as defined herein) of any kind or nature whatsoever, including without limitation, rights or claims based on any Successor or Other Liabilities (as defined herein).

H.     The Agreement is a valid and binding contract between the Sellers and Buyer and shall be enforceable pursuant to its terms. The Agreement, the Sale, and the consummation thereof shall be specifically enforceable against and binding upon the Sellers' estates, including but not limited to any chapter 7 or chapter 11 trustee appointed in the Bankruptcy Case (or any of them), and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

I.     The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia, or foreign jurisdiction. The consideration provided by Buyer for the Assets pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Assets, (iii) will provide a greater recovery for the Sellers' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia, and any foreign jurisdiction (including the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and similar laws and acts). Neither the Sellers nor Buyer is entering into the transactions contemplated by the Agreement fraudulently for the purpose of statutory and common-law fraudulent conveyance and fraudulent transfer claims.

J.     The Sellers are the sole and lawful owners of the Assets, and no other Person has any ownership right, title, or interests therein. The Assets constitute property of the Sellers' estates and good title thereto is vested in the Sellers' estates within the meaning of Bankruptcy Code section 541(a).

K.     The transfer of each of the Assets to Buyer will be, as of the Closing Date, a legal, valid, and effective transfer of the Assets, which transfer vests or will vest Buyer with all right,

title, and interest of the Sellers to the Assets, to the maximum extent allowed by Section 363(f) of

the Bankruptcy Code, free and clear of:

(i)  all Encumbrances (as defined in the Agreement), including but not limited to any Liens,[4] relating to, accruing, or arising any time prior to the Closing Date; and

(ii)  all debts (as that term is defined in section 101(12) of the Bankruptcy Code) arising under, relating to, or in connection with any act of a Seller or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trust, security interests or similar interests, conditional sale or other title retention agreements and other similar impositions, imperfections or defects of title or restrictions on transfer or use, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter ego liability, suits, defenses, credits, allowances, options, limitations, causes of action, choses in action, rights of first refusal or first offer, rebate, chargeback, credit, or return, proxy, voting trust or agreement or transfer restriction under any shareholder or similar agreement or encumbrance, title defects, easements, rights of way, encroachments, liabilities, and matters of any kind and nature, whether arising prior to or subsequent to the Petition Date, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, rights with respect to Claims (as defined herein) and Encumbrances (including Liens) (A) that purport to give to any party a right or option to effect a setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Sellers' or Buyer's interests in the Assets, or any similar rights, if any, or (B) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attribute of ownership) (collectively, as defined in this clause (ii), the "**Claims**," and together with the Encumbrances, Liens,  and other interests of any kind or nature whatsoever, but excluding any Assumed Liabilities,[5] are referred

---

[4] "Lien(s)" has the same meaning as set forth in section 101(37) of the Bankruptcy Code, to include any mortgage, pledge, statutory or contractual lien, charge, or security interest against the Assets.

[5] "Assumed Liabilities" means only those liabilities identified and described as being assumed by the Buyer in section 1.3 of the Agreement as follows:

> **Section 1.3  No Assumption of Liabilities**.  Other than liabilities for (i) Driver Deposits (as defined below) and (ii) Seller's obligations under the Assumed Contracts for periods after the Closing, Buyer shall not assume any liabilities or obligations of Seller of any kind, whether known or unknown, contingent, matured or otherwise, whether currently existing or hereinafter created. As used herein, "<u>Driver Deposits</u>" mean

to as the "**Interests**"), relating to, accruing, or arising any time prior to entry of this Sale Order.

### IV.   COMPLIANCE WITH BIDDING PROCEDURES AND BID PROCEDURES ORDER

L.      This Court's findings of fact and conclusions of law in the Bid Procedures Order, including the record of the hearing to approve the Bid Procedures Order, are incorporated herein by reference.

M.      As demonstrated by the testimony and other evidence proffered or adduced at the hearing to approve Bidding Procedures held on July 20, 2021 and the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Sellers have adequately marketed the Assets and conducted the sale process in compliance with the Bid Procedures Order and the Bidding Procedures, and the bidding process was conducted in a non-collusive, fair, and good-faith manner.

N.      The Sellers and their professionals conducted the sale process in compliance with the Bid Procedures Order and the Bidding Procedures and have afforded potential purchasers a full and fair opportunity to participate in the bidding process for the Assets and make higher or better offers. Sellers did not receive any Qualified Bids, other than from Buyer, by Bid Deadline on July 28, 2021 at 4:00 p.m. (CST).

O.      In accordance with the Bid Procedures Order, the Agreement was deemed a Qualified Bid and Buyer was a Qualified Bidder. Buyer acted in compliance with the Bid Procedures Order and the Bidding Procedures and conducted itself in a non-collusive, fair, and good-faith manner.

---

Seller's driver deposits at the Closing, net of any amount owed by the drivers at the Closing; provided, however, that the aggregate Driver Deposits to be assumed by Buyer under this Agreement and under all Related Agreements (as defined in Section 6.1(b)) shall not exceed $350,000.

P.      In accordance with the Bid Procedures Order and the Bidding Procedures, the Sellers determined that the Bid submitted by Buyer and memorialized by the Agreement is the Prevailing Bid.

**V.      BUYER AND SELLERS ACTED IN GOOD FAITH**

Q.      The Agreement was negotiated, proposed, and entered into by the Sellers and Buyer, without collusion, in good faith, and from arm's-length bargaining positions.

R.      Neither the Sellers nor Buyer have engaged in any conduct that would cause or permit the Agreement to be avoided under Bankruptcy Code section 363(n).

S.      The Sellers and Buyer have not engaged in any conduct that would cause or permit the Agreement or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

T.      Buyer has not acted in a collusive manner with any Person and the purchase price was not controlled by any agreement among bidders. Among other things (i) Buyer recognized that the Sellers were free to deal with any other party interested in acquiring the Assets; (ii) Buyer complied with the provisions of the Bid Procedures Order; (iii) Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; and (iv) no common identity of directors or controlling stockholders exists between Buyer, on the one hand, and the Debtors, on the other hand.

U.      Buyer is purchasing the Assets in good-faith and for value, and Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is not an "insider" of any Debtor (as defined under section 101(31) of the Bankruptcy Code). Buyer is therefore entitled to the full rights, benefits, privileges, and protections afforded under section

363(m) of the Bankruptcy Code and any other applicable or similar bankruptcy and non-bankruptcy law.

## VI.   HIGHEST AND BEST OFFER

V.      The Sellers' marketing and sales process with respect to the Assets in accordance with the Bid Procedures Order and Bidding Procedures afforded a full, fair, and reasonable opportunity for any Person or Entity to make a higher or otherwise better offer to purchase the Assets. The Sellers conducted a marketing process in accordance with, and have otherwise complied in all respects with, the Bid Procedures Order and the Bidding Procedures. A reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Assets. No other bids or offers have been received by Sellers.

W.      The Agreement constitutes the highest and best offer for the Assets, and the Sellers' determination that the Agreement maximizes value for the benefit of the Sellers' estates and constitutes the highest and best offer for the Assets each constitutes a valid and sound exercise of the Sellers' business judgment and is in accordance and compliance with the Bid Procedures Order and the Bidding Procedures. The Agreement represents fair and reasonable terms for the purchase of the Assets.

X.      Approval of the Sale Motion and the Agreement and the prompt consummation of the transactions contemplated thereby will maximize the value of each Debtors' estate and are in the best interests of the Debtors, their chapter 11 estates, their creditors, and other parties in interest.

## VII.   NO MERGER; BUYER NOT AN INSIDER; NO SUCCESSOR LIABILITY

Y.      Buyer is not a successor to, a mere continuation of, or alter ego of, any of the Sellers or their estates, and there is no continuity of enterprise or common identity between Buyer and the

Sellers. Buyer is not holding itself out to the public as a successor to or a continuation of the Sellers or their estates. Buyer is not a successor to any of the Sellers or their estates by reason of any theory of law or equity, and the Sale does not amount to a consolidation, succession, merger, or *de facto* merger of Buyer and the Sellers.

Z.      Immediately prior to the Closing Date, Buyer was not an "insider" or "affiliate" of the Sellers, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between the Sellers and Buyer.

AA.      Except for any Assumed Liabilities, Buyer shall not have, assume, or be deemed to assume, or in any way be responsible for, any liability or obligation of any of the Sellers or their estates, or any of the Sellers' predecessors or affiliates with respect to the Assets or otherwise. Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Agreement, Buyer is not, and will not, be liable for any Interests against, or with respect to, the Sellers, their estates, or any of the Sellers' predecessors, or affiliates, including but not limited to, any Successor or Other Liabilities (as defined herein).

BB.      Neither the purchase of the Assets by Buyer nor the fact that Buyer is using any of the Assets previously operated by the Sellers will cause Buyer to be deemed a successor to, combination of, or alter ego of, in any respect, any of the Sellers or the Sellers' businesses, or incur any liability derived therefrom within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax (including sales and excise tax), antitrust, environmental, labor law (including any WARN Act), employment or benefits law, de facto merger, business continuation, substantial continuity, successor, vicarious, alter ego, derivative, or transferee liability, veil piercing, escheat, continuity of enterprise, mere continuation, product line, or other law, rule, regulation (including filing requirements under any such laws, rules, or regulations), or under any products liability law

or doctrine with respect to the Sellers' liability under such law, rule, or regulation or doctrine, whether now known or unknown, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether matured or unmatured, whether contingent or noncontingent, whether liquidated or unliquidated, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, liabilities on account of warranties, intercompany loans, and receivables among the Sellers, and any taxes (including sales and excise tax), arising, accruing, or payable under, out of, in connection with, or in any way relating to the cancellation of debt of the Sellers or their affiliates, or in any way relating to the operation of any of the Assets prior to the Closing Date (collectively, the **"Successor or Other Liabilities"**). Pursuant to the Agreement, Buyer is not purchasing Excluded Assets and is therefore not purchasing all of the Sellers' assets.

## VIII.   SECTION 363(F) SATISFIED

CC.     The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Assets may be sold to Buyer free and clear of all Interests.

DD.     Buyer would not have entered into the Agreement and would not consummate the transactions contemplated thereby if (i) the sale of the Assets to Buyer were not free and clear of all Interests of any kind or nature whatsoever, or (ii) if Buyer would, or in the future could, be liable for any of the Interests. Buyer will not consummate the transactions contemplated by the Agreement unless this Court expressly orders that Buyer and its affiliates, members, and/or the Assets will have no liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, or by payment, setoff, recoupment, or otherwise, directly or indirectly, any Interests, including rights or claims based on any Successor or Other Liabilities. The total consideration to be provided under the Agreement reflects Buyer's reliance on this Sale Order to

provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Assets free and clear of all Interests of any kind or nature whatsoever (including, without limitation, any potential Successor or Other Liabilities).

EE.     Not transferring the Assets free and clear of all Interests of any kind or nature whatsoever, including rights or claims based on any successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state, federal, or foreign law or otherwise, would adversely impact the Sellers' efforts to maximize the value of their estates, and the transfer of the Assets other than pursuant to a transfer that is free and clear of all Interests of any kind or nature whatsoever would be of substantially less benefit to the Sellers' estates.

FF.     The Sellers may sell the Assets free and clear of all Interests because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Interests who did not timely object to the Sale or the Sale Motion in accordance with the Bidding Procedures and the Bid Procedures Order or withdrew objections to the Sale or the Sale Motion are deemed to have consented to the Sale and the Sale Motion pursuant to section 363(f)(2) of the Bankruptcy Code. All other holders of Interests fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

## IX.     NOT A SUB ROSA PLAN

GG.     The Sale does not constitute a sub rosa chapter 11 plan for which approval has been sought without the protection that a disclosure statement would afford. The Sale neither impermissibly restructures the rights of the Sellers' creditors nor impermissibly dictates a liquidating plan for the Sellers.

X.       COMPELLING CIRCUMSTANCES FOR AN IMMEDIATE SALE

HH.    Sellers have articulated good and sufficient reasons for approval of the Agreement and the Sellers' decision to enter into the Agreement and the transactions contemplated thereby represents an exercise of sound and reasonable business judgment. The sale of the Assets must be approved and consummated promptly in order to preserve the value of the Assets. The relief requested in the Sale Motion is in the best interests of the Sellers, their estates, their creditors, and other parties in interest. The Sellers have demonstrated both (i) good, sufficient, and sound business purposes and justifications for approving the Agreement and (ii) compelling circumstances for the immediate approval and consummation of the transactions contemplated by the Agreement, outside the ordinary course of business, pursuant to section 363(b) and (f) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that the prompt consummation of the Sale to Buyer is necessary and appropriate to maximize the value of the Sellers' estates and the Sale will provide the means for the Sellers to maximize distributions to creditors. Accordingly, there is cause to waive the stay contemplated by Bankruptcy Rule 6004 with respect to the transactions contemplated by this Sale Order.

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

I.       GENERAL PROVISIONS

1.       The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these chapter 11 cases pursuant to Bankruptcy Rule 9014. To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

2.      The Sale Motion and the relief requested therein is granted and approved, the transactions contemplated in the Sale Motion and by the Agreement and any other transactional documents required by the Agreement, in the Bankruptcy Case, as set forth herein and on the record at the hearing on the Sale Motion, which is incorporated herein as if fully set forth in this Sale Order.

3.      All objections to, reservations of rights regarding, or other responses to the Sale Motion or the relief requested therein, the Agreement, any transactional documents required by the Agreement, the entry of this Sale Order, or the relief granted herein, that have not been withdrawn, waived, or settled, or that have not otherwise been resolved pursuant to the terms hereof, as announced to the Court at the hearing on the Sale Motion, or by stipulation filed with the Court, are hereby denied and overruled on the merits with prejudice; further, nothing in this Sale Order shall act as an adjudication or finding as to any of the matters raised in any of the objections, reservation of rights, and joinders. Those parties who did not timely object to the Sale Motion or the entry of this Sale Order in accordance with the Bid Procedures Order and/or Bidding Procedures, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

**II.      APPROVAL OF THE AGREEMENT**

4.      The Agreement and the Other Transaction Documents, including, in each case, any amendments, supplements, and modifications thereto, and all of the terms and conditions thereof, are hereby approved.

5.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Sellers are authorized and directed, without further notice to or order of this Court, to take any and all

actions necessary or appropriate to (i) consummate the transactions pursuant to and in accordance with the terms and conditions of this Sale Order, the Agreement and any other transactional documents required under the Agreement; (ii) close the transactions as contemplated in the Agreement and any other transactional documents required under the Agreement and consistent with this Sale Order; and (c) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions consistent with this Sale Order as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the Agreement and any other transactional documents required under the Agreement and consistent with this Sale Order.

6.      The Agreement and any other transactional documents required under the Agreement shall be binding in all respects upon the Sellers, their estates, the Buyer, and all successors and assigns of each of the foregoing, including without limitation, any trustee subsequently appointed in these chapter 11 cases or upon conversion to chapter 7 under the Bankruptcy Code. This Sale Order shall be binding in all respects upon the Sellers, their estates, all creditors, all holders of equity interests in any of the Debtors, all holders of Claims (whether known or unknown) against the Sellers, any holders of Liens, Claims, Encumbrances, or other Interests against, in, or on all or any portion of the Assets, and the Buyer.

### III.      TRANSFER OF THE ASSETS

7.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Sellers shall transfer the Assets, to Buyer on the Closing Date in accordance with the terms of the Agreement and any other transactional documents required by the Agreement; such transfer shall constitute a legal, valid, binding, and effective transfer of such Assets; and Buyer shall take title to and possession of such Assets free and clear of all Interests of any kind or nature whatsoever.

16

Any and all valid and perfected Interests in the Assets shall attach solely to any proceeds of the Sale, but not to the Assets, with the same validity, force, and effect, if any, and in the same order of priority, that they have now as against the Assets, subject to any and all rights, claims, and defenses the Sellers or their estates, as applicable, may possess with respect thereto.

8.      The transfer of the Assets to Buyer pursuant to the Agreement does not require any governmental, regulatory, or other consents or approvals other than as specifically provided for in the Agreement. Each and every federal, state, local, and other governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county, or other territory or jurisdiction in which any of the Sellers is incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the Closing Date.

9.      If any Person that has filed a financing statement, mortgage, mechanic's lien, lis *pendens*, or other statement, document, or agreement evidencing an Interest against or in any portion of the Assets (other than statements or documents with respect to any Assumed Liabilities) shall not have delivered to the Sellers prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases, and/or other similar documents necessary for the purpose of documenting the release of all Interests that such Person has against or in the Assets, then (i) the Sellers are hereby authorized to execute and file such statements, instruments, releases, and/or other similar documents on behalf of such Person with respect to the Assets, (ii) Buyer is hereby authorized to file, register, or otherwise

record a certified copy of this Sale Order that, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests of any kind or nature against or in the Assets, and (iii) Buyer may seek in this Court, or any other court of competent jurisdiction, to compel the appropriate parties to execute termination statements, instruments of satisfaction, releases, and/or other similar documents with respect to all Interests that such Person has against or in the Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

10.     Notwithstanding the foregoing, the provisions of this Sale Order authorizing the sale and assignment of the Assets free and clear of Interests shall be self-executing, and neither the Sellers nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments or documents in order to effectuate, consummate, and implement the provisions of this Sale Order.

11.     All Persons that are in or come into possession of any portion of the Assets, at any time, are hereby directed to surrender possession of such Assets to Buyer on the Closing Date. Subject to the terms, conditions, and provisions of this Sale Order, all Persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Sellers to sell and transfer the Assets to Buyer in accordance with the terms of the Agreement and this Sale Order.

12.     This Sale Order is and shall be binding upon and govern the acts of all Persons (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other

persons or entities) who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing Persons shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the Interests or to otherwise consummate the transactions contemplated by the Agreement, any other transactional documents required by the Agreement, and this Sale Order.

13.     To the extent permitted under applicable law, Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Sellers with respect to the Assets, and all such licenses, permits, registrations, and governmental authorizations or approvals, including, but not limited to, any and all right and benefits related to all preexisting nonconforming uses of the Assets, are deemed to have been, and hereby are, directed to be transferred to Buyer as of the Closing Date. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Assets, including, but not limited to, any and all right and benefits related to all preexisting nonconforming uses of the Assets, on account of the filing or pendency of the Bankruptcy Case or the consummation of the transactions contemplated by the Agreement.

## IV.     NO SUCCESSOR LIABILITY; PROHIBITION OF ACTIONS AGAINST BUYER

14.     Buyer is not a successor to, a mere continuation of, or alter ego of, any of the Sellers or their estates, and there is no continuity of enterprise or common identity between Buyer and the Sellers.

15.     Buyer is not holding itself out to the public as a successor to or continuation of the Sellers or their estates. Buyer is not a successor to any of the Sellers or their estates by reason of any theory of law or equity, and the Sale does not amount to a consolidation, succession, merger, or *de facto* merger of Buyer and the Sellers.

16.     Immediately prior to the Closing Date, Buyer was not an "insider" or "affiliate" of the Sellers, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, or controlling stockholders existed between the Sellers and Buyer.

17.     Except for any Assumed Liabilities, to the extent expressly provided for in the Agreement, Buyer shall not have, assume, or be deemed to assume, or in any way be responsible for, any liability or obligation of any of the Sellers or their estates, or any of the Sellers' predecessors or affiliates with respect to the Assets or otherwise. Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Agreement, Buyer shall not be liable for any Interests against, or with respect to, the Sellers, their estates, or any of the Sellers' predecessors, or affiliates, including but not limited to, any Successor or Other Liabilities. Neither the purchase of the Assets by Buyer nor the fact that Buyer is using any of the Assets previously operated by the Sellers will cause Buyer to be deemed a successor to, combination of, or alter ego of, in any respect, any of the Sellers or the Sellers' businesses, or incur any liability derived therefrom within the meaning of any foreign, federal, state, or local revenue, pension, ERISA, tax, antitrust, environmental, labor law (including any WARN Act), employment or benefits law, *de facto* merger, business continuation, substantial continuity, successor, vicarious, alter ego, derivative, or transferee liability, veil piercing, escheat, continuity of enterprise, mere continuation, product line, or other law, rule, regulation (including filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Sellers'

liability under such law, rule, or regulation or doctrine, whether now known or unknown, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether matured or unmatured, whether contingent or noncontingent, whether liquidated or unliquidated, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to, liabilities on account of warranties, intercompany loans, and receivables among the Sellers, and any taxes, arising, accruing, or payable under, out of, in connection with, or in any way relating to the cancellation of debt of the Sellers or their affiliates, or in any way relating to the operation of any of the Assets prior to the Closing Date.

18.     Except with respect to Assumed Liabilities and to the extent specifically agreed by Buyer in the Agreement, Buyer shall not have any liability, responsibility, or obligation for any Interests of the Sellers or their estates, including any claims, liabilities, or other obligations related to the Assets which may become due or owing (a) prior to the Closing Date or (b) from and after the Closing Date but which arise out of or relate to any act, omission, circumstance, breach, default, or other event occurring prior to the Closing Date. Under no circumstances shall Buyer be deemed a "successor" to, continuation of, or alter ego of, any of the Sellers or their estates by reason of any theory of law or equity of or to the Sellers for any Interests against, in, or to the Sellers or the Assets.

19.     Except with respect to Assumed Liabilities, all Persons (including but not limited to, all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, contract counterparties, customers, landlords, licensors, employees), and other holders of Interests of any kind or nature whatsoever against or in any of the Sellers or any portion of the Assets (whether legal or equitable, secured or unsecured, matured

or unmatured, known or unknown, contingent or noncontingent, liquidated or unliquidated, senior

or subordinate, asserted or unasserted, whether arising prior to or subsequent to the Petition Date,

whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of,

in connection with, or in any way relating to, the Sellers, the Assets, the operation of the Sellers'

business prior to the Closing, or the transfer of the Assets to Buyer (including without limitation

any Successor or Other Liabilities or rights or claims based thereon) shall be, and hereby are,

forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise

pursuing against Buyer, any of Buyer's affiliates or subsidiaries, or any of their respective officers,

directors, partners, principals, shareholders, professionals, or representatives, successors, or

assigns, or their respective assets or properties, including, without limitation, the Assets, the

Interests of any kind or nature whatsoever such Person had, has, or may have against or in the

Sellers, their estates, officers, directors, shareholders, or the Assets, including, without limitation,

the following actions:   (a) commencing or continuing in any manner any action or other

proceeding, the employment of process, or any act (whether in law or equity, in any judicial,

administrative, arbitral, or other proceeding) against Buyer, any of Buyer's affiliates or

subsidiaries, or any of their respective officers, directors, partners, principals, shareholders,

professionals, or representatives, successors, or assigns, or their respective assets or properties,

including the decree, or order against Buyer, any of Buyer's affiliates or subsidiaries, or any of

their respective officers, directors, partners, principals, shareholders, professionals, or

representatives, successors, or assigns, or their respective assets or properties, including the Assets;

(b) enforcing, attaching, collecting, or recovering in any manner any judgment, award,

subsidiaries, or any of their respective officers, directors, partners, principals, shareholders,

professionals, or representatives, successors, or assigns, or their respective assets or properties,

including the Assets; (c) creating, perfecting, or enforcing any Interest against Buyer, any of Buyer's affiliates or Assets; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due Buyer, any of its affiliates or subsidiaries, or any of their respective officers, directors, partners, principals, shareholders, professionals, or representatives, successors, or assigns, or their respective assets or properties, including the Assets; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets, including, but not limited to, any and all right and benefits related to all preexisting nonconforming uses of the Assets.

20.     Notwithstanding anything else herein, and except for any and all rights and benefits related to all preexisting nonconforming uses of the Assets, nothing in this Sale Order or the Agreement (i) releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order, and (ii) authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.

21.     All Persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Sellers to sell and transfer the Assets to Buyer in accordance with the terms of the Agreement and this Sale Order.

22.     Except as provided in the Agreement and without limiting other applicable provisions of this Sale Order, Buyer is not, by virtue of the consummation of the Transactions, assuming, nor shall it be liable or responsible for, as a successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), under any theory of law or equity, including without limitation, the Successor or Other Liabilities, whether presently in existence or arising hereafter, known or unknown, disputed or undisputed, contingent or non-contingent, liquidated or unliquidated, or otherwise with respect to the Sellers, or any of their predecessors or affiliates or any obligations of the Sellers or their predecessors or affiliates prior to the Closing Date, for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed, or otherwise) in any way whatsoever relating to or arising from the Sellers, the Assets, or the Sellers' operation of their businesses or use of the Assets on or prior to the Closing Date or any such liabilities, debts, commitments, or obligations that in any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid, discharged, or performed on or prior to the Closing Date (in each case, including, without limitation, any liabilities that result from, relate to, or arise out of tort or product liability claims), or any liabilities calculable by reference to the Sellers or their assets or operations (including, without limitation, by reference to the Sellers' experience or similar ratings), or relating to continuing conditions existing on or prior to the Closing Date, including with respect to any of the Sellers' predecessors or affiliates, which liabilities, debts, commitments, and obligations are hereby extinguished insofar as they may give rise to successor liability, without regard to whether the claimant asserting any such liabilities, debts, commitments, or obligations has delivered to Buyer a release thereof. Buyer has given substantial consideration under the Agreement for the benefit of the holders of Interests.

23.     The consideration given by Buyer shall constitute valid and valuable consideration for the releases of any potential claims of Successor or Other Liabilities of Buyer, which releases shall be deemed to have been given in favor of Buyer by all holders of Interests in or against the Sellers or the Assets. Upon consummation of the transactions contemplated in the Agreement and other transactional documents required by the Agreement, Buyer shall not be deemed to (i) be the successor to the Sellers or their estates, (ii) have, *de facto* or otherwise, merged with or into the Sellers, or (iii) be a mere continuation, alter ego, or substantial continuation of the Sellers.

24.     Following the Closing Date, no holder of an Interest in the Sellers shall interfere with Buyer's title to or use and enjoyment of the Assets based on or related to such Interest or any actions that the Sellers may take in this Bankruptcy Case.

## V.     OTHER PROVISIONS

25.     The transactions contemplated by the Agreement, any other transactional documents required by the Agreement, and this Sale Order are undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the transactions shall not alter, affect, limit, or otherwise impair the validity of the Agreement or any transactional documents required by the Agreement, unless such authorization and consummation of the transactions are duly stayed pending such appeal.

26.     Buyer is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code. As a good-faith purchaser of the Assets, Buyer has not entered into an agreement with any other bidders and has not colluded

with any bidders, and therefore the Sale may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

27.     Nothing in this Sale Order shall (i) be interpreted to deem Buyer the successor to the Sellers under any state or federal law successor liability doctrine with respect to any liabilities under environmental statutes, laws, or regulations for penalties for days of violation prior to the Closing Date or for liabilities relating to the generation, manufacture, use, storage, or disposal of any Hazardous Materials by the Sellers prior to the date of the Closing Date, or deem Buyer to have assumed any liability or obligation of the Sellers not expressly assumed; (ii) be construed as a waiver by any party, including Buyer, of any applicable rights or defenses under non-bankruptcy law; or (iii) be construed to create for any Governmental Entity any substantive right that does not already exist under law.

28.     For cause shown, pursuant to Bankruptcy Rules 6004(h), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stays provided in Bankruptcy Rule 6004(h) is hereby expressly waived and shall not apply. Accordingly, the Sellers and Buyer are authorized and empowered to close the Sale immediately upon entry of this Sale Order.

29.     The failure to include or specifically reference any particular provision of the Agreement or and any other transactional documents required by the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

30.     To the extent that this Sale Order is inconsistent with the Sale Motion, the terms of this Sale Order shall control and govern. To the extent that there are any substantive inconsistencies between the terms of this Sale Order, on the one hand, and the Agreement or any transactional

26

document required by the Agreement, on the other hand, the terms of the Sale Order shall control and govern. Any terms not defined in the Sale Order, Sale Motion, Agreement or any other transactional document required by the Agreement, shall have the same meaning as set forth in section 101 of the Bankruptcy Code.

31.     The Agreement and any other transactional documents required by the Agreement may be modified, amended, or supplemented in a writing signed by the parties thereto and in accordance with the terms thereof, without further notice to or order of the Court, but solely in a manner consistent with the terms of this Sale Order.

32.     The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the Agreement, any other transactional documents required by the Agreement, and any amendments thereto and any waivers and consents given thereunder, and to adjudicate, if necessary, any and all disputes concerning or in any way relating to the Sale, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Assets to Buyer, (b) interpret, implement, and enforce the provisions of this Sale Order, including but not limited to the injunctions and limitations of liability set forth in this Sale Order, (c) protect Buyer against any Interests in or against the Sellers or the Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (d) enter any orders under sections 105 and 363 of the Bankruptcy Code with respect to the Assets.

33.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this Bankruptcy Case, the terms of this Sale Order shall govern. To the extent that any plan of reorganization or liquidation, or any order of any type or kind entered in these chapter 11 cases or any subsequent chapter 7 case into which these chapter 11 cases may be converted, conflicts with or derogates from the terms of the Agreement or this Sale Order, the

terms of the Agreement and this Sale Order shall control and govern to the extent of any such conflict or derogation.

34.     The Sellers and Buyer have agreed that notwithstanding anything to the contrary in the Agreement or any other transactional document required by the Agreement: (i) upon entry of the Sale Order, Buyer may contact Sellers' employees and communicate that Buyer submitted the Prevailing Bid; and (ii) upon entry of this Sale Order, Buyer may issue one or more public statements or press releases without review or consent of Sellers stating that the Court has approved the sale to Buyer and Buyer may freely meet with and/or communicate with Sellers' employees, contract counterparties, creditors, and other interested parties regarding the business transition process and related topics.

35.     Notwithstanding anything to the contrary in this Sale Order, Bexar County's secured ad valorem tax claim (the "**Bexar County Tax Claim**") owed by the Debtors for year 2021 pertaining to the Assets shall attach to the sales proceeds and that the closing agent shall pay the Tax Claim owed incident to the Assets immediately upon Closing and prior to any disbursement of proceeds to any other person or entity.

36.     Notwithstanding anything to the contrary in this Sale Order or the Agreement, Galveston County and Harris County's secured ad valorem tax claim (the "**Tax Claims**") for tax years 2021 and prior pertaining to the Assets shall attach to the proceeds in the same order, priority and validity as existed on the Petition Date and shall be paid from the sales proceeds once the final tax amounts have been determined. Neither the Bexar County Tax Claim nor the Tax Claims are an Assumed Liability under the Agreement.

37.     Notwithstanding any other provision of this Sale Order or the Agreement, (a) this Sale Order does not authorize the assumption, assignment, sale, conveyance, or transfer of (i)

either METRO Contract No. CT1600004 for Backup Taxi Services (the "**Backup Taxi Services Contract**") or METRO Contract CT1600003 for Operation of Minivan Transportation Services (the "**Minivan Transportation Services Contract**," together with the Backup Taxi Services Contract, the "**Bonded Contracts**") to the Buyer or any other person or entity or (ii) the surety bonds (the "**Westchester Surety Bonds**") issued on behalf of or at the request of any Debtor by Westchester Fire Insurance Company or its affiliates (collectively, "**Westchester**") and (b) nothing in this Sale Order shall be deemed to bar, impair, alter, diminish, or enlarge any rights, defenses, or claims held by Westchester, if any, at law and equity, against the Debtors or any third party, including but not limited to, those related to the Bonded Contracts, the Westchester Surety Bonds, and any indemnification or collateral agreements executed by the Debtors or any third parties in favor of Westchester relating to the Westchester Surety Bonds.

38.     Buyer is not assuming any executory contracts pursuant to this Sale Order, including but not limited to any contracts between the Debtors and METRO.  All rights are reserved with respect to any and all rights or obligations, whether in contract or otherwise, as between the Debtors and METRO.

39.     Notwithstanding any other provision of this Sale Order or the Agreement, (a) this Sale Order does not authorize the assignment, sale, conveyance, or transfer of METRO's equipment in Debtors' possession, including but not limited to mobile data terminals ("**METRO Equipment**") and (b) within 7 business days of the entry of this Sale Order, Debtors will remove with care and return all of the METRO Equipment to METRO.

40.     Buyer is acquiring Records (as that term is defined in the Agreement) of the Debtors as set forth in section 1.1(e) of the Agreement.  Buyer agrees that the Debtors shall retain a right to access and/or copy records, at no expense to Buyer, needed to comply with its duties as debtors-

in-possession in this Bankruptcy Case, including any and all legal obligations they have to preserve and protect their records.

41.     Regarding insurance policies, the Debtors have represented without dispute that they have already produced copies of all insurance policies (which consist of Self-Insurance Certificates, and the third party insurance policies issued by Mt.Hawley and Axis Surplus, with both insurance policies being issued through Marsh USA, Inc (the insurance broker of record, attention Keith Wright, whose email address is Keith.wright@marsh.com). Debtors have agreed that METRO is authorized to contact Marsh USA as the broker to determine the status of any such third party insurance policies and that Marsh USA is authorized to respond to such requests for information directly, without objection by Debtors. Additionally, Debtors are ordered to again provide copies of the SIC certificates and the Mt. Hawley and Axis Surplus policies for the coverage period from January 1, 2021 through the date of this Order, as well as notices of cancellation and Debtors' responses to the issue of cancellation of such insurance policies, on or before 11:59 p.m. (CST) on August 6, 2021.

42.     On or before the Closing Date, Debtors shall name a custodian to be responsible for Debtors' possession, custody, control, and preservation of the Debtors' records ("**Custodian of Records**") and shall give METRO in writing the name, phone numbers and business and home address of the person designated Custodian of Records within 5 business days.

Signed: August 06, 2021

_____
Christopher M. Lopez
United States Bankruptcy Judge

30

**AGREED AS TO FORM:**

**FUQUA & ASSOCIATES, P.C.**
By: */s/Richard L. Fuqua*
Richard L. Fuqua
State Bar No. 07552300
8558 Katy Freeway, Suite 119
Houston, Texas 77024
Telephone: (713) 960-0277
Facsimile: (713) 960-1064
Email: rlfuqua@fuqualegal.com
**ATTORNEYS FOR DEBTORS**

**JONES MURRAY & BEATTY LLP**
By:  */s/ Erin E. Jones*
Erin E. Jones
Texas Bar No. 24032478
4119 Montrose Blvd., Suite 230
Houston, TX 77006
Phone: 832-529-1999
Fax: 832-529-3393
Email: erin@jmbllp.com
**COUNSEL FOR WHC WORLDWIDE, LLC,
WHC HTX, LLC, WHC ATX, LLC, AND
WHC STX, LLC**

**JACKSON WALKER, L.L.P.**
By: */s/ Bruce J. Ruzinsky*
Bruce J. Ruzinsky
State Bar No. 17469425
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4204
Telecopier: (713) 308-4155
Email: bruzinsky@jw.com
**ATTORNEYS FOR NOTRE CAPITAL
AND STEVEN HARTER**

**MANIER & HEROD, P.C.**
By:  */s/ Robert W. Miller*
Michael E. Collins (TX Bar No. 24029006)
Sam H. Poteet, Jr. (admitted *pro hac vice*)
Robert W. Miller (admitted *pro hac vice*)
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
Telephone: (615) 244-0030

Facsimile: (615) 242-4203
Email: mcollins@manierherod.com
spoteet@manierherod.com
rmiller@manierherod.com
**ATTORNEYS FOR WESTCHESTER**
**FIRE INSURANCE COMPANY**

**CRAIN CATON & JAMES, PC**
By: /s/ *Michelle V. Friery*
H. Miles Cohn
Texas State Bar No. 04509600
Email: mcohn@craincaton.com
Michelle V. Friery
Texas State Bar No. 24040934
Email: mfriery@craincaton.com
1401 McKinney, Suite 1700
Houston, Texas 77010
Telephone: (713) 752-8668
Facsimile: (713) 658-1921
**ATTORNEYS FOR METROPOLITAN**
**TRANSIT AUTHORITY OF HARRIS COUNTY, TX**

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("Agreement") is dated as of [        ], 2021, by and among WHC HTX, a Texas limited liability company ("Buyer"), Texas Taxi, Inc., a Texas corporation ("TT"), Greater Houston Transportation Company, a Texas corporation ("GHTC"), Fiesta Cab Company ("FCC"), Yellow Cab Paratransit Services, Inc., a Texas corporation ("YCPS"), Eagle Executive Transportation Services, Inc., a Texas corporation ("EETS"), Eagle WAV, Inc., a Texas corporation ("EW"), Hail A Cab App, Inc., a Texas corporation ("HACA"), and Cab Administrative Services, Inc., a Texas corporation ("CAS", and together with TT, GHTC, FCC, YCPS, EETS, EW, and HACA, collectively, "Sellers", and each, a "Seller"). Sellers and Buyer are sometimes referred to collectively herein as the "Parties."

## RECITALS

**WHEREAS,** Sellers operate a taxicab business in the Houston, Texas area, using the trade names Yellow Cab, Fiesta Cab, Taxis Fiesta, and United Cab (the "Business");

**WHEREAS,** each of TT, GHTC, and FCC is currently a debtor-in-possession in the jointly administered bankruptcy cases, Case Nos. 21-60064, 21-60065, 21-60066, 21-60067, and 21-60069 (the "Bankruptcy Proceeding"), under Chapter 11 of Title 11 of the United States Code, as amended and the rules and regulations promulgated thereunder (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"); and

**WHEREAS,** the Buyer desires to purchase from each Seller, and each Seller desires to sell to Buyer, certain core assets and properties of the Business, on the terms and subject to the conditions set forth in this Agreement and in accordance with Sections 363(f) and 365 of the Bankruptcy Code.

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## PURCHASE AND SALE

Section 1.1    **Purchase and Sale of Assets**. Subject to the terms and conditions set forth herein, each Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from each Seller, all of the Seller's right, title and interest in the assets used in the Business, including, but not limited to, the following (collectively, "Purchased Assets"), free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance ("Encumbrance"):

(a)    With respect to each of GHTC and FCC, all vehicles owned by GHTC and FCC and as identified on the bill of sale, attached hereto as Exhibit C ("Vehicles");

(b)    all machinery, equipment, tools, furniture, office equipment, dispatch equipment, computer hardware, installed vehicle equipment, supplies, materials,



inventory, and other items of tangible personal property used in the Business of every kind owned or leased by the Seller (wherever located and whether or not carried on the books of the Seller), together with any express or implied warranty by the manufacturers or sellers or lessors of any item or component part thereof and all maintenance records and other documents relating thereto ("Tangible Personal Property"), including without limitation such Tangible Personal Property listed on Schedule 1.1(a) attached hereto;

(c)     all rights and interests of the Seller in the Assumed Contracts (as defined in Section 3.5);

(d)     all approvals, consents, licenses, registrations, or permits issued, granted, given or otherwise made available by or under the authority of any governmental body or pursuant to any applicable federal, state, local, municipal, or other law, ordinance, code, regulation, or statute ("Legal Requirements") relating to the Business and all pending applications therefor or renewals thereof ("Governmental Authorizations"), in each case to the extent transferable to Buyer;

(e)     copies of all information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form ("Records") related to the operations of the Business, including client and customer lists, referral sources, production reports, service and warranty Records, logs, operating guides and manuals, and, subject to applicable Legal Requirements, copies of all personnel Records of Employees (as defined herein); and

(f)     All intellectual property owned by the Seller, including without limitation telephone and fax numbers and related listings, domain names, URLs, trademarks and trade names used solely in the operation of the Business, including those described in Schedule 1.1(e) attached hereto.

Section 1.2     **Excluded Assets**.  Notwithstanding the foregoing, the Purchased Assets shall not include Sellers' cash, cash equivalents, accounts receivable for periods prior to Closing, and shares of common stock or any ownership interests in other entities (the "Excluded Assets"). Without limiting the foregoing, shares of common stock held by TT in GHTC, FCC, YCPS, EETS, EW, HACA, and CAS are Excluded Assets.

Section 1.3     **No Assumption of Liabilities**.  Other than liabilities for (i) Driver Deposits (as defined below) and (ii) the applicable Seller's obligations under the Assumed Contracts for periods after the Closing, Buyer shall not assume any liabilities or obligations of any Seller of any kind, whether known or unknown, contingent, matured or otherwise, whether currently existing or hereinafter created. As used herein, "Driver Deposits" mean GHTC's and FCC's driver deposits at the Closing, net of any amount owed by the drivers at the Closing; provided, however, that the aggregate Driver Deposits to be assumed by Buyer under this Agreement and under all Related Agreements (as defined in Section 6.1(b)) shall not exceed $350,000.

Section 1.4     **Purchase Price**.

2

(a)     The aggregate purchase price ("Purchase Price") for the Purchased Assets for Sellers will consist of (i) "Closing Purchase Price" (as defined below), which will be payable at Closing by wire transfer of immediately available funds in accordance with wire instructions as provided by Sellers, (ii) "Post-Closing Purchase Price" (as defined below), which will be paid on the first and second anniversary of the Closing, by wire transfer of immediately available funds in accordance with the same wire instructions, and (iii) the assumption of Driver Deposits under Section 1.3.

(b)     As used herein, "Closing Purchase Price" means a portion of the $1,720,000 allocable to the Purchased Assets, among all assets purchased under this Agreement and under the Related Agreements, which allocation shall be effected pursuant to Section 1.5, it being the intent that the aggregated cash purchase price paid by Buyer at Closing under this Agreement and the closing under the Related Agreements will be $1,720,000.

(c)     As used herein, "Post-Closing Purchase Price" means an amount calculated as 5% times Base Gross Revenue for the 12-month period immediately preceding (1) the first anniversary date, with respect to the first Post-Closing Purchase Price payment, and (2) the second anniversary date, with respect to the second Post-Closing Purchase Price payment.

(d)     As used herein, "Base Gross Revenue" means all driver lease or owner fees collected by the Buyer and Buyer's retained spread on revenue contracts, but excluding credit card fees, vehicle loan notes, accident deductibles, voucher shorts, or higher limit insurance fees for contracts, determined consistent with the same methodologies used in the calculations shown on Schedule 1.4 attached hereto.

Section 1.5     **Allocation of Purchase Price**. Prior to Closing, Sellers and Buyer shall reasonably agree in writing with respect to the manner in which the Purchase Price will be allocated among the Purchased Assets for all purposes (including tax and financial accounting). Buyer and Sellers shall file all tax returns (including amended returns and claims for refund) and information reports in a manner consistent with such allocation. Buyer shall be entitled to deduct and withhold from the Purchase Price all taxes that Buyer may be required to deduct and withhold under any applicable tax law. All such withheld amounts shall be treated as delivered to the applicable Seller hereunder.

## ARTICLE II
## CLOSING

Section 2.1     **Closing**. The closing of the transactions contemplated by this Agreement (the "Closing") shall occur via the e-mail delivery by each party hereto of the documents and other deliverables required by this Agreement, on August 5, 2021, or such other date and place mutually convenient to the parties, after satisfaction of all conditions precedent to closing set forth in this Agreement, provided, however, that if all conditions precedent have occurred, the closing shall be no later than the fifth (5th) business day after satisfaction of all conditions precedent. The date of the closing is referred to herein as the "Closing Date." The consummation of the transactions contemplated by this Agreement shall be deemed to occur at 12:01 a.m. on the Closing Date.

Section 2.2      **Closing Deliverables**.

 (a) At the Closing, Sellers shall deliver to Buyer the following:

  (i) one or more bills of sale in the form of <u>Exhibit A</u> hereto and duly executed by each Seller, transferring the Purchased Assets to Buyer;

  (ii) evidence of discharge of all Encumbrances with respect to the Purchased Assets;

  (iii) an assignment and assumption agreement in the form of <u>Exhibit B</u> hereto (the "<u>Assignment</u>") and duly executed by each Seller, effecting the assignment to and assumption by Buyer of the Assumed Contracts;

  (iv) employment offer letter agreements with John Bouloubasis and Mike Spears, in the form reasonably acceptable to Buyer, containing a noncompetition covenant (the "<u>Employment Agreement</u>");

  (v) a bill of sale, attached hereto as <u>Exhibit C</u>, duly executed by each of GHTC and FCC, transferring title to the vehicles owned by each said Seller to Silver Lining Motors, LLC, a Missouri limited liability company and an affiliate of Buyer ("<u>SLM</u>") and such other documentation necessary to transfer title to the Vehicles to SLM;

  (vi) copies of all documents evidencing Transfer of Licenses (as defined in Section 5.2) and any other Governmental Authorizations necessary to transfer the Purchased Assets and the Business to Buyer;

  (vii) if required, tax clearance certificates from the taxing authorities in the jurisdictions that impose taxes on each Seller or where each Seller has a duty to file tax returns in connection with the transactions contemplated by this Agreement and evidence of the payment in full or other satisfaction as of the Closing Date of any taxes owed by the Seller in those jurisdictions;

  (viii) such other customary instruments of transfer, assumption, filings or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to this Agreement;

  (ix) a certified copy of the Bankruptcy Court order referenced in Section 6.1(a) ("<u>Section 363 Order</u>"); and

  (x) Certificate executed by an officer of each Seller, certifying that each covenant and agreement of the Seller to be performed prior to or as of the Closing pursuant to this Agreement has been performed and each representation and warranty of the Seller is true and correct on the Closing Date, as if made on and as of the Closing Date.

 (b) At the Closing, Buyer shall deliver to Sellers the following:

(i)      the Closing Purchase Price, allocated to each Seller as directed by Sellers in writing;

(ii)     the Assignment duly executed by Buyer; and

(iii)    Certificate executed by an officer of Buyer, certifying that each covenant and agreement of Buyer to be performed prior to or as of the Closing pursuant to this Agreement has been performed and each representation and warranty of Buyer is true and correct on the Closing Date, as if made on and as of the Closing Date.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF SELLERS

Each Seller represents and warrants, jointly and severally with other Sellers, to Buyer that the statements contained in this Article III are true and correct as of the date hereof.  For purposes of this Article III, "Seller's knowledge," "knowledge of Seller" and any similar phrases shall mean that any director, manager, or officer of each Seller either is actually aware of the particular fact or matter or, by virtue of such person's position with the Seller, reasonably would be expected to be aware of the particular fact or matter.

Section 3.1      **Organization and Authority of Sellers; Enforceability**.  Each Seller is a corporation duly organized, validly existing and in good standing under the laws of the state of Texas.  The Seller has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby.  Subject to the Section 363 Order, the execution, delivery and performance by the Seller of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of the Seller.  This Agreement and the documents to be delivered hereunder have been duly executed and delivered by the Seller, and (assuming due authorization, execution and delivery by Buyer) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of the Seller, enforceable against the Seller in accordance with their respective terms.

Section 3.2      **No Conflicts; Consents**.  The execution, delivery and performance by each Seller of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of the Seller; (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to the Seller, the Purchased Assets, or the Business; (c) conflict with, or result in (with or without notice or lapse of time or both) any violation of, or default under, or give rise to a right of termination, acceleration or modification of any obligation or loss of any benefit under any contract or other instrument to which the Seller is a party or to which any of the Purchased Assets are subject; or (d) result in the creation or imposition of any Encumbrance on the Purchased Assets.  Subject to the Section 363 Order, no consent, approval, waiver or authorization is required to be obtained by the Seller from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by the Seller of this Agreement and the consummation of the

5

transactions contemplated hereby.

Section 3.3   **Title to Purchased Assets**.  Each Seller owns and has good title to the Purchased Assets, free and clear of Encumbrances, except for any Encumbrances which will be released and terminated at Closing in accordance with the Section 363 Order. The Seller owns or possesses adequate licenses or other valid rights to all of its intellectual property. The Seller has not granted any license or similar rights in any of its intellectual property to any third party.

Section 3.4   **Condition of Assets**.  Each of the Vehicles and Tangible Personal Property is in good condition and are adequate for the uses to which they are being put, and none of such Vehicles or Tangible Personal Property are in need of maintenance or repairs except for ordinary, routine maintenance and repairs that are not material in nature or cost.

Section 3.5   **Assumed Contracts**.  Schedule 3.5 attached hereto includes each contract included in the Purchased Assets assumed by Each Seller pursuant to a final order in the Bankruptcy Proceeding and assigned to and assumed by Buyer (the "Assumed Contracts").  Each Assumed Contract is valid and binding on the Seller in accordance with its terms and is in full force and effect.  The Seller is not, and to the Seller's knowledge, no other party thereto, is in breach of or default under or is alleged to be in breach of or default under, or has provided or received any notice of any intention to terminate, any Assumed Contract.   No event or circumstance has occurred that, with or without notice or lapse of time or both, would constitute an event of default under any Assumed Contract or result in a termination thereof or would cause or permit the acceleration or other changes of any right or obligation or the loss of benefit thereunder. Complete and correct copies of each Assumed Contract have been made available to Buyer.  There are no disputes pending or threatened under any Assumed Contract.  Buyer reserves the right to amend or modify Schedule 3.5 in Buyer's sole and absolute discretion.

Section 3.6   **Non-foreign Status**.  No Seller is a "foreign person" as that term is used in Treasury Regulations Section 1.1445-2.

Section 3.7   **Compliance with Laws and Governmental Authorizations**.  Except as disclosed in Schedule 3.7 hereto, each Seller is in compliance in all material respects with all applicable Legal Requirements and Governmental Authorizations applicable to the ownership and use of the Purchased Assets, including without limitation environmental and occupational safety and health Legal Requirements, and with respect to the operation of its Business.

Section 3.8   **Legal Proceedings**.  Except as disclosed in Schedule 3.8 hereto, there is no claim, action, suit, proceeding or governmental investigation ("Action") of any nature pending, or, to each Seller's knowledge, threatened, against or by the Seller (a) relating to or affecting the Business, the Purchased Assets, or the Assumed Contracts; or (b) that challenges or seeks to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement.  No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action.

Section 3.9   **Brokers**.  No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of any Seller, and Buyer will

not be liable for any of the foregoing.

Section 3.10   **Employees; Independent Contractors**. Each Seller has provided Buyer a complete and accurate list of all Employees, including name; age; job title; date of hiring; current compensation; sick and vacation leave that is accrued but unused; service credited for purposes of vesting and eligibility to participate under any benefit plan; and any applicable employment contract. The Seller is not (i) a party to or otherwise bound by any collective bargaining or other type of union agreement, (ii) a party to, involved in or, to the Seller's knowledge, threatened by, any labor dispute or unfair labor practice charge or (iii) currently negotiating any collective bargaining agreement. The Seller has not experienced any work stoppage within the three (3) year period preceding the Closing. The Seller has previously disclosed all employee benefit plans to Buyer in writing. The Seller and its benefit plans are, and at all times have been, in compliance in all material respects with all applicable Legal Requirements. The Seller has also provided Buyer a complete and accurate list of each independent contractor who provides services to the Seller pursuant to an agreement (such persons, "Independent Contractors", and such agreements, "Independent Contractor Agreements"), which list shall include the name; age; date of engagement, and the material terms of such agreement. Each Independent Contractor Agreement is valid and binding on the Seller in accordance with its terms and is in full force and effect; the Seller is not, and to the Seller's knowledge, no other party thereto, is in breach of or default under or is alleged to be in breach of or default under, or has provided or received any notice of any intention to terminate, any Independent Contractor Agreement; no event or circumstance has occurred that, with or without notice or lapse of time or both, would constitute an event of default under any such agreement or result in a termination thereof or would cause or permit the acceleration or other changes of any right or obligation or the loss of benefit thereunder. Complete and correct copies of each Independent Contractor Agreement have been made available to Buyer. There are no disputes pending or threatened under any Independent Contractor Agreement.

Section 3.11   **Taxes**. (a)  Each Seller has timely filed all tax returns that it was required to file and, except with respect to federal income tax, has timely paid in full all taxes (including without limitation any ad valorem taxes on the Purchased Assets) that it was required to pay as reflected on such tax returns, (b) there are no Encumbrances for taxes on any of its Purchased Assets, (c)  the Seller has not granted any waiver of any statute of limitations with respect to, or any extension of a period for the assessment of, any taxes and (d) there is no action, suit, proceeding, investigation, audit, claim, assessment or judgment now pending against the Seller or relating to the Business or any of its Purchased Assets or Assumed Contracts in respect of any taxes.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Sellers that the statements contained in this Article IV are true and correct as of the date hereof.

Section 4.1   **Organization and Authority of Buyer; Enforceability**.  Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the state of Texas.  Buyer has full corporate power and authority to enter into this Agreement and the

7

documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby.  The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Buyer.  This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Buyer, and (assuming due authorization, execution and delivery by each Seller) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms.

Section 4.2   **No Conflicts; Consents**.   The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Buyer; or (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Buyer. No consent, approval, waiver or authorization is required to be obtained by Buyer from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby.

## ARTICLE V
## COVENANTS

Section 5.1   **Employees**. Immediately before Closing, each Seller will, in full compliance with all applicable Legal Requirements, terminate the employment of all employees of the Seller, as identified in writing by the Seller and delivered to Buyer ("Employees"). Buyer shall have no obligation or liability with respect to the employment or termination by the Seller of any Employees, including any liability or obligation for or with respect to termination, payroll, overtime, accrued benefits, continuing benefits, severance or otherwise. Immediately prior to the Closing Date, the Seller shall pay out and satisfy all Employees' accrued vacation, sick, holiday or other paid time off. At Closing, Buyer will initially offer employment to Employees on a strictly "at-will" basis. Buyer shall not assume any obligation or liability to any employee under any Legal Requirements (including without limitation FLSA or workers compensation laws for covered injuries or accidents) which occur on or before the Closing Date.

Section 5.2   **Transfer of Licenses**. Each Seller and Buyer will cooperate with each other and use commercially reasonable efforts to cause the transfer of Governmental Authorizations from the Seller to Buyer which are necessary for the operation of the Purchased Assets, including without limitation the transfer of licenses and authorizations and/or applications with the City of Houston Administration and Regulatory Affairs Department, Transportation Section ("Transfer of Licenses").

Section 5.3   **Assumed Contracts – Consents, etc**. Promptly following the execution of this Agreement, each Seller will use commercially reasonable efforts to obtain the third-party consents, waivers and estoppels that are required to assign to Buyer the Assumed Contracts (the "Required Consents"). Each Seller will give proper notice to the counterparties to the Assumed Contracts under applicable Legal Requirements, will assume the Assumed Contracts in the

8

Bankruptcy Proceeding, and will cooperate with Buyer to assign all the Seller's rights and interests under the Assumed Contracts. Without limiting any of the foregoing, Buyer will assume each Seller's contracts with the Seller's drivers, if any, pursuant to which the drivers have the right to purchase the vehicles, and Buyer will credit the drivers for all payments made by the drivers through the Closing. Buyer reserves the right to amend or modify Schedule 3.5 in Buyer's sole and absolute discretion.

Section 5.4   **Information**. Each Seller will afford to the Buyer and authorized representatives and agents (which shall include accountants, attorneys, bankers, and other consultants) of Buyer full and complete access during normal business hours to and the right to inspect the  properties, books, and records of the Seller applicable to the Purchased Assets and Assumed Contracts, and will furnish Buyer with such additional financial and operating data and other information related to the Purchased Assets and Assumed Contracts as Buyer may from time to time reasonably request. Buyer's right of access and inspection shall be exercised in such a manner as not to interfere unreasonably with the operations of each Seller's Business and shall be subject to reasonable advance notice.

Section 5.5   **Operations**. Subject to Bankruptcy Court's approval, after the execution and delivery of this Agreement and until Closing, each Seller will (i) carry on its Business in substantially the same manner as presently conducted and not make any material change in its Business; (ii) maintain its Purchased Assets and all parts thereof in the same operating condition, ordinary wear and tear excepted;(iii) perform all of their obligations under all Assumed Contracts; (iv) keep in full force and effect present insurance policies; and (iv) use reasonable commercial efforts to maintain and preserve its business organizations intact, retain its present Employees and maintain its relationships with customers, vendors, drivers, and others having business relations with the Seller and its Business. Each Seller will give notice to Buyer within 1 business day if any event occurs which has, or is reasonably likely to have, a material adverse effect on the Business, the Purchased Assets, Assumed Contracts, or the Seller.

Section 5.6   **Negative Covenants**. Subject to Bankruptcy Court's approval, after the execution and delivery of this Agreement and until Closing, no Seller will, without the prior written consent of Buyer: (i) create or assume any Encumbrance upon any Purchased Assets; (ii) sell, assign, lease, or otherwise transfer or dispose of any Purchased Assets; (iii) waive any material rights or claims of the Seller affecting the Purchased Assets or Assumed Contracts; (iv) commence a lawsuit; or (v) take, or agree to take, any action which would make any of the representations and warranties of the Seller contained in this Agreement untrue, or result in any of the closing conditions set forth in this Agreement not being satisfied.

Section 5.7   **Schedules Update**. Each Seller will update the Schedules to this Agreement, from time to time, as needed, through the Closing Date, and promptly deliver the same to Buyer.

Section 5.8   **Intentionally Omitted**.

Section 5.9   **Public Announcements**. Unless otherwise required by applicable law, or as agreed by the parties, neither party shall make any public announcements regarding this

Agreement or the transactions contemplated hereby without the prior written consent of the other party (which consent shall not be unreasonably withheld, conditioned or delayed).

Section 5.10   **Bulk Sales Laws.**  The parties hereby waive compliance with the provisions of any bulk sales, bulk transfer or similar laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the Purchased Assets to Buyer.

Section 5.11   **Transfer Taxes.**  Other than sales tax on vehicles being sold as part of the Purchased Assets, which will be paid by Buyer, if any, all transfer, documentary, sales, use, stamp, registration, value added and other such taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the documents to be delivered hereunder shall be borne and paid by each Seller when due.  Each Seller shall, at its own expense, timely file any tax return or other document with respect to such taxes or fees (and Buyer shall cooperate with respect thereto as necessary).

Section 5.12   **Further Assurances.**  Following the Closing, each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the documents to be delivered hereunder. Without limiting the foregoing, each Seller agrees to remit to Buyer any accounts receivable payments for periods after Closing received by the Seller within 3 days after the Seller's receipt of the same.

Section 5.13   **Bankruptcy Matters.**

(a)   In the event an objection is filed, an appeal is taken, or a stay pending appeal is requested from the Section 363 Order or any other order reasonably necessary in connection with the transaction contemplated herein, each Seller shall promptly notify Buyer of such objection, appeal or stay request and shall provide to Buyer promptly a copy of the related objection, notice of appeal or order of stay. Each Seller shall also provide Buyer with written notice of any motion or application filed in connection with an objection or any appeal from either of such orders and the Seller agrees to take all action as may be commercially reasonable and appropriate to defend against such appeal, petition or motion and Buyer shall cooperate in such efforts.

(b)   Until Closing, each Seller shall make reasonable efforts to consult and cooperate with Buyer regarding (a) any pleadings, motions, notices, statements, applications, schedules, reports, orders, or other papers to be filed with the Bankruptcy Court in relation to the implementation of the transaction contemplated herein, (b) any discovery taken in connection with the seeking entry of the Section 363 Order (including, not by way of limitation, depositions), and (c) any hearing relating to the Section 363 Order, including, not by way of limitation, the submission of any evidence or witness testimony in connection with such hearing.

**ARTICLE VI**
**CONDITIONS TO CLOSING; TERMINATION PRIOR TO CLOSING**

Section 6.1    **Conditions Precedent to Obligations of Buyer**. Notwithstanding anything herein to the contrary, the obligations of Buyer to consummate the transactions described herein are subject to the fulfillment, on or prior to the Closing Date, of the following conditions precedent unless (but only to the extent) waived in writing by Buyer at or prior to the Closing:

(a)    **Bankruptcy Matters**. The following are referred to herein collectively as "Bankruptcy Requirements"):

(i)    Each Seller which is a party to the Bankruptcy Proceeding shall have obtained the consent of the Bankruptcy Court, and the Bankruptcy Court shall have entered an order (1) approving the transactions set forth herein in accordance with Sections 363(f) and 365 of the Bankruptcy Code, (2) authorizing the assumption and assignment of Assumed Contracts to be assumed by the Buyer, and (3) authorizing a "no stay" under Federal Rules of Bankruptcy Procedure Section 6004(h). Such order shall be in the form previously approved by Buyer, and the time for appeal of such order shall have expired.

(ii)    Each Seller which is a party to the Bankruptcy Proceeding shall have filed a motion with the Bankruptcy Court and the Bankruptcy Court shall have entered an order approving terms and provisions relating to "stalking horse" protection, including a break-up fee in the amount of $150,000, expense reimbursement, bidding procedures that include a minimum of $200,000 in a first overbid, plus $50,000 in any additional overbid increments, and other terms and provisions customary in a bid procedures order (the "Bid Procedures Order"). The order approving the Bid Procedures Agreement shall have set the time and place for the Section 363 auction.

(iii)    Each Seller which is a party to the Bankruptcy Proceeding shall have filed a motion with the Bankruptcy Court and the Bankruptcy Court shall have entered the Section 363 Order.

(iv)    Each Seller shall have ensured that proper notice of the 363 sale is given pursuant to Bankruptcy Rule 2002, including, not by way of limitation, to the Seller, any trustee, any committees and ad hoc committees, all creditors, indenture trustees, the United States Trustee, equity security holders, any consumer privacy ombudsman, governmental entities that may be affected by the sale, and holders of interests in the Purchased Assets or the Assumed Contracts. Such notice shall have included opportunity for objections and for a hearing.

(b)    **Related Transactions**. The transactions contemplated by the asset purchase agreements set forth on Schedule 6.1(b) ("Related Agreements") shall have closed or close simultaneously with this Agreement, it being the intent that the closing of the transaction contemplated herein and the transactions under such agreements are conditioned on each other successfully closing.

(c)    **Representations and Warranties**. The representations and warranties of each Seller contained in this Agreement shall be true in all material respects when made and as of the Closing Date as though such representations and warranties had been made on and as of such Closing Date. Each and all of the terms, covenants, and conditions of this Agreement

11

to be complied with or performed by the Seller on or before the Closing Date pursuant to the terms hereof shall have been duly complied with and performed in all material respects.

(d) **No Action**. No action or proceeding before a court or any other governmental agency or body shall have been instituted or threatened to restrain or prohibit the transactions herein contemplated, and no governmental agency or body shall have taken any other action with respect to the Purchased Assets, as a result of which Buyer reasonably and in good faith deems it inadvisable to proceed with the transactions hereunder.

(e) **No Material Adverse Effect**. Since the date of this Agreement, there shall not have occurred any event, change or occurrence that has or could reasonably be expected to have a material adverse effect upon the Business, the Purchased Assets, Assumed Contracts, or any Seller. Without limiting the foregoing, the parties expressly agree that there shall deemed to have been a material adverse effect on the Business, the Purchased Assets, Assumed Contracts, or Sellers, in the event of a loss of any license or insurance required under law to operate the Business in substantially the same manner as of June 21, 2021.

(f) **Required Consents**. Each Seller shall have obtained all of the Required Consents and the Transfer of Licenses from the Seller to Buyer.

(g) **Omitted**.

(h) **Leases**. Buyer and Notre Capital Management, Inc. shall have entered into a new lease agreement in substantially the form attached hereto as Exhibit D, pursuant to which Buyer will lease the facility where the Business is currently operated.

(i) **Closing Deliveries**. Seller shall have made the deliveries required to be made by it under Section 2.2(a) hereof.

Section 6.2 **Conditions Precedent to Obligations of Sellers**. Notwithstanding anything herein to the contrary, the obligations of each Seller to consummate the transactions described herein are subject to the fulfillment, on or prior to the Closing Date, of the following conditions precedent unless (but only to the extent) waived in writing by the Seller at or prior to the Closing:

(a) **Bankruptcy Matters**. Bankruptcy Requirements shall have been satisfied.

(b) **Related Transactions**. The transactions contemplated by the asset purchase agreements set forth on Schedule 6.1(b) shall have closed or close simultaneously with this Agreement, it being the intent that the closing of the transaction contemplated herein and the transactions under such agreements are conditioned on each other successfully closing.

(c) **Representations and Warranties**. The representations and warranties of Buyer contained in this Agreement shall be true in all material respects when made and as of the Closing Date as though such representations and warranties had been made on and as of such Closing Date. Each and all of the terms, covenants, and conditions of this Agreement to

12

be complied with or performed by Buyer on or before the Closing Date pursuant to the terms hereof shall have been duly complied with and performed in all material respects.

(d)    **No Action**. No action or proceeding before a court or any other governmental agency or body shall have been instituted or threatened to restrain or prohibit the transactions herein contemplated, and no governmental agency or body shall have taken any other action with respect to any Seller or its owners, the Business, or the Purchased Assets, as a result of which the Seller reasonably and in good faith deems it inadvisable to proceed with the transactions hereunder.

(e)    **Closing Deliveries**. Buyer shall have made the deliveries required to be made by them under Section 2.2(b) hereof.

Section 6.3    **Termination Prior to Closing**. Notwithstanding anything herein to the contrary, this Agreement may be terminated at any time: (a) on or prior to the Closing Date by the written agreement of each Seller and Buyer; (b) on or prior to the Closing Date by Buyer, if satisfaction of any condition to Buyer's obligations under Section 6.1 of this Agreement becomes impossible or impractical with the use of commercially reasonable efforts (unless the failure results primarily from Buyer breaching any representation, warranty, or covenant herein) and such condition shall not have been waived by Buyer; (c) on or prior to the Closing Date by each Seller, if satisfaction of any condition to the Seller's obligations under Section 6.2 of this Agreement becomes impossible or impractical with the use of commercially reasonable efforts (unless the failure results primarily from the Seller breaching any representation, warranty, or covenant herein) and such condition shall not have been waived by the Seller; or (d) by Buyer or any Seller, if the Closing Date shall not have taken place on or before August 16, 2021 (which date may be extended by the written agreement of Buyer and each Seller); provided that the right to terminate this Agreement under this item (d) shall not be available to any party if the failure of the Closing to take place by said date results primarily from such party's (or such party's Affiliate's) breach of any representation, warranty covenant herein. If this Agreement is terminated pursuant to this Section, this Agreement shall be null and void and all rights and obligations of the parties hereunder shall terminate without any liability of any party to any other party, except that nothing herein shall prevent any party from pursuing any of its legal rights or remedies that may be granted to any party by law against the other party to this Agreement as a result of any default by the other party in the observance or in the due and timely performance of such party of any of the covenants herein contained.

## ARTICLE VII
## INDEMNIFICATION

Section 7.1    **Survival**. All indemnification obligations of each Seller and Buyer shall survive the Closing for a period of eighteen (18) months, provided that the following shall survive the Closing for the period of the applicable statute of limitations under applicable law: (i) the Seller's indemnification obligation arising out of a breach of Section 3.1, 3.2, 3.3, or 3.11, and the Seller's indemnification obligation under Section 7.2(b) and (c), and (ii) the Buyer's indemnification obligation under Section 7.3(b) and (c).

13

Section 7.2    **Indemnification by Each Seller**.  Each Seller, jointly and severally with other Sellers, shall defend, indemnify and hold harmless Buyer, its affiliates and their respective members, managers, officers and employees from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to:

(a)    any inaccuracy in or breach of any of the representations or warranties of any Seller contained in this Agreement or any document to be delivered hereunder;

(b)    any breach or non-fulfillment of any covenant, agreement or obligation to be performed by any Seller pursuant to this Agreement or any document to be delivered hereunder; or

(c)    any Excluded Asset, or any liability of any Seller (other than liabilities for Assumed Contracts arising from periods after the Closing).

Section 7.3    **Indemnification by Buyer**.  Buyer shall defend, indemnify and hold harmless each Seller, its affiliates and their respective stockholders, directors, officers and employees from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to:

(a)    any inaccuracy in or breach of any of the representations or warranties of Buyer contained in this Agreement or any document to be delivered hereunder;

(b)    any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Buyer pursuant to this Agreement or any document to be delivered hereunder; or

(c)    any liabilities from Assumed Contracts arising from periods after the Closing Date.

Section 7.4    **Indemnification Procedures**.  Whenever any claim shall arise for indemnification hereunder, the party entitled to indemnification (the "Indemnified Party") shall promptly provide written notice of such claim to the other party (the "Indemnifying Party").  In connection with any claim giving rise to indemnity hereunder resulting from or arising out of any Action by a person or entity who is not a party to this Agreement, the Indemnifying Party, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such Action with counsel reasonably satisfactory to the Indemnified Party. The Indemnified Party shall be entitled to participate in the defense of any such Action, with its counsel and at its own cost and expense. If the Indemnifying Party does not assume the defense of any such Action, the Indemnified Party may, but shall not be obligated to, defend against such Action in such manner as it may deem appropriate, including, but not limited to, settling such Action, after giving notice of it to the Indemnifying Party, on such terms as the Indemnified Party may deem appropriate and no action taken by the Indemnified Party in accordance with such defense and settlement shall relieve the Indemnifying Party of its indemnification obligations herein provided with respect to any damages resulting therefrom.  The Indemnifying Party shall not settle any

14

Action without the Indemnified Party's prior written consent (which consent shall not be unreasonably withheld or delayed).

Section 7.5    **Tax Treatment of Indemnification Payments**.    All indemnification payments made by each Seller under this Agreement shall be treated by the parties as an adjustment to the Purchase Price for tax purposes, unless otherwise required by law.

Section 7.6    **Effect of Investigation**.  Buyer's right to indemnification or other remedy based on the representations, warranties, covenants and agreements of each Seller contained herein will not be affected by any investigation conducted by Buyer with respect to, or any knowledge acquired by Buyer at any time, with respect to the accuracy or inaccuracy of or compliance with, any such representation, warranty, covenant or agreement.

Section 7.7    **Set-Off**.  If an Indemnified Party is entitled to indemnification under this Agreement, then the Indemnifying Party agrees that the Indemnified Party may instruct Buyer to deduct from any Post-Closing Purchase Price the amount of the loss incurred by the Indemnified Party; provided, the foregoing is in addition to any and all other remedies to which the Indemnified Party is entitled and is merely an additional means by which the Indemnified Party may secure payment of indemnification.

Section 7.8    **Cumulative Remedies**.  The rights and remedies provided in this Article are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise.

## ARTICLE VIII
## MISCELLANEOUS

Section 8.1    **Expenses**.    All costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

Section 8.2    **Notices**.  All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.  Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section):

If to Sellers:                                  Texas Taxi, Inc.
                                                Greater Houston Transportation Company
                                                Fiesta Cab Company
                                                Yellow Cab Paratransit Services, Inc.

15

Eagle Executive Transportation Services, Inc.
Eagle WAV, Inc.
Hail A Cab App, Inc.
Cab Administrative Services, Inc.
4201 Langley Rd
Houston, TX, 77093
E-mail: johnb@yellowcabsa.com
Attention: John Bouloubasis

with a copy to:

Richard L. Fuqua
Fuqua & Associates, PC
8558 Katy Fwy Ste 119
Houston, TX 77024-1809
Email: RLFuqua@fuqualegal.com

Dan Gartner
Gartner Law Firm PC
3 Riverway # 1800
Houston, TX 77056
dgartner@gartnerlaw.net

Bruce Ruzinsky
1401 McKinney St., Suite 1900
Houston, Texas 77010
bruzinsky@jw.com

If to Buyer:

William M. George
1300 Lydia
Kansas City, MO 64106
E-mail: wmgeorge@ztrip.com
Attention: William M. George

with a copy to:

Foulston Siefkin LLP
32 Corporate Woods, Suite 600
9225 Indian Creek Parkway
Overland Park, Kansas 66210
Facsimile: 913-498-2101
E-mail: iyamaashi@foulston.com
Attention: Issaku Yamaashi

Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206

16

E-mail: swead@foulston.com
Attention: Shannon Wead

Section 8.3    **Headings**.  The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

Section 8.4    **Severability**.  If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

Section 8.5    **Entire Agreement**.  This Agreement and the documents to be delivered hereunder constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.  In the event of any inconsistency between the statements in the body of this Agreement and the documents to be delivered hereunder, the Exhibits and Schedules (other than an exception expressly set forth as such in the Schedules), the statements in the body of this Agreement will control.

Section 8.6    **Successors and Assigns**.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Buyer may assign its rights or obligations hereunder to any affiliate without the prior written consent of the other party, and pursuant to such right Buyer hereby assigns the right to purchase the Vehicles to SLM.  No assignment shall relieve the assigning party of any of its obligations hereunder.

Section 8.7    **No Third-party Beneficiaries**.  Except as expressly provided herein, this Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

Section 8.8    **Amendment and Modification**.  This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto.

Section 8.9    **Waiver**.  No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving.  No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.  No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

Section 8.10    **Governing Law**.  This Agreement shall be governed by and construed in

17

accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction).

Section 8.11   **Waiver of Jury Trial**.   Each party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby.

Section 8.12   **Specific Performance**.   The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

Section 8.13   **Counterparts**.   This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[REMINDER OF PAGE INTENTIONALLY LEFT BLANK.]*

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**BUYER:**

**WHC HTX, LLC**
By: WHC Worldwide, LLC, as sole member


By:_____
            William M. George, as Managing Member


**SELLERS:**

**TEXAS TAXI, INC.**

By:_____
Name:
Title:

**GREATER HOUSTON TRANSPORTATION COMPANY**


By:_____
Name:
Title:

**FIESTA CAB COMPANY**

By:_____
Name:
Title:

**YELLOW CAB PARATRANSIT SERVICES, INC.**


By:_____
Name:
Title:

**EAGLE   EXECUTIVE   TRANSPORTATION SERVICES, INC.**

By:_____
Name:
Title:

**EAGLE WAV, INC.**


By:_____
Name:
Title:


**HAIL A CAB APP, INC.**


By:_____
Name:
Title:

**CAB ADMINISTRATIVE SERVICES, INC.**


By:_____
Name:
Title:

20

## Schedule 1.1(a) to Asset Purchase Agreement

### Tangible Personal Property

Shop Equipment

| Q | Description |
|---|---|
| 5 | Vehicle Lifts |
| 1 | Alignment Machine |
| 1 | Tire Machine |
| 1 | Wheel Balancer |
|   | Various small tools |

Fixed Assets

|  |  |
|---|---|
|  | Credit Card Processi |
| 201015 | Converter Cable |
| CC upg | CC System enhance |
| Ingenico | Metro CC Machine |
| Jewelr | Jewelry for Cabs |
| RF Key | Keypads and antenn |
| Suppor | Support for Serveres |
|  | Asset Id's |
|  | Parts to repair termin |
|  | Lava Tablet |
|  | 990119 MCSFT PRO |
| APX150 | Cab Dash Equipmen |
| Cables | Printer Cables |
| PER730 | Dell PowerEdge R73 |
| R44-V100T-0 | RANGER4.4/TRAAP |
| Trapez | Hardwar & Fees |
|  | 14/15 USED LAPTOP |
|  | 14/15 USED LAPTOP |
|  | Software Developme |
|  | Columbia Asets |
|  | Web Project |
|  | Trapeze Licenses |
| AG08324 | PASS EZ WALLET |
| AG08325 | INFO EZ WALLET |
| CS100101 | Claim Software |
| CS100144 | Great Plains Softwar |
| Knomat | Driver Onboarding P |
| Trapeze | NPN Services |

21

Radios
Cameras
Meters
MTData
Various office furniture, fixtures

Parts inventory and other property

| PART NUMBER | COUNT | VENDOR |
|---|---|---|
| YH245038P | 4 | ADVANCE |
| PXD1273H | 5 | ADVANCE |
| PDX1326H | 9 | ADVANCE |
| 30112730 | 6 | XL |
| 4779783AB | 5 | MAC H |
| BR900526 | 1 | XL |
| BR900524 | 6 | XL |
| BR901006 | 4 | XL |
| 10510750 | 1 | XL |
| PXD1210H | 1 | ADVANCE |
| PXD1354H | 1 | ADVANCE |
| 451600CN | 2 | 1-800 |
| 4880213AJ | 1 | XL |
| 13067050 | 1 | XL |
| 30115890 | 2 | XL |
| 14167069 | 1 | XL |
| 14167070 | 1 | XL |
| 68192437AA | 1 | TOMBALL |
| 04721561AE | 1 | TOMBALL |
| 5184404AF | 3 | TOMBALL |
| BR90109001 | 6 | XL |
| 3016 | 30 | PETES |
| 3120 | 30 | PETES |
| 3122 | 15 | PETES |
| 3024 | 44 | PETES |
| 3126 | 42 | PETES |
| 3112 | 10 | PETES |
| 30115960 | 2 | XL |
| WH513273 | 2 | XL |
| 68299450AA | 2 | TOMBALL |
| 5184498A14 | 1 | TOMBALL |
| 68018555AA | 74 | PETES |
| 68191349AA | 104 | PETES |

22

| | | |
|---|---|---|
| 4861737AA | 98 | PETES |
| R134 | 60 | XL |
| 5184332AA | 48 | MAC H |
| 5184296AH | 48 | MAC H |
| 5184617AD | 2 | MAC H |
| 39282 | 3 | XL |
| 38082 | 2 | XL |
| 5281418AC | 1 | MAC H |
| 5149171AB | 3 | TOMBALL |
| 5149180AA | 4 | TOMBALL |
| 68271967AA | 4 | TOMBALL |
| 68045336AA | 5 | TOMBALL |
| 11570 | 4 | COMPLETE |
| 41052456 | 2 | COMPLETE |
| 5047794AA | 1 | MAC H |
| 68093232AA | 2 | MAC H |
| 5047791AA | 1 | MAC H |
| 5047790AA | 1 | MAC H |
| 5047792AA | 1 | MAC H |
| 35982 | 1 | XL |
| 5184562AC | 18 | MAC H |
| 5020678AC | 4 | XL |
| 5184331AC | 54 | TOMBALL |
| 5020679AC | 4 | TOMBALL |
| 68050014AA | 1 | MAC H |
| 4861962AC | 3 | MAC H |
| 56007078AB | 8 | MAC H |
| 5179153AC | 1 | MAC H |
| 5149168AJ | 1 | TOMBALL |
| 9407 | 75 | PETES |
| 67964 | 2 | XL |
| 5184595AE | 8 | TOMBALL |
| 5184596AE | 9 | TOMBALL |
| 56029398AA | 8 | PETES |
| DT01F2801A | 2 | CAPSTONE |
| 4721746AB | 3 | TOMBALL |
| 3682 | 6 | XL |
| 13064 | 5 | XL |
| 621860 | 4 | XL |
| 621820 | 1 | XL |
| 622410 | 1 | XL |
| 621840 | 1 | XL |

23

| | | |
|---|---|---|
| 68268023AA | 7 | MAC H |
| ES800403 | 10 | XL |
| EV800934 | 3 | XL |
| K7258 | 5 | XL |
| 68144549AF | 3 | MAC H |
| BSK81179 | 1 | XL |
| 4721918AF | 4 | TOMBALL |
| DSW902 | 4 | XL |
| 68298871AA | 5 | TOMBALL |
| 68144165AB | 4 | MAC H |
| 68039999AC | 1 | TOMBALL |
| 6112581 | 15 | XL |
| 68298870AA | 1 | TOMBALL |
| 1DF311X9AF | 1 | TOMBALL |
| T83181 | 1 | XL |
| 3128 | 11 | PETES |
| 3026 | 5 | XL |
| 68042866AA | 19 | PETES |
| 68034400AI | 1 | MAC H |
| 5156106AG | 1 | MAC H |
| 2941 | 11 | XL |
| CRC5110 | 2 | XL |
| CRC5103QD | 4 | XL |
| 817400 | 5 | XL |
| 817500 | 9 | XL |
| SF16 | 9 | XL |
| 94RPG | 1 | XL |
| 4684 | 3 | XL |
| 817100 | 7 | XL |
| 817200 | 13 | XL |
| 110078 | 7 | XL |
| 10001 | 3 | XL |
| 100QR622 | 3 | XL |
| 4608 | 4 | XL |
| WH512360 | 1 | XL |
| WH590447 | 1 | XL |
| 513273 | 1 | MAC H |
| 68192437AA | 6 | XL |
| 14167529 | 1 | XL |
| 14167519 | 2 | XL |
| K060935 | 1 | XL |
| K0403555F | 1 | XL |

24

| | | |
|---|---|---|
| 4877805AH | 5 | |
| 68064801AE | 1 | XL |
| VS50805R | 1 | XL |
| 4721664AB | 1 | MAC H |
| 911506 | 2 | XL |
| 37123 | 4 | XL |
| C030017C | 2 | XL |
| 111675C | 1 | XL |
| 923227 | 12 | XL |
| 4891741AA | 3 | TOMBALL |
| 5184653AF | 3 | XL |
| 5273893AF | 7 | XL |
| 5273994AB | 5 | XL |
| 5273996AE | 7 | XL |
| 700216 | 3 | XL |
| PA6116 | 2 | XL |
| 55111074AB | 4 | MAC H |
| 5085685AA | 1 | MAC H |
| 5184570AJ | 2 | XL |
| 52030433AB | 2 | MAC H |
| 52079880AA | 1 | TOMBALL |
| P06135 | 17 | XL |
| 6502738 | 15 | PETES |
| 4671336AD | 4 | MAC H |
| HP3960 | 3 | XL |
| HP3835 | 50 | PETES |
| 6509131AA | 8 | TOMBALL |
| PF48E | 2 | XL |
| PF46E | 1 | XL |
| M1204 | 1 | XL |
| FL5005 | 1 | XL |
| FL8205 | 1 | XL |
| SP405 | 6 | PETES |
| 88134 | 2 | PETES |
| P05608 | 1 | XL |
| 85348 | 6 | XL |
| 471-1017 | 2 | WORLDWIDE |
| 225-65-17 | 4 | WORLDWIDE |
| 225-75-15 | 3 | WORLDWIDE |
| 225-65-16 | 8 | WORLDWIDE |
| 235-55-17 | 3 | WORLDWIDE |
| 225-65-17 | 1 | WORLDWIDE |

25

| | | | |
|---|---|---|---|
| 235-55-19 | 2 | WORLDWIDE | |
| 225-65-17 | 2 | WORLDWIDE | |
| 215-65-17 | 5 | WORLDWIDE | |
| 205-55-16C | 4 | WORLDWIDE | |
| | **1346** | | |

## Tablets (Houston)

| | Mobile Number | IMEI Number |
|---|---|---|
| Tablet | 8327638162 | 352250110714289 |
| Tablet | 8327638200 | 352250110943227 |
| Tablet | 8327638286 | 352250110941783 |
| Tablet | 8327636987 | 352250110889958 |
| Tablet | 8327638406 | 352250110960429 |
| Tablet | 8327638367 | 352250110772352 |
| Tablet | 8327638403 | 352250110906463 |
| Tablet | 8327638689 | 352250110941577 |
| Tablet | 8327632934 | 352250110770489 |
| Tablet | 8327638272 | 352250110755126 |
| Tablet | 8327638591 | 352250110780660 |
| Tablet | 8327636170 | 352250110781189 |
| Tablet | 8327638672 | 352250110754079 |
| Tablet | 8327638351 | 352250110859787 |
| Tablet | 8327638038 | 352250110927444 |
| Tablet | 8327638477 | 352250110781494 |
| Tablet | 8327638434 | 352250110692162 |
| Tablet | 8327638118 | 352250110916074 |
| Tablet | 8327638712 | 352250110960080 |
| Tablet | 8327638316 | 352250110925067 |
| Tablet | 8327638628 | 352250110888380 |
| Tablet | 8327638141 | 352250110914061 |
| Tablet | 8327638382 | 352250110914277 |
| Tablet | 8327638221 | 352250110890006 |
| Tablet | 8327630218 | 352250110899627 |
| Tablet | 8327638661 | 352250110756678 |
| Tablet | 8327638660 | 352250110898934 |
| Tablet | 8327638388 | 352250110694366 |
| Tablet | 8327631469 | 352250110906265 |
| Tablet | 8327638427 | 352250110780710 |
| Tablet | 8327638306 | 352250110889982 |

| | | |
|---|---|---|
| Tablet | 8327636964 | 352250110888760 |
| Tablet | 8327635905 | 352250110899635 |
| Tablet | 8327638493 | 352250110899650 |
| Tablet | 8327638180 | 352250110924862 |
| Tablet | 8327636963 | 352250110892283 |
| Tablet | 8327636550 | 352250110906406 |
| Tablet | 8327638370 | 352250110781213 |
| Tablet | 8327638335 | 352250110911570 |
| Tablet | 8327638296 | 352250110889701 |
| Tablet | 8327636793 | 352250110892309 |
| Tablet | 8327638258 | 352250110924243 |
| Tablet | 8327638257 | 352250110920571 |
| Tablet | 8327638059 | 352250110924060 |
| Tablet | 8327638409 | 352250110911562 |
| Tablet | 8327638735 | 352250110911539 |
| Tablet | 8327638415 | 352250110873382 |
| Tablet | 8327636989 | 352250110927659 |
| Tablet | 8327638726 | 352250110920720 |
| Tablet | 3463792760 | 352250110859928 |
| Tablet | 3463792758 | 352250110911026 |
| Tablet | 3463792759 | 352250110892325 |
| Tablet | 3463792752 | 352250110888554 |
| Tablet | 3463792753 | 352250110859878 |
| Tablet | 3463792750 | 352250110901027 |
| Tablet | 3463792756 | 352250110859704 |
| Tablet | 3463792751 | 352250110859613 |
| Tablet | 3463792757 | 352250110922536 |
| Tablet | 3463792754 | 352250110900904 |
| Tablet | 3463792747 | 352250110888489 |
| Tablet | 3463792755 | 352250110906505 |
| Tablet | 3463792749 | 352250110940421 |
| Tablet | 3463792741 | 352250110901167 |
| Tablet | 3463792785 | 352250110906349 |
| Tablet | 3463792748 | 352250110888505 |
| Tablet | 3463792742 | 352250110961203 |
| Tablet | 3463792783 | 352250110925240 |
| Tablet | 3463792743 | 352250110901001 |
| Tablet | 3463792784 | 352250110915928 |
| Tablet | 3463792746 | 352250110891822 |
| Tablet | 3463792745 | 352250110889685 |
| Tablet | 3463792744 | 352250110859886 |
| Tablet | 3463792782 | 352250110859589 |

27

| | | |
|---|---|---|
| Tablet | 3463792781 | 352250110940462 |
| Tablet | 3463792774 | 352250110900862 |
| Tablet | 3463792780 | 352250110922684 |
| Tablet | 3463792731 | 352250110942765 |
| Tablet | 3463792775 | 352250110958225 |
| Tablet | 3463792772 | 352250110957672 |
| Tablet | 3463792773 | 352250110859514 |
| Tablet | 3463792779 | 352250110922577 |
| Tablet | 3463792778 | 352250110956781 |
| Tablet | 3463792732 | 352250110922742 |
| Tablet | 3463792777 | 352250110898215 |
| Tablet | 3463792776 | 352250110942807 |
| Tablet | 3463792052 | 352250110955742 |
| Tablet | 3463792770 | 352250110859548 |
| Tablet | 3463792733 | 352250110942039 |
| Tablet | 3463792763 | 352250110939365 |
| Tablet | 3463792771 | 352250110957607 |
| Tablet | 3463792769 | 352250110942328 |
| Tablet | 3463792761 | 352250110770331 |
| Tablet | 3463792762 | 352250110957227 |
| Tablet | 3463792764 | 352250110753477 |
| Tablet | 3463792767 | 352250110959587 |
| Tablet | 3463792768 | 352250110772063 |
| Tablet | 3463792765 | 352250110957938 |
| Tablet | 3463792766 | 352250110912602 |
| Tablet | 2816357473 | 352250111388711 |
| Tablet | 2817031031 | 352250111242546 |
| Tablet | 2817149409 | 352250111234121 |
| Tablet | 2817140117 | 352250111163700 |
| Tablet | 2816351174 | 352250111157355 |
| Tablet | 2816357635 | 352250111145996 |
| Tablet | 2816352021 | 352250111157421 |
| Tablet | 2817141408 | 352250111159161 |
| Tablet | 2816351452 | 352250111089715 |
| Tablet | 2816359257 | 352250111221557 |
| Tablet | 2816352268 | 352250111220427 |
| Tablet | 2816274921 | 352250111392093 |
| Tablet | 2816275737 | 352250111162819 |
| Tablet | 2817147545 | 352250111217902 |
| Tablet | 2816276743 | 352250111390402 |
| Tablet | 2816276985 | 352250111248253 |
| Tablet | 2817034861 | 352250111389776 |

28

| | | |
|---|---|---|
| Tablet | 2817148235 | 352250111088386 |
| Tablet | 2816271578 | 352250111159104 |
| Tablet | 2817141363 | 352250111169913 |
| Tablet | 2816277103 | 352250111158114 |
| Tablet | 2816274233 | 352250111187121 |
| Tablet | 2817031021 | 352250111223819 |
| Tablet | 2816359909 | 352250111159187 |
| Tablet | 2816352035 | 352250111157496 |
| Tablet | 2817035140 | 352250111157363 |
| Tablet | 2817149151 | 352250111230939 |
| Tablet | 2817038373 | 352250111390220 |
| Tablet | 2817033404 | 352250111219379 |
| Tablet | 2817145670 | 352250111157819 |
| Tablet | 2817141271 | 352250111368572 |
| Tablet | 2817034055 | 352250111222514 |
| Tablet | 2816274584 | 352250111222324 |
| Tablet | 2816279952 | 352250110987513 |
| Tablet | 2816271710 | 352250110987554 |
| Tablet | 2817031817 | 352250111228628 |
| Tablet | 2816357695 | 352250111145608 |
| Tablet | 2816278585 | 352250111203241 |
| Tablet | 2816277044 | 352250111272238 |
| Tablet | 2817145617 | 352250111141284 |
| Tablet | 2816277322 | 352250111121732 |
| Tablet | 2816273840 | 352250111223108 |
| Tablet | 2817036098 | 352250110987638 |
| Tablet | 2817031729 | 352250111370867 |
| Tablet | 2817031403 | 352250111214891 |
| Tablet | 2816271149 | 352250111387390 |
| Tablet | 2816271700 | 352250111217134 |
| Tablet | 2816274732 | 352250111221300 |
| Tablet | 2817147792 | 352250111222258 |
| Tablet | 3462670279 | 352250111081142 |
| Tablet | 3462672412 | 352250111071283 |
| Tablet | 3462668119 | 352250111084260 |
| Tablet | 3462675928 | 352250110977985 |
| Tablet | 3462673108 | 352250111096678 |
| Tablet | 3462672978 | 352250111084120 |
| Tablet | 3462675690 | 352250111084088 |
| Tablet | 3462679250 | 352250111082744 |
| Tablet | 3462666922 | 352250111041278 |
| Tablet | 3462677797 | 352250110978991 |

29

| | | |
|---|---|---|
| Tablet | 3462666924 | 352250111082710 |
| Tablet | 3462670928 | 352250111095530 |
| Tablet | 3462675376 | 352250111078106 |
| Tablet | 3462674643 | 352250111033440 |
| Tablet | 3462670968 | 352250111078148 |
| Tablet | 3462670253 | 352250111108598 |
| Tablet | 3462675580 | 352250111078171 |
| Tablet | 3462665581 | 352250111082421 |
| Tablet | 3462670254 | 352250111076985 |
| Tablet | 3462670252 | 352250111082785 |
| Tablet | 3462670255 | 352250111077025 |
| Tablet | 3462675229 | 352250111126145 |
| Tablet | 3462672633 | 352250111077652 |
| Tablet | 3462665666 | 352250111077561 |
| Tablet | 3462673927 | 352250110980070 |
| Tablet | 3462665665 | 352250111129503 |
| Tablet | 3462679035 | 352250111126053 |
| Tablet | 3462667640 | 352250111126756 |
| Tablet | 3462667567 | 352250111077546 |
| Tablet | 3462675796 | 352250111081308 |
| Tablet | 3462677170 | 352250111069964 |
| Tablet | 3462675873 | 352250110999112 |
| Tablet | 3462673334 | 352250111129669 |
| Tablet | 3462677654 | 352250111097221 |
| Tablet | 3462673650 | 352250110977472 |
| Tablet | 3462669379 | 352250111083189 |
| Tablet | 3462672962 | 352250111083353 |
| Tablet | 3462670504 | 352250111095514 |
| Tablet | 3462664484 | 352250111083510 |
| Tablet | 3462669375 | 352250111083577 |
| Tablet | 3462670190 | 352250111126228 |
| Tablet | 3462677220 | 352250111129719 |
| Tablet | 3462670191 | 352250111077942 |
| Tablet | 3462669848 | 352250110895989 |
| Tablet | 3462676452 | 352250111073727 |
| Tablet | 3462674995 | 352250111126541 |
| Tablet | 3462670198 | 352250111033515 |
| Tablet | 3462670199 | 352250111078270 |
| Tablet | 3462676693 | 352250111100272 |
| Tablet | 2816367519 | 352250111505447 |
| Tablet | 2816355213 | 352250111516642 |
| Tablet | 2817536915 | 352250111516907 |

30

| | | |
|---|---|---|
| Tablet | 2817531825 | 352250111133802 |
| Tablet | 2816364242 | 352250111113259 |
| Tablet | 2817533847 | 352250111489493 |
| Tablet | 2817533403 | 352250111489402 |
| Tablet | 2816367193 | 352250111103763 |
| Tablet | 2816362875 | 352250111104043 |
| Tablet | 2817532708 | 352250111511155 |
| Tablet | 2817406651 | 352250111133752 |
| Tablet | 2817403914 | 352250111133364 |
| Tablet | 2816365334 | 352250111515669 |
| Tablet | 2817405017 | 352250110983108 |
| Tablet | 2817537635 | 352250111121187 |
| Tablet | 2817536503 | 352250111513490 |
| Tablet | 2817535379 | 352250111511650 |
| Tablet | 2816360050 | 352250111497314 |
| Tablet | 2817537394 | 352250111520503 |
| Tablet | 2817536663 | 352250111511163 |
| Tablet | 2817407319 | 352250111489469 |
| Tablet | 2817405933 | 352250111042029 |
| Tablet | 2817402516 | 352250111133455 |
| Tablet | 2817538713 | 352250111505926 |
| Tablet | 2817537475 | 352250111097742 |
| Tablet | 2817533100 | 352250111501859 |
| Tablet | 2816368065 | 352250111514035 |
| Tablet | 2817536336 | 352250111505363 |
| Tablet | 2817404856 | 352250111519083 |
| Tablet | 2817406671 | 352250111506924 |
| Tablet | 2817530310 | 352250111042144 |
| Tablet | 2816362089 | 352250110980997 |
| Tablet | 2817536809 | 352250111130790 |
| Tablet | 2817534508 | 352250111133349 |
| Tablet | 2817408016 | 352250111121260 |
| Tablet | 2817402401 | 352250111069584 |
| Tablet | 2817533177 | 352250111511775 |
| Tablet | 2816352897 | 352250111133125 |
| Tablet | 2817534942 | 352250111109562 |
| Tablet | 2817533853 | 352250111133372 |
| Tablet | 2817403856 | 352250111113275 |
| Tablet | 2817403691 | 352250111134206 |
| Tablet | 2817536041 | 352250110979056 |
| Tablet | 2817533173 | 352250111133489 |
| Tablet | 2817407299 | 352250111134172 |

31

| | | |
|---|---|---|
| Tablet | 2817408663 | 352250110978611 |
| Tablet | 2817531232 | 352250111041575 |
| Tablet | 2817534065 | 352250111063363 |
| Tablet | 7138165747 | 352250110980815 |
| Tablet | 7138166516 | 352250111042011 |
| Tablet | 7138162157 | 352250110980864 |
| Tablet | 7138167289 | 352250111132887 |
| Tablet | 7138166634 | 352250111134594 |
| Tablet | 7138165468 | 352250111096017 |
| Tablet | 7138160139 | 352250111081688 |
| Tablet | 7138166437 | 352250110980922 |
| Tablet | 7138165700 | 352250111042136 |
| Tablet | 7138160981 | 352250111063926 |
| Tablet | 7138165792 | 352250111069097 |
| Tablet | 7138165791 | 352250111064767 |
| Tablet | 7138165701 | 352250110978603 |
| Tablet | 7138160782 | 352250111133745 |
| Tablet | 7138165793 | 352250111069055 |
| Tablet | 7138165713 | 352250111134347 |
| Tablet | 7138165156 | 352250111132572 |
| Tablet | 7138164661 | 352250111081282 |
| Tablet | 7138166961 | 352250111121310 |
| Tablet | 7138165797 | 352250111116187 |
| Tablet | 7138165753 | 352250111133810 |
| Tablet | 7138160106 | 352250111103607 |
| Tablet | 7138166402 | 352250111133679 |
| Tablet | 7138165754 | 352250111106188 |
| Tablet | 7138164226 | 352250111106220 |
| Tablet | 7138165712 | 352250111133158 |
| Tablet | 7138165799 | 352250111103243 |
| Tablet | 7138165756 | 352250111106147 |
| Tablet | 7138162730 | 352250111132507 |
| Tablet | 7138167540 | 352250111042110 |
| Tablet | 7138165848 | 352250111121286 |
| Tablet | 7138162731 | 352250111103540 |
| Tablet | 7138161602 | 352250111116013 |
| Tablet | 7138166946 | 352250111134537 |
| Tablet | 7138164357 | 352250111103029 |
| Tablet | 7138164113 | 352250111106303 |
| Tablet | 7138162613 | 352250111135831 |
| Tablet | 7138165735 | 352250111132499 |
| Tablet | 7138165737 | 352250111133786 |

| | | |
|---|---|---|
| Tablet | 7138165736 | 352250111114109 |
| Tablet | 7138165730 | 352250111121245 |
| Tablet | 7138165895 | 352250111134198 |
| Tablet | 7138165894 | 352250111121005 |
| Tablet | 7138165731 | 352250110982811 |
| Tablet | 7138164005 | 352250111120957 |
| Tablet | 7138165897 | 352250110983082 |
| Tablet | 7138165899 | 352250110982902 |
| Tablet | 7138166546 | 352250111114331 |
| Tablet | 7138190508 | 352250111041963 |
| Tablet | 7138194171 | 352250111064353 |
| Tablet | 7138199185 | 352250110980831 |
| Tablet | 7138195595 | 352250111042045 |
| Tablet | 7138231276 | 352250111073230 |
| Tablet | 7138199238 | 352250111068974 |
| Tablet | 7138198029 | 352250111041922 |
| Tablet | 7138195471 | 352250111115023 |
| Tablet | 7138198205 | 352250111095332 |
| Tablet | 7138197755 | 352250111064270 |
| Tablet | 7138231333 | 352250111063918 |
| Tablet | 7138192022 | 352250111053794 |
| Tablet | 7138233634 | 352250111041914 |
| Tablet | 7138195058 | 352250110982845 |
| Tablet | 7138193157 | 352250110982894 |
| Tablet | 7138192169 | 352250111064882 |
| Tablet | 7138232549 | 352250111042250 |
| Tablet | 7138197937 | 352250110983322 |
| Tablet | 7138192366 | 352250111053828 |
| Tablet | 7138190224 | 352250111042094 |
| Tablet | 7138193753 | 352250111073065 |
| Tablet | 7138191631 | 352250111063173 |
| Tablet | 7138190588 | 352250111114240 |
| Tablet | 7138192846 | 352250111064510 |
| Tablet | 7138232782 | 352250111042052 |
| Tablet | 7138192958 | 352250111133794 |
| Tablet | 7138191082 | 352250111064502 |
| Tablet | 7138231123 | 352250110980930 |
| Tablet | 7138199568 | 352250111119694 |
| Tablet | 7138198710 | 352250111120965 |
| Tablet | 7138192490 | 352250111133331 |
| Tablet | 7138192130 | 352250111093634 |
| Tablet | 7138234558 | 352250111042003 |

33

| | | |
|---|---|---|
| Tablet | 7138232558 | 352250111132945 |
| Tablet | 7138231246 | 352250111001538 |
| Tablet | 7138190498 | 352250110983231 |
| Tablet | 7138233908 | 352250111114414 |
| Tablet | 7138192457 | 352250111120940 |
| Tablet | 7138193769 | 352250110982795 |
| Tablet | 7138193867 | 352250111041930 |
| Tablet | 9362302665 | 352250111098393 |
| Tablet | 9362170779 | 352250111472242 |
| Tablet | 9362301374 | 352250111502790 |
| Tablet | 9362306384 | 352250111126376 |
| Tablet | 9362309055 | 352250111128877 |
| Tablet | 9362308682 | 352250111074642 |
| Tablet | 9362304036 | 352250111516105 |
| Tablet | 9362309652 | 352250111483033 |
| Tablet | 9362308441 | 352250111515727 |
| Tablet | 9362304553 | 352250111097676 |
| Tablet | 9362302571 | 352250111125378 |
| Tablet | 9362309206 | 352250111510603 |
| Tablet | 9362307504 | 352250111124975 |
| Tablet | 9362302855 | 352250111128943 |
| Tablet | 9362170773 | 352250111127804 |
| Tablet | 9362309167 | 352250111000951 |
| Tablet | 9362308392 | 352250111124934 |
| Tablet | 9362302570 | 352250111129628 |
| Tablet | 9362302004 | 352250111502774 |
| Tablet | 9362307618 | 352250111507328 |
| Tablet | 9362306409 | 352250111128935 |
| Tablet | 9362302484 | 352250111128885 |
| Tablet | 9362302409 | 352250111013012 |
| Tablet | 9362301198 | 352250111482696 |
| Tablet | 9362170558 | 352250111125824 |
| Tablet | 9362309757 | 352250111474834 |
| Tablet | 9362307975 | 352250111515487 |
| Tablet | 9362170678 | 352250111109653 |
| Tablet | 9362307898 | 352250111511023 |
| Tablet | 9362306845 | 352250111129321 |
| Tablet | 9362170362 | 352250111511569 |
| Tablet | 9362304702 | 352250111509779 |
| Tablet | 9362302198 | 352250111471053 |
| Tablet | 9362170680 | 352250111507377 |
| Tablet | 9362170429 | 352250111512849 |

| | | |
|---|---|---|
| Tablet | 9362309700 | 352250111472036 |
| Tablet | 9362306631 | 352250111502741 |
| Tablet | 9362301229 | 352250111516162 |
| Tablet | 9362309141 | 352250111483256 |
| Tablet | 9362306318 | 352250111510629 |
| Tablet | 9362307042 | 352250111472002 |
| Tablet | 9362308530 | 352250111510793 |
| Tablet | 9362307482 | 352250111516089 |
| Tablet | 9362304095 | 352250111511767 |
| Tablet | 9365230202 | 352250111132614 |
| Tablet | 9365230762 | 352250111133398 |
| Tablet | 9365370787 | 352250111133497 |
| Tablet | 9365377978 | 352250111132697 |
| Tablet | 9365371912 | 352250111041534 |
| Tablet | 9365374710 | 352250110980625 |
| Tablet | 9365379915 | 352250111134339 |
| Tablet | 9365379647 | 352250111132788 |
| Tablet | 9365377745 | 352250111134677 |
| Tablet | 9365374988 | 352250111133083 |
| Tablet | 9365375245 | 352250111063546 |
| Tablet | 9365379920 | 352250111107988 |
| Tablet | 9365379403 | 352250110980641 |
| Tablet | 9365379760 | 352250111104282 |
| Tablet | 9365379521 | 352250111042078 |
| Tablet | 9365370434 | 352250111063439 |
| Tablet | 9365379853 | 352250111063520 |
| Tablet | 9365379813 | 352250111104274 |
| Tablet | 9365375009 | 352250111133604 |
| Tablet | 9365373946 | 352250111073255 |
| Tablet | 9365376069 | 352250110980948 |
| Tablet | 9365379652 | 352250111131947 |
| Tablet | 9365379453 | 352250111104225 |
| Tablet | 9365379337 | 352250111104290 |
| Tablet | 9365371216 | 352250111132820 |
| Tablet | 9365379748 | 352250111041799 |
| Tablet | 9365379571 | 352250111118035 |
| Tablet | 9365376340 | 352250111113150 |
| Tablet | 9365374138 | 352250111041815 |
| Tablet | 9365379943 | 352250111134651 |
| Tablet | 9365378139 | 352250111134313 |
| Tablet | 9365377003 | 352250111041948 |
| Tablet | 9365230159 | 352250111041781 |

| | | |
|---|---|---|
| Tablet | 9365379740 | 352250111134511 |
| Tablet | 9365370339 | 352250111133570 |
| Tablet | 9365379912 | 352250111132770 |
| Tablet | 9365378868 | 352250110981490 |
| Tablet | 9365375951 | 352250110981482 |
| Tablet | 9365371820 | 352250111132754 |
| Tablet | 9365374386 | 352250111131061 |
| Tablet | 9365379673 | 352250111098161 |
| Tablet | 9365379634 | 352250111132812 |
| Tablet | 9365378226 | 352250110980609 |
| Tablet | 9365230349 | 352250111109661 |
| Tablet | 9365230745 | 352250111119074 |
| Tablet | 7138057964 | 352250110929549 |
| Tablet | 7138057401 | 352250110971012 |
| Tablet | 7138057698 | 352250110968869 |
| Tablet | 7138058294 | 352250110931610 |
| Tablet | 4097390524 | 352250110932303 |
| Tablet | 4097394557 | 352250110966756 |
| Tablet | 4097390024 | 352250110972895 |
| Tablet | 4097394538 | 352250110992489 |
| Tablet | 4097394350 | 352250111110131 |
| Tablet | 4097393797 | 352250111137894 |
| Tablet | 4097394102 | 352250111138629 |
| Tablet | 4097394447 | 352250111140716 |
| Tablet | 4097394898 | 352250111151267 |
| Tablet | 4097394152 | 352250111151838 |
| Tablet | 4097395015 | 352250111151853 |
| Tablet | 4097393856 | 352250111158270 |
| Tablet | 4097395132 | 352250111158429 |
| Tablet | 4097395370 | 352250111169004 |
| Tablet | 4097393683 | 352250111171091 |
| Tablet | 4097395307 | 352250111174988 |
| Tablet | 4097393925 | 352250111176942 |
| Tablet | 4097394197 | 352250111189127 |
| Tablet | 4097394590 | 352250111189671 |
| Tablet | 4097394218 | 352250111194184 |
| Tablet | 4097395338 | 352250111202433 |
| Tablet | 4097390912 | 352250111223892 |
| Tablet | 4097393903 | 352250111223900 |
| Tablet | 4097390425 | 352250111248808 |
| Tablet | 4097394676 | 352250111257676 |
| Tablet | 3467326350 | 352250110952269 |

| | | |
|---|---|---|
| Tablet | 3467326352 | 352250110952350 |
| Tablet | 3467326361 | 352250111035460 |
| Tablet | 7138057220 | 352250111087693 |
| Tablet | 3467326357 | 352250111088485 |
| Tablet | 3467326360 | 352250111138900 |
| Tablet | 3467326347 | 352250111143538 |
| Tablet | 3467326355 | 352250111151309 |
| Tablet | 3467326348 | 352250111171075 |
| Tablet | 3467326358 | 352250111201658 |
| Tablet | 3467326362 | 352250111210592 |
| Tablet | 3467326349 | 352250111243346 |
| Tablet | 3467326345 | 352250111265869 |

Tablets (Austin)

| | Mobile Number | IMEI Number |
|---|---|---|
| Tablet | 5125575038 | 352250111058447 |
| Tablet | 5125574388 | 352250111058025 |
| Tablet | 5125574824 | 352250111104456 |
| Tablet | 5125574029 | 352250110967150 |
| Tablet | 5125570788 | 352250111246372 |
| Tablet | 5125573617 | 352250111228024 |
| Tablet | 5125573736 | 352250111089087 |
| Tablet | 5125576291 | 352250111202466 |
| Tablet | 5125574196 | 352250110970477 |
| Tablet | 5125571442 | 352250111177288 |
| Tablet | 5125571489 | 352250111189119 |
| Tablet | 5125571009 | 352250111267600 |
| Tablet | 5125574998 | 352250111177361 |
| Tablet | 5125570712 | 352250111176157 |
| Tablet | 5125571845 | 352250111261611 |
| Tablet | 5125571569 | 352250111177379 |
| Tablet | 5125571800 | 352250111140583 |
| Tablet | 5125574717 | 352250111245879 |
| Tablet | 5125571209 | 352250111155037 |
| Tablet | 5125573505 | 352250111189077 |
| Tablet | 5125572341 | 352250111248980 |
| Tablet | 5125575571 | 352250111176264 |
| Tablet | 5125570682 | 352250110951154 |
| Tablet | 5125573153 | 352250111228727 |
| Tablet | 5125571297 | 352250111188764 |
| Tablet | 5125572266 | 352250111239708 |

| Tablet | 5125574840 | 352250111197955 |
|--------|-----------|-----------------|
| Tablet | 5125573799 | 352250111169038 |
| Tablet | 5125575736 | 352250111151648 |
| Tablet | 5125573839 | 352250111270240 |
| Tablet | 5125574097 | 352250111239666 |
| Tablet | 5125575384 | 352250111248881 |
| Tablet | 5125573083 | 352250111189622 |
| Tablet | 5125575388 | 352250111183658 |
| Tablet | 5125574293 | 352250111183120 |
| Tablet | 5125574694 | 352250111261124 |
| Tablet | 5125575864 | 352250111239112 |
| Tablet | 5125574411 | 352250111087172 |
| Tablet | 5125575302 | 352250110939944 |
| Tablet | 5125574533 | 352250110858417 |
| Tablet | 5125574498 | 352250110951246 |
| Tablet | 5125574613 | 352250111270323 |
| Tablet | 5125573523 | 352250111170895 |
| Tablet | 5125573766 | 352250111183443 |
| Tablet | 5125570777 | 352250110949372 |
| Tablet | 5125572875 | 352250110954414 |
| Tablet | 5125571624 | 352250111164658 |
| Tablet | 5125570617 | 352250111087149 |
| Tablet | 5125574617 | 352250111174434 |
| Tablet | 5126670557 | 352250110992026 |
| Tablet | 5127499144 | 352250111057647 |
| Tablet | 5126670754 | 352250111261546 |
| Tablet | 5126670352 | 352250111246752 |
| Tablet | 5126674437 | 352250111157736 |
| Tablet | 5126674036 | 352250111272444 |
| Tablet | 5126678258 | 352250111176983 |
| Tablet | 5126678732 | 352250111177197 |
| Tablet | 5126670095 | 352250111057480 |
| Tablet | 5127499094 | 352250111164054 |
| Tablet | 5126674574 | 352250111164013 |
| Tablet | 5127499250 | 352250111138579 |
| Tablet | 5126678050 | 352250111157694 |
| Tablet | 5126674841 | 352250111050055 |
| Tablet | 5126678927 | 352250111198326 |
| Tablet | 5126678009 | 352250111189226 |
| Tablet | 5126674367 | 352250111107335 |
| Tablet | 5126678622 | 352250111140641 |
| Tablet | 5126678067 | 352250111183757 |

38

| Tablet | 5126678341 | 352250111198847 |
|--------|------------|-----------------|
| Tablet | 5126678146 | 352250111158049 |
| Tablet | 5126678461 | 352250111198185 |
| Tablet | 5127499321 | 352250111158122 |
| Tablet | 5126670018 | 352250111140120 |
| Tablet | 5127499958 | 352250110929234 |
| Tablet | 5126670256 | 352250110948945 |
| Tablet | 5127499557 | 352250111189184 |
| Tablet | 5127499312 | 352250111158940 |
| Tablet | 5126670853 | 352250111164047 |
| Tablet | 5126674699 | 352250111189465 |
| Tablet | 5126674179 | 352250111182692 |
| Tablet | 5126678977 | 352250111272287 |
| Tablet | 5126678899 | 352250111243460 |
| Tablet | 5126678733 | 352250111175159 |
| Tablet | 5126674773 | 352250111054347 |
| Tablet | 5126678234 | 352250111057704 |
| Tablet | 5127499230 | 352250111106832 |
| Tablet | 5126678672 | 352250111201633 |
| Tablet | 5126678075 | 352250111173618 |
| Tablet | 5127499827 | 352250111173642 |
| Tablet | 5126670069 | 352250110931453 |
| Tablet | 5127499422 | 352250111201690 |
| Tablet | 5126670389 | 352250111154527 |
| Tablet | 5126670142 | 352250110965915 |
| Tablet | 5127499549 | 352250111149337 |
| Tablet | 5126670500 | 352250111087271 |
| Tablet | 5126674428 | 352250111144809 |
| Tablet | 5126674663 | 352250111243411 |
| Tablet | 5126678425 | 352250110929887 |
| Tablet | 7138053640 | 352250110973034 |
| Tablet | 7138054019 | 352250111034042 |

Tablets (San Antonio):

| | Mobile Number | IMEI Number |
|--------|------------|-----------------|
| TABLET | 8327781815 | 352250111058306 |
| TABLET | 8327781089 | 352250111252487 |
| TABLET | 8327781594 | 352250110968851 |
| TABLET | 8327781091 | 352250110956278 |
| TABLET | 2109065041 | 352250111113382 |
| TABLET | 2109064995 | 352250110980799 |

| | | |
|---|---|---|
| TABLET | 2109065049 | 352250111105495 |
| TABLET | 2109065040 | 352250111114265 |
| TABLET | 2109064994 | 352250111103797 |
| TABLET | 2109065048 | 352250111092420 |
| TABLET | 2109064993 | 352250110980757 |
| TABLET | 2109065047 | 352250111103847 |
| TABLET | 2109065046 | 352250111041880 |
| TABLET | 2109064990 | 352250111134628 |
| TABLET | 2109064991 | 352250111133562 |
| TABLET | 2109064997 | 352250111103839 |
| TABLET | 2109065009 | 352250111132903 |
| TABLET | 2109065008 | 352250111093733 |
| TABLET | 2109064996 | 352250111053745 |
| TABLET | 2109065039 | 352250111134685 |
| TABLET | 2109065031 | 352250110980708 |
| TABLET | 2109065030 | 352250111133026 |
| TABLET | 2109065036 | 352250111095043 |
| TABLET | 2109065038 | 352250111132853 |
| TABLET | 2109065037 | 352250111069071 |
| TABLET | 2109065033 | 352250111041732 |
| TABLET | 2109065035 | 352250111121096 |
| TABLET | 2109065034 | 352250111134420 |
| TABLET | 2109064988 | 352250111120742 |
| TABLET | 2109065032 | 352250111112715 |
| TABLET | 2109065020 | 352250111069519 |
| TABLET | 2109064989 | 352250111132713 |
| TABLET | 2109065064 | 352250111120981 |
| TABLET | 2109065060 | 352250111134644 |
| TABLET | 2109065063 | 352250110980674 |
| TABLET | 2109065061 | 352250111113739 |
| TABLET | 2109065025 | 352250110981458 |
| TABLET | 2109065028 | 352250111053497 |
| TABLET | 2109065027 | 352250111113887 |
| TABLET | 2109065026 | 352250111123332 |
| TABLET | 2109064978 | 352250111041831 |
| TABLET | 2109065029 | 352250111127143 |
| TABLET | 2109065024 | 352250111134255 |
| TABLET | 2109064979 | 352250111063157 |
| TABLET | 2109065014 | 352250111133067 |
| TABLET | 2109065058 | 352250111133513 |
| TABLET | 2109065017 | 352250111122250 |
| TABLET | 2109065016 | 352250111132622 |

40

| | | |
|---|---|---|
| TABLET | 2109065013 | 352250111134529 |
| TABLET | 2109065057 | 352250111132879 |
| TABLET | 2109065056 | 352250111133018 |
| TABLET | 2109065018 | 352250111134636 |
| TABLET | 2109065019 | 352250111041971 |
| TABLET | 2109065083 | 352250110983074 |
| TABLET | 2109065080 | 352250111133422 |
| TABLET | 2109065204 | 352250111119496 |
| TABLET | 2109065203 | 352250111113945 |
| TABLET | 2109065367 | 352250111113408 |
| TABLET | 2109065201 | 352250111105487 |
| TABLET | 2109065289 | 352250111093584 |
| TABLET | 2109065202 | 352250111093527 |
| TABLET | 2109065288 | 352250111120999 |
| TABLET | 2109065320 | 352250110982761 |
| TABLET | 2109065120 | 352250111097916 |
| TABLET | 2109065329 | 352250111119231 |
| TABLET | 2109065207 | 352250111131723 |
| TABLET | 2109065073 | 352250110982779 |
| TABLET | 2109065152 | 352250111112962 |
| TABLET | 2109065075 | 352250111121021 |
| TABLET | 2109065074 | 352250111093576 |
| TABLET | 2109065070 | 352250111131715 |
| TABLET | 2109065071 | 352250111096074 |
| TABLET | 2109065072 | 352250111121047 |
| TABLET | 2109065115 | 352250111121302 |
| TABLET | 2109065279 | 352250110982753 |
| TABLET | 2109065157 | 352250111095886 |
| TABLET | 2109065076 | 352250111114406 |
| TABLET | 2109065155 | 352250111093642 |
| TABLET | 2109065153 | 352250111114323 |
| TABLET | 2109065119 | 352250111134362 |
| TABLET | 2109065316 | 352250111132911 |
| TABLET | 2109065387 | 352250111096181 |
| TABLET | 2109065344 | 352250110982969 |
| TABLET | 2109065342 | 352250111097734 |
| TABLET | 2109065343 | 352250110983066 |
| TABLET | 2109065143 | 352250111105453 |
| TABLET | 2109065108 | 352250111121054 |
| TABLET | 2109065340 | 352250110980690 |
| TABLET | 2109065097 | 352250111130121 |
| TABLET | 2109065170 | 352250110982928 |

41

| | | |
|---|---|---|
| TABLET | 2109065295 | 352250110982746 |
| TABLET | 2109065136 | 352250111131285 |
| TABLET | 2109065379 | 352250111084005 |
| TABLET | 2109065378 | 352250111105537 |
| TABLET | 2109065299 | 352250111104373 |
| TABLET | 2109065377 | 352250110983041 |
| TABLET | 2109065133 | 352250111082512 |
| TABLET | 2109065177 | 352250110982704 |
| TABLET | 2109065132 | 352250111105529 |
| TABLET | 2109065210 | 352250110979858 |
| TABLET | 2109065339 | 352250110982985 |
| TABLET | 2109065338 | 352250111129859 |
| TABLET | 2109065886 | 352250111041708 |
| TABLET | 2109065885 | 352250111120064 |
| TABLET | 2109065883 | 352250111097650 |
| TABLET | 2109065922 | 352250111109158 |
| TABLET | 2109065884 | 352250111098070 |
| TABLET | 2109065887 | 352250111098062 |
| TABLET | 2109065921 | 352250111037839 |
| TABLET | 2109065920 | 352250111118738 |
| TABLET | 2109065874 | 352250111042227 |
| TABLET | 2109065875 | 352250111118977 |
| TABLET | 2109065872 | 352250111107855 |
| TABLET | 2109065873 | 352250111064916 |
| TABLET | 2109065838 | 352250111041559 |
| TABLET | 2109065916 | 352250111119090 |
| TABLET | 2109065915 | 352250111041419 |
| TABLET | 2109065871 | 352250111041567 |
| TABLET | 2109065870 | 352250111108770 |
| TABLET | 2109065836 | 352250111063496 |
| TABLET | 2109065879 | 352250111064825 |
| TABLET | 2109065878 | 352250111064080 |
| TABLET | 2109065837 | 352250111073099 |
| TABLET | 2109065864 | 352250111064981 |
| TABLET | 2109065918 | 352250111063108 |
| TABLET | 2109065917 | 352250110980880 |
| TABLET | 2109065877 | 352250110980849 |
| TABLET | 2109065876 | 352250111042037 |
| TABLET | 2109065860 | 352250111131863 |
| TABLET | 2109065863 | 352250111079591 |
| TABLET | 2109065862 | 352250111053661 |
| TABLET | 2109065861 | 352250111131806 |

42

| | | |
|---|---|---|
| TABLET | 2109065869 | 352250111108747 |
| TABLET | 2109065904 | 352250111064569 |
| TABLET | 2109065903 | 352250111056284 |
| TABLET | 2109065902 | 352250111041484 |
| TABLET | 2109065865 | 352250111097932 |
| TABLET | 2109065908 | 352250111041674 |
| TABLET | 2109065907 | 352250111080979 |
| TABLET | 2109065901 | 352250111074667 |
| TABLET | 2109065853 | 352250111076704 |
| TABLET | 2109065906 | 352250110981870 |
| TABLET | 2109065897 | 352250111076753 |
| TABLET | 2109065896 | 352250111101882 |
| TABLET | 2109065858 | 352250111130063 |
| TABLET | 2109065894 | 352250111097361 |
| TABLET | 2109065893 | 352250111097445 |
| TABLET | 2109065859 | 352250110981854 |
| TABLET | 2109065854 | 352250111078544 |
| TABLET | 2109065898 | 352250111100157 |
| TABLET | 2109065899 | 352250111102070 |
| TABLET | 2109066131 | 352250111104191 |
| TABLET | 2109066372 | 352250111121070 |
| TABLET | 2109066373 | 352250111093659 |
| TABLET | 2109066052 | 352250111105479 |
| TABLET | 2109066053 | 352250111062993 |
| TABLET | 2109066051 | 352250111114232 |
| TABLET | 2109066210 | 352250111119181 |
| TABLET | 2109066099 | 352250111094319 |
| TABLET | 2109066133 | 352250110980823 |
| TABLET | 2109066011 | 352250110981151 |
| TABLET | 2109065927 | 352250111105677 |
| TABLET | 2109066132 | 352250111064239 |
| TABLET | 2109065924 | 352250111053638 |
| TABLET | 2109065926 | 352250111119744 |
| TABLET | 2109065925 | 352250111122276 |
| TABLET | 2109065923 | 352250111064247 |
| TABLET | 2109066081 | 352250111121088 |
| TABLET | 2109066080 | 352250111116179 |
| TABLET | 2109065995 | 352250111064197 |
| TABLET | 2109065994 | 352250110982688 |
| TABLET | 2109065993 | 352250111113127 |
| TABLET | 2109066001 | 352250111104092 |
| TABLET | 2109066002 | 352250111132721 |

43

| | | |
|---|---|---|
| TABLET | 2109066075 | 352250111132671 |
| TABLET | 2109066209 | 352250110982696 |
| TABLET | 2109066076 | 352250111113218 |
| TABLET | 2109066073 | 352250111112764 |
| TABLET | 2109066350 | 352250111120155 |
| TABLET | 2109066074 | 352250110982829 |
| TABLET | 2109066114 | 352250111103748 |
| TABLET | 2109066115 | 352250111112731 |
| TABLET | 2109066112 | 352250110980633 |
| TABLET | 2109066278 | 352250111114281 |
| TABLET | 2109066113 | 352250111126897 |
| TABLET | 2109066078 | 352250111121211 |
| TABLET | 2109066142 | 352250111093469 |
| TABLET | 2109066141 | 352250111132655 |
| TABLET | 2109066111 | 352250110980682 |
| TABLET | 2109066110 | 352250111098245 |
| TABLET | 2109066104 | 352250111113390 |
| TABLET | 2109066348 | 352250111041757 |
| TABLET | 2109066106 | 352250111109273 |
| TABLET | 2109066105 | 352250111121237 |
| TABLET | 2109066100 | 352250111093519 |
| TABLET | 2109066101 | 352250111132994 |
| TABLET | 2109066108 | 352250111132960 |
| TABLET | 2109066109 | 352250110980898 |
| TABLET | 2109066143 | 352250111131319 |
| TABLET | 2109066349 | 352250111132986 |
| Tablet | 8327786708 | 352250110971731 |
| Tablet | 8327786109 | 352250111050253 |
| Tablet | 8327781831 | 352250111251232 |
| Tablet | 8327781973 | 352250111048299 |
| Tablet | 8327786745 | 352250110950537 |
| Tablet | 8327786156 | 352250111260233 |
| Tablet | 8327786430 | 352250111161415 |
| Tablet | 8327786641 | 352250111167388 |
| Tablet | 8327786640 | 352250110951022 |
| Tablet | 8327786052 | 352250110929648 |
| Tablet | 8327786053 | 352250111138421 |
| Tablet | 8327786070 | 352250111213752 |

## Schedule 1.1(e) to Asset Purchase Agreement

### Telephone and fax numbers, domain names, and trade names

Following numbers, to the extent owned by Seller:

| Number: | Queue: | Extension SA: | Name: |
|---|---|---|---|
| 2102222222 | San Antonio Main | 8667 | Kevin Duray |
| 2104615460 | SA SafeRide | 8666 | John Bouloubasis |
| 2104615465 | VIA Express Dispatchers | 8637 | Randy Cardenas |
| 2106460235 | Special Accounts SA | 8636 | Accounts Receivable |
| 2106508603 | VIA Special Accounts | 8634 | Cashiers |
| 2106508615 | MOD SA | 8631 | Mario Robledo |
| 2106508620 | SA Dispatch | 8623 | Sal Zuniga |
| 2106508627 | SA Dispatch | 8621 | Bill Kellogg |
| 2106555465 | VIA LINK | 8611 | Cynthia Velez |
| 2106666666 | VIA Express Customers | 8601 | Andrew Rocha |
| 2108268294 | Towncar SA | 8626 | SA Conference Room |
| 5124347713 | MOD Colombia | **Extension Austin** | **Name:** |
| 5124347756 | Austin SafeRide | 7883 | Felipe Gonzalez |
| 5124347772 | Austin Dispatch | 7775 | Julia Garcia |
| 5124347773 | Austin Dispatch | 7760 | John Bouloubasis |
| 5124347777 | Austin Special Accounts | 7733 | Scarlet Mccarther |
| 5124529999 | Austin Main Line | 7724 | Austin Office |
| 7132230303 | MSP | 7720 | Lauren Smith |
| 7132244445 | Houston Delivery | 7716 | Yvonne Rigolo |
| 7132252666 | Fiesta Taxi | 7716 | Claims |
| 7132361111 | Houston Main Line | 7714 | Austin Main Office |
| | | **Extension Houston:** | **Name:** |
| 7132361122 | Houston | 5913 | Service Writer |
| 7132368755 | Houston Dispatch | 5904 | Melinda Malek |
| 7132368877 | Houston Towncar | 5903 | Chris Aguirre |
| 7132369400 | Fiesta Dispatch | 5902 | Ozzy Gonzalez |
| 7132369401 | Fiesta Taxi Dispatch | 5885 | Paula Cooper |
| 7132369402 | Fiesta Dispatch | 5870 | Susan Paschal |
| 7134285712 | Houston Dispatch | 5866 | Manuel Huaman |
| 7134285714 | Houston Conference room | 5865 | Christi Bernard |
| 7134285789 | Houston Logisticare | 5836 | Melissa Mcghee |
| 7134285828 | Customer call driver (app) | 5832 | Julia Saldana |
| 7134285844 | Houston accounts | 5830 | Don Helmer |
| 7134285846 | Houston Dispatch | | |

46

| | | | |
|---|---|---|---|
| 7134285860 | Metro Starters | 5824 | Cashier |
| 7134285883 | Metro Starters | 5823 | Cashier |
| 7134285884 | Metro Starters | 5815 | Nick Plaznich |
| 7134285888 | MSP Spanish | 5811 | Francis Valeriano |
| 7134285999 | Metro | 5810 | Lobby |
| 7136990000 | United | 5809 | Rosario Harter |
| 7137378423 | Houston Townecar | 5805 | Customer Service/Safety |
| 9563295017 | Micro Mcallen Dispatch | 5766 | Yaling Zhang |
| 9563295018 | Micro Mcallen CS | 5763 | Rose Estrada |
| 8325531710 | Direct Driver Connect (app) | 5756 | Lobby Rose |
| 5124441010 | 10/10 Taxi | 5753 | Jessica Hubbard |
| 7134285738 | Houston Special Accounts | 5751 | Jeanette Johnson |
| | | 5745 | Lisseth Deltoro |
| | | 5731 | Danny Davis |
| | | 5729 | Lobby francis |
| | | 5728 | Claims Intake |
| | | 5722 | Ana Marie Munoz |
| | | 5721 | Kayla Ruiz |
| | | 5720 | Pete Arzola |
| | | 5717 | Jacob Garza |
| | | 5716 | Ericka Zamarripa |
| | | 5714 | Houston Conference Room |
| | | 5705 | Pamela Jefferson |
| | | 5704 | Brenda Hagger |
| | | 5702 | Mike Spears |
| | | 5701 | Pete Arzola |

The following trade names: Yellow Cab (owned by Texas Taxi), Greater Houston Transportation Company, GHTC, United Cab, Fiesta Cab Company, Fiesta Cab, Texas Fiesta, Yellow Cab Paratransit Services, Eagle Executive Transportation Services, Eagle WAV, Hail A Cab App, Cab Administrative Services.

Fax numbers, domain names and URLs used by Sellers in connection with the Business.

**Schedule 3.5 to Asset Purchase Agreement**

**Assumed Contracts**

None, other than GHTC's and FCC's obligation to transfer title to Vehicles upon the full satisfaction of promissory notes issued by Seller's drivers.

## Schedule 3.7 to Asset Purchase Agreement

## Compliance with Laws and Governmental Authorizations

City permit and self-insurance certificates held by each of GHTC and FCC may be affected by the bankruptcy filing.

49

<u>**Schedule 3.8 to Asset Purchase Agreement**</u>

<u>**Legal Proceedings**</u>

List of Legal Proceedings against GHTC is attached.

## ATTACHMENT SOFA #7

| Matter Name | Plaintiff(s) | Court | Cause # | ENTITY INVOLVED |
|---|---|---|---|---|
| SUTTON, Derrick/LINDSEY, June v. Greater Houston Transportation Company and AADAN, Mark A. | Sutton, Derrick Lindsey, June | Harris Co. Court at Law No. 2 | 1110627 | Greater Houston Transportation Company |
| WARD, Debsymin v. Edward Williams and Greater Houston Transportation Company | Ward, Debsymin | Harris Co. Court at Law No. 3 | 1116979 | Greater Houston Transportation Company |
| MORRIS, Shirley v. Greater Houston Transportation Company and AADAN, Mark A. | Morris, Shirley | Harris Co. Court at Law No. 2 | 1126060 | Greater Houston Transportation Company |
| ABERIN, Zainul v. Greater Houston Transportation Company | Aberin, Zainul | Harris Co. Court at Law No. 1 | 1140369 | Greater Houston Transportation Company |
| ACCC Insurance Company v Greater Houston Transportation Company dba United Cab Company & CESAR LUIS ESCOBAR | ACCC Insurance Company | Harris Co. Court at Law No. 4 | 1142853 | Greater Houston Transportation Company |
| PHAM, Hong v. Greater Houston Transportation Company & Rana Iqbal | | Harris Co. Court at Law No. 4 | 1144791 | Greater Houston Transportation Company |
| MORALES, L, Felipe, et al v. Greater Houston Transportation Company, Cab Admin Services, Inc. dba YC Company of Houston & AROIJE, Leticia Niente | Morales, Felipe; Morales, Uliloo, a/n/f of Alexander | Harris Co. Court at Law No. 2 | 1148554 | Greater Houston Transportation Company |
| BROCK, Nancy v.Greater Houston Transportation Company dba aka YC Company and/or YC & Mohne Frederica Clemons | Brock, Nancy | Harris Co. Court at Law No. 1 | 1150477 | Greater Houston Transportation Company |
| CENTRAL Mutual Ind Co & Charlie Helms, Jr. v. Greater Houston Transportation Company dba YC | Central Mutual Insurance Company | Harris Co. Court at Law No. 3 | 1154856 | Greater Houston Transportation Company |
| ALLSTATE Fire & Casualty Insurance Company, et al v. Greater Houston Transportation Company dba Yellow Cab | Allstate Fire & Casualty Insurance Company | Harris Co. Court at Law No. 4 | 1155225 | Greater Houston Transportation Company |
| BEDIFORD, Tardshy v Greater Houston Transportation Company | Bediford, Tardshy | Harris Co. Court at Law No. 3 | 1155439 | Greater Houston Transportation Company |
| AUTO CLUB County Mutual Ins. Co. v. Greater Houston Transportation Company, & Rene R. Barros | Auto Club County Mutual Insurance Ins. Co. | Harris Co. Court at Law No. 3 | 1155600 | Greater Houston Transportation Company |
| TAYLOR, Quintin and COLLINS, Ardantha v. Greater Houston Transportation Company dba YC Antantha | TAYLOR, Quintin and COLLINS, Ardantha | 190th Civil District Court - Harris County | 201856270 | Greater Houston Transportation Company |
| DE LA GARZA, Sarah v Greater Houston Transportation Company dba YC & NAZA, Ahmad | DE LA GARZA, Sarah | 113th Civil District Court - Harris County | 2015397113 | Greater Houston Transportation Company |
| HARRISON, Robin F. v HALL, James A. & Greater Houston Transportation Company dba YC | HARRISON, Robin F. | 215th Civil District Court - Harris County | 201977503 | Greater Houston Transportation Company |
| Alverez, Xenia v SAINT GINAT | Alverez, Xenia | Justice Court, Harris County, Precinct 1, Place 3 | 181220496967 | Greater Houston Transportation Company |
| GEICO-TAYLOR, LASHAMECA v Pierre Nizongue & Greater Houston Transportation Company | GEICO-TAYLOR, LASHAMECA | Justice Court, Harris Co. - Precinct 5, Place 1 | 195100200264 | Greater Houston Transportation Company |

| | Amica Mutual Insurance Company | | | |
|---|---|---|---|---|
| AMICA Mutual Insurance Company as Subrogee of Patrick Moore v Greater Houston Transportation Company & Mohamedi Malick Barry | | Justice Court, Harris County, Precinct 1, Place 1 | 2021102229621 | Greater Houston Transportation Company |
| ALLSTATE Fire & Casualty Insurance Company as Subrogee of Gwen Reed v Greater Houston Transportation Company & Sharlane Coleman | Allstate Fire and Casualty Insurance Company as Subrogee of Aleksandr Niznam | Justice Court, Harris County, Precinct 1, Place 1 | 2021107228662 | Greater Houston Transportation Company |
| JENNINGS, Richard v Greater Houston Transportation Company ; Alema Tango Bruce & Harry Conrad Cone | Jennings, Richard | Justice Court, Harris County, Precinct 1, Place 1 | 21Dx20021B896 | Greater Houston Transportation Company |
| GLISSY, Gary v Greater Houston Transportation Company & Alene Media Kebede | Glissy, Gary | Justice Court, Harris County, Precinct 1, Place 3 | 2013200195128 | Greater Houston Transportation Company |
| ALLSTATE County Mutual Insurance Company as Subrogee of Patricia Ramirez v Greater Houston Transportation Company & Benjamin Intemee | Allstate County Mutual Insurance Company | Justice Court, Harris County, Precinct 5, Place 4 | 2051003337870 | Greater Houston Transportation Company |
| WILLIAMS, Sophronia v Greater Houston Transportation Company & Shantata Denise Hanson | Williams, Sophronia | Justice Court, Harris County, Precinct 5, Place 2 | 2152000163223 | Greater Houston Transportation Company |
| AMWINS Specialty Auto, Inc. dba Old American County Mutual as Subrogee of Maria Hernandez v Greater San Antonio Transportation Company & Luis R. Borrego Mas | Amwins Specialty Auto, Inc. | JP Court - Bexar Co. Precinct 1, Place 2 | 1202000181 | Greater San Antonio Transportation Company |
| STATE FARM v Greater San Antonio Transportation Company dba YC Steele v. Greater Houston Transportation Company/Greater Austin Transportation Company/GDS, Inc. | State Farm | JP Court - Bexar Co. Precinct 1, Place 2 | 1259R00219 | Greater San Antonio Transportation Company |
| PEREZ/PEREZ v. Greater Houston Transportation Company dba YC/DELMONDE NINREXA | Perez, Diane & Ricky | 234th Civil District Court - Harris County | 2016-32457 | Greater Houston Transportation Company |
| VERA, Raymond v. Greater Houston Transportation Company - JAMES HALL | Vera, Raymond | 80th Civil District Court - Harris County | 2016-67400 | Greater Houston Transportation Company |
| ALARCON v. Greater San Antonio Transportation Company and Lemness | ALARCON, YOLANDA | 408th Judicial District Court - Bexar Co. | 2016C19753 | Greater San Antonio Transportation Company |
| DAVIS, Destiny v. Greater Houston Transportation: | Davis, Destiny | 234th Civil District Court - Harris County | 2017-44096 | Greater Houston Transportation Company |
| SANCHEZ, Ruben v. Greater Houston Transportation Company & TIRRELL TURNER | Sanchez, Ruben | 270th Civil District Court - Harris County | 2017-78833 | Greater Houston Transportation Company |
| LAYMOND, James v. Mansoor Ahmad and Greater Houston Transportation Company | Laymond, James | 270th Civil District Court - Harris County | 2017-75566 | Greater Houston Transportation Company |

Case 21-60066   Document 3   Filed in TXSB on 07/19/21   Page 21 of 31

| Case | Plaintiff | Court | Case Number | Defendant |
|---|---|---|---|---|
| ESPARZA, Mary & MARTINEZ-DUENAS, Zulma v. Greater San Antonio Transportation Company & GOTION, Rebal | Esparza, Mary Duenas, Zulma | 407th Judicial District Court | 2017-CI-17286 | Greater San Antonio Transportation Company |
| NEWKIRK, Annaleigh CRUZ et al. v. HASHIM, Taz, et al | NEWKIRK, Annaleigh CRUZ | 166th Civil District Court - Bexar Co. | 2017-CI-23367 | Greater San Antonio Transportation Company |
| GLORIA, Stephanie v. XANARKEH and Greater San Antonio Transportation Company | GLORIA, Stephanie | Bexar Co. Court at Law No. 10 | 2017-CI-04356 | Greater San Antonio Transportation Company |
| SALDIVAR, Nancy L v MAXWELL, Tredalis & Greater Houston Transportation Company | SALDIVAR, Nancy L | 295th Civil District Court - Harris County | 2018-72715 | Greater Houston Transportation Company |
| JACKSON, Margaret v. BUFKIN-ENVIS, Renela D. | Jackson, Margaret | 215th Civil District Court - Harris County | 2018-34459 | Greater Houston Transportation Company |
| SANTILLAN, GINITH v Greater Houston Transportation Company and SETH BIZIMANA | Santillan, Ginith | 333rd Civil District Court - Harris County | 2018-30545 | Greater Houston Transportation Company |
| BROWN, Gail (John Wesley Brown-deceased) v. Greater Houston Transportation Company & Adam Furniture | Brown, Independent Executrix of the Estate of John Wesley Brown, Sr., Deceased, Gail | 270th Civil District Court - Harris County | 2018-45707 | Greater Houston Transportation Company |
| GAONA, Maria v HALL, James & Greater Houston Transportation Company | GAONA, Maria | 61st Civil District Court - Harris County | 2018-47874 | Greater Houston Transportation Company |
| RAMOS, Jose v Greater Houston Transportation Company, TX TAXI, CAB | Chuay, Emmanuel | 157th Civil District Court - Harris County | 2018-68315 | Greater Houston Transportation Company |
| JONES, Willie Lee v Greater Houston Transportation Company | JONES, Willie Lee | 189th Civil District Court - Harris County | 2018-60152 | Greater Houston Transportation Company |
| JONES, Don v Greater Houston Transportation Company dba YC & V BROOKS | JONES, Don | 190th Civil District Court - Harris County | 2018-63067 | Greater Houston Transportation Company |
| BARILLAS, Marlon v. Greater Houston Transportation Company & ARMANDO | Barillas, Marlon | 61st Civil District Court - Harris County | 2018-67895 | Greater Houston Transportation Company |
| IRYNNE, Mary v. Greater Houston Transportation Company, Kamran SALIM | IRYNNE, Mary | 281st Civil District Court - Harris County | 2018-75572 | Greater Houston Transportation Company |
| GONZALEZ, Damaris & FLORES, Hilda v Greater Houston Transportation Company dba aka YC Hild | GONZALEZ, Damaris & FLORES, Hild | 189th Civil District Court - Harris County | 2018-78472 | Greater Houston Transportation Company |
| HAWKINS, Vanika v. VIERA, Cliesse | HAWKINS, Vanika | 129th Civil District Court - Harris County | 2018-79288 | Greater Houston Transportation Company |
| PRINGLE, Karl and ANDERSON, Hailey v Greater Houston Transportation Company | Pringle, Karl Anderson, Hailey Wainright, Dawson | 281st Civil District Court - Harris County | 2018-80101 | Greater Houston Transportation Company |
| JONES, Deborah A. v. Greater Houston Transportation Company and ZERFU WANNA ICOROTO | JONES, Deborah A. | 151st Civil District Court - Harris County | 2018-843721 | Greater Houston Transportation Company |
| OLATUNDOSUN, Emmanuel and RAMOS, Paul vs. Greater Houston Transportation Company dba YC | Olatundosun, Emmanuel | 269th Civil District Court - Harris County | 2018-83550 | Greater Houston Transportation Company |

| Case | Name | Court | Case Number | Transportation Company |
|---|---|---|---|---|
| TEMPLIN, Julisa Alex v Scurlock, Shannon Deonyel / EAGLE, Sharita Michelle v Greater Houston Transportation Company /Joe YC et all | Charles, Lester | 133rd Civil District Court - Harris County | 2018-45556 | Greater Houston Transportation Company |
| BALDER, Nancy v. Greater Houston Transportation Company and SHARMAL, | BALDER, Nancy | 125th Civil District Court - Harris County | 2018-04712 | Greater Houston Transportation Company |
| WILLIAMS, Kelarria v Greater Houston Transportation Company & Phillip Milandra Aweih | WILLIAMS, Kelarria | 55th Civil District Court - Harris County | 2018-88538 | Greater Houston Transportation Company |
| HANCOCK, Mary v. Greater San Antonio Transportation Company, DRESHAVE | HANCOCK, Mary | 45th Civil District Court - Bexar Co. | 2018C00029 | Greater San Antonio Transportation Company |
| HILL, Raymond v YELLOW CAB TAXI and JESSE | HILL, Raymond | 131st Judicial District Court - Bexar Co. | 2018CI00738 | Greater San Antonio Transportation Company |
| DEL CUETO, Andrew v. Nunez, Robert and Greater San Antonio Transportation Company | DEL CUETO, Andrew | 166th Civil District Court - Bexar Co. | 2018CI05373 | Greater San Antonio Transportation Company |
| REYES, Blanca v. ABDALLAH, Masreeldin & Greater San Antonio Transportation Company | REYES, Blanca | 285th Judicial District Court - Bexar County | 2018CI05810 | Greater San Antonio Transportation Company |
| GONZALEZ, Malinda v Greater San Antonio Transportation Company, FLORES, A. | GONZALEZ, Malinda | 73rd Judicial District Court - Bexar Co. | 2018CI13144 | Greater San Antonio Transportation Company |
| BUCK, Jack Lee/POWER, Lee v. Greater San Antonio Transportation Company & Alberto Flores | BUCK, Jack Lee/POWER, Lee | 45th Civil District Court - Bexar Co. | 2018CI14494 | Greater San Antonio Transportation Company |
| ALVARADO, Roberto L. FARDOD, Abdul & Greater San Antonio, Robert Antonio Transportation Company | ALVARADO, Roberto | 285th Judicial District Court - Bexar County | 2018CI17629 | Greater San Antonio Transportation Company |
| RUIZ, Frank et al v. Greater San Antonio Transportation Company & HOSSAIN, Ginger | RUIZ, Frank / Mares, Tristan | 37th Judicial District Court | 2018CI17920 | Greater San Antonio Transportation Company |
| RODRIGUEZ, Joseph v. ARID and Greater San Antonio Transportation Company | RODRIGUEZ, Joseph | 166th Civil District Court - Bexar Co. | 2018C.23165 | Greater San Antonio Transportation Company |
| GARCIA, Patricia v. Greater San Antonio Transportation Company, HUMBERTO, Edgar | Garcia, Patricia | 45th Civil District Court - Bexar Co. | 2018-CI-24185 | Greater San Antonio Transportation Company |
| SULLIVAN, Art v Greater Houston Transportation Company & GREEN, Yolanda | Sullivan, ARA | 270th Civil District Court - Harris County | 2019-03368 | Greater Houston Transportation Company |
| Villafranca Body Shop v. Greater Austin Transportation Company d/b/a YC | Villa Franca Body Shop | Travis Co. Court at Law No. 1 | 2019-03863 | Greater Houston Transportation Company |
| TORRES, Juan C. v. AEMERKI, Dawit & YELLOW CAB CO. | TORRES, Juan C. | 270th Civil District Court - Harris County | 2019-09527 | Greater Houston Transportation Company |

| | | | | |
|---|---|---|---|---|
| BRAGGS, Linda Young v. Greater Houston Transportation Company d/b/a/ Yellow C & Bamidele Adewunmi & Blanca Range/Turner | BRAGGS, Linda Young | 270th Civil District Court - Harris County | 2019-11085 | Greater Houston Transportation Company |
| ROBERTS, Brady v. FIESTA CAB CO. | Roberts, Brady | 215th Civil District Court - Harris County | 2019-15276 | Fiesta Cab Company |
| BRAGGS, Linda Young v. YADI-H BIEHE HABTESLUS & Greater Houston Transportation Company | BRAGGS, Linda Young | 189th Civil District Court - Harris County | 2019-15953 | Greater Houston Transportation Company |
| STEWART, Cathy & BLACK, Jevondalin v Greater Houston Transportation Company & HOWINGTON, Robert | STEWART, Cathy & BLACK, Jevondalin | 333rd Civil District Court - Harris County | 2019-25129 | Greater Houston Transportation Company |
| Mirenda SAVALA v. Mauricio Aguila BARRIOS & Greater Houston Transportation Company dba YC | Mirenda SAVALA | 129th Civil District Court - Harris County | 2019-32899 | Greater Houston Transportation Company |
| SMITH, Everett Harrison II & Rebecca T. v Greater Houston Transportation Company & John Doe | SMITH, Everett Harrison II & Rebecca T. | 164th Civil District Court - Harris County | 2019-32748 | Greater Houston Transportation Company |
| MOORE, Ebony v. Greater Houston Transportation Company & Pamela JEFFERSON | Moore, Ebony | 127th Civil District Court - Harris County | 2019-41482 | Greater Houston Transportation Company |
| JUSTICE, Carol Denise v. Greater Houston Transportation Company & MILLS, Jermaine | JUSTICE, Carol Denise | 215th Civil District Court - Harris County | 2019-47562 | Greater Houston Transportation Company |
| BRENT, Kiara, N.l v Greater Houston Transportation Company & KENEALY KGAGARUAN | BRENT, Kiara, N. | 333rd Civil District Court - Harris County | 2019-55694 | Greater Houston Transportation Company |
| QUIJANO, Anastacia Torres v. FRANCISCO, Arun | QUIJANO, Anastacia Torres | 215th Civil District Court - Harris County | 2019-57129 | Greater Houston Transportation Company |
| HAMPTON, Nevan v. Greater Houston Transportation Company & FREDERICK | HAMPTON, Nevan | 295th Civil District Court - Harris County | 2019-64699 | Greater Houston Transportation Company |
| AMADOR, Owin.L v. Greater Houston Transportation Company & MORAN EXVAL | AMADOR, Owin.L | 281st Civil District Court - Harris County | 2019-67047 | Greater Houston Transportation Company |
| ARNAS, Danieli v Taxis Fiesta, Inc. dba Fiesta Cab Company and Greater Houston Transportation Company & Greer Luis Escobar | Arnas, Danieli Lopez, Claudia | 333rd Civil District Court - Harris County | 2019-73266 | Greater Houston Transportation Company, Fiesta Cab Company |
| HORENLIAD, Lydia v Tejudeen A. Cahadi | Horenliad, Lydia | 151st Civil District Court - Harris County | 2019-88872 | Greater Houston Transportation Company, Fiesta Cab Company |
| MARTINEZ, Christelda v Greater Houston Transportation Company & David Obi | Martinez, Christelda | 151st Civil District Court - Harris County | 2019-89977 | Greater Houston Transportation Company |

| | | | | |
|---|---|---|---|---|
| HARTSFIELD, Cynthia v. Greater San Antonio Transportation Company & Ahmad Rasheed | Hartsfield, Cynthia | 224th Judicial District Court - Bexar Co. | 2019CO04611 | Greater San Antonio Transportation Company |
| DUMAPIAS, Myra v. Greater San Antonio Transportation Company, ELMI, Ali Ahmen | Dumapias, Myra | 285th Judicial District Court - Bexar County | 2019CI02781 | Greater San Antonio Transportation Company |
| URRUTIA, Victoria & Jonathon v. Greater San Antonio Transportation Company & WORKU, Rexhame | Urrutia, Victoria | 37th Judicial District Court | 2019CI09775 | Greater San Antonio Transportation Company |
| AUGUST, Katherine v. Greater San Antonio Transportation Company, MIDDING, Salvatore | August, Katherine | 73rd Judicial District Court - Bexar Co. | 2019CI04674 | Greater San Antonio Transportation Company |
| BOCANEGRA, Tina et all v. Greater San Antonio Transportation Company, ALVARADO, Hilario | Bocanegra, Tina; Rodriguez, Kimberly; Martinez, Jaline | 288th Judicial District Court - Bexar County | 2019CI11950 | Greater San Antonio Transportation Company |
| HODGES, Walter & KILBANE, James N. v. Greater San Antonio Transportation Company | Hodges, Walter; Kilbane, James | 408th Judicial District Court - Bexar Co. | 2019CI13394 | Greater San Antonio Transportation Company |
| SCHOBER, Brynn v. WALKER, Thomas & Greater San Antonio Transportation Company | Schober, Brynn | Bexar County Civil Court 10 | 2019CI00632 | Greater San Antonio Transportation Company |
| MARTINEZ, Cynthia v. Greater San Antonio Transportation Company, ELMI, Ali Ahmed | Martinez, Cynthia | Bexar County Civil Court 3 | 2019CI05086 | Greater San Antonio Transportation Company |
| CUELLAR, Cristina v. Greater San Antonio Transportation Company, ROHAN, Samiuliah | Cuellar, Cristina | Bexar County Civil Court 3 | 2019CI07035 | Greater San Antonio Transportation Company |
| GEICO v Greater San Antonio Transportation Company, AYATULLAI, Adil | GEICO | Bexar Co. Court at Law No. 10 | 2019CIO07414 | Greater San Antonio Transportation Company |
| TERRY, Laura Corine v Greater Houston Transportation Company & Dorrnoll Carson, Viva Cotton, Carlos G Mayberry | Terry, Laura | 334th Civil District Court - Harris County | 2020-C43898 | Greater Houston Transportation Company |
| ZAMORA, Elmer v Greater Houston Transportation Company, PENA Kidnapimul & Wai Laoen Ng | Zamora, Elmer | 269th Civil District Court - Harris County | 2020-05282 | Greater Houston Transportation Company |
| McPHERSSON, James & NEAL, Oliver v Greater Houston Transportation Company & Talwa Fawylhtml | McPherson, James; Neal, Oliver | 157th Civil District Court - Harris County | 2020-05282 | Greater Houston Transportation Company |
| GARCIA, Carlos v Greater Houston Transportation Company aka YC and Baharaboim Velzlzhamin | Garcia, Carlos | 11th Civil District Court - Harris County | 2022-03240 | Greater Houston Transportation Company |
| BROCKINS, Elizabeth v Greater Houston Transportation Company & Talvoo Fawelhtml | Brockins, Elizabeth | 80th Civil District Court - Harris County; 157th Civil District Court - Harris County | 2020-05360 | Greater Houston Transportation Company |
| UNITED Financial Casualty Company v Greater Houston Transportation Company | United Financial Casualty Company | 113th Civil District Court - Harris County | 2020-C58278 | Greater Houston Transportation Company |

| | | | | |
|---|---|---|---|---|
| ANSARI, Mostafa v Greater Houston Transportation Company & Oluwadamola Adedimi | Ansari, Mostafa | 11th Civil District Court - Harris County | 2020-11182 | Greater Houston Transportation Company |
| JEDLICKA, Johnny v Babreteau, Michael and Greater Houston Transportation Company | Jedlicka, Johnny | 164th Civil District Court - Harris County | 2020-13719 | Greater Houston Transportation Company |
| HENSON, Linda v Appliance Warehouse & Yellow Cab Company of Houston, Inc., et al | Henson, Linda | 125th Civil District Court - Harris County | 2020-15025 | Greater Houston Transportation Company |
| BRANCH, Theirodisa v Greater Houston Transportation Company; Pablo Saza & Sara Danekae | Branch, Theirodisa | 333rd Civil District Court - Harris County | 2020-20665 | Greater Houston Transportation Company |
| ROBBINS, Charles v Greater Houston Transportation Company dba YC & Rashna Clement | Robbins, Charles | 270th Civil District Court - Harris County | 2020-21207 | Greater Houston Transportation Company |
| BENSON, Tommy v Greater Houston Transportation Company; Taxi Fiesta RGV, Fiesta Cab Company & John Doe | Benson, Tommy | 234th Civil District Court - Harris County | 2020-24989 | Fiesta Cab Company |
| JOHNSON, Sparkle v Greater Houston Transportation Company dba YC & Te Chyrs Watson | Johnson, Sparkle | 61st Civil District Court - Harris County | 2020-25422 | Greater Houston Transportation Company |
| GRAVES, Jamarcus Smith v Greater Houston Transportation Company | Graves, Jamarcus | 333rd Civil District Court - Harris County | 2020-27311 | Greater Houston Transportation Company |
| BROWN, John v Greater Houston Transportation Company dba YC & Wilbert Rhodes | Brown, John | 80th Civil District Court - Harris County | 2020-28136 | Greater Houston Transportation Company |
| THRASH, Lorenzo v Greater Houston Transportation Company dba YC & John Doe | Thrash, Lorenzo | 151st Civil District Court - Harris County | 2020-31786 | Greater Houston Transportation Company |
| EPPS, Diana v Greater Houston Transportation Company & Fredrica Dewayne Williams | Epps, Dianna | 151st Civil District Court - Harris County | 2020-33115 | Greater Houston Transportation Company |
| WOLFE, Randy v Greater Houston Transportation Company & NJOKU, Godwin Onwuemelum | Wolfe, Randy | 157th Civil District Court - Harris County | 2020-34153 | Greater Houston Transportation Company |
| KOSHINEVSKY, Leonid and The Koshinevsky Law Firm PLLC v Greater Houston Transportation Company dba YC | Koshinevsky, Leonid | 215th Civil District Court - Harris County | 2020-34900 | Greater Houston Transportation Company |
| TORRALES, Regina v Greater Houston Transportation Company dba YC & Hernah Morales | Torrales, Regina | 80th Civil District Court - Harris County | 2020-35655 | Greater Houston Transportation Company |
| JEFFERSON, Juanita v Greater Houston Transportation Company; Yellow Cab Service Corporation & George Adesina | Jefferson, Juanita | 157th Civil District Court - Harris County | 2020-36087 | Greater Houston Transportation Company |

| Case | Party | Court | Case Number | Defendant |
|---|---|---|---|---|
| JOHNSON, Jacob and HAMILTON, Brandi v Greater Houston Transportation Company & Marva Gamora | Johnson, Jacob | 157th Civil District Court - Harris County | 2020-42777 | Greater Houston Transportation Company |
| EAGLE, Sharita Michelle v Greater Houston Transportation Company dba YC et all | Eagle, Sharita | 164th Civil District Court - Harris County | 2020-43405 | Greater Houston Transportation Company |
| RACHAL, Betty & Martin v Greater Houston Transportation Company & Hussein Abuseif | Rachal, Martin / Rachal, Betty | 151st Civil District Court - Harris County | 2020-43888 | Greater Houston Transportation Company |
| AYALA, Marilyn v Greater Houston Transportation Company & Adelio S. Bass | Ayala, Marilyn | 11th Civil District Court - Harris County | 2220-52756 | Greater Houston Transportation Company |
| PERKINS, Donald & Gloria v Greater Houston Transportation Company dba YC & Lucky Ensaulele | Perkins, Donald / Perkins, Gloria | 334th Civil District Court - Harris County | 2020-53590 | Greater Houston Transportation Company |
| THOMAS, Lakeisha v Greater Houston Transportation Company dba YC & Francisco Castillo | Thomas, Lakeisha | 127th Civil District Court - Harris County | 2020-53812 | Greater Houston Transportation Company |
| RUIZ, Marjorie, indiv and a/n/f of R.R., a minor v Greater Houston Transportation Company & Wayne Allan Dabson | Marjorie, Ruiz | 151nd Civil District Court - Harris County | 2020-57479 | Greater Houston Transportation Company |
| OLEXIA, Lydia v Greater Houston Transportation Company & Benjamin Emeka Ihemeje | Olenka, Lydia | 269th Civil District Court - Harris County | 2020-58938 | Greater Houston Transportation Company |
| BROWN, Kerry Dan Jr. v Greater Houston Transportation Company & Lawrence Ahiam Onwubadi | Brown, Kerry | 269th Civil District Court - Harris County | 2020-59945 | Greater Houston Transportation Company |
| RAMIREZ, Patricia v Greater Houston Transportation Company dba YC & Benjamin Emeka Ihemeje | Ramirez, Patricia | 80th Civil District Court - Harris County | 2020-67024 | Greater Houston Transportation Company |
| JEFFERSON, Celia v Greater Houston Transportation Company, Carlos Montano & Matthew Alan Wakefield | Jefferson, Celia | 125th Civil District Court - Harris County | 2020-67426 | Greater Houston Transportation Company |
| CONTRERAS, Anna Maria Beatriz v Greater Houston Transportation Company & Guy P. Harwell | Contreras, Ana Maria | 333rd Civil District Court - Harris County | 2020-70287 | Greater Houston Transportation Company |
| GARCIA, Horacio v Greater Houston Transportation Company & Terrance Grant | Garcia, Horacio | 281st Civil District Court - Harris County | 2020-70364 | Greater Houston Transportation Company |
| MONTGOMERY, Nenita v Greater Houston Transportation Company dba YC | Montgomery, Nenita | 157th Civil District Court - Harris County | 2020-72034 | Greater Houston Transportation Company |
| CHARLES, Tyrone v Greater Houston Transportation Company & John Doe | Charles, Tyrone | 61st Civil District Court - Harris County | 2020-73570 | Greater Houston Transportation Company |
| MARTINEZ, Ariana & BRENT, Rusheed v Greater Houston Transportation Company, Jacquelin Kelley & Bolaji O'Igun-File | Martinez, Ariana / Brent, Rusheed | 127th Civil District Court - Harris County | 2020-75877 | Greater Houston Transportation Company |
| ECHAVARRIA, Juan Antonio Aguilar v Greater Houston Transportation Company dba YC & "John Doe" | Aguilar Echavarria, Juan | 269th Civil District Court - Harris County | 2020-75902 | Greater Houston Transportation Company |

| Case Style | Name | Court | Case Number | Debtor |
|---|---|---|---|---|
| MORRIS, Tanesha v. Greater Houston Transportation Company dba YC & Georgia Slade | Morris, Tanesha | East Civil District Court - Harris County | 2020-83778 | Greater Houston Transportation Company |
| OLIVARES, Joshua v Greater San Antonio Transportation Company dba SA YC & Nasim Dawood | Olivares, Joshua | 438th Judicial District Court - Bexar Co. | 2020CI04464 | Greater San Antonio Transportation Company |
| CEPEDA, James H. v. Greater San Antonio Transportation Company dba YC, Brandon R. Jones & Mohammed L. Hefny | Cepeda, James | 166th Civil District Court - Bexar Co. | 2020CI03527 | Greater San Antonio Transportation Company |
| KELLY, Jamie v Greater San Antonio Transportation Company, YC of San Antonio & Donald Ward | Kelly, Jamie Yellow Cab Company of San Antonio | 224th Judicial District Court - Bexar Co. | 2020CI08640 | Greater San Antonio Transportation Company |
| MORALES, Jennifer Nicole v Greater San Antonio Transportation Company & Omdallah Malikzai | Morales, Jennifer | 407th Judicial District Court | 2020CI03098 | Greater San Antonio Transportation Company |
| LOHEGRANA, Daniela & Stephanie Mendez v Greater San Antonio Transportation Company | Lohegrana, Daniela Mendez, Stephanie | 57th Judicial District Court - Bexar Co. | 2020CI05264 | Greater San Antonio Transportation Company |
| AMER, Fathia, Yasmeen Ahmen & Eman Alturmi v Greater San Antonio Transportation Company & Francisco Rodriguez | Amer, Fathia Ahmed, Yasmeen Alturmi, Eman | 150th Judicial District Court - Bexar Co. | 2020CI22663 | Greater San Antonio Transportation Company |
| MCGILLIS, Amanda asf Catemi Washington, minor v Greater San Antonio Transportation Company & Tegegn T. Fisheye | McGillis, Amanda | Bexar County Civil Court 3 | 2020CI00735 | Greater San Antonio Transportation Company |
| MONTFORD, John v Greater San Antonio Transportation Company & Nazaredin S. Abdallah | Montford, John | Bexar County Civil Court 3 | 2020CI04661 | Greater San Antonio Transportation Company |
| RODRIGUEZ, Leandra, et al v HALL, Negasi H., Greater San Antonio Transportation Company & Tegipali T. Fisheye | Rodriguez, Leandra Lopez, Jr., Robert | Bexar County Civil Court 10 | 2020CI02120 | Greater San Antonio Transportation Company |
| GEICO County Mutual Insurance Company v Greater San Antonio Transportation Company & Taqali T. Fisheye | GEICO County Mutual Insurance Company | Bexar County Civil Court 10 | 2020CIV05552 | Greater Houston Transportation Company |
| SIMS, Terrence v Greater Houston Transportation Company & Eric Wilkinson | Sims, Terrence | 55th Civil District Court - Harris County | 2021-09939 | Greater Houston Transportation Company |
| MAURICE, Becky v Greater Houston Transportation Company & Mitha Agboola | Maurice, Becky | 190th Civil District Court - Harris County | 2021-17540 | Greater Houston Transportation Company |
| PROFIT, Curvis v Greater Houston Transportation Company, Montarez Carissa & Matthew Alan Wakefield | Profit, Curvis, and Otemink, Gray | 189th Civil District Court - Harris County | 2021-17650 | Greater Houston Transportation Company |
| MANNERS, David Tatum v Greater Houston Transportation Company, Carlos Albert Pineda & Dontrell J. Murphy | Manners, David | 127th Civil District Court - Harris County | 2021-20538 | Greater Houston Transportation Company |
| JOINER, Denise v Greater Houston Transportation Company & GRANT, Terrance Jermaine | Joiner, Denise | 215th Civil District Court - Harris County | 2021-23910 | Greater Houston Transportation Company |

| | | | | |
|---|---|---|---|---|
| SANTOS, Emely v Greater Houston Transportation Company & Chiedu Maye... | Santos, Emely | 164th Civil District Court - Harris County | 2021-35607 | Greater Houston Transportation Company |
| BARNES, Erica v Greater Houston Transportation Company aka YC & Tejueten Aziaz Odedi | Barnes, Erica | 129th Civil District Court - Harris County | 2021-26176 | Greater Houston Transportation Company |
| DEROUSSELLE, Lillian v Greater Houston Transportation Company & Juan Garcia | DEROUSSELLE, Lillian | 55th Civil District Court - Harris County | 2021-28542 | Greater Houston Transportation Company |
| BUGGAGE, Neema v Greater Houston Transportation Company, Steve Harter, Mike Soters, Yeping Zhou & Terrin Keith Stafford | Buggage, Neema | 164th Civil District Court - Harris County | 2021-09568 | Greater Houston Transportation Company |
| MALONE, Wynell Morris v Greater Houston Transportation Company dba YC | Malone, Wynell | 113th Civil District Court - Harris County | 2021-31359 | Greater Houston Transportation Company |
| PRESTON, Lauren v Greater Houston Transportation | Preston, Lauren | 80th Civil District Court - Harris County | 2021-32200 | Greater Houston Transportation Company |
| PROGRESSIVE County Mutual Insurance Company v Greater Houston Transportation Company & Talya [Gia...] | Progressive County Mutual Insurance Company | 55th Civil District Court - Harris County | 2021-34797 | Greater Houston Transportation Company |
| VASQUEZ, Arturo Serrano v Greater Houston Transportation Company & Rene Rolando Barrios City | Vasquez, Arturo | 133rd Civil District Court - Harris County | 2021-35522 | Greater Houston Transportation Company |
| WILLIAMS, Debra v Greater Houston Transportation Company | Williams, Debra | 125th Civil District Court - Harris County | 2021-35713 | Greater Houston Transportation Company |
| RAMON, Victor v Greater San Antonio Transportation Company & Joseph U Nwakor | Ramon, Victor | 131st Judicial District Court - Bexar Co. | 2021Cl04033 | Greater San Antonio Transportation Company |
| NAVAIRA, Gloria v Greater San Antonio Transportation Company, Metro Transportation Company & John Doe | NAVAIRA, Gloria | 57th Judicial District Court - Bexar Co. | 2021-Cl-04422 | Greater San Antonio Transportation Company |
| BANKS, Rose v Greater San Antonio Transportation Company dba San Antonio Yellow Cab & Amali Ley | Banks, Rose | 224th Judicial District Court - Bexar Co. | 2021Cl05861 | Greater San Antonio Transportation Company |
| ATKINSON, Elizabeth v Greater San Antonio Transportation Company & Semere T Sebumun | Atkinson, Elizabeth | Bexar County Civil Court 3 | 2021C0V01539 | Greater San Antonio Transportation Company |
| HERNANDEZ, David v Greater San Antonio Transportation Company & Verenia Saenz | Hernandez, David | Bexar County Civil Court 3 | 2021C0V02147 | Greater San Antonio Transportation Company |
| ADE, Grace v Ogrima Ghazi Karim Ullah Bin | Ade, Grace | Justice Court, Bexar County, Precinct 2, Place 1 | 21J52000212 | Greater San Antonio Transportation Company |
| VASQUEZ, JORGE LUIS v. Rio Grande | Vasquez, Jorge | 398th Judicial District Court | C-1119-19-H | Texas Piedra Rio Grande Valley, Inc. |
| HAYS, James v. Enroke Anthony Egbue | HAYS, James | Travis County Court at Law No. 1 | C-1-CV-17-008654 | Greater Austin Transportation Company |

| Case | Name | Court | Cause No. | Company |
|---|---|---|---|---|
| SIGAFOES v Greater Austin Transportation Company | Sigafoes, Darla | Travis County Court at Law No. 2 | C-1-CV-18-001286 | Greater Austin Transportation Company |
| MENA v. JOHN SOLEMN; ELIZONDO aka TG; JUDITH & GREATER AUSTIN Transportation Company | Mynar, Mary | Travis County Court at Law No. 2 | C-1-CV-19-000384 | Greater Austin Transportation Company |
| MYNAR v EPARDO, JUSTIN & GREATER AUSTIN Transportation Company | | Travis County Court at Law No. 1 | C-1-CV-19-001748 | Greater Austin Transportation Company |
| CARNEY, John Paul v. Greater Austin Transportation Company & CARL BARNES | Carney, John | Travis County Court at Law No. 2 | C-1-CV-19-001748 | Greater Austin Transportation Company |
| GOODING, William & Miracle v Greater Austin Transportation Company | Gooding, William & Miracle | Travis County Court at Law No. 2 | C-1-CV-19-005877 | Greater Austin Transportation Company |
| PROGRESSIVE County Mutual v Greater Austin Transportation Company & OMOROGBE, Osehon Edegbe | Progressive County Mutual Insurance Company | Travis County Court at Law No. 2 | C-1-CV-19-010173 | Greater Austin Transportation Company |
| CHARBONNEAU, Coble v. Greater Austin Transportation Company & Wossen Yekele Lemma | Charbonneau, Coble | Travis County Court at Law No. 1 | C-1-CV-20-000442 | Greater Austin Transportation Company |
| GEICO Secure Insurance Company v Adin Zaid | Geico Secure Insurance Company | Travis County Court at Law No. 2 | C-1-CV-20-000566 | Greater Austin Transportation Company |
| USAA General Indemnity Co. v Greater Austin Transportation Company & Abdelwahab A. Shehon | USAA General Indemnity Co. | Travis County Court at Law No. 2 | C-1-CV-20-002276 | Greater Austin Transportation Company |
| PROGRESSIVE County Mutual Insurance Company v Greater Austin Transportation Company & Adewale Devine | Progressive County Mutual Insurance Company | Travis County Court at Law No. 2 | C-1-CV-20-000180 | Greater Austin Transportation Company |
| NAVARRO, Gerardo, et al v. Greater Houston Transportation Company, Fiesta Cab Co., & Jonathan Gonzalez (CC-20-1547-A; 71465-2416201) 85518 | Navarro, Gerardo | Hidalgo County Court at Law No. 1 | CC-20-1547-A | Fiesta Cab Company; Greater Houston Transportation Company |
| STATE FARM Mutual Automobile Insurance Company as Subrogee of Jesus Zamora v Fiesta Cab Co. & Robert Gillie | State Farm Mutual Automobile Insurance Company | Hidalgo County Civil Court at Law No. 2 | CC-20-3409-B | Fiesta Cab Company |
| Reynolds, Andrea v. Greater Austin Transportation Company & Williams | Reynolds, Andrea | 250th Judicial District Court - Travis County | D-1-GN-19-005778 | Greater Austin Transportation Company |
| Aune, Joanne v. Greater Austin Transportation Company | Aune, Joanne | 459th Judicial District Court - Travis Co. | D-1-GN-17-000764 | Greater Austin Transportation Company |
| ROMERO/SCHWENNESEN v Greater Austin Transportation Company and Abdelhakim GELBHAR | Romero, Oscar; Schwennesen, Stephen | 224th Judicial District Court - Bexar Co. | D-1-GN-18-000481 | Greater Austin Transportation Company |
| SCOTTLAND UNDERWOOD v. Greater Austin Transportation Company and Temar One | Underwood, Scottland | 201st Judicial District Court - Travis Co. | D-1-GN-20-001478 | Greater Austin Transportation Company |
| BELL, Michelle v TG of AUSTIN & SENATE SOLOMON Malimeh | Bell, Michelle | 459th Judicial District Court of Travis County | D-1-GN-19-003927 | Greater Austin Transportation Company |
| HAYNES, Donia, ET AL v Greater Austin Transportation Company & WAHAB | Thomas, Mack & Rachael; Haynes, Donia | 98th Judicial District Court - Travis Co. | D-1-GN-19-005611 | Greater Austin Transportation Company |
| QUINONES, Nicole v ABDUL WAHAB Company & KHAN, Sajid | Quinones, Nicole | 250th Judicial District Court - Travis Co. | D-1-GN-19-005201 | Greater Austin Transportation Company |

| Case | Party | Court | Case No. | Company |
|---|---|---|---|---|
| HEREDIA, DEVON v Greater Austin Transportation Company & Kazuo Ishii | Heredia, Devon | 250th Judicial District Court, Travis Co. | D-1-GN-19-007554 | Greater Austin Transportation Company |
| IVIE, Renda v Greater Austin Transportation Company, ATX Yellow Cab LLC and YCCS | Ivie, Renda | 345th Judicial District Court | D-1-GN-20-004078 | Greater Austin Transportation Company |
| POLK, Lexus v Greater Austin Transportation Company and Sharma Alias Mohamed | Polk, Lexus | 53rd Judicial District Court | D-1-GN-20-000594 | Greater Austin Transportation Company |
| RODRIGUEZ, Alma Rangel (estate of Mark Rodriguez) v Greater Austin Transportation Company & Zozza Court Ghazaei | Rodriguez, Alma | 53rd Judicial District Court | D-1-GN-20-000728 | Greater Austin Transportation Company |
| WRIGHT, Tierra & SANCHEZ, Eleanor v Greater Austin Transportation Company & ELAABANI, Hamid | Wright, Tierra | 98th Judicial District Court | D-1-GN-20-002775 | Greater Austin Transportation Company |
| GREEN, Renee v VCP/REVINE, Adavins & Greater Austin Transportation Company | Green, Renee | 53rd Judicial District Court | D-1-GN-20-003289 | Greater Austin Transportation Company |
| PENALOZA, Gerardo & SANCHEZ, Diana v Greater Austin Transportation Company & Jaffar Zanety | Penaloza, Gerardo Sanchez, Diana | 250th Judicial District Court, Travis Co. | D-1-GN20-003552 | Greater Austin Transportation Company |
| MARTINEZ, Leslie & CHAVEZ, Samantha v Greater Austin Transportation Company & BOCANEGRA, Patrick | Martinez, Leslie Chavez, Samantha | 261st Judicial District Court | D-1-GN-20-003773 | Greater Austin Transportation Company |
| CABRERA, Juan Sosa v Greater Austin Transportation Company & Barkev Woldegabriel | Cabrera, Juan | 250th Judicial District Court, Travis Co. | D-1-GN-20-006740 | Greater Austin Transportation Company |
| MITCHELL, Samantha v Jafar | Mitchell, Samantha | Justice of Peace, Precinct 1, Travis County | J1-CV-18-008512 | Greater Austin Transportation Company |
| KNIGHT, Kelley Krista v Greater Austin Transportation Company & Kamran Shah | Knight, Kelley | Justice of Peace, Precinct 2, Travis County | J2-CV-20-000412 | Greater Austin Transportation Company |
| ARMSTRONG, James / JOSEPH v Greater Austin Transportation Company dba YC BRYAN | Armstrong, James Armstrong, Joseph | 200th Judicial District Court - Travis Co. | No. D-1-GN-18-005107 | Greater Austin Transportation Company |
| PROGRESSIVE County Mutual v YC Service Corporation & Mohammed Ashraw | Progressive County Mutual Insurance Company | 335th Civil District Court - Harris County | 2019-44857 | Greater Houston Transportation Company |
| PROGRESSIVE County Mutual Insurance Company v Greater Houston Transportation Company & Adewoyi Isser Fejimi | Progressive County Mutual Insurance Company | 157th Civil District Court - Harris County | 2019-11085 | Greater Houston Transportation Company |
| BOSSOM, Craig A. v AMIR PADSHAHMIR and YELLOW Transportation Company dba YC | Bossom, Craig A. | 333rd Judicial District Court - Travis Co. | D-1-GN-18-000996 | Greater Houston Transportation Company |
| JORDAN, Jonathan v. MOMINUL IMAM | Jordan, Jonathan | 151st Civil District Court - Harris County | 2017-24595 | Greater Houston Transportation Company |
| ELLIS, Lonita v. Miften Birmingham and Greater Houston Transportation Company | Ellis, Lonita | 157th Civil District Court - Harris County | 2018-33441 | Greater Houston Transportation Company |
| SANVEE, George Akquette v. Hamid Benzayed | SANVEE, George Akquette | 270th Civil District Court - Harris County | 2017-75888 | Greater Houston Transportation Company |

| COUNTEE, (s) v. Greater Houston Transportation Company and Elizelu | COUNTEE, (s) | 157th Civil District Court - Harris County | 2017-53401 | Greater Houston Transportation Company |
|---|---|---|---|---|
| HAACK, Kimberly v Greater San Antonio Transportation Company & Waleed Krashteh | Haack, Kimberly | 224th Judicial District Court - Bexar Co. Bexar County Presiding Court | 2020CI02399 | Greater San Antonio Transportation Company |
| MCDONALD, Patricia v. Greater San Antonio Transportation Company & Wints | | 438th Judicial District Court - Bexar Co. Bexar County Presiding Court | 2014CI09532 | Greater San Antonio Transportation Company |
| GEICO County Mutual Insurance Company v Greater Houston Transportation Company & Michael Osani | Geico County Mutual Insurance Company | Justice Court, Harris County, Precinct 4, Place 1 | 214100054018 | Greater Houston Transportation Company |
| BRIDGES, Eleanora v Tedfim(Michael Tedfing) | BRIDGES, Eleanora | 1153th Civil District Court - Harris County | 2018-50550 | Greater Houston Transportation Company |
| LISCUM, Aldora v Salah Hassan Ismael | Liscum, Aldora | Harris Co. Court at Law No. 1 | 1128885 | Greater Houston Transportation Company |
| THOMPSON, Jonas v Tiffany Fitzgerald (70773-0824:0238:3555) | Thompson, Jonas | Harris Co. Court at Law No. 1 | 1139623 | Greater Houston Transportation Company |

**Schedule 3.8 to Asset Purchase Agreement**

**Legal Proceedings**

**(CONTINUED)**

List of Legal Proceedings against FCC is attached.

## ATTACHMENT SOFA #7

| Matter/Name | Plaintiff(s) | Court | Cause # | ENTITY INVOLVED |
|---|---|---|---|---|
| SUTTON, Derrick/LINDSEY, June v. Greater Houston Transportation Company | Sutton, Derrick; Lindsey, June | Harris Co., Court at Law No. 2 | 1110627 | Greater Houston Transportation Company |
| WARD, Delpywin v. Edward Williams and Greater Houston Transportation Company | Ward, Delpywin | Harris Co., Court at Law No. 3 | 1116979 | Greater Houston Transportation Company |
| MORRIS, Shirley v. Greater Houston Transportation Company and AMOAH, Mark A. | Morris, Shirley | Harris Co., Court at Law No. 2 | 1126060 | Greater Houston Transportation Company |
| ABIDEEN, Zainul v. Greater Houston Transportation Company | Abideen, Zainul | Harris Co., Court at Law No. 1 | 1140369 | Greater Houston Transportation Company |
| ACCC Insurance Company v. Greater Houston Transportation Company dba United Cab Company & CESAR LUIS ESCOBAR | ACCC Insurance Company | Harris Co., Court at Law No. 4 | 1142853 | Greater Houston Transportation Company |
| PHAM, Hong v. Greater Houston Transportation Company & Rene Tebh | | Harris Co., Court at Law No. 4 | 1144791 | Greater Houston Transportation Company |
| MORALES, et al. v. Greater Houston Transportation Company, Cab Admin Services, Inc. dba YC Company of Houston & ARVIE, Leticia Nicole | Morales, Felder; Morales, Julien, a/n/f of Alexander Morales, a minor | Harris Co., Court at Law No. 2 | 1148564 | Greater Houston Transportation Company |
| BROCK, Nancy v Greater Houston Transportation Company dba aka YC Company and/or YC & Marvis Frederick Clements | Brock, Nancy | Harris Co., Court at Law No. 1 | 1150477 | Greater Houston Transportation Company |
| CENTRAL Mutual Ins Co & Charles Helms, Jr. v. Greater Houston Transportation Company dba YC | Central Mutual Insurance Company | Harris Co., Court at Law No. 3 | 1154856 | Greater Houston Transportation Company |
| ALLSTATE Fire & Casualty Insurance Company, et al v. Greater Houston Transportation Company dba Yellow Insurance Company | Allstate Fire & Casualty Insurance Company | Harris Co., Court at Law No. 4 | 1155225 | Greater Houston Transportation Company |
| BEDFORD, Tankay v Greater Houston Transportation Cab | Bedford, Tankay | Harris Co., Court at Law No. 3 | 1155435 | Greater Houston Transportation Company |
| AUTO CLUB County Mutual Ins. Co. v Greater Houston Transportation Company | Auto Club County Mutual Insurance Ins. Co. | Harris Co., Court at Law No. 3 | 1155500 | Greater Houston Transportation Company |
| TAYLOR, Quintin and COLLINS, Arteatria v. Greater Houston Transportation Company dba YC | TAYLOR, Quintin and COLLINS, Arteatria | 190th Civil District Court - Harris County | 201856270 | Greater Houston Transportation Company |
| DE LA GARZA, Sarah v Greater Houston Transportation Company dba YC & RADA, Ahmad | DE LA GARZA, Sarah | 129th Civil District Court - Harris County | 201938713 | Greater Houston Transportation Company |
| HARRISON, Robin F. v NALL, James A. & Greater Houston Transportation Company dba YC | HARRISON, Robin F. | 215th Civil District Court - Harris County | 201877953 | Greater Houston Transportation Company |
| Alvarez, Kenna v SAINT GINAT | Alvarez, Kenna | Justice Court, Harris County, Precinct 1, Place 3 | 181200456957 | Greater Houston Transportation Company |
| GEICO-TAYLOR, LASHANECA v Pierre Nazigue & Greater Houston Transportation Company | GEICO-TAYLOR, LASHANECA | Justice Court, Harris Co.- Precinct 5, Place 1 | 181100352064 | Greater Houston Transportation Company |

| | | | | |
|---|---|---|---|---|
| AMICA Mutual Insurance Company as Subrogee of Perica Antic v Greater Houston Transportation Company & Mohamed Maitai Barry | Amica Mutual Insurance Company | Justice Court, Harris County, Precinct 1, Place 1 | 201110022802- | Greater Houston Transportation Company |
| ALLSTATE Fire & Casualty Insurance Company as Subrogee of Gwen Raed v Greater Houston Transportation Company & Sharlene Coleman | Allstate Fire and Casualty Insurance Company as Subrogee of Aleksandar Norman | Justice Court, Harris County, Precinct 1, Place 4 | 201110022860 | Greater Houston Transportation Company |
| JENNINGS, Richard v Greater Houston Transportation Company , Allona Yerga Buke & Larry Conrad Ochs | Jennings, Richard | Justice Court, Harris County, Precinct 1, Place 2 | 1212200118926 | Greater Houston Transportation Company |
| GLESBY, Gary v Greater Houston Transportation Company & Alebecha Moila Kdelele | Glesby, Gary | Justice Court, Harris County, Precinct 1, Place 2 | 201220019128 | Greater Houston Transportation Company |
| ALLSTATE County Mutual Insurance Company as Subrogee of Patricia Ramirez v Greater Houston Transportation Company & Benjamin Shemiqo | Allstate County Mutual Insurance Company | Justice Court, Harris County, Precinct 5, Place 1 | 2091092787Q | Greater Houston Transportation Company |
| WILLIAMS, Saphronia v Greater Houston Transportation Company & Starleda Denise Hensen | Williams, Saphronia | Justice Court, Harris County, Precinct 5, Place 2 | 215200143233 | Greater Houston Transportation Company |
| AMKINS Specialty Auto, Inc. dba Old American County Mutual as Subrogee of Maria Hernandez v Greater San Antonio Transportation Company & Luis R. Borrego-Mata | Amkins Specialty Auto, Inc. | JP Court - Bexar Co. Precinct 1, Place 2 | 1252000181 | Greater San Antonio Transportation Company |
| STATE FARM v. Greater San Antonio Transportation Company dba YC | State Farm | JP Court - Bexar Co. Precinct 1, Place 2 | 1256000219 | Greater San Antonio Transportation Company |
| Steele v. Greater Houston Transportation Company/Greater Austin Transportation Company/GSX, Inc. | Steele, Erica | 270th Civil District Court - Harris County | 2015-65417 | Greater Houston Transportation Company |
| PEREZ/PEREZ v. Greater Houston Transportation Company dba YC/CREW/VPONTE NIGERENA | Perez, Diane & Ricky | 234th Civil District Court - Harris County | 2016-32437 | Greater Houston Transportation Company |
| VERA, Raymond v. Greater Houston Transportation Company - JAMES HALL | Vera, Raymond | 80th Civil District Court - Harris County | 2016-67420 | Greater Houston Transportation Company |
| ALARCON v. Greater San Antonio Transportation Company and Lemmie | ALARCON, YOLANDA | 408th Judicial District Court - Bexar Co. / Bexar County District Clerk | 2016CC14753 | Greater San Antonio Transportation Company |
| DAVIS, Destiny v. Greater Houston Transportation Company | Davis, Destiny | 234th Civil District Court - Harris County | 2017-44035 | Greater Houston Transportation Company |
| SANCHEZ, Ruben v. Greater Houston Transportation Company & TIRRELL TURNER | Sanchez, Ruben | 190th Civil District Court - Harris County | 2017-76833 | Greater Houston Transportation Company |
| RAYMOND, James v. Manzoor Ahmad and Greater Houston Transportation Company | Laymond, James | 270th Civil District Court - Harris County | 2017-79566 | Greater Houston Transportation Company |

| Case / Parties | Party | Court | Cause No. | Defendant |
|---|---|---|---|---|
| ESPARZA, Mary & MARTINEZ-DUENAS, Jaime v Greater San Antonio Transportation Company & GOITOM, Robel | Duenas, Zaime | 407th Judicial District Court | 2017-CI-17286 | Greater San Antonio Transportation Company |
| NEWKIRK, Annaleigh CRUZ et al. v HASHIM, Taj, et al | NEWKIRK, Annaleigh CRUZ | 166th Civil District Court - Bexar Co. | 2017-CI-23597 | Greater San Antonio Transportation Company |
| | | Bexar Co. at Law No. 12 | 2017CV04356 | Greater San Antonio Transportation Company |
| GLORIA, Stephanie v. KANANBIEH and Greater San Antonio Transportation Company | GLORIA, Stephanie | 295th Civil District Court - Harris County | 2018-22725 | Greater Houston Transportation Company |
| SALDIVAR, Nancy L v MAXWELL, Medolina & Greater Houston Transportation Company | SALDIVAR, Nancy L | 215th Civil District Court - Harris County | 2018-34859 | Greater Houston Transportation Company |
| JACKSON, Margaret v. BUFKIN-LEWIS, Renita D. and Greater Houston Transportation Company | Jackson, Margaret | 333rd Civil District Court - Harris County | 2018-36545 | Greater Houston Transportation Company |
| SANTILLAN, Gisnth v Greater Houston Transportation Company and SETH BIZMANIA | Santillan, Gisnth | | | Greater Houston Transportation Company |
| BROWN, Gail (John Wesley Brown-deceased) v Greater Houston Transportation Company & Adeniji Femojure | Brown, Independent Executrix of the Estate of John Wesley Brown, Sr., Deceased, Gail | 270th Civil District Court - Harris County | 2018-45707 | Greater Houston Transportation Company |
| GADINA, Maria v HALL, James & Greater Houston Transportation Company | GADINA, Maria | 61st Civil District Court - Harris County | 2018-47874 | Greater Houston Transportation Company |
| RAMOS, Jose v Greater Houston Transportation Company, TX TAXI, DBA | Onuolji, Emmanuel | 157th Civil District Court - Harris County | 2018-53315 | Greater Houston Transportation Company |
| JONES, Willie Lee / JONES Dora v Greater Houston Transportation Company | JONES, Willie Lee | 189th Civil District Court - Harris County | 2018-50192 | Greater Houston Transportation Company |
| JONES, Don v Greater Houston Transportation Company dba ats YC | JONES, Don | 190th Civil District Court - Harris County | 2018-63607 | Greater Houston Transportation Company |
| JONES, Don v Greater Houston Transportation Company dba YC & V BROOKS | JONES, Don | | 2018-67895 | Greater Houston Transportation Company |
| BARILLAS, Marton v. Greater Houston Transportation Company & ARMANDO | Barillas, Marton | 61st Civil District Court - Harris County | 2018-60101 | Greater Houston Transportation Company |
| RYNNE, Mary v Greater Houston Transportation Company | RYNNE, Mary | 281st Civil District Court - Harris County | 2018-75572 | Greater Houston Transportation Company |
| GONZALEZ, Damaris & FLORES, Nilda v Greater Houston Transportation Company dba ats YC | GONZALEZ, Damaris & FLORES, Nilda | 189th Civil District Court - Harris County | 2018-78472 | Greater Houston Transportation Company |
| HAWKINS, Varilda v VIERA, Clarise | HAWKINS, Varilda | 129th Civil District Court - Harris County | 2018-79268 | Greater Houston Transportation Company |
| PRINGLE, Karl and ANDERSON, Halley v Greater Houston Transportation Company | Pringle, Karl Anderson, Halley Washington, Dawson | 281st Civil District Court - Harris County | 2018-83101 | Greater Houston Transportation Company |
| JONES, Deborah A. v. Greater Houston Transportation Company and ZERFU VIANINA KOBOTO | JONES, Deborah A. | 151st Civil District Court - Harris County | 2018-81721 | Greater Houston Transportation Company |
| OLATUNBOSUN, Emmanuel and RAMOS, Paul vs. Greater Houston Transportation Company dba YC | Olatunbosun, Emmanuel | 165th Civil District Court - Harris County | 2018-83550 | Greater Houston Transportation Company |

67

| Caption | Party | Court | Case Number | Defendant |
|---|---|---|---|---|
| TONISAN, Julita Alex v Sourlock, Shannon DeBoyd / EAGLE, Sherita Michelle v Greater Houston Transportation Company dba TC et al | Charla, Lester | 133rd Civil District Court - Harris County | 2018-84056 | Greater Houston Transportation Company |
| BALDEZ, Nancy v. Greater Houston Transportation Company and SHARYAL | BALDEZ, Nancy | 125th Civil District Court - Harris County | 2018-84712 | Greater Houston Transportation Company |
| WILLIAMS, Kelisha v Greater Houston Transportation Company & Phillip Mitanda Awah | WILLIAMS, Kelisha | 55th Civil District Court - Harris County | 2018-98338 | Greater Houston Transportation Company |
| HANCOCK, Mary v. Greater San Antonio Transportation Company, DISPUTE | HANCOCK, Mary | 45th Civil District Court - Bexar Co. | 2018CI00323 | Greater San Antonio Transportation Company |
| HILL, Raymond v YELLOW CAB TAXI and JESSE | HILL, Raymond | 131st Judicial District Court - Bexar Co. | 2018CI00798 | Greater San Antonio Transportation Company |
| DEL CUETO, Andrew v. Nunez, Robert and Greater San Antonio Transportation Company | DEL CUETO, Andrew | 166th Civil District Court - Bexar Co. | 2018CI05973 | Greater San Antonio Transportation Company |
| REYES, Bianca v. ABDALLAH, Nasereldin & Greater San Antonio Transportation Company | REYES, Bianca | 285th Judicial District Court - Bexar County | 2018CI06610 | Greater San Antonio Transportation Company |
| GONZALEZ, Melinda v. Greater San Antonio Transportation Company, FLORES, A | GONZALEZ, Melinda | 73rd Judicial District Court - Bexar Co. | 2018CI13144 | Greater San Antonio Transportation Company |
| BUCK, Jack Lee/POWER, Lee v. Greater San Antonio Transportation Company & Alberto Flores | BUCK, Jack Lee/POWER, Lee | 166th Civil District Court - Bexar Co. | 2018CI14194 | Greater San Antonio Transportation Company |
| ALVARADO, Roberto v. FANDOD, Abdul & Greater San Antonio Transportation Company | Alvarado, Robert | 288th Judicial District Court - Bexar County | 2018CI17629 | Greater San Antonio Transportation Company |
| RUIZ, Frank et al v. Greater San Antonio Transportation Company & MOSSAIN, Ginger | Ruiz, Frank Mares, Tristan | 37th Judicial District Court | 2018CI17820 | Greater San Antonio Transportation Company |
| RODRIGUEZ, Joseph v. ARNDI and Greater San Antonio Transportation Company | RODRIGUEZ, Joseph | 166th Civil District Court - Bexar Co. | 2018CI23365 | Greater San Antonio Transportation Company |
| GARCIA, Patricia v. Greater San Antonio Transportation Company, HUMBERTO, Edgar | Garcia, Patricia | 45th Civil District Court - Bexar Co. | 2018-CI-24185 | Greater San Antonio Transportation Company |
| SULLIVAN, Ara v Greater Houston Transportation Company & GREEN, Yolanda | Sullivan, ARA | 270th Civil District Court - Harris County | 2019-03868 | Greater Houston Transportation Company |
| Villafranca Body Shop v. Greater Austin Transportation Company d/b/a YC | Villa Franca Body Shop | Travis Co. Court at Law No. 1 | 2019-03383 | Greater Houston Transportation Company |
| TORRES, Juan C. v. AREVEREN, Davis & YELLOW CAB CO. | TORRES, Juan C | 270th Civil District Court - Harris County | 2019-06527 | Greater Houston Transportation Company |

| Case | Name | Court | Case No. | Company |
|---|---|---|---|---|
| BRAGGS, Linda Young v. Greater Houston Transportation Company dba/a/k/a YC & Barnidett Aidewumni & Bianca Bengal/Turner | BRAGGS, Linda Young | 270th Civil District Court - Harris County | 2019-11085 | Greater Houston Transportation Company |
| ROBERTS, Brady v. FIESTA CAB CO. | Roberts, Brady | 215th Civil District Court - Harris County | 2019-15276 | Fiesta Cab Company |
| BRAGGS, Linda Young v. YAZDH BEHIE HARTSELLS & Greater Houston Transportation Company | BRAGGS, Linda Young | 165th Civil District Court - Harris County | 2019-15953 | Greater Houston Transportation Company |
| STEWART, Cathy & BLACK, Jevontabryn v Greater Houston Transportation Company & HONINGTON, Robert | STEWART, Cathy & BLACK, Jevontabryn | 333rd Civil District Court - Harris County | 2019-32129 | Greater Houston Transportation Company |
| Miranda SAVALA v. Mauricio Aguila BARRIOS & Greater Houston Transportation Company dba YC | Miranda SAVALA | 129th Civil District Court - Harris County | 2019-51889 | Greater Houston Transportation Company |
| SMITH, Everett Harrison II & Rebecca T. v Greater Houston Transportation Company & John Doe | SMITH, Everett Harrison II & Rebecca T. | 164th Civil District Court - Harris County | 2019-32748 | Greater Houston Transportation Company |
| MOORE, Ebony v. Greater Houston Transportation Company & Pamela JEFFERSON | Moore, Ebony | 127th Civil District Court - Harris County | 2019-41482 | Greater Houston Transportation Company |
| JUSTICE, Carol Denise v. Greater Houston Transportation Company & MILLS, Jermaine | JUSTICE, Carol Denise | 215th Civil District Court - Harris County | 2019-47562 | Greater Houston Transportation Company |
| BRENT, Kiana, N. v Greater Houston Transportation Company & BENGALY XOXAFALAN | BRENT, Kiana, N. | 333rd Civil District Court - Harris County | 2019-53694 | Greater Houston Transportation Company |
| QUIANO, Anastacia Torres v. FRANCISCO, Arun | QUIANO, Anastacia Torres | 215th Civil District Court - Harris County | 2019-57125 | Greater Houston Transportation Company |
| HAMPTON, Nkean v. Greater Houston Transportation Company & FREDERICK | HAMPTON, Nkean | 295th Civil District Court - Harris County | 2019-54699 | Greater Houston Transportation Company |
| AMADOR, Divin J. v. Greater Houston Transportation Company & MORAN ENVAL | AMADOR, Divin J. | 281st Civil District Court - Harris County | 2019-67017 | Greater Houston Transportation Company |
| ARMAS, Daniel v Texas Fiesta, Inc. dba Fiesta Cab Company and Greater Houston Transportation Company & Cesar Luis Escobar | Armas, Daniel Lopez, Claudia | 333rd Civil District Court - Harris County | 2019-73266 | Greater Houston Transportation Company; Fiesta Cab Company |
| HOBENLAD, Lydia v Tejuidenn A. Oshidi | Hoenllod, lydia | 151st Civil District Court - Harris County | 2019-38372 | Greater Houston Transportation Company; Fiesta Cab Company |
| MARTINEZ, Christelba v Greater Houston Transportation Company & David Obi | Martinez, Christelba | 151st Civil District Court - Harris County | 2019-69977 | Greater Houston Transportation Company |

| Case | Name | Court | Cause No. | Company |
|---|---|---|---|---|
| HARTSFIELD, Cynthia v. Greater San Antonio Transportation Company & Ahmet Rashed | Hartsfield, Cynthia | 224th Judicial District Court - Bexar Co. | 2019CI06611 | Greater San Antonio Transportation Company |
| DUMAPIAS, Myra v. Greater San Antonio Transportation Company, ELMI, Ali Ahmen | Dumapias, Myra | 285th Judicial District Court - Bexar County | 2015CI02781 | Greater San Antonio Transportation Company |
| URRUTIA, Victoria & Jonathan v. Greater San Antonio Transportation Company & WORKIU, Bethane | Urrutia, Jonathan; Urrutia, Victoria | 37th Judicial District Court | 2019CI08779 | Greater San Antonio Transportation Company |
| AUGUST, Katherine v. Greater San Antonio Transportation Company, MIDDONG, Servace | August, Katherine | 73rd Judicial District Court - Bexar Co. | 2019CI03474 | Greater San Antonio Transportation Company |
| BOCANEGRA, Luis et al v. Greater San Antonio Transportation Company, ALVARADO, Hilaria | Bocanegra, Tina; Rodriguez, Kimberly; Martinez, Jolene | 285th Judicial District Court - Bexar County | 2019CI11950 | Greater San Antonio Transportation Company |
| HODGES, Walter & KILBANE, James N. v. Greater San Antonio Transportation Company | Hodges, Walter; Kilbane, James | 408th Judicial District Court - Bexar Co. | 2019CI13394 | Greater San Antonio Transportation Company |
| SCHOBER, Bryan v. WALKER, Thomas & Greater San Antonio Transportation Company | Schober, Bryan | Bexar County Civil Court 10 | 2019CV00832 | Greater San Antonio Transportation Company |
| MARTINEZ, Cynthia v. Greater San Antonio Transportation Company, ELMI, Ali Ahmed | Martinez, Cynthia | Bexar County Civil Court 3 | 2019CV00965 | Greater San Antonio Transportation Company |
| CUELLAR, Cristina v. Greater San Antonio Transportation Company, ROHANY, Samiullah | Cuellar, Cristina | Bexar County Civil Court 3 | 2019CV07003 | Greater San Antonio Transportation Company |
| GEICO v Greater San Antonio Transportation Company, AYATULLAH, Adil | GEICO | Bexar Co. Court at Law No. 10 | 2019CV07414 | Greater San Antonio Transportation Company |
| TERRY, Laura Cothra v Greater Houston Transportation Company & Dontrail/Cottom, Viva | Terry, Laura | 334th Civil District Court - Harris County | 2020-04338 | Greater Houston Transportation Company |
| ZAMORA, Elmer v Greater Houston Transportation Company; Felix Akinsanmi; & Vivi Leon Ng | Zamora, Elmer | 269th Civil District Court - Harris County | 2020-01898 | Greater Houston Transportation Company |
| MCPHERSON, James & NEAL, Olivey v Greater Houston Transportation Company & Taiwo Fawehinmi | McPherson, James; Neal, Oliver | 157th Civil District Court - Harris County | 2020-03232 | Greater Houston Transportation Company |
| GARCIA, Carlos v Greater Houston Transportation Company a/k/a TC and Sebastian Vicdencia | Garcia, Carlos | 11th Civil District Court - Harris County | 2020-03240 | Greater Houston Transportation Company |
| BROOKINS, Elizabeth v Greater Houston Transportation Company & Taiwo Fawehinmi | Brookins, Elizabeth | 80th Civil District Court - Harris County | 2020-05360 | Greater Houston Transportation Company |
| UNITED Financial Casualty Company v Greater Houston Transportation Company | United Financial Casualty Company | 157th Civil District Court - Harris County | 2020-05878 | Greater Houston Transportation Company |

| Case Style | Name | Court | Case Number | Defendant |
|---|---|---|---|---|
| ANSARI, Mostafa v Greater Houston Transportation Company & Oluwadamilola Afolabi | Ansari, Mostafa | 11th Civil District Court - Harris County | 2020-11182 | Greater Houston Transportation Company |
| Jedidiah, Johnny v Babineaux, Michael and Greater Houston Transportation Company | Jedidiah, Johnny | 164th Civil District Court - Harris County | 2020-12719 | Greater Houston Transportation Company |
| HENSON, Linda v Appliance Warehouse & Yellow Cab Company of Houston, Inc., et al | Henson, Linda | 133th Civil District Court - Harris County | 2020-15025 | Greater Houston Transportation Company |
| BRANCH, Theodosia v Greater Houston Transportation Company, Pablo Sosa & Sara Derresse | Branch, Theodosia | 333rd Civil District Court - Harris County | 2020-20566 | Greater Houston Transportation Company |
| ROBBINS, Charles v Greater Houston Transportation Company dba YC & Pashina Clement | Robbins, Charles | 270th Civil District Court - Harris County | 2020-22207 | Greater Houston Transportation Company |
| BENSON, Tommy v Greater Houston Transportation Company, Taxi Fiesta RGV, Fiesta Cab Company & John Doe | Benson, Tommy | 234th Civil District Court - Harris County | 2020-24899 | Fiesta Cab Company |
| JOHNSON, Sparkle v Greater Houston Transportation Company dba YC & Ta Chyna Watson | Johnson, Sparkle | 61st Civil District Court - Harris County | 2020-25422 | Greater Houston Transportation Company |
| GRAVES, Jenmarcus Smith v Greater Houston Transportation Company | Graves, Jenmarcus | 333nd Civil District Court - Harris County | 2020-27311 | Greater Houston Transportation Company |
| BROWN, John v Greater Houston Transportation Company dba YC & Wilbert Rhodes | Brown, John | 30th Civil District Court - Harris County | 2020-28136 | Greater Houston Transportation Company |
| THRASH, Lorenzo v Greater Houston Transportation Company dba YCH & John Doe | Thrash, Lorenzo | 151st Civil District Court - Harris County | 2020-31786 | Greater Houston Transportation Company |
| EPPS, Diana v Greater Houston Transportation Company & Fredrick Dewanna Williams | Epps, Dianna | 151st Civil District Court - Harris County | 2020-33115 | Greater Houston Transportation Company |
| WOLFE, Randy v Greater Houston Transportation Company & NICKU, Godwin Ouzamedem | Wolfe, Randy | 157th Civil District Court - Harris County | 2020-34153 | Greater Houston Transportation Company |
| KISHINEVSKY, Leonid and The Kishinevsky Law Firm, PLLC v Greater Houston Transportation Company dba YC | Kishinevsky, Leonid | 215th Civil District Court - Harris County | 2020-34900 | Greater Houston Transportation Company |
| TORRALES, Regina v Greater Houston Transportation Company dba YC & Herman Torrales | Torrales, Regina | 80th Civil District Court - Harris County | 2020-35555 | Greater Houston Transportation Company |
| JEFFERSON, Juanita v Greater Houston Transportation Company, Yellow Cab Service Corporation & George Addena | Jefferson, Juanita | 157th Civil District Court - Harris County | 2020-36087 | Greater Houston Transportation Company |

| Case | Plaintiff | Court | Case No. | Defendant |
|---|---|---|---|---|
| JOHNSON, Jacob and HAMILTON, Bandi v Greater Houston Transportation Company & Alonsi Clemens | Johnson, Jacob | 157th Civil District Court - Harris County | 2020-42777 | Greater Houston Transportation Company |
| EAGLE, Sherra Michelle v Greater Houston Transportation Company dba YC et all | Eagle, Sherra | 164th Civil District Court - Harris County | 2020-43405 | Greater Houston Transportation Company |
| RACHAL, Betty & Martin v Greater Houston Transportation Company & Hussein Abuesif | Rachal, Martin; Rachal, Betty | 151st Civil District Court - Harris County | 2020-43888 | Greater Houston Transportation Company |
| AYALA, Marilyn v Greater Houston Transportation Company & Adolfo S. Bata | Ayala, Marilyn | 11th Civil District Court - Harris County | 2020-52756 | Greater Houston Transportation Company |
| PERKINS, Donald & Gloria v Greater Houston Transportation Company dba YC & Lucky Enakuokie | Perkins, Donald; Perkins, Gloria | 334th Civil District Court - Harris County | 2020-53590 | Greater Houston Transportation Company |
| THOMAS, Lakesiaa v Greater Houston Transportation Company dba aka YC & Francisco Castillo | Thomas, Lakesiaa | 127th Civil District Court - Harris County | 2020-55812 | Greater Houston Transportation Company |
| RUIZ, Marjorie, india and shij of R.R., a minor v Greater Houston Transportation Company & Wayne Alan Dotson | Madariia, Ruiz | 152nd Civil District Court - Harris County | 2020-55479 | Greater Houston Transportation Company |
| OLENDO, Lydia v Greater Houston Transportation Company & Benjamin Emeka Ihemeje | Olembo, Lydia | 269th Civil District Court - Harris County | 2020-56998 | Greater Houston Transportation Company |
| BROWN, Kerry Diax Jr. v Greater Houston Transportation Company & Lawrence Ahem Chretofson | Brown, Kerry | 269th Civil District Court - Harris County | 2020-56945 | Greater Houston Transportation Company |
| RAMIREZ, Patricia A, v Greater Houston Transportation Company dba YC & Benjamin Emeka Ihemeje | Ramirez, Patricia | 80th Civil District Court - Harris County | 2020-67024 | Greater Houston Transportation Company |
| JEFFERSON, Celia v Greater Houston Transportation Company, Carlos Montano & Matthew Alan Wakefield | Jefferson, Celia | 125th Civil District Court - Harris County | 2020-67426 | Greater Houston Transportation Company |
| CONTRERAS, Anna Maria Blasini v Greater Houston Transportation Company & Guy F. Harwell | Contreras, Ana Maria | 333rd Civil District Court - Harris County | 2020-70287 | Greater Houston Transportation Company |
| GARCIA, Horacio v Greater Houston Transportation Company & Terrance Grant | Garcia, Horacio | 281st Civil District Court - Harris County | 2020-70564 | Greater Houston Transportation Company |
| MONTGOMERY, Nehita v Greater Houston Transportation Company aka YC | Montgomery, Nehita | 157th Civil District Court - Harris County | 2020-72084 | Greater Houston Transportation Company |
| CHARLES, Tyrone v Greater Houston Transportation Company, & John Doe | Charles, Tyrone | 61st Civil District Court - Harris County | 2020-73570 | Greater Houston Transportation Company |
| MARTINEZ, Adiana & J. Brent, Rushard v Greater Houston Transportation Company, Jesushra Kelley & Bolaii O'Sun File | Martinez, Adiana; Brent, Rushard | 127th Civil District Court - Harris County | 2020-75877 | Greater Houston Transportation Company |
| ECHAVARRIA, Juan Antonio Aguilar v Greater Houston Transportation Company; dba YC & "John Doe" | Aguilar Echavarria, Juan | 269th Civil District Court - Harris County | 2020-75602 | Greater Houston Transportation Company |

| Case | Plaintiff | Court | Case No. | Defendant |
|---|---|---|---|---|
| MORRIS, Tanesha v. Greater Houston Transportation Company dba YC & Georgia Stace | Morris, Tanesha | 281st Civil District Court - Harris County | 2020-83778 | Greater Houston Transportation Company |
| OLIVARES, Joshua v Greater San Antonio Transportation Company dba SA YC & Nasim Dawood | Olivares, Joshua | 438th Judicial District Court - Bexar Co. | 2020CC04064 | Greater San Antonio Transportation Company |
| CEPEDA, Jaime H. v. Greater San Antonio Transportation Company dba YC, Brandon R. Jones & Mohamed J Hefny | Cepeda, James | 166th Civil District Court - Bexar Co. | 2020CI03827 | Greater San Antonio Transportation Company |
| KELLY, Jamie v Greater San Antonio Transportation Company, YC of San Antonio & Donald Ward | Kelly, Jamie Yellow Cab Company of San Antonio | 224th Judicial District Court - Bexar Co. | 2020CI08640 | Greater San Antonio Transportation Company |
| MORALES, Jennifer Nicole v Greater San Antonio Transportation Company & Omeidilah Malifecai | Morales, Jennifer | 407th Judicial District Court | 2020CI15058 | Greater San Antonio Transportation Company |
| LORENZANA, Daniela & Stephanie Mendez v Greater San Antonio Transportation Company & Tsegai T. Fisheye | Lorenzana, Daniela Mendez, Stephanie | 57th Judicial District Court - Bexar Co. | 2020CI15264 | Greater San Antonio Transportation Company |
| AMER, Fathia, Yasmeen Ahmen & Eman Altamir v Greater San Antonio Transportation Company & Francisco Rodriguez | Amer, Fathia Ahmed, Yasmeen Altameri, Eman | 150th Judicial District Court - Bexar Co. | 2020CI22663 | Greater San Antonio Transportation Company |
| RODRIGUEZ, Leandra, et al v HALL, Negati H. | Rodriguez, Leandra Lopez, Jr., Robert | Bexar County Civil Court 10 | 2020CV02120 | Greater San Antonio Transportation Company |
| MCGILLIS, Amanda aef Casimo Washington, mirta'r v Greater San Antonio Transportation Company & Tsegai T. Fisheye | McGillis, Amanda | Bexar County Civil Court 3 | 2020CV00733 | Greater San Antonio Transportation Company |
| MONTFORD, John v Greater San Antonio Transportation Company & Azaarudan S. Abdsieh | Montford, John | Bexar County Civil Court 3 | 2020CV01661 | Greater San Antonio Transportation Company |
| GEICO County Mutual Insurance Company v Greater San Antonio Transportation Company & Tagai T. Fisheye | Geico County Mutual Insurance Company | Bexar County Civil Court 10 | 2020CV05552 | Greater San Antonio Transportation Company |
| SIMS, Terence v Greater Houston Transportation Company & Eric Wilkinson | Sims, Terence | 55th Civil District Court - Harris County | 2021-00959 | Greater Houston Transportation Company |
| MAURICE, Becky v Greater Houston Transportation Company & Ntfui Aqbodla | Maurice, Becky | 190th Civil District Court - Harris County | 2021-17540 | Greater Houston Transportation Company |
| PROFET, Curvis v Greater Houston Transportation Company, Mantano Cardoz & Natthew Alan Wakefield | Profit, Curvis, and Charmin, Gray | 165th Civil District Court - Harris County | 2021-17690 | Greater Houston Transportation Company |
| MARMERS, David Tatum v Greater Houston Transportation Company, Carlos Albert Pineda & Durdell J. Murphy | Marmers, David | 127th Civil District Court - Harris County | 2021-20535 | Greater Houston Transportation Company |
| JOINER, Denise v Greater Houston Transportation Company & GRANT, Terrence Jermaine | Joiner, Denise | 215th Civil District Court - Harris County | 2021-22910 | Greater Houston Transportation Company |

| Case | Name | Court | Case Number | Entity |
|---|---|---|---|---|
| SANTOS, Emely v Greater Houston Transportation Company & Chiedu Morah | Santos, Emely | 164th Civil District Court - Harris County | 2021-25607 | Greater Houston Transportation Company |
| BARNES, Erica v Greater Houston Transportation Company aka YC & Tajudeen Abdel Qadodi | Barnes, Erica | 129th Civil District Court - Harris County | 2021-26176 | Greater Houston Transportation Company |
| DEROUSSELLE, Lillian v Greater Houston Transportation Company & Juan Garcia | DEROUSSELLE, Lillian | 55th Civil District Court - Harris County | 2021-28542 | Greater Houston Transportation Company |
| BUGSAGE, Neema v Greater Houston Transportation Company, Steve Harter, Mike Spears, Yaping Zhou & Tarim Keith Stanford | Bugsage, Neema | 164th Civil District Court - Harris County | 2021-35968 | Greater Houston Transportation Company |
| MALONE, Wynell Morris v Greater Houston Transportation Company dba YC | Malone, Wynell Madison, Deidra | 113th Civil District Court - Harris County | 2021-31359 | Greater Houston Transportation Company |
| PRESTON, Lauren v Greater Houston Transportation Company & Bruce Atkins | Preston, Lauren | 80th Civil District Court - Harris County | 2021-32300 | Greater Houston Transportation Company |
| PROGRESSIVE County Mutual Insurance Company v Greater Houston Transportation Company & Taiye | Progressive County Mutual Insurance Company | 55th Civil District Court - Harris County | 2021-32797 | Greater Houston Transportation Company |
| PROGRESSIVE County Mutual Insurance Group v Greater Houston Transportation Company & Taiye | Progressive County Mutual Insurance Company | 55th Civil District Court - Harris County | 2021-34797 | Greater Houston Transportation Company |
| VASQUEZ, Arturo Serrano v Greater Houston Transportation Company & Rene Rolando Barrios City | Vasquez, Arturo | 133rd Civil District Court - Harris County | 2021-35522 | Greater Houston Transportation Company |
| WILLIAMS, Debra v Greater Houston Transportation Company | Williams, Debra | 129th Civil District Court - Harris County | 2021-35723 | Greater Houston Transportation Company |
| RAMON, Victor v Greater San Antonio Transportation Company & Joseph U Nwankor | Ramon, Victor | 131st Judicial District Court - Bexar Co. | 2021CI04623 | Greater San Antonio Transportation Company |
| NAVARRA, Gloria v Greater San Antonio Transportation Company, Metro Transportation Company | NAVARRA, Gloria | 57th Judicial District Court - Bexar Co. | 2021-CI-04422 | Greater San Antonio Transportation Company |
| BANKS, Rose v Greater San Antonio Transportation Company & John Doe | Banks, Rose | 224th Judicial District Court - Bexar Co. | 2021CI05861 | Greater San Antonio Transportation Company |
| ATKINSON, Elizabeth v Greater San Antonio Transportation Company & Samere T Sciumun | Atkinson, Elizabeth | Bexar County Civil Court 3 | 2021CV01539 | Greater San Antonio Transportation Company |
| HERNANDEZ, David v Greater San Antonio Transportation Company & Veronica Dorna | Hernendez, David | Bexar County Civil Court 3 | 2021CV02147 | Greater San Antonio Transportation Company |
| ADE, Grace v Dama Shah Karim Ullah Bin | Ade, Grace | Justice Court, Bexar County, Precinct 2, Place 1 | 2152000112 | Greater San Antonio Transportation Company |
| VASQUEZ, JORGE LUIS v. Rio Grande | Vasquez, Jorge | 398th Judicial District Court | | Texas Fiesta Rio Grande Valley, Inc. |
| HAYS, James v. Emeka Anthony Egbue | HAYS, James | Travis County Court at Law No. 1 | C-1-CV-17-008954 | Greater Austin Transportation Company |

| | | | | |
|---|---|---|---|---|
| SIGAFOIS v Greater Austin Transportation Company dba v. JOHN SOLOMAN, EDUARDO | Sigafois, Daryla | Travis County Court at Law No. 2 | CC-CV-18-001056 | Greater Austin Transportation Company |
| MYNAR, MISTY v ERICDO, Justin & Greater Austin Transportation Company | Mynar, Misty | Travis County Court at Law No. 2 | CC-CV-19-000984 | Greater Austin Transportation Company |
| CARNEY, John Paul v Greater Austin Transportation Company & CARL BARNES | Carney, John | Travis County Court at Law No. 1 | CC-CV-19-001748 | Greater Austin Transportation Company |
| GOODING, William & Miradev v Greater Austin Transportation Company & SHEIKHO, Abdelwaheb | Gooding, William & Miracle | Travis County Court at Law No. 2 | CC-CV-19-005677 | Greater Austin Transportation Company |
| PROGRESSIVE County Mutual v Greater Austin Transportation Company & OMORODSEE, Osman Edogie | Progressive County Mutual Insurance Company | Travis County Court at Law No. 2 | CC-CV-19-010273 | Greater Austin Transportation Company |
| CHARBONNEAU, Coble v. Greater Austin Transportation Company & Wasson Yekele Lemma | Charbonneau, Coble | Travis County Court at Law No. 1 | CC-CV-20-002442 | Greater Austin Transportation Company |
| GEICO Secure Insurance Company v Asm Zaid Desire | Geico Secure Insurance Company | Travis County Court at Law No. 1 | CC-CV-20-003066 | Greater Austin Transportation Company |
| USAA General Indemnity Co. v Greater Austin Transportation Company & Abdelwaheb A. Sheikho | USAA General Indemnity Co. | Travis County Court at Law No. 2 | CC-CV-20-003276 | Greater Austin Transportation Company |
| PROGRESSIVE County Mutual Insurance Company v Greater Austin Transportation Company & Andrews Gonzalez (C-20-3147-A) (175-GC-0418203-3)S218 | Progressive County Mutual Insurance Company | Travis County Court at Law No. 2 | CC-CV-20-005180 | Greater Austin Transportation Company |
| NAVARRO, Gerardo, et al v. Greater Houston Transportation Company, Fiesta Cab Co., & Jonathan Desire | Navarro, Gerardo | Hidalgo County Court at Law No. 1 | CL-20-1547-A | Fiesta Cab Company; Greater Houston Transportation Company |
| STATE FARM Mutual Automobile Insurance Company as Subrogee of Jesus Zamora v Fiesta Cab Co. & Robert Gillie | State Farm Mutual Automobile Insurance Company | Hidalgo Civil Court at Law No. 2 | CL-20-3469-B | Fiesta Cab Company |
| Reynolds, Andrea v. Greater Austin Transportation Company & Williams | Reynolds, Andrea | 150th Judicial District Court- Travis Co. | D-1-GN-15-005778 | Greater Austin Transportation Company |
| Aune, Jeanne v. Greater Austin Transportation Company | Aune, Jeanne | 459th Judicial District Court- Travis Co. | D-1-GN-17000764 | Greater Austin Transportation Company |
| ROMERO/SCHWENSENN v Greater Austin Transportation Company and Appeldoheim BELBHAR | Romero, Oscar Schwensmann, Stephen | 224th Judicial District Court - Bexar Co. | D-1-GN-18-000481 | Greater Austin Transportation Company |
| SCOTTLAND UNDERWOOD v. Greater Austin Transportation Company and Tamer Cruz | Underwood, Scottland | 201st Judicial District Court - Travis Co. | D-1-GN-18-001478 | Greater Austin Transportation Company |
| BALL, Michelle v. TC of AUSTIN & SENATE SOLOMON Masud | Ball, Michelle | 459th Judicial District Court of Travis County | D-1-GN-19-003377 | Greater Austin Transportation Company |
| HAYNES, Donta, ET AL. v Greater Austin Transportation Company & ABDUL WAHAB | Haynes, Donta Thomas, Mack & Rachael | 98th Judicial District Court - Travis Co. | D-1-GN-19-001511 | Greater Austin Transportation Company |
| QUINONES, Nicole v Greater Austin Transportation Company & OHAN, Sajid | Quinones, Nicole | 250th Judicial District Court - Travis Co. | D-1-GN-19-005201 | Greater Austin Transportation Company |

| Style | Party | Court | Case Number | Entity |
|---|---|---|---|---|
| HEREDIA, DEVON v Greater Austin Transportation Company & Kasco (tni) | Heredia, Devon | 250th Judicial District Court - Travis Co. | D-1-GN-19-007354 | Greater Austin Transportation Company |
| IME, Isaota v Greater Austin Transportation Company, ATX Yellow Cab LLC and YCPS | Ime, Isaota | 345th Judicial District Court | D-1-GN-20-000478 | Greater Austin Transportation Company |
| POLK, Lexus v Greater Austin Transportation Company and Sharma Alisa Mohamed | Polk, Lexus | 53rd Judicial District Court | D-1-GN-20-000594 | Greater Austin Transportation Company |
| RODRIGUEZ, Alma Rangel (estate of Felipe Rodriguez) v Greater Austin Transportation Company & Juzece Cesar Chavez | Rodriguez, Alma | 53rd Judicial District Court | D-1-GN-20-002728 | Greater Austin Transportation Company |
| WRIGHT, Tierra & SANCHEZ, Eleanor v Greater Austin Transportation Company & ELAMRANI, Hamid | Wright, Tierra | 98th Judicial District Court | D-1-GN-20-002779 | Greater Austin Transportation Company |
| GREEN, Renee v YCP/DEVINE, Aldwins & Greater Austin Transportation Company | Green, Renee | 53rd Judicial District Court | D-1-GN-20-003285 | Greater Austin Transportation Company |
| PERALOZA, Gerardo & SANCHEZ, Diana v Greater Austin Transportation Company & Jeffac Zanety | Peralosa, Gerardo Sanchez, Diana | 250th Judicial District Court - Travis Co. | D-1-GV20-003382 | Greater Austin Transportation Company |
| MARTINEZ, Leslie & CHAVEZ, Samantha v Greater Austin Transportation Company & DOCANVESRA, Patrick | Martinez, Leslie Chavez, Samantha | 261st Judicial District Court | D-1-GN-20-005573 | Greater Austin Transportation Company |
| CABRERA, Juan Soto v Greater Austin Transportation Company & Berekly Waldegabriel | Cabrera, Juan | 250th Judicial District Court - Travis Co. | D-1-GN-20-006740 | Greater Austin Transportation Company |
| MITCHELL, Samantha v Jarer | MITCHELL, Samantha | Justice of Peace, Precinct 1, Travis County | J1-CV-19-003813 | Greater Austin Transportation Company |
| KNIGHT, Kelley Krista v Greater Austin Transportation Company & Xamran Shah | Knight, Kelley | Justice of Peace, Precinct 2, Travis County | J2-CV-20-000412 | Greater Austin Transportation Company |
| ARMSTRONG, James / JOSEPH v Greater Austin Transportation Company dba YC, BRYAN | Armstrong, James Armstrong, Joseph | 200th Judicial District Court | No. D-1-GN-18-005107 | Greater Austin Transportation Company |
| PROGRESSIVE County Mutual v YC Service Corporation & Mohammed Abrena | Progressive County Mutual Insurance Company | 55th Civil District Court - Harris County | 2019-44457 | Greater Houston Transportation Company |
| PROGRESSIVE County Mutual Insurance Company v Greater Houston Transportation Company & Adewunji Isaac Fajimi | Progressive County Mutual Insurance Company | 157th Civil District Court - Harris County | 2019-41035 | Greater Houston Transportation Company |
| BOSSOM, Craig A v AMIR PASSHAHMAIR and YELLOW | BOSSOM, Craig A. | 333rd Judicial District Court - Harris County | D-1-GN-18-000996 | Greater Houston Transportation Company |
| JORDAN, Jonathan v. MOKHIUL MAMI | Jordan, Jonathan | 151st Civil District Court - Harris County | 2017-24696 | Greater Houston Transportation Company |
| ELLIS, Lonita v. Milton Birmingham and Greater Houston Transportation Company | ELLIS, Lonita | 157th Civil District Court - Harris County | 2018-38441 | Greater Houston Transportation Company |
| SAWEE, George Maquette v. Hamid Benzahed | SAWEE, George Maquette | 270th Civil District Court - Harris County | 2017-75388 | Greater Houston Transportation Company |

| | | | | |
|---|---|---|---|---|
| COUNTEL, Ida v. Greater Houston Transportation Company and Ekitchy | COUNTEL, Ida | 157th Civil District Court - Harris County | 2017-52401 | Greater Houston Transportation Company |
| HAACK, Kimberly v Greater San Antonio Transportation Company & Waleed Kaalsleh | HAACK, Kimberly | 224th Judicial District Court - Bexar Co. | 2020CCI2999 | Greater San Antonio Transportation Company |
| McDONALD, Patricia v. Greater San Antonio Transportation Company & Wirra | McDONALD, Patricia | 438th Judicial District Court - Bexar Co. | 2014CI19532 | Greater San Antonio Transportation Company |
| GEICO County Mutual Insurance Company v Greater Houston Transportation Company & Michael Ubasi | Geico County Mutual Insurance Company | Justice Court, Harris County, Precinct 4, Place 2 | 2141100254383 | Greater Houston Transportation Company |
| BRIDGES, Eleanora v Technicbad Testing | BRIDGES, Eleanora | 152th Civil District Court - Harris County | 2018-50050 | Greater Houston Transportation Company |
| LISCUM, Alexis v Salah Hassan Ismael | LISCUM, Alexis | Harris Co. Court at Law No. 2 | 1128835 | Greater Houston Transportation Company |
| THOMPSON, Jonas v Tiffany Fitzgerald (70775-0874-2018-855) | Thompson, Jonas | Harris Co. Court at Law No. 1 | 1136923 | Greater Houston Transportation Company |

## Schedule 6.1(b) to Asset Purchase Agreement

## Related Agreements

- Asset Purchase Agreement, dated as of the even date of this Agreement, by and between WHC ATX, LLC and Greater Austin Transportation Company

- Asset Purchase Agreement, dated as of the even date of this Agreement, by and between WHC STX, LLC and Greater San Antonio Transportation Company

<u>**Exhibit A to Asset Purchase Agreement**</u>

<u>**Bill of Sale**</u>

[Attached]

## BILL OF SALE

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, each of Texas Taxi, a Texas corporation, Greater Houston Transportation Company, a Texas corporation, Fiesta Cab Company, a Texas corporation, Yellow Cab Paratransit Services, Inc., a Texas corporation, Eagle Executive Transportation Services, Inc., a Texas corporation, Eagle WAV, Inc., a Texas corporation, Hail A Cab App, Inc., a Texas corporation, and Cab Administrative Services, Inc., a Texas corporation (each, a "Seller"), hereby grants, bargains, transfers, sells, assigns, conveys and delivers to WHC HTX, a Texas limited liability company ("Buyer"), all of such Seller's right, title and interest in and to the Purchased Assets as such term is defined in that certain Asset Purchase Agreement, dated as of [   ], 2021 (the "Purchase Agreement"), by and among Buyer and Sellers, to have and to hold the same unto Buyer, its successors and assigns, forever.

Each Seller agrees that the representations and warranties of the Seller in Article III of the Purchase Agreement apply to this Bill of Sale.

This Bill of Sale will inure to the benefit of and will bind each Seller and its successors and assigns.

IN WITNESS WHEREOF, THE UNDERSIGNED PARTIES HAVE DULY EXECUTED THIS BILL OF SALE AS OF [   ], 2021.

**WHC HTX, LLC,**
By: WHC Worldwide, LLC, as sole member

By:_____
William M. George, as Managing Member


**TEXAS TAXI, INC.**

By:_____
Name:
Title:

**GREATER HOUSTON TRANSPORTATION COMPANY**

By:_____
Name:
Title:


**FIESTA CAB COMPANY**

By:_____
Name:
Title:

80

**YELLOW CAB PARATRANSIT SERVICES, INC.**

By:_____
Name:
Title:

**EAGLE EXECUTIVE TRANSPORTATION SERVICES, INC.**

By:_____
Name:
Title:

**EAGLE WAV, INC.**

By:_____
Name:
Title:

**HAIL A CAB APP, INC.**

By:_____
Name:
Title:

**CAB ADMINISTRATIVE SERVICES, INC.**

By:_____
Name:
Title:

**<u>Exhibit B to Asset Purchase Agreement</u>**

**<u>Assignment</u>**

[Attached]

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement ("Agreement") is made effective as of [    ], 2021, between Greater Houston Transportation Company, a Texas corporation and Fiesta Cab Company, a Texas corporation (each, an "Assignor"), and WHC HTX, LLC, a Texas limited liability company ("Assignee").

WHEREAS, each Assignor and Assignee are parties to that certain Asset Purchase Agreement dated as of [    ], 2021("Purchase Agreement"); and

WHEREAS, each Assignor desires to assign, transfer, convey and deliver to Assignee all of the Assignor's right, title and interest in and to the Assumed Contracts as defined in the Purchase Agreement and Assignee desires to accept such assignment, transfer and conveyance, all pursuant to the terms and provisions hereof.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby act and agree as follows:

1.      Assignment and Assumption. Each Assignor hereby irrevocably assigns, transfers, conveys and delivers to Assignee all of the Assignor's right, title and interest in and to Assumed Contracts, effective as of the Closing. Assignee hereby accepts the assignment and assumes all duties, obligations and liabilities of Assignor arising under the Assumed Contracts from and after the Closing.

2.      Miscellaneous. Capitalized terms used herein but not otherwise defined shall have the meaning assigned to such terms in the Purchase Agreement. This Agreement may be executed in counterparts. This Agreement shall be binding upon and inure to the benefit of the parties and their successors, legal representatives and permitted assigns. This Agreement shall be governed by the laws the State of Texas, without regard to the conflict of laws principles thereof.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement or caused this Agreement to be duly executed on their respective behalf, by their respective officers thereunto duly authorized, all as of the day and year first above written.

**WHC HTX, LLC,**
By: WHC Worldwide, LLC, as sole member

By:_____
        William M. George, as Managing Member

**GREATER HOUSTON TRANSPORTATION COMPANY**

By:_____
Name:
Title:

**FIESTA CAB COMPANY**

By:_____
Name:
Title:

**Exhibit C to Asset Purchase Agreement**

**Bill of Sale (Vehicles) with Silver Lining Motors, LLC**

[Attached]

## BILL OF SALE
## (VEHICLES)

In consideration for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Greater Houston Transportation Company, a Texas corporation ("Seller"), hereby grants, bargains, transfers, sells, assigns, conveys and delivers to Silver Lining Motors, LLC, a Missouri limited liability company ("Buyer"), all of such Seller's right, title and interest in and to the vehicles listed on Exhibit A to this Bill of Sale.

This Bill of Sale is being executed and delivered by the undersigned parties as a condition to and in connection with the closing of the Asset Purchase Agreement, dated [     ], 2021, by and between Seller and WHC HTX, LLC("Purchase Agreement").

Seller agrees that the representations and warranties of Seller in Article III of the Purchase Agreement apply to this Bill of Sale, and the Purchase Agreement is incorporated herein for said purpose.

This Bill of Sale will inure to the benefit of and will bind the Seller and its successors and assigns.

**SILVER LINING MOTORS, LLC**,
By: WHC Worldwide, LLC, as sole member


By:_____
        William M. George, as Managing Member


**GREATER HOUSTON TRANSPORTATION COMPANY**


By:_____
Name:
Title:

85

**Exhibit A to Bill of Sale (Vehicles)**

| Vehicle Year | Vehicle Make | Vehicle Model | VIN | Vehicle Plate Number | Odometer Current |
|---|---|---|---|---|---|
| 2017 | DODGE | CARAVAN | 2C4RDGBG5HR855695 | KKN7888 | 156453 |
| 2017 | DODGE | CARAVAN | 2C4RDGBG7HR855696 | KKN7887 | 124536 |
| 2016 | DODGE | CARAVAN | 2C7WDGBG7GR144231 | GTL3950 | 87687 |
| 2016 | DODGE | CARAVAN | 2C7WDGBG9GR144229 | GTL4318 | 98078 |
| 2011 | TOYOTA | SIENNA | 5TDKK3DC8BS101280 | DM1G649 | 300161 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG6GR255735 | | 89099 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG8GR170640 | | 56745 |
| 2014 | TOYOTA | SCION | JTLZE4FE1EJ057526 | | 189636 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG4ER320271 | | 339002 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG5ER121729 | FLV6145 | 272795 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG4ER119731 | FGK7014 | 217165 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG9DR522090 | DTB1006 | 376975 |
| 2014 | TOYOTA | SCION | JTLZE4FE9EJ062604 | PGR8705 | 165583 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG5ER243365 | MPR5931 | 212435 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG2GR152754 | GWK7361 | 324040 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG2ER267537 | FNT0887 | 273140 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG3KR547612 | MBW0806 | 104775 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG8ER209903 | FNT0800 | 207408 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG6FR642905 | GLR5026 | 189300 |
| 2015 | TOYOTA | SCION | JTLZE4FE7EJ065193 | FJL7452 | 249010 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG3GR152732 | GWK7360 | 303255 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG3ER214623 | LYL7120 | 275042 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG8ER213840 | FJJ2150 | 268410 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG1DR502542 | CMX4544 | 364547 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG7DR585197 | HTD3893 | 296448 |
| 2019 | DODGE | W/C VAN | 2C4RDGBGXKB754366 | MVG4527 | 88303 |
| 2019 | DODGE | W/C VAN | 2C4RDGBGXKR500416 | LLF0662 | 141013 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG9FR652165 | GLM9964 | 299678 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG6ER264576 | LHY0900 | 186365 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG6GR203215 | NG1363 | 117291 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG5KR500694 | LLF0661 | 145380 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG8GR140138 | GWK8557 | 128775 |
| 2016 | DODGE | CARAVAN | 2C7WDGBG6GR144219 | GWK7587 | 328008 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG9ER205830 | DZS4319 | 325592 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG0GR152753 | GTL3467 | 176207 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG0GR161906 | GWK7585 | 187036 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG2DR612130 | DXB5205 | 322176 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG8KR547704 | LTM3116 | 141825 |
| 2017 | DODGE | W/C VAN | 2C7WDGBGXHR641212 | JGS2257 | 248221 |
| 2015 | DODGE | W/C VAN | 2C7WDGBGXFR642910 | GWK6045 | 68953 |

86

| | | | | | |
|---|---|---|---|---|---|
| 2015 | DODGE | W/C VAN | 2C7WDGBG6FR642922 | LCW3982 | 154163 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG6FR652172 | GLR5025 | 126041 |
| 2013 | DODGE | CARAVAN | 2C4RDGBG2DR632843 | JGL3285 | 207185 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG0GR144300 | GWK7799 | 167499 |
| 2016 | DODGE | W/C VAN | 2C7WDGBGXGR144224 | GTL3468 | 284080 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG9DR610763 | DXB5206 | 236565 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG4DR550469 | CWS3209 | 184159 |
| 2016 | DODGE | W/C VAN | 2C7WDGBGXGR152727 | GWK7774 | 42950 |
| 2014 | DODGE | CARAVAN | 2C4RDGBGXER214618 | LWG4850 | 297915 |
| 2016 | DODGE | W/C VAN | 2C7WDGBGXGR161900 | GWK7775 | 194856 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG7DR520365 | CWS3202 | 394270 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG2ER433444 | HTD3575 | 150652 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG3ER155569 | DZS4856 | 305846 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG6DR520390 | CMX4663 | 305863 |
| 2017 | DODGE | W/C VAN | 2C7WDGBG0HR641204 | JGS2258 | 226233 |
| 2014 | DODGE | W/C VAN | 2C4RDGCG3ER244784 | FYP7728 | 218893 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG2ER433430 | HTD3578 | 185014 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG0DR610554 | DXB5198 | 225477 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG3GR243364 | PMC2452 | 233198 |
| 2014 | DODGE | CARAVAN | 2CRRDGCG5ER155458 | FLV6453 | 325361 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG4GR152741 | GWK8942 | 129095 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG7GR140132 | GWK8941 | 265658 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG8ER214620 | LWG4852 | 235835 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG4ER214337 | FLV6147 | 323432 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG4ER214621 | LWG4855 | 296428 |
| 2017 | DODGE | W/C VAN | 2C7WDGBG9HR641203 | JGS2255 | 248759 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG4HR776549 | KBG2735 | 219352 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG7DR524609 | CMX4668 | 424819 |
| 2013 | DODGE | CARAVAN | 2C4RDGBGXDR632854 | JGL3286 | 213937 |
| 2017 | DODGE | W/C VAN | 2C7WDGBG5HR641201 | JGS2403 | 41752 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG8DR626226 | DXB4604 | 335013 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG5DR503029 | CWS4911 | 121915 |
| 2011 | FORD | CROWN VIC | 2FABP7EV4BX139026 | DS2P213 | 273111 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG1KR500692 | LKW8443 | 157580 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG1ER155361 | FGK7033 | 251149 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG5ER205484 | FLV6142 | 242355 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG5ER470939 | HTD3577 | 160982 |
| 2013 | DODGE | CARAVAN | 2C4RDGBG3DR518601 | JFM5023 | 238537 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG4KR547652 | PMC1840 | 120515 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG6FR642919 | GLM8682 | 248794 |
| 2017 | DODGE | W/C VAN | 2C7WDGBG8HR641189 | JGS2256 | 126609 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG0GR152736 | GTL3949 | 162415 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG7KR547659 | LTT6510 | 109863 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG6ER433446 | HTD3579 | 273081 |

87

| 2015 | DODGE | W/C VAN | 2C7WDGBGXFR642907 | GTD7184 | 180514 |
|------|-------|---------|-------------------|---------|--------|
| 2013 | DODGE | CARAVAN | 2C4RDGBG0DR518605 | JFM5024 | 330056 |
| 2016 | DODGE | W/C VAN | 2C7WDGBGXGR144305 | HDN0214 | 137882 |
| 2016 | DODGE | W/C VAN | 2C4RDGBG7GR170628 | PDC5397 | 193016 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG5GR136872 | GTL3332 | 132750 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG1ER214622 | LWG4856 | 281661 |
| 2012 | DODGE | CARAVAN | 2C4RDGCG8CR198687 | BLS0872 | 392387 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG3GR140130 | GTL 3929 | 314348 |
| 2017 | DODGE | W/C VAN | 2C7WDGBG6HR641188 | JGS2254 | 143773 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG6FR636537 | GLM9449 | 189500 |
| 2017 | DODGE | W/C VAN | 2C7WDGBG0HR641199 | JGS2839 | 235640 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG5DR551517 | CWP0856 | 223610 |
| 2019 | DODGE | W/C VAN | 2C4RDGBGXKR754370 | MVG4521 | 83821 |
| 2019 | DODGE | CARAVAN | 2C4RDGBG3KR547593 | LTT6509 | 169478 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG3FR652176 | GWK6040 | 303153 |
| 2017 | DODGE | W/C VAN | 2C7WDGBG9HR641198 | JGS2259 | 244710 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG2DR582563 | CRJ1123 | 489874 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG9GR203211 | MVP6053 | 220919 |
| 2015 | DODGE | CARAVAN | 2C4RDGCG9FR603749 | HGD6972 | 259375 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG1KR547592 | LTT6508 | 138139 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG7FR652181 | GTD7386 | 202477 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG0KR547678 | MPR5574 | 99998 |
| 2012 | DODGE | CARAVAN | 2C4RDGCG6CR329244 | BRX0595 | 276012 |
| 2012 | DODGE | CARAVAN | 2C4RDGCG2CR219310 | BVC7481 | 333409 |
| 2012 | DODGE | CARAVAN | 2C4RDGDG1CR341154 | LLL6604 | 98074 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG8DR523954 | CND6067 | 300964 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG9FR642901 | GLM9450 | 105434 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG4ER153801 | FGK7031 | 238954 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG2DR502527 | CWS3040 | 172675 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG2ER273791 | FNT0892 | 227100 |
| 2015 | DODGE | CARAVAN | 2C4RDGBG9FR709927 | HBS1173 | 270677 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG1GR161896 | GTL4316 | 184894 |
| 2012 | DODGE | W/C VAN | 2C4RDGCG0CR364684 | DSL1023 | 415274 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG3KR547609 | MBW0972 | 76546 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG8FR636538 | GTD7192 | 246180 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG0KR727596 | NBB8338 | 45646 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG8DR527499 | CND5341 | 302914 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG7DR521581 | CTJ8944 | 218274 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG9GR235835 | MHS1198 | 231442 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG2ER205359 | FGK7331 | 266455 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG8DR520357 | CWP0901 | 417766 |
| 2014 | DODGE | CARAVAN | 2C4RDGCGXER155164 | FDZ7195 | 234000 |
| 2016 | DODGE | W/CHAIR VAN | 2C4RDGBG0GR203209 | MHS1527 | 226406 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG6DR521569 | DSL1021 | 278807 |

| | | | | | |
|---|---|---|---|---|---|
| 2015 | DODGE | W/C VAN | 2C7WDGBGXFR636539 | GWK6041 | 134186 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG5ER154665 | FJN9270 | 253699 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG1ER291229 | FNT0805 | 195818 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG7ER206197 | FNT0646 | 229191 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG4HR637716 | JMC2213 | 239220 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG2KR547648 | MPR5572 | 91439 |
| 2019 | DODGE | W/C VAN | 2C4RDGBGXKR547672 | LNY5029 | 119214 |
| 2012 | DODGE | CARAVAN | 2C4RDGCG7CR357442 | BXX6937 | 304685 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG4FR642904 | GRH9291 | 131737 |
| 2014 | DODGE | CARAVAN | 2C4RDGCGXER205710 | FNT0647 | 282543 |
| 2019 | DODGE | W/C VAN | 2C4RDGBGXKR547655 | LNY4291 | 128915 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG4ER322635 | FNT0830 | 278828 |
| 2014 | DODGE | CARAVAN | 2C4RDGCGXER121421 | FNT0976 | 178440 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG9HR637713 | JMC2212 | 213746 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG2GR144301 | GTL3466 | 169069 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG1KR530646 | LLF1569 | 152760 |
| 2011 | MERCURY | MARQUIS | 2MEBM7FV4BX600726 | LTL9259 | 342582 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG6GR144303 | HBC3546 | 275388 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG7DR549932 | CWP0354 | 284117 |
| 2017 | DODGE | W/C VAN | 2C4RDGBGXHR637722 | JMC2214 | 217816 |
| 2019 | DODGE | W/C VAN | 2C4RDGBGXKR530645 | LLF1568 | 128248 |
| 2014 | DODGE | W/C VAN | 2C4RDGCG2ER122840 | LTV2800 | 233480 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG7FR642914 | GTD7191 | 151489 |
| 2014 | DODGE | CARAVAN | 2CRRDGCGXER214441 | FLV6131 | 311025 |
| 2012 | DODGE | CARAVAN | 2C4RDGCG4CR160907 | BVC6672 | 329656 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG9DR575805 | CTJ9293 | 252980 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG0ER154587 | FNT0645 | 242349 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG4FR642918 | GTD7190 | 298632 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG0ER205635 | FCR7527 | 144188 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG0DR544085 | CTJ9612 | 262269 |
| 2014 | DODGE | W/C VAN | 2C4RDGBG3ER210636 | LGW4771 | 278878 |
| 2017 | DODGE | W/C VAN | 2C4RDGBGXHR637719 | JMC1854 | 236750 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG0ER412169 | HDT3892 | 239890 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG7GR235817 | MVP6051 | 206890 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG9HR637730 | JMC1845 | 148403 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG9DR520240 | CWS4733 | 291028 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG9HR637727 | JMC1846 | 229103 |
| 2014 | TOYOTA | SCION | JTLZE4FE0EJ063771 | PGR8704 | 211297 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG1KR547673 | LNY4290 | 115445 |
| 2017 | DODGE | W/C VAN | 2C7WDGBG1HR648565 | JMC1844 | 233912 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG8GR161894 | GTL3112 | 144720 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG3HR700871 | JPC4400 | 244934 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG2KR547617 | LNY5028 | 146098 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG7ER205468 | FDZ7708 | 173739 |

89

| 2017 | DODGE | W/C VAN | 2C4RDGBG5HR700869 | JPC4401 | 225137 |
|------|-------|---------|-------------------|---------|--------|
| 2017 | DODGE | W/C VAN | 2C4RDGBG7HR700873 | JPC3699 | 238770 |
| 2014 | DODGE | CARAVAN | 2CRRDGCG8ER209707 | FLV6132 | 302025 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG6ER206028 | FJJ1089 | 283753 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG1HR700870 | JPC4826 | 244661 |
| 2016 | TOYOTA | W/C VAN | 2C7WDGBG5GR144311 | HBC3562 | 312579 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG4FR642921 | GRH9297 | 176638 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG9ER179845 | LHY0901 | 67110 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG4GR144297 | HDN0490 | 74574 |
| 2019 | DODGE | WC VAN | 2C4RDGBG5KR547644 | MPR5933 | 43090 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG8FR642923 | GRH9298 | 167584 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG7GR152765 | PCV5317 | 325785 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG1KR547608 | MBW0974 | 117485 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG6GR152756 | HDN0213 | 181199 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG8ER153543 | FGK7441 | 279536 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG7FR652164 | GRH9292 | 192631 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG2GR152737 | GWK8551 | 164372 |
| 2014 | DODGE | W/C VAN | 2C4RDGCG7ER120128 | DZS4295 | 244093 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG9ER205794 | FJJ1458 | 198942 |
| 2014 | DODGE | CARAVAN | 2CRRDGCGER206411 | FLV6138 | 158826 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG8FR642906 | GWK6039 | 293314 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG5KR547613 | MBW0337 | 40989 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG1GR152728 | GTL4083 | 90845 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG5GR161898 | GTL4082 | 319813 |
| 2015 | DODGE | W/C VAN | 2C7EDGBG8FR652173 | GRH9290 | 145673 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG8ER205575 | FLV6459 | 313502 |
| 2014 | DODGE | W/C VAN | 2C4RDGBG4ER105460 | FGF5024 | 269808 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG7GR136873 | GWK6046 | 142050 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG1DR528073 | CZC3595 | 354671 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG9FR642915 | GLM8683 | 133428 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG5GR218045 | MMM4714 | 254584 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG7GR140146 | MVG6162 | 128867 |
| 2019 | DODGE | CARAVAN | 2C4RDGBG4KR727598 | MPW4656 | 91742 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG2KR547651 | LJM9596 | 84398 |
| 2014 | DODGE | W/C VAN | 2C4RDGCGXER155374 | DZS5480 | 347901 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG9GR152766 | HDN0036 | 122253 |
| 2014 | DODGE | W/C VAN | 2C4RDGCG9ER120518 | DZS4857 | 239654 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG4KR547599 | LJM9597 | 136302 |
| 2012 | DODGE | CARAVAN | 2C4RDGCG3CR277359 | BVC6973 | 302216 |
| 2013 | DODGE | CARAVAN | 2C4RDGCGXDR520361 | BXX8867 | 299963 |
| 2014 | DODGE | W/C VAN | 2C4RDGBG7ER254770 | DSZ0561 | 254455 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG3GR385364 | HVS2522 | 136933 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG2GR144220 | GTL3951 | 21983 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG6GR385357 | HVS2523 | 80197 |

90

| Year | Make | Model | VIN | Plate | Mileage |
|------|------|-------|-----|-------|---------|
| 2015 | DODGE | W/C VAN | 2C7WDGBGXFR652174 | GTD7275 | 302560 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG7GR152734 | GWK8709 | 162665 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG9GR152739 | GTD7379 | 199940 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG4ER289040 | NBJ1506 | 306287 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG5GR140131 | GTL4081 | 105676 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG1HR700867 | JPC4408 | 240880 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG3KR547688 | LTM3115 | 132586 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG4ER122046 | DZS4318 | 254228 |
| 2014 | DODGE | CARAVAN | 2C4RDGCGXER206632 | FLV6135 | 195074 |
| 2017 | DODGE | W/C VAN | 2C4RDGBGXHR700866 | JPC4407 | 76473 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG1DR536593 | BXX6100 | 300663 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG1DR678684 | GCX7793 | 381375 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG9KR547680 | MPW4653 | 84398 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG3ER267093 | FNT0826 | 153894 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG0GR235819 | NZG1371 | 127132 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG0ER154055 | FJJ2094 | 169862 |
| 2014 | DODGE | WC VAN | 2C4RDGCG9ER213104 | GCX7667 | 207289 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG9GR140147 | HDN0209 | 156581 |
| 2014 | DODGE | W/C VAN | 2C4RDGCG2ER266873 | FYP7727 | 121760 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG1GR235828 | MMS2240 | 185908 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG7ER210638 | MHL7432 | 279946 |
| 2019 | DODGE | CARAVAN | 2C4RDGBG0KR530640 | LLF1361 | 117485 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG8GR144304 | HDN0035 | 275013 |
| 2016 | DODGE | CARAVAN | 2C4RDGBGXGR235827 | MPR5932 | 201363 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG2KR765900 | NBB8339 | 104572 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG5GR140145 | HDN0494 | 160509 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG3GR161897 | GWK8940 | 131254 |
| 2016 | DODGE | CARAVAN | 2C4RDGBGXGR243362 | NZG1373 | 96634 |
| 2011 | FORD | CROWN VIC | 2FABP7EV6BX139075 | DS2N875 | 371354 |
| 2016 | DODGE | W/C VAN | 2C7WDGBGXGR385359 | HSL0979 | 45890 |
| 2019 | DODGE | W/C VAN | 2C4RDGBGXKR765899 | NBB8686 | 64760 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG0DR522054 | CWP0346 | 352531 |
| 2017 | DODGE | W/C VAN | 2C7WDGBG8HR641192 | JSY9971 | 231131 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG6KR765902 | NBB8340 | 46118 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG6HR758781 | JXT7929 | 224647 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG9GR136874 | GTD7381 | 202503 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG7HR758787 | JSY9935 | 246271 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG2HR758793 | JSY9933 | 239554 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG1KR547625 | LYL4834 | 128134 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG6HR758790 | JMB9285 | 111676 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG6HR758795 | JSY9934 | 222850 |
| 2018 | DODGE | W/C VAN | 2C4RDGBG9JR216757 | LJL0136 | 12325 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG9GR385353 | HSL0980 | 232270 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG3GR385350 | MKL2470 | 272776 |

| 2017 | DODGE | W/C VAN | 2C4RDGBG1HR758784 | JMB9283 | 204600 |
|---|---|---|---|---|---|
| 2016 | DODGE | W/C VAN | 2C4RDGBG4GR170635 | NZG1366 | 178121 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG6ER205414 | JMB9163 | 342342 |
| 2016 | DODGE | W/C VAN | 2C4RDGBG5GR170627 | NZG1370 | 179194 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG2GR385341 | HVS3628 | 146405 |
| 2015 | DODGE | W/C VAN | 2C7WDGBGXFR642924 | GTD7274 | 185601 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG3DR521397 | CMX4904 | 236234 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG7KR547645 | LYL4835 | 120590 |
| 2014 | CHRYSLER | TOWN & COUNTRY | 2C4RC1BG4ER440797 | GNF0906 | 202115 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG6HR776536 | KBG2264 | 186362 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG5ER205856 | FNT0891 | 239210 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG2DR626397 | DRN9090 | 272262 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG3ER121597 | FJN9289 | 312952 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG3KR754372 | MVG4660 | 71506 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG5GR152733 | GWK8539 | 136873 |
| 2016 | DODGE | W/C VAN | 2C4RDGBG2GR170634 | PRJ3142 | 107963 |
| 2014 | DODGE | CARAVAN | 2C4RDGCGXER155889 | FNT0829 | 237396 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG8GR385344 | HVM2234 | 122897 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG4FR642899 | GTD7182 | 111557 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG8DR520388 | DRN9130 | 289784 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG9ER290930 | KMW4090 | 170810 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG7GR385349 | HZP8201 | 79928 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG8DR582101 | LTM3924 | 190005 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG4GR144302 | HDN0021 | 18914 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG2ER122336 | FLV6451 | 296739 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG2GR243369 | NZG1361 | 121639 |
| 2016 | DODGE | W/C VAN | 2C7WDGBGXGR385345 | HZP7341 | 148297 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG2FR652170 | GTD7380 | 77798 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG6GR385343 | HZP7340 | 131075 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG4GR152738 | GWK8538 | 123067 |
| 2014 | DODGE | W/C VAN | 2C4RDGBG2ER296392 | DZW6323 | 240671 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG4ER153782 | FNT0978 | 134895 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG1GR152731 | GWK8550 | 138763 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG4KR754574 | MVG4508 | 37348 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG6GR140137 | GWK7359 | 155674 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG8DR591218 | CTJ9901 | 302100 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG7GR385352 | HZP7478 | 210269 |
| 2018 | DODGE | CARAVAN/WHEEL CHAIR | 2C4RDGBG5JR250985 | KXT1906 | 116200 |
| 2018 | DODGE | W/C VAN | 2C4RDGBG2JR303660 | LJL0135 | 95393 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG2GR385355 | HVS3630 | 107075 |
| 2018 | DODGE | W/C VAN | 2C4RDGBG0JR255964 | KXT1636 | 158229 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG6GR144298 | HDN0034 | 295443 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG3FR642912 | GTD7385 | 292585 |

92

| | | | | | |
|---|---|---|---|---|---|
| 2016 | DODGE | W/C VAN | 2C7WDGBG3GR136871 | NBJ1040 | 304597 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG5GR385351 | HZP7387 | 247908 |
| 2016 | DODGE | W/C VAN | 2C7WDGB5GR144230 | GWK6743 | 191320 |
| 2019 | DODGE | W/C VAN | 2C4RDGBGXKR547638 | MBW0338 | 105793 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG6GR385360 | HZP7477 | 89296 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG4GR385356 | HVS2524 | 119063 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG9KR754571 | MVG4511 | 87568 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG4DR521683 | MXM1019 | 218964 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG5GR385348 | HZP7339 | 207372 |
| 2013 | DODGE | VAN | 2C4RDGCG9DR521386 | CND4585 | 262716 |
| 2018 | DODGE | W/C VAN | 2C4RDGBG4JR255966 | KXT1635 | 143649 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG6HR768050 | JXN3431 | 206145 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG8HR776554 | JXN3432 | 80622 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG2GR140135 | GWK6272 | 166535 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG7KR754570 | MVG4519 | 89707 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG4DR550679 | BVC6145 | 227807 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG3GR144226 | GTL3928 | 302748 |
| 2017 | DODGE | W/C VAN | 2C4RDGBG5HR776544 | KBG2736 | 207373 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG2GR161907 | HDN0022 | 17216 |
| 2012 | DODGE | CARAVAN | 2C4RDGBG1CR205799 | LLL6603 | 77550 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG7GR203224 | MGV4507 | 218216 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG9DR685382 | GCX8143 | 248254 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG3KR754369 | MVG4522 | 73961 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG3FR642909 | GTD7273 | 185113 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG4GR144221 | GTL3927 | 170330 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG1ER154792 | FLV6348 | 212541 |
| 2016 | DODGE | W/C VAN | 2C7WDGBGXGR161895 | GWK7773 | 80437 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG4GR152755 | HDN0164 | 164856 |
| 2014 | DODGE | W/C VAN | 2C4RDGBG9ER296387 | DZW6324 | 254745 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG2GR152740 | GWK8735 | 174998 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG6DR549596 | CWS2843 | 234535 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG2FR642920 | GTD7284 | 171909 |
| 2016 | DODGE | W/C VAN | 2C7WDGBGXGR385362 | HZP8202 | 233608 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG2FR642917 | GTD7183 | 139677 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG2GR144296 | GWK6742 | 138859 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG0GR140148 | GWK6271 | 196211 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG4GR385342 | HZP7476 | 73100 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG2ER155899 | FYM0711 | 266180 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG2FR652167 | GTD7262 | 181948 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG7DR521015 | BXX8861 | 286870 |
| 2018 | DODGE | W/C VAN | 2C4RDGBG9JR347462 | LJL0774 | 152117 |
| 2018 | DODGE | W/C VAN | 2C4RDGBG2JR347464 | LJK9749 | 138630 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG2KR530638 | LLF1362 | 155087 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG4KR530639 | LKW8444 | 120035 |

| | | | | | |
|---|---|---|---|---|---|
| 2016 | DODGE | W/C VAN | 2C7WDGBG3GR144310 | HDN0492 | 200299 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG9GR161905 | HDN0165 | 160819 |
| 2018 | DODGE | W/C VAN | 2C4RDGBGXJR303664 | LJL0775 | 131083 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG4KR765901 | PCV5318 | 65594 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG2KR754363 | MVG4529 | 38342 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG0GR144295 | GWK6744 | 123326 |
| 2014 | DODGE | W/C VAN | 2C4RDGBG0ER254772 | DZW6322 | 227981 |
| 2015 | DODGE | W/C VAN | 2C7WDGBG1FR652175 | MMS1339 | 163747 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG3GR144307 | HDN0493 | 302319 |
| 2013 | DODGE | CARAVAN | 2C4RDGCGXDR522532 | KPJ6047 | 152152 |
| 2016 | DODGE | W/C VAN | 2C7WDGBG3GR152763 | HDN0166 | 163748 |
| 2018 | DODGE | W/C VAN | 2C4RDGBGXJR255972 | KXT1634 | 154897 |
| 2018 | DODGE | CARAVAN | 2C4RDGBG1JR303665 | LJL0134 | 107298 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG6KR754379 | MVG4520 | 27805 |
| 2019 | DODGE | W/C VAN | 2C4RDGBG6KR754572 | MVG4510 | 85650 |
| 2011 | MERCURY | MARQUIS | 2MEBM7FV5BX601271 | DB2L881 | 351780 |
| 2013 | DODGE | G.CARAVAN | 2C4RDGCG6DR521393 | CMX4120 | 301021 |
| 2015 | CHRYSLER | 300 | 2C3CCAAG6FH755345 | GNF1206 | 312297 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG3ER154051 | FJJ2098 | 328469 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG0DR521678 | CMX3617 | 340994 |
| 2014 | DODGE | CARAVAN | 2CRRDGCG2ER152999 | FLV6128 | 392844 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG5ER401930 | MMR4568 | 157679 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG8GR370384 | NKG0762 | 177485 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG0GR243371 | MMR4255 | 191496 |
| 2017 | DODGE | CARAVAN | 2C4RDGBG2HR566435 | NBC1124 | 118076 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG8ER266926 | FNT0807 | 211975 |
| 2016 | DODGE | CARAVAN | 2C4RDGBGXGR243376 | MMS2239 | 222823 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG2ER205474 | DZS4211 | 271490 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG1ER273622 | FGK7016 | 244287 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG6ER153377 | KDK8261 | 205645 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG2DR611172 | DXB5250 | 407189 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG0ER179846 | PRH2996 | 199038 |
| 2014 | GMC | YUKON | 1GKS1KE0XER237936 | KPK4981 | 360354 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG5GR235833 | MMP7647 | 215454 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG7ER182256 | FNT0827 | 371068 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG8ER267400 | FLV6450 | 191146 |
| 2015 | GMC | YUKON | 1GKS1HKC3FR126454 | DGG8649 | 356010 |
| 2013 | TOYOTA | W/C VAN | 5TDZK3DC5DS368362 | CRK8406 | 308011 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG5ER352650 | LHY0490 | 163610 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG7ER128472 | FLV6141 | 233202 |
| 2015 | DODGE | CARAVAN | 2C4RDGCG0FR603817 | HGD6973 | 186708 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG7GR235820 | NZG1362 | 137891 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG8ER120171 | DZS4311 | 367291 |
| 2014 | CHEVY | TAHOE | 1GNSCBE0XER240462 | FCR7633 | 300131 |

94

| | | | | | |
|---|---|---|---|---|---|
| 2014 | DODGE | CARAVAN W/C | 2C4RDGBG2ER210630 | LWG4873 | 288946 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG3ER120997 | HSK8589 | 268420 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG0GR203226 | MMR4253 | 332596 |
| 2015 | CHRYSLER | 300 | 2C3CCAAGXFH792107 | HBS1352 | 399425 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG6ER210063 | FLV6452 | 344783 |
| 2019 | DODGE | CARAVAN | 2C4RDGBGXKB754367 | MNG4523 | 95135 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG9ER155690 | GKN5030 | 256270 |
| 2014 | DODGE | CARAVAN W/C | 2C4RDGBG9ER210639 | LYL7121 | 271594 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG6DR591377 | LHY0906 | 187405 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG1GR203218 | MHS1199 | 236597 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG6ER266651 | FDZ7723 | 413026 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG2GR218049 | MHL7885 | 214032 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG7ER205244 | FDZ7721 | 277723 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG8ER206189 | FGK7426 | 358277 |
| 2015 | DODGE | CARAVAN | 2C4RDGCG9FR548042 | HGD6974 | 308549 |
| 2013 | TOYOTA | W/C VAN | 5TDZK3DC7DS352342 | CDJ5867 | 456464 |
| 2013 | CHEVY | SUBURBAN | 1GNSCJE04DR272204 | CWS4329 | 403260 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG8ER267493 | FNT0824 | 411557 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG1ER182267 | FGK7427 | 379526 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG4ER154429 | FJJ2091 | 337185 |
| 2015 | DODGE | CARAVAN | 2C4RDGBG7FR709425 | GXD2708 | 237269 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG0ER155836 | FJJ2092 | 175846 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG5GR235816 | MMS2237 | 228046 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG6ER267735 | FNT0906 | 291151 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG7ER154733 | FNT0890 | 280718 |
| 2015 | DODGE | CARAVAN | 2C4RDGBG2FR710210 | GXD2666 | 271805 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG2ER183945 | LPX0703 | 168583 |
| 2018 | TOYOTA | SIENNA WC | 5TDKZ3DCXJS903193 | MMV1149 | 122918 |
| 2014 | DODGE | W/C VAN | 2C4RDGCG1ER153383 | DZS4297 | 356412 |
| 2014 | CHEVY | SUBURBAN | 1GNSCJE02ER236531 | FNT0979 | 312127 |
| 2014 | CHRYSLER | 300 | 2C3CCAAG9EH189163 | PKL5995 | 271608 |
| 2019 | DODGE | CARAVAN | 2C4RDGBG9KR754375 | NBB9273 | 61628 |
| 2017 | DODGE | CARAVAN | 2C4RDGBG0HR611811 | NKG1033 | 162712 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG4ER471015 | HBS1349 | 386965 |
| 2019 | DODGE | CARAVAN | 2C4RDGBG3KR547657 | LYL4833 | 116878 |
| 2013 | DODGE | CARAVAN | 2C4RDGBG9DR765167 | LHY0491 | 163381 |
| 2014 | DODGE | CARAVAN | 2C4RDGCGXER205822 | FGK7789 | 397838 |
| 2016 | DODGE | W/C VAN | 2C4RDGBG3GR170626 | NZG1369 | 190241 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG4GR235824 | MMP7648 | 199508 |
| 2015 | DODGE | CARAVAN | 2C4RDGCG9FR710025 | GNF0905 | 274064 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG8GR243361 | MHL7163 | 172464 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG6GR243360 | MHS1528 | 244727 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG9ER214401 | MHM0078 | 277111 |
| 2012 | TOYOTA | W/C VAN | 5TDZK3DC3CS257405 | BCY8860 | 374707 |

95

| 2013 | LINCOLN | MKS | 1LNHL9DK9DG602642 | LLL6853 | 168825 |
|------|---------|-----|-------------------|---------|--------|
| 2019 | DODGE | W/C VAN | 2C4RDGBG8KR765903 | NBB9274 | 69919 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG6GR243374 | MVP6275 | 180283 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG2GR218035 | MVP6274 | 244341 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG3GR218044 | MVP6052 | 220530 |
| 2015 | DODGE | CARAVAN | 2C7WDGBG2FR642903 | GTD7261 | 215834 |
| 2014 | DODGE | CARAVAN | 2C4RDGCGXER205514 | FGK7025 | 320995 |
| 2015 | CHRYSLER | 300 | 2C3CCAAGXFH807320 | HBS1351 | 191734 |
| 2014 | CHRYSLER | 300 | 2C3CCAAG0EH141633 | MCD2651 | 270412 |
| 2013 | DODGE | CARAVAN | 2C4RDGBG2DR763292 | PCY6506 | 317543 |
| 2014 | CHRYSLER | 300 | 2C3CCAAG9EH354550 | FLV6570 | 255409 |

## BILL OF SALE
## (VEHICLES)

In consideration for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Fiesta Cab Company, a Texas corporation ("Seller"), hereby grants, bargains, transfers, sells, assigns, conveys and delivers to Silver Lining Motors, LLC, a Missouri limited liability company ("Buyer"), all of such Seller's right, title and interest in and to the vehicles listed on Exhibit A to this Bill of Sale.

This Bill of Sale is being executed and delivered by the undersigned parties as a condition to and in connection with the closing of the Asset Purchase Agreement, dated [___], 2021, by and between Seller and WHC HTX, LLC("Purchase Agreement").

Seller agrees that the representations and warranties of Seller in Article III of the Purchase Agreement apply to this Bill of Sale, and the Purchase Agreement is incorporated herein for said purpose.

This Bill of Sale will inure to the benefit of and will bind the Seller and its successors and assigns.

**SILVER LINING MOTORS, LLC,**
By: WHC Worldwide, LLC, as sole member


By:_____
        William M. George, as Managing Member


**FIESTA CAB COMPANY**


By:_____
Name:
Title:

97

## Exhibit A to Bill of Sale (Vehicles)

| Vehicle Year | Vehicle Make | Vehicle Model | VIN | Vehicle Plate Number | Odometer Current |
|---|---|---|---|---|---|
| 2014 | DODGE | CARAVAN | 2C4RDGCG4ER205346 | FGK7020 | 261671 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG4ER266907 | FTR6106 | 335224 |
| 2015 | DODGE | CARAVAN | 2C4RDGBG5ER470956 | HBS1347 | 227722 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG1ER128676 | FJJ1087 | 254163 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG9ER214626 | LWG4875 | 203325 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG5ER471007 | HBS1350 | 171237 |
| 2015 | DODGE | CARAVAN | 2C4RDGCG5FR527284 | GNF0907 | 240582 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG9DR521663 | HKY5017 | 167159 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG1ER205790 | FGK7015 | 213228 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG9GR203225 | NZG1372 | 152046 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG0ER214627 | MHL7886 | 258252 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG7ER214625 | LWG4874 | 221539 |
| 2015 | DODGE | CARAVAN | 2C4RDGBG1FR664420 | LHY0499 | 223508 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG0ER205280 | FDZ7725 | 549630 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG3GR235832 | MHL7431 | 280479 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG4DR520341 | LRZ6367 | 160073 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG3ER182173 | FLV6140 | 228907 |
| 2014 | CHRYSLER | TOWN & COUNTRY | 2C4RC1BG0ER434978 | GNF0908 | 317457 |

**Exhibit D to Asset Purchase Agreement**

**Lease Agreement**

[Attached]

# LEASE

This Lease Agreement ("**Lease**") is made and entered into as of [_____], 2021 ("**Commencement Date**"), by and between Notre Capital Management, Inc. ("**Landlord**"), and WHC HTX, LLC, a Texas limited liability company ("**Tenant**").

## RECITALS

WHEREAS, Landlord desires to lease the Leased Premises (as defined below) to Tenant, and Tenant desires to lease the same from Landlord, on the terms and conditions set forth in this Lease.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein, the parties agree as follows:

## ARTICLE I - LEASED PREMISES; PURPOSE

**1.1**     **Leased Premises**.  Upon the terms and conditions herein, Landlord hereby leases to Tenant approximately 10,400 square feet of space ("**Leased Premises**") within an approximately [25,000] square foot building ("**Building**"), located at 4201 Langley Rd, Houston, Harris County, Texas, Suite [____], as further described in Exhibit "A" hereto ("**Property**"), as further depicted on Exhibit "B" attached hereto. As used herein, Leased Premises shall also include (1) such non-exclusive rights-of-way, easements and similar rights with respect to the Building and Property as may be reasonably necessary for access to and egress from the Leased Premises, including all common areas thereof, and (2) 200 parking stalls suitable for vehicular parking.

**1.2**     **No New Improvements**. Tenant will take possession of the Leased Premises on the Commencement Date in its "AS IS" condition.

**1.3**     **Use; Access.**  Tenant may use the Leased Premises solely for the purpose of the operation of a taxi cab and any other use reasonably incidental thereto.  Tenant, and its employees, agents, contractors, patients, and invitees, will have access to the Leased Premises 24 hours per day, 7 days per week.

## ARTICLE II – TERM

**2.1**     **Term**. The term of this Lease will be for thirty six (36) months, commencing on the Commencement Date ("**Term**") unless said term shall be sooner terminated as provided herein.

**2.2**     **Renewal Options**. Provided Tenant is not then in default of any of the terms and provisions of this Lease beyond any applicable notice and cure periods, Tenant shall have the option (the "**Renewal Option**") to renew this Lease for two (2) consecutive terms of one (1) year after the initial Term of this Lease ("**Renewal Term**") upon the same terms and conditions as the initial Term of this Lease, except that the monthly Rent for Renewal Term shall be mutually agreed upon by Landlord and Tenant; provided that the Rent will be increased by [____]% at the beginning

1

of each Renewal Term. In order to exercise a Renewal Option, Tenant must advise Landlord in writing of its desire to renew no later than six (6) calendar months prior to the end of the Term.

## ARTICLE III – RENT; OPERATING EXPENSES

**3.1** <u>Rent</u>. Subject to any adjustments to the Term as set forth in Article II, Tenant shall pay to Landlord $[___] per month ("**Base Rent**").

**3.2** <u>Late Charge</u>. If Tenant fails to pay Rent within 15 days after due, the amount unpaid will be subject to (i) a late payment charge, as Additional Rent, of 5% of the amount unpaid, to cover Landlord's additional administrative costs; provided, the first two (2) times in any lease year that Tenant fails to pay Rent on or before the date it was due, Tenant shall not be required to pay such late payment charge if Tenant pays the unpaid amount within five (5) business days after Landlord delivers written notice of such failure, and (ii) interest on all such unpaid sums (other than the late payment charge), which interest shall commence accruing on the payment due date at a per annum rate equal to 7%.

**3.3** <u>Operating Expenses</u>. It is the intent of both parties that, except as otherwise expressly provided herein, the Base Rent herein specified shall be net to the Landlord throughout the Term. Therefore, except as otherwise expressly provided herein, Tenant's shall pay all reasonable, necessary, and actual operating, maintenance, and repair costs for the Leased Premises that arise during the Term, as well as Tenant's Proportionate Share (as defined below) of the costs of repair and maintenance of the Building and common areas except for those items excluded below (all such costs, "**Operating Expenses**"). As used herein, "**Tenant's Proportionate Share**" means [_____]%, calculated by dividing the square footage of the Leased Premises by the total square footage of the Building. Tenant agrees to pay the same to Landlord as "**Additional Rent**" (with Base Rent and Additional Rent herein collectively referred to as "**Rent**"), unless they are paid directly by Tenant. Notwithstanding the foregoing, Operating Expenses shall not include any of the following:

(a)     Any capital expenditures (including, without limitation, expenditures related to the repair and maintenance of the structural components of the Building, the roof, the foundation, and exterior walls);

(b)     The costs of repairs, if and to the extent that any such costs is actually reimbursed by the insurance carried by Landlord or subject to award under any eminent domain proceeding;

(c)     Depreciation, amortization, and interest payments, or principal and interest on indebtedness or any cost of financing or refinancing the Building or the Property;

(d)     Costs associated with operating the entity which constitutes Landlord (as the same are distinguished from the costs of operation of the Building or the Property), such as compensation paid to officers or executives of Landlord, management fees, and fees paid for accounting and legal matters for such entity;

(e)     Costs, including attorneys' fees and settlement judgments and/or payments in lieu thereof, arising from actual or potential claims, disputes, litigation or arbitration pertaining to Landlord, Building and/or the Property;

(f)     Costs of repairs which would have been covered by casualty insurance but for Landlord's failure to maintain casualty insurance to cover the replacement value of the Building or the Property as required by this Lease;

(g)     Costs of bringing the Building or the Property into compliance with law;

(h)     Any other costs, expenses or obligations specifically assumed by Landlord under this Lease;

(i)     Costs to repair any damage to the Building or the Property arising from the intentional act or omission or negligence of Landlord;

(j)     Tax penalties and interest or fees thereon;

(k)     Any property management fees; and

(l)     Reserves for any Operating Expenses not permitted under this Section or for bad debts, future repairs, improvements, additions or any expenditures that would be incurred subsequent to the current lease year.

**3.4**     **Utilities and Other Services**. Landlord represents and warrants that, as of the Commencement Date, the Leased Premises are supplied with all utilities necessary and customary for the operation of an automobile showroom, and Landlord agrees to make all such utilities available for use by Tenant during the Term, provided that Tenant shall pay the cost of using all such utilities used within the Leased Premises.

**3.5**     **Taxes**. Tenant shall pay Landlord Tenant's Proportionate Share of all taxes, assessments, charges, and fees which during the Term hereof may be imposed, assessed or levied by any governmental or public authority against or upon the Property (collectively, "**Taxes**").

**3.6**     **Audit**. Tenant, at its expense, shall have the right, no more frequently than once per calendar year, upon written notice to Landlord, to cause independent certified public accountant to audit Landlord's books and records relating to Operating Expenses. Tenant shall pay all audit costs and fees.  Any audit conducted by Tenant must be conducted by an independent accounting firm that is compensated on an hourly or fixed fee basis, and not on a contingency or success fee basis. Landlord shall promptly refund to Tenant any overpayment of Operating Expenses identified by such audit, and Tenant shall promptly pay to Landlord any underpayment of Operating Expenses identified by such audit.  In the event an audit reveals that Operating Expenses were overstated by Landlord by more than ten percent (10%), Landlord shall reimburse Tenant for the reasonable costs of such audit.

3

## IV. MAINTENANCE AND REPAIRS; ALTERATIONS; SIGNAGE

**4.1**  **Maintenance and Repair by Tenant**. During the Term, Tenant, at its own cost and expense, shall maintain and repair all interior parts of the Leased Premises and keep them in good working order, subject to ordinary wear and tear. However, Tenant will not be obligated to pay for those items specifically excluded from Operating Expenses. If Tenant incurs any cost in maintaining or repairing such items specifically excluded from Operating Expenses, Tenant may deduct the cost of such repair from the Rent next due. Tenant's work, repairs and replacements shall be performed and installed free and clear of liens and encumbrances.

**4.2**  **Maintenance and Repair by Landlord**. During the Term, Landlord, at its own cost and expense, shall maintain, repair and, if necessary, replace, the structural components of the Building, roof, exterior walls, and foundations. Tenant shall promptly give Landlord written notice of any required repairs to any such items that Landlord is required to repair under this Section, and Landlord shall promptly repair the same. However, in the event Landlord fails to commence repair of any such matters within 10 days after delivery of notice to Landlord, Tenant may arrange for the repair and deduct the cost of such repair, plus 7%, from the Rent next due.

**4.3**  **Alterations**. Tenant may make such alterations, additions, improvements, or any other changes to the Leased Premises without the consent of the Landlord as long as (i) such alterations, additions, improvements, or changes involve no more than $50,000 in any 12-month period, and are nonstructural in nature, and (ii) Tenant gives notice thereof to Landlord. All other means alterations, additions, improvements, or changes require the prior written consent of the Landlord which shall not be unreasonably withheld, delayed, or conditioned. Tenant shall present to the Landlord plans and specifications for such work at the time any required consent is sought. All such work shall be done in a good and workmanlike manner and diligently prosecuted to completion. Any alterations, additions, or improvements to or of the Leased Premises, including, but not limited to, wall covering, paneling, and built-in cabinet work (but excepting movable furniture, equipment, trade fixtures and other personal property of Tenant that can be removed without damage to the Building, any of which may be removed by Tenant at any time), shall at the expiration of the Term become a part of the realty and shall be surrendered with the Leased Premises. Tenant shall have the right to install on the Leased Premises such equipment, trade fixtures, and personal property as is reasonably necessary for Tenant to conduct its business.

**4.4**  **Signs**. Tenant may place and display, with the consent of Landlord, any signs, awnings, and canopies on the Building or otherwise within the Leased Premises as long as they comply with all applicable laws and regulations.

## V. ASSIGNMENT AND SUBLEASES

**5.1**  **Assignment and Subleases**. Except for Permitted Transfers (as defined below), Tenant may not assign, encumber or transfer this Lease or any interest therein, and shall not sublet the Leased Premises or any part thereof, or any right or privilege appurtenant thereto, or allow any other person (except for Tenant's employees, agents, servants, and invitees, and sublessees and assignees as expressly permitted under this Lease) to occupy or use the Leased Premises, or any portion thereof, without first obtaining the written consent of Landlord, which consent may not be

4

unreasonably withheld, delayed, or conditioned. The giving of consent in one instance shall not preclude the need for Tenant to obtain Landlord's consent to further transfers.

**5.2** **Permitted Transfers**. Notwithstanding the foregoing, Tenant may, without the consent of Landlord, assign its entire interest under this Lease to its Affiliate (defined below) or to a successor to Tenant by purchase, merger, consolidation or reorganization, provided that all of the following conditions are satisfied in Landlord's reasonable discretion (a "Permitted Transfer"): (a) no uncured event of default exists under this Lease; (b) in the event of a successor to Tenant by purchase, merger, consolidation or reorganization, Tenant's successor shall own all or substantially all of the assets of Tenant; (c) in the event of a successor to Tenant by purchase, merger, consolidation or reorganization, Tenant's successor shall have a net worth which is at least equal to Tenant's net worth as of the day prior to the proposed purchase, merger, consolidation or reorganization; (d) such Affiliate or Tenant successor is not on OFAC list; and (e) Tenant shall give Landlord written notice of the Permitted Transfer, along with all applicable documentation and other information necessary for Landlord to determine that the requirements of this Section have been satisfied. As used herein, "**Affiliate**" means a person or an entity, which directly or indirectly through one or more intermediaries, controls or is controlled by or is under common control with Tenant; and the term "control" means the right and power, direct or indirect, to direct or cause the direction of the management and policies of a person or business entity, corporation or otherwise.

## VII. INSURANCE; INDEMNITY

**7.1** **Tenant's Insurance**. Tenant shall, at Tenant's expense, obtain and keep in force during the Term a policy of Commercial General Liability Insurance with Broad Form General Liability Endorsement, or equivalent, in an amount of not less than $1,000,000 per occurrence and $2,000,000 aggregate, of bodily injury and property damage combined, and shall insure Tenant with Landlord as an additional insured against liability arising out of the use, occupancy or maintenance of the Leased Premises. In addition, Tenant shall, at Tenant's expense, obtain and keep in force during the Term for the benefit of Tenant, fire and extended coverage insurance in an amount sufficient to cover the full replacement cost, as the same may exist from time to time, of all of Tenant's personal property, fixtures, equipment, and Tenant's improvements to the Leased Premises.

**7.2** **Waiver of Subrogation**. Landlord and Tenant intend that their respective property loss risks shall be borne by reasonable insurance carriers to the extent above provided, and Landlord and Tenant hereby agree to look solely to, and seek recovery only from, their respective insurance carriers in the event of a property loss to the extent that such coverage is agreed to be provided hereunder. Notwithstanding anything to the contrary, the parties each hereby waive all rights and claims against each other for such losses, and waive all rights of subrogation of their respective insurers, provided such waiver of subrogation shall not affect the right to the insured to recover thereunder. The parties agree that their respective insurance policies are now, or shall be, endorsed such that the waiver of subrogation shall not affect the right of the insured to recover thereunder.

5

**7.3**    **Indemnity**. Each party shall indemnify and save harmless the other party against and from all costs, fees, interests, charges, reimbursements, obligations, expenses, liabilities, losses, damages, injunctions, suits, actions, fines, penalties, claims, and demands of every kind or nature, including reasonable counsel fees, by or on behalf of any person, party, or governmental authority whatsoever arising out of any breach of this Agreement, unless such matter arises out of the negligence or willful misconduct of the other party, its agents, contractors, or employees

## VIII. CASUALTY

**8.1**    **Casualty – Landlord Obligation.** During the Term, if the Leased Premises shall be damaged or destroyed by fire or other casualty ("**Casualty**"), then, unless the Lease is terminated as provided in this Section 8, Landlord shall repair and restore the Leased Premises to substantially the same condition of the Leased Premises immediately prior to such Casualty, provided Landlord's obligation is limited to the extent of the insurance proceeds received by Landlord. Landlord shall have no obligation to repair and restore Tenant's trade fixtures, decorations, signs, or contents to the Leased Premises or any personal property of Tenant.

**8.2**    **Casualty – Tenant Obligation.** During the Term, if Tenant's personal property shall be damaged or destroyed by Casualty, then, unless the Lease is terminated as provided in this Section 8, Tenant shall repair and restore the same to substantially the same condition immediately prior to such Casualty, provided the Casualty is insured under Tenant's insurance policies, and Tenant's obligation is limited to the extent of the insurance proceeds received by Tenant.

**8.3**    **Option to Terminate.** Landlord and Tenant shall each have the option of terminating the Lease following the Casualty if: (i) the Leased Premises is rendered or would be rendered wholly untenantable for a period in excess of 6 months; (ii) the Leased Premises is damaged in whole or in Significant Part (as defined below) as a result of a risk which is not covered by Landlord's insurance policies; (iii) Landlord's lender does not permit a sufficient amount of the insurance proceeds to be used for restoration purposes; (iv) the Leased Premises is damaged in whole or in Significant Part during the last 2 years of the Term (provided that if Tenant duly exercises its Renewal Option, then Landlord will be obligated to repair and restore pursuant to this Article). If Landlord or Tenant elects to terminate this Lease, then it shall give notice of the cancellation to the other party within 60 days after the date of the Casualty. Tenant shall also have the option of terminating the Lease if: (i) Landlord has failed to substantially restore the damaged Leased Premises within 12 months of the Casualty, subject to the provisions of Section 8.8 ("**Restoration Period**"); and (ii) Tenant gives Landlord notice of the termination after the end of the Restoration Period and the Leased Premises are not restored at the time that Tenant gives Landlord such notice. As used herein, "**Significant Part**" means if the Leased Premises are damaged or destroyed by Casualty to the extent of 50% or more of the then-monetary value thereof.

**8.4**    **Insurance Proceeds.** Landlord and Tenant shall cooperate with each other, to such extent as such other party may reasonably require, in connection with the prosecution or defense of any action or proceeding arising out of, or for the collection of, any insurance proceeds that may be due in the event of any loss, and each party will execute, acknowledge and deliver to the other such instruments as may be required to facilitate the recovery of any insurance proceeds.

6

**8.5**    **Notice.** Tenant shall give prompt notice to Landlord of all fires and other occurrences in, on or about the Leased Premises which result in any death or in any damage or destruction to the Leased Premises or any part thereof costing in excess of $100,000.

## IX. CONDEMNATION

**9.1**    **Total Condemnation.** If the whole of the Leased Premises shall be acquired or taken by condemnation proceeding, then this Lease shall cease and terminate as of the date of title vesting in such proceeding. If this Lease is terminated as provided in this Section, rent shall be paid up to the day that possession is so taken by public authority and Landlord shall make an equitable refund of any rent paid by Tenant in advance.

**9.2**    **Partial Condemnation.** If any part of the Leased Premises shall be taken as aforesaid, and such partial taking shall render that portion not so taken unsuitable for Tenant's operations, then this Lease shall cease and terminate as aforesaid. If such partial taking is not extensive enough to render the Leased Premises unsuitable for Tenant's operations, as reasonably determined by Tenant, then this Lease shall continue in effect except that the Base Rent and Additional Rent shall be reduced in the same proportion that the portion of the Leased Premises taken bears to the total area initially demised, and Landlord shall, upon receipt of the award in condemnation, make all necessary repairs or alterations to the Building in which the Leased Premises are located, provided that Landlord shall not be required to expend for such work an amount in excess of the amount received by Landlord as damages for the part of the Leased Premises so taken. "**Amount received by Landlord**" shall mean that part of the award in condemnation which is free and clear to Landlord of any collection by mortgage lenders for the value of the diminished fee.

**9.3**    **Landlord's or Tenant's Option to Terminate.** If more than 50% of the Building or the Property shall be taken as aforesaid, Landlord or Tenant may, by written notice to the other party within 30 days of such taking, terminate this Lease. If this Lease is terminated as provided in this Section, rent shall be paid up to the day that possession is so taken by public authority and Landlord shall make an equitable refund of any rent paid by Tenant in advance.

**9.4**    **Award.** The Landlord shall be entitled to all proceeds of any taking; provided, however, that this provision shall not prohibit Tenant from prosecuting by separate action against the condemning authority any claim it may have for business damages, provided that the prosecution of such claim by Tenant does not reduce the award to Landlord.

**9.5**    **Definition.** As used in this Article, the term "**condemnation proceeding**" means any action or proceeding in which any interest in the Leased Premises is taken for any public or quasi-public purpose by any lawful authority through exercise of eminent domain or right of condemnation or by purchase or otherwise in lieu thereof.

## X. FINANCING; SUBORDINATION

**10.1**    **Subordination.** Tenant's rights under this Lease are subordinate to Landlord's mortgagee who has a mortgage or deed of trust interest in the Property, provided that so long as Tenant continues to perform all of its obligations under this Lease, its tenancy shall remain in full

7

force and effect notwithstanding Landlord's default in connection therewith. To the fullest extent allowed by applicable law, the foregoing subordination is self-operative and no further interest of subordination is required. Upon request by Tenant, Landlord agrees to cause its existing mortgagee to execute a customary and reasonable subordination, non-disturbance and attornment agreement with respect to this Lease. At Landlord's request, Tenant will, without charge, execute, acknowledge and deliver to Landlord (or, at Landlord's request) a similar subordination, non-disturbance and attornment agreement for any future mortgagee of Landlord. In no event will the Tenant be required to guarantee or be obligated on such mortgage or lien.

**10.2** **Attornment**. Any sale, assignment, or transfer of Landlord's interest under this Lease or in the Leased Premises including any such disposition resulting from Landlord's default under a mortgage, shall be subject to this Lease and also Tenant shall attorn to Landlord's successor and assigns and shall recognize such successor or assigns as Landlord under this Lease, regardless of any rule of law to the contrary or absence of privity of contract.

## XI. EVENTS OF DEFAULT; REMEDIES

**11.1** **Default by Tenant**. Upon the occurrence of any of the following "**Events of Default**", Landlord shall have the remedies set forth in Section 11.2:

(a)     Tenant fails to pay any installment of Base Rent or Additional Rent or any other sum due hereunder, within 10 days after Tenant receives written notice of sums due.

(b)     Tenant fails to perform any other obligation under this Lease within 30 days after written notice of such default shall have been given to Tenant by Landlord or, if cure would reasonably require more than 30 days to complete, if Tenant fails to commence performance within the 30-day period or fails diligently and continuously to pursue such cure to completion.

(c)     Tenant shall become bankrupt or insolvent or file any debtor proceedings or have taken against such party in any court pursuant to state or federal statute, a petition in bankruptcy or insolvency, reorganization, or appointment of a receiver or trustee; or Tenant petitions for or enters into an arrangement; or suffers this Lease to be taken under a writ of execution; or Tenant makes a transfer in fraud of creditors or an assignment for the benefit of credits; or there shall be a receiver or trustee appointed for the Leased Premises or for all or substantially all of the assets of Tenant.

**11.2** **Remedies**. In the event of the occurrence of any of the Events of Default described in Section 11.1, Landlord, at its election, may exercise one or more of the following options, the exercise of any of which shall not be deemed to preclude the exercise of any others herein listed or otherwise provided by statute or general law at the same time or at subsequent times or actions:

(a)     Terminate this Lease by giving Tenant written notice of termination, in which event this Lease shall terminate on the date specified in such notice and all rights of Tenant under this Lease shall expire and terminate as of such date, Tenant shall remain liable for all obligations under this Lease up to the date of such termination and Tenant shall surrender the Leased Premises to Landlord on the date specified in such notice; and

8

if Tenant fails to so surrender, Landlord shall have the right, without notice, to enter upon and take possession of the Leased Premises and to expel and remove Tenant and its effects without being liable for prosecution or any claim of damages therefor;

(b)　　Terminate this Lease as provided in the immediately preceding subsection and recover from Tenant, all damages Landlord may incur by reason of Tenant's Event of Default, including without limitation, the then present value (discounted at a rate equal to the then issued treasury bill having a maturity approximately equal to the remaining Term of this Lease had such Event of Default not occurred) of (i) the total Rent which would have been payable hereunder by Tenant for the period beginning with the day following the date of such termination and ending with the expiration date of the Term as originally scheduled hereunder, minus (ii) the aggregate reasonable rental value of the Leased Premises for the same period (taking into account all relevant factors including, without limitation, the length of the remaining Term, the then current market conditions in the general area, the likelihood of reletting for a period equal to the remainder of the Term, net effective rates then being obtained by landlords for similar type space in similar buildings in the general area, vacancy levels in the general area, current levels of new construction in the general area and how that would affect vacancy and rental rates during the period equal to the remainder of the Term and inflation), plus (iii) the costs of recovering the Leased Premises, and all other reasonable expenses incurred by Landlord due to Tenant's Events of Default, including, without limitation, reasonable attorneys' fees, plus (iv) the unpaid Rent earned as of the date of termination, plus interest at the lesser of 12% and the maximum rate permitted by law ("**Default Rate**"), all of which sum shall be immediately due and payable by Tenant to Landlord;

(c)　　Without terminating this Lease, and without notice to Tenant, Landlord may in its own name, but as agent for Tenant enter into and take possession of the Leased Premises and re-let the Leased Premises, or any portion thereof, as agent of Tenant, upon any terms and conditions as Landlord may deem necessary or desirable. Landlord shall have no obligation to attempt to re-let the Leased Premises or any part thereof except to the extent required by applicable law. Upon any such re-letting, all rentals received by Landlord from such re-letting shall be applied first to the costs incurred by Landlord in accomplishing any such re-letting, and thereafter shall be applied to the Rent owed by Tenant to Landlord during the remainder of the Term of this Lease and Tenant shall pay any deficiency between the remaining Rent due hereunder and the amount received by such re-letting as and when due hereunder;

(d)　　allow the Leased Premises to remain unoccupied, so long as Landlord satisfies any duty established by applicable law to mitigate its damages, and collect Rent from Tenant as it becomes due; or

(e)　　pursue such other remedies as are available at law or in equity.

9

## XII. PROVISIONS APPLICABLE AT TERMINATION OF LEASE

**12.1    Surrender of Leased Premises**. Upon the expiration of this Lease, Tenant will surrender the Leased Premises in the same condition as they existed as of the Commencement Date, subject to ordinary wear and tear. Before surrendering the Leased Premises, Tenant shall remove all of its personal property and trade fixtures and such property or the removal thereof shall in no way damage the Leased Premises, and Tenant shall be responsible for all costs, expenses and damages incurred in the removal thereof.

**12.2    Holding Over**. In the event that Tenant remains in possession of the Leased Premises after the expiration of this Lease without the written permission of Landlord, and without the execution of a new lease, Tenant shall be deemed occupying the Leased Premises as a tenant at sufferance only, at a rental rate equal to (i) during the first 6 months of the holdover period, 125% of the Base Rent in effect upon the date of such expiration, and (ii) 150% of the Base Rent in effect upon the date of such expiration thereafter, together with the Additional Rent, subject to all the conditions, provisions and obligations of this Lease insofar as the same are applicable to such tenancy. Acceptance by Landlord of Base Rent or Additional Rent after such expiration shall not constitute a renewal of this Lease or permit Tenant to continue such holdover. The foregoing provisions of the Section are in addition to and do not affect Landlord's right of re-entry or any rights of Landlord hereunder or as otherwise provided by law. If Tenant fails to surrender the Leased Premises upon the expiration of this Lease despite demand to do so by Landlord, Tenant shall indemnify and hold Landlord harmless from all loss or liability, including, without limitation, any claim made by any succeeding tenant founded on or resulting from such failure to surrender.

## XIII. ATTORNEYS' FEES

If either party institutes a suit against the other for violation of or to enforce any covenant or condition of this Lease, or if either party intervenes in any suit in which the other is a party to enforce or protect its interest in or rights under this Lease, then the Prevailing Party shall be entitled to all of its costs and expenses, including reasonable attorneys' fees. The term **"Prevailing Party"** means the party, either Landlord or Tenant, that establishes a breach of this Lease by the other party or otherwise establishes liability of the other party for wrongful conduct, regardless of whether actual damages are awarded. In the case where both parties prevail on different claims, the Prevailing Party shall be the party that is awarded the greater amount of damages..

## XIV. ESTOPPEL CERTIFICATE

Tenant shall, within 30 days after Landlord's request, execute and deliver to Landlord a written certification (a) ratifying this Lease; (b) certifying whether or not this Lease is in full force and effect and whether or not it has been assigned, modified, supplemented or amended, except by such writing as shall be stated; (c) if all conditions under this Lease to be performed by Landlord have been satisfied or, if not, the manner in which they have not been satisfied; (d) that there are no defenses or offsets against the enforcement of this Lease by the Landlord, or stating those claimed by Tenant; (e) the amount of advance Rent, if any, (or none if such is the case) paid by Tenant; and (f) the date to which rental has been paid. Within 15 days after the request of Tenant, Landlord shall deliver a similar certificate in favor of Tenant.

10

## XV. MISCELLANEOUS PROVISIONS

**15.1    No Partnership.** Landlord does not by this Lease, in any way or for any purpose, become a partner or joint venturer of Tenant in the conduct of its business or otherwise.

**15.2    Force Majeure.** Landlord and Tenant shall be excused for the period of any delay in the performance of any obligations hereunder (except for the payment of money) when prevented from so doing by cause or causes reasonably beyond such performing party's control, including labor disputes, civil commotion, war, governmental regulations or controls, fire or other casualty, inability to obtain any material or service not related to such party's negligence, acts of God, or inclement weather.

**15.3    No Waiver.** Failure of either party to insist upon the strict performance of any provision or to exercise any option hereunder shall not be deemed a waiver of such breach. No provision of this Lease shall be deemed to have been waived unless such waiver be in writing signed by the waiving party.

**15.4    Notice.** Any notice required or desired to be given to a party hereto shall be valid and sufficient if in writing and addressed to the addresses listed below and delivered by personal delivery or overnight delivery or mailed by United States registered or certified mail, with postage and charges prepaid thereon. Any notice shall be deemed to have been given on the day delivered if personally delivered, the day after sending if delivered by overnight delivery, or 3 days after mailing (or the date of first refusal if earlier) if sent by registered or certified mail. Landlord or Tenant may designate the place to which notices shall be given and addressed by giving at least 15 days' prior written notice to the other party, such notice to be given in accordance with the foregoing provisions of this Section. The initial address for each party shall be as follows:

    As to Landlord:           Notre Capital Management, Inc.

                                        _____

                                        _____

                                        _____

    As to Tenant:             WHC HTX, LLC
                                        c/o WHC Worldwide, LLC
                                        1300 Lydia Ave.
                                        Kansas City, MO 64106

**15.5    Captions; Attachments; Defined Terms.** The captions to the Section of this Lease are for convenience of reference only and shall not be deemed relevant in resolving questions of construction or interpretation under this Lease. Exhibits referred to in this Lease, and any addendums and schedules attached to this Lease and initialed by the parties shall be deemed to be incorporated in this Lease as though part hereof.

**15.6    Partial Invalidity.** If any provision of this Lease or the application thereof to any person or circumstance shall to any extent be invalid, the remainder of this Lease or the application

11

of such provision to persons or circumstances other than those as to which it is held invalid shall not be affected thereby and each provision of this Lease shall be valid and enforced to the fullest extent permitted by law.

**15.7   Broker's Commissions**. Each party represents and warrants that there are no claims for brokerage commissions or finder's fees in connection with this Lease and agrees to indemnify the other party against and hold it harmless from all liabilities arising from such claim, including any attorneys' fees connected therewith.

**15.8   Use of Pronouns**. The use of the neuter singular pronoun to refer to Landlord or Tenant shall be deemed a proper reference even though Landlord or Tenant may be an individual, a partnership, a corporation, or a group of two or more individuals or corporation. The necessary grammatical changes required to make the provisions of this Lease apply in the plural sense where there is more than one Landlord or Tenant and to corporations, associations, partnerships, or individuals, males or females, shall in all instances be assumed as though in each case fully expressed.

**15.9   Provisions Binding, Etc**. Except as otherwise provided, all provisions herein shall be binding upon and shall inure to the benefit of the parties, their legal representative, heirs, successors, and assigns. Each provision to be performed by Tenant shall be construed to be both a covenant and a condition, and if there shall be more than one Tenant, they shall all be bound, jointly and severally, by such provisions.

**15.10   Entire Agreement, Etc.** This Lease and the Exhibits, Riders, and/or any Addenda, if any, attached hereto, constitute the entire agreement between the parties, and supersede all prior agreements, written or oral, between the parties. All Exhibits, Riders, and/or Addenda mentioned in this Lease are incorporated herein by reference. Any prior conversations or writings are merged herein and extinguished. No subsequent amendment to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed. Submission of this Lease for examination does not constitute an option for the Leased Premises and becomes effective as a lease only upon execution and delivery thereof by Landlord to Tenant. If any provision contained in Rider or Addenda is inconsistent with a provision in the body of this Lease, the provision contained in said Rider or Addenda shall control. The captions and Section numbers appearing herein are inserted only as a matter of convenience and are not intended to define, limit, construe, or describe the scope or intent of any Section or Paragraph.

**15.11   Choice of Law**. This Lease shall be governed by and construed in accordance with the laws of the State of Texas.

**15.12   Waiver of Jury Trial**. THE PARTIES HERETO SHALL, AND THEY HEREBY DO, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, FOR THEMSELVES, THEIR HEIRS, PERSONAL REPRESENTATIVES, SUCCESSORS OR ASSIGNS, WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER ON ANY MATTERS WHATSOEVER ARISING OUT OF, OR IN ANY WAY CONNECTED WITH, THIS LEASE, THE LEASED PREMISES, ACTIONS OF ANY PARTY, AND/OR CLAIM OF INJURY OR DAMAGE. THIS

PROVISION IS A MATERIAL INDUCEMENT TO THE PARTIES ENTERING INTO THIS LEASE.

**15.13  Counterparts**. This Lease may be executed in counterparts, each of which constitutes an original and all of which taken together shall constitute one agreement.

**15.14  Condition Precedent**. Notwithstanding anything herein to the contrary, this Lease will be conditioned on, and will not become effective until and unless, the transactions contemplated under the Asset Purchase Agreement, by and between Tenant, as purchaser, and various sellers, subject to the jointly administered bankruptcy Case Nos. 21-60064, 21-60065, 21-60066, 21-60067, and 21-60069 under Chapter 11 of Title 11 of the United States Code, as amended and the rules and regulations promulgated thereunder, in the United States Bankruptcy Court for the Southern District of Texas, are fully closed and consummated.

*[Signature Page Follows]*

13

IN WITNESS WHEREOF, Landlord and Tenant have duly executed this instrument as of the date first above written.

"Landlord"

**NOTRE CAPITAL MANAGEMENT, INC.**

By: _____
Name:
Title:

"Tenant"

**WHC HTX, LLC**
By: WHC Worldwide, LLC, as sole member

By:_____
      William M. George, Managing Member

14

Exhibit "A"

**Description of Property**

Exhibit "B"

**Depiction of Leased Premises**

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("Agreement") is dated as of [    ], 2021, by and among WHC ATX, LLC, a Texas limited liability company ("Buyer"), and Greater Austin Transportation Company ("Seller"). Seller and Buyer are sometimes referred to collectively herein as the "Parties."

## RECITALS

**WHEREAS**, Seller operates a taxicab business in the Austin, Texas area, using the trade names Yellow Cab, Fiesta Cab, Taxis Fiesta, and United Cab (the "Business");

**WHEREAS**, Seller is currently a debtor-in-possession in the jointly administered bankruptcy cases, Case Nos. 21-60064, 21-60065, 21-60066, 21-60067, and 21-60069 (the "Bankruptcy Proceeding"), under Chapter 11 of Title 11 of the United States Code, as amended and the rules and regulations promulgated thereunder (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"); and

**WHEREAS**, the Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, certain core assets and properties of the Business, on the terms and subject to the conditions set forth in this Agreement and in accordance with Sections 363(f) and 365 of the Bankruptcy Code.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## PURCHASE AND SALE

Section 1.1   **Purchase and Sale of Assets**. Subject to the terms and conditions set forth herein, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title and interest in the assets used in the Business, including, but not limited to, the following (collectively, "Purchased Assets"), free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance ("Encumbrance"):

(a)   All vehicles owned by Seller and as identified on the bill of sale, attached hereto as Exhibit C ("Vehicles");

(b)   all machinery, equipment, tools, furniture, office equipment, dispatch equipment, computer hardware, installed vehicle equipment, supplies, materials, inventory, and other items of tangible personal property used in the Business of every kind owned or leased by Seller (wherever located and whether or not carried on the books of the Seller), together with any express or implied warranty by the manufacturers or sellers or lessors of any item or component part thereof and all maintenance records and other documents relating thereto ("Tangible Personal Property"), including without limitation such Tangible Personal Property listed on Schedule 1.1(a) attached hereto;

EX. 2

(c)    all rights and interests of Seller in the Assumed Contracts (as defined in Section 3.5);

(d)    all approvals, consents, licenses, registrations, or permits issued, granted, given or otherwise made available by or under the authority of any governmental body or pursuant to any applicable federal, state, local, municipal, or other law, ordinance, code, regulation, or statute ("Legal Requirements") relating to the Business and all pending applications therefor or renewals thereof ("Governmental Authorizations"), in each case to the extent transferable to Buyer;

(e)    copies of all information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form ("Records") related to the operations of the Business, including client and customer lists, referral sources, production reports, service and warranty Records, logs, operating guides and manuals, and, subject to applicable Legal Requirements, copies of all personnel Records of Employees (as defined herein); and

(f)    All intellectual property owned by Seller, including without limitation telephone and fax numbers and related listings, domain names, URLs, trademarks and trade names used solely in the operation of the Business, including those described in Schedule 1.1(e) attached hereto.

Section 1.2    **Excluded Assets**.  Notwithstanding the foregoing, the Purchased Assets shall not include the Seller's cash, cash equivalents, and accounts receivable for periods prior to Closing (the "Excluded Assets").

Section 1.3    **No Assumption of Liabilities**.  Other than liabilities for (i) Driver Deposits (as defined below) and (ii) Seller's obligations under the Assumed Contracts for periods after the Closing, Buyer shall not assume any liabilities or obligations of Seller of any kind, whether known or unknown, contingent, matured or otherwise, whether currently existing or hereinafter created. As used herein, "Driver Deposits" mean Seller's driver deposits at the Closing, net of any amount owed by the drivers at the Closing; provided, however, that the aggregate Driver Deposits to be assumed by Buyer under this Agreement and under all Related Agreements (as defined in Section 6.1(b)) shall not exceed $350,000.

Section 1.4    **Purchase Price**.

(a)    The aggregate purchase price ("Purchase Price") for the Purchased Assets for Seller will consist of (i) "Closing Purchase Price" (as defined below), which will be payable at Closing by wire transfer of immediately available funds in accordance with wire instructions as provided by Seller, (ii) "Post-Closing Purchase Price" (as defined below), which will be paid on the first and second anniversary of the Closing, by wire transfer of immediately available funds in accordance with the same wire instructions, and (iii) the assumption of Driver Deposits under Section 1.3.

(b)      As used herein, "<u>Closing Purchase Price</u>" means a portion of the $1,720,000 allocable to the Purchased Assets, among all assets purchased under this Agreement and under the Related Agreements, which allocation shall be effected pursuant to Section 1.5, it being the intent that the aggregated cash purchase price paid by Buyer at Closing under this Agreement and the closing under the Related Agreements will be $1,720,000.

(c)      As used herein, "<u>Post-Closing Purchase Price</u>" means an amount calculated as 5% times Base Gross Revenue for the 12-month period immediately preceding (1) the first anniversary date, with respect to the first Post-Closing Purchase Price payment, and (2) the second anniversary date, with respect to the second Post-Closing Purchase Price payment.

(d)      As used herein, "<u>Base Gross Revenue</u>" means all driver lease or owner fees collected by the Buyer and Buyer's retained spread on revenue contracts, but excluding credit card fees, vehicle loan notes, accident deductibles, voucher shorts, or higher limit insurance fees for contracts, determined consistent with the same methodologies used in the calculations shown on <u>Schedule 1.4</u> attached hereto.

Section 1.5      **Allocation of Purchase Price**. Prior to Closing, Seller and Buyer shall reasonably agree in writing with respect to the manner in which the Purchase Price will be allocated among the Purchased Assets for all purposes (including tax and financial accounting).  Buyer and Seller shall file all tax returns (including amended returns and claims for refund) and information reports in a manner consistent with such allocation. Buyer shall be entitled to deduct and withhold from the Purchase Price all taxes that Buyer may be required to deduct and withhold under any applicable tax law.  All such withheld amounts shall be treated as delivered to Seller hereunder.

## ARTICLE II
## CLOSING

Section 2.1      **Closing**.  The closing of the transactions contemplated by this Agreement (the "<u>Closing</u>") shall occur via the e-mail delivery by each party hereto of the documents and other deliverables required by this Agreement, on August 5, 2021, or such other date and place mutually convenient to the parties, after satisfaction of all conditions precedent to closing set forth in this Agreement, provided, however, that if all conditions precedent have occurred, the closing shall be no later than the fifth (5th) business day after satisfaction of all conditions precedent. The date of the closing is referred to herein as the "<u>Closing Date</u>."  The consummation of the transactions contemplated by this Agreement shall be deemed to occur at 12:01 a.m. on the Closing Date.

Section 2.2      **Closing Deliverables**.

(a)      At the Closing, Seller shall deliver to Buyer the following:

(i)      one or more bills of sale in the form of <u>Exhibit A</u> hereto and duly executed by Seller, transferring the Purchased Assets to Buyer;

(ii)      evidence of discharge of all Encumbrances with respect to the Purchased Assets;

3

(iii)    an assignment and assumption agreement in the form of Exhibit B hereto (the "Assignment") and duly executed by Seller, effecting the assignment to and assumption by Buyer of the Assumed Contracts;

(iv)    employment offer letter agreements with John Bouloubasis and Mike Spears, in the form reasonably acceptable to Buyer, containing a noncompetition covenant (the "Employment Agreement");

(v)    a bill of sale, attached hereto as Exhibit C, duly executed by Seller, transferring title to the vehicles owned by Seller to Silver Lining Motors, LLC, a Missouri limited liability company and an affiliate of Buyer ("SLM") and such other documentation necessary to transfer title to the Vehicles to SLM;

(vi)    copies of all documents evidencing Transfer of Licenses (as defined in Section 5.2) and any other Governmental Authorizations necessary to transfer the Purchased Assets and the Business to Buyer;

(vii)    if required, tax clearance certificates from the taxing authorities in the jurisdictions that impose taxes on Seller or where Seller has a duty to file tax returns in connection with the transactions contemplated by this Agreement and evidence of the payment in full or other satisfaction as of the Closing Date of any taxes owed by Seller in those jurisdictions;

(viii)    such other customary instruments of transfer, assumption, filings or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to this Agreement;

(ix)    a certified copy of the Bankruptcy Court order referenced in Section 6.1(a) ("Section 363 Order"); and

(x)    Certificate executed by an officer of Seller, certifying that each covenant and agreement of Seller to be performed prior to or as of the Closing pursuant to this Agreement has been performed and each representation and warranty of Seller is true and correct on the Closing Date, as if made on and as of the Closing Date.

(b)    At the Closing, Buyer shall deliver to Seller the following:

(i)    the Closing Purchase Price;

(ii)    the Assignment duly executed by Buyer; and

(iii)    Certificate executed by an officer of Buyer, certifying that each covenant and agreement of Buyer to be performed prior to or as of the Closing pursuant to this Agreement has been performed and each representation and warranty of Buyer is true and correct on the Closing Date, as if made on and as of the Closing Date.

**ARTICLE III**

4

## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this <u>Article III</u> are true and correct as of the date hereof. For purposes of this <u>Article III</u>, "Seller's knowledge," "knowledge of Seller" and any similar phrases shall mean that any director, manager, or officer of Seller either is actually aware of the particular fact or matter or, by virtue of such person's position with the Seller, reasonably would be expected to be aware of the particular fact or matter.

Section 3.1 **Organization and Authority of Seller; Enforceability**. Seller is a corporation duly organized, validly existing and in good standing under the laws of the state of Texas. Seller has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. Subject to the Section 363 Order, the execution, delivery and performance by Seller of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Seller. This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Seller, and (assuming due authorization, execution and delivery by Buyer) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms.

Section 3.2 **No Conflicts; Consents**. The execution, delivery and performance by Seller of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Seller; (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Seller, the Purchased Assets, or the Business; (c) conflict with, or result in (with or without notice or lapse of time or both) any violation of, or default under, or give rise to a right of termination, acceleration or modification of any obligation or loss of any benefit under any contract or other instrument to which Seller is a party or to which any of the Purchased Assets are subject; or (d) result in the creation or imposition of any Encumbrance on the Purchased Assets. Subject to the Section 363 Order, no consent, approval, waiver or authorization is required to be obtained by Seller from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Seller of this Agreement and the consummation of the transactions contemplated hereby.

Section 3.3 **Title to Purchased Assets**. Seller owns and has good title to the Purchased Assets, free and clear of Encumbrances, except for any Encumbrances which will be released and terminated at Closing in accordance with the Section 363 Order. Seller owns or possesses adequate licenses or other valid rights to all of its intellectual property. Seller has not granted any license or similar rights in any of its intellectual property to any third party.

Section 3.4 **Condition of Assets**. Each of the Vehicles and Tangible Personal Property is in good condition and are adequate for the uses to which they are being put, and none of such Vehicles or Tangible Personal Property are in need of maintenance or repairs except for ordinary, routine maintenance and repairs that are not material in nature or cost.

5

Section 3.5    **Assumed Contracts**.  Schedule 3.5 attached hereto includes each contract included in the Purchased Assets assumed by Seller pursuant to a final order in the Bankruptcy Proceeding and assigned to and assumed by Buyer (the "Assumed Contracts").  Each Assumed Contract is valid and binding on Seller in accordance with its terms and is in full force and effect. Seller is not, and to Seller's knowledge, no other party thereto, is in breach of or default under or is alleged to be in breach of or default under, or has provided or received any notice of any intention to terminate, any Assumed Contract.  No event or circumstance has occurred that, with or without notice or lapse of time or both, would constitute an event of default under any Assumed Contract or result in a termination thereof or would cause or permit the acceleration or other changes of any right or obligation or the loss of benefit thereunder. Complete and correct copies of each Assumed Contract have been made available to Buyer.  There are no disputes pending or threatened under any Assumed Contract.  Buyer reserves the right to amend or modify Schedule 3.5 in Buyer's sole and absolute discretion.

Section 3.6    **Non-foreign Status**.  Seller is not a "foreign person" as that term is used in Treasury Regulations Section 1.1445-2.

Section 3.7    **Compliance with Laws and Governmental Authorizations**.  Except as disclosed in Schedule 3.7 hereto, Seller is in compliance in all material respects with all applicable Legal Requirements and Governmental Authorizations applicable to the ownership and use of the Purchased Assets, including without limitation environmental and occupational safety and health Legal Requirements, and with respect to the operation of its Business.

Section 3.8    **Legal Proceedings**.  Except as disclosed in Schedule 3.8 hereto, there is no claim, action, suit, proceeding or governmental investigation ("Action") of any nature pending, or, to Seller's knowledge, threatened, against or by Seller (a) relating to or affecting the Business, the Purchased Assets, or the Assumed Contracts; or (b) that challenges or seeks to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement.  No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action.

Section 3.9    **Brokers**.  No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller, and Buyer will not be liable for any of the foregoing.

Section 3.10   **Employees; Independent Contractors**. Seller has provided Buyer a complete and accurate list of all Employees, including name; age; job title; date of hiring; current compensation; sick and vacation leave that is accrued but unused; service credited for purposes of vesting and eligibility to participate under any benefit plan; and any applicable employment contract. Seller is not (i) a party to or otherwise bound by any collective bargaining or other type of union agreement, (ii) a party to, involved in or, to Seller's knowledge, threatened by, any labor dispute or unfair labor practice charge or (iii) currently negotiating any collective bargaining agreement. Seller has not experienced any work stoppage within the three (3) year period preceding the Closing. Seller has previously disclosed all employee benefit plans to Buyer in writing. Seller and its benefit plans are, and at all times have been, in compliance in all material respects with all applicable Legal Requirements. Seller has also provided Buyer a complete and

6

accurate list of each independent contractor who provides services to Seller pursuant to an agreement (such persons, "Independent Contractors", and such agreements, "Independent Contractor Agreements"), which list shall include the name; age; date of engagement, and the material terms of such agreement. Each Independent Contractor Agreement is valid and binding on Seller in accordance with its terms and is in full force and effect; Seller is not, and to Seller's knowledge, no other party thereto, is in breach of or default under or is alleged to be in breach of or default under, or has provided or received any notice of any intention to terminate, any Independent Contractor Agreement; no event or circumstance has occurred that, with or without notice or lapse of time or both, would constitute an event of default under any such agreement or result in a termination thereof or would cause or permit the acceleration or other changes of any right or obligation or the loss of benefit thereunder. Complete and correct copies of each Independent Contractor Agreement have been made available to Buyer.  There are no disputes pending or threatened under any Independent Contractor Agreement.

Section 3.11   **Taxes**. (a)  Seller has timely filed all tax returns that it was required to file and, except with respect to federal income tax, has timely paid in full all taxes (including without limitation any ad valorem taxes on the Purchased Assets) that it was required to pay as reflected on such tax returns, (b) there are no Encumbrances for taxes on any of its Purchased Assets, (c) Seller has not granted any waiver of any statute of limitations with respect to, or any extension of a period for the assessment of, any taxes and (d) there is no action, suit, proceeding, investigation, audit, claim, assessment or judgment now pending against the Seller or relating to the Business or any of its Purchased Assets or Assumed Contracts in respect of any taxes.

# ARTICLE IV
# REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this Article IV are true and correct as of the date hereof.

Section 4.1   **Organization and Authority of Buyer; Enforceability**.  Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the state of Texas.  Buyer has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby.  The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Buyer.  This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Buyer, and (assuming due authorization, execution and delivery by Seller) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms.

Section 4.2   **No Conflicts; Consents**.  The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Buyer; or (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Buyer.

No consent, approval, waiver or authorization is required to be obtained by Buyer from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby.

## ARTICLE V
## COVENANTS

Section 5.1    **Employees**. Immediately before Closing, Seller will, in full compliance with all applicable Legal Requirements, terminate the employment of all employees of Seller, as identified in writing by Seller and delivered to Buyer ("Employees"). Buyer shall have no obligation or liability with respect to the employment or termination by Seller of any Employees, including any liability or obligation for or with respect to termination, payroll, overtime, accrued benefits, continuing benefits, severance or otherwise. Immediately prior to the Closing Date, Seller shall pay out and satisfy all Employees' accrued vacation, sick, holiday or other paid time off. At Closing, Buyer will initially offer employment to Employees on a strictly "at-will" basis. Buyer shall not assume any obligation or liability to any employee under any Legal Requirements (including without limitation FLSA or workers compensation laws for covered injuries or accidents) which occur on or before the Closing Date.

Section 5.2    **Transfer of Licenses**. Seller and Buyer will cooperate with each other and use commercially reasonable efforts to cause the transfer of Governmental Authorizations from Seller to Buyer which are necessary for the operation of the Purchased Assets, including without limitation the transfer of licenses and authorizations and/or applications with the City of Austin Transportation Department ("Transfer of Licenses").

Section 5.3    **Assumed Contracts – Consents, etc**. Promptly following the execution of this Agreement, Seller will use commercially reasonable efforts to obtain the third-party consents, waivers and estoppels that are required to assign to Buyer the Assumed Contracts (the "Required Consents"). Seller will give proper notice to the counterparties to the Assumed Contracts under applicable Legal Requirements, will assume the Assumed Contracts in the Bankruptcy Proceeding, and will cooperate with Buyer to assign all Seller's rights and interests under the Assumed Contracts. Without limiting any of the foregoing, Buyer will assume Seller's contracts with Seller's drivers pursuant to which the drivers have the right to purchase the vehicles, and Buyer will credit the drivers for all payments made by the drivers through the Closing. Buyer reserves the right to amend or modify Schedule 3.5 in Buyer's sole and absolute discretion.

Section 5.4    **Information**. Seller will afford to the Buyer and authorized representatives and agents (which shall include accountants, attorneys, bankers, and other consultants) of Buyer full and complete access during normal business hours to and the right to inspect the properties, books, and records of Seller applicable to the Purchased Assets and Assumed Contracts, and will furnish Buyer with such additional financial and operating data and other information related to the Purchased Assets and Assumed Contracts as Buyer may from time to time reasonably request. Buyer's right of access and inspection shall be exercised in such a manner as not to interfere unreasonably with the operations of the Seller's Business and shall be subject to reasonable advance notice.

Section 5.5 **Operations**. Subject to Bankruptcy Court's approval, after the execution and delivery of this Agreement and until Closing, Seller will (i) carry on its Business in substantially the same manner as presently conducted and not make any material change in its Business; (ii) maintain its Purchased Assets and all parts thereof in the same operating condition, ordinary wear and tear excepted;(iii) perform all of their obligations under all Assumed Contracts; (iv) keep in full force and effect present insurance policies; and (iv) use reasonable commercial efforts to maintain and preserve its business organizations intact, retain its present Employees and maintain its relationships with customers, vendors, drivers, and others having business relations with the Seller and its Business. Seller will give notice to Buyer within 1 business day if any event occurs which has, or is reasonably likely to have, a material adverse effect on the Business, the Purchased Assets, Assumed Contracts, or the Seller.

Section 5.6 **Negative Covenants**. Subject to Bankruptcy Court's approval, after the execution and delivery of this Agreement and until Closing, Seller will not, without the prior written consent of Buyer: (i) create or assume any Encumbrance upon any Purchased Assets; (ii) sell, assign, lease, or otherwise transfer or dispose of any Purchased Assets; (iii) waive any material rights or claims of Seller affecting the Purchased Assets or Assumed Contracts; (iv) commence a lawsuit; or (v) take, or agree to take, any action which would make any of the representations and warranties of the Seller contained in this Agreement untrue, or result in any of the closing conditions set forth in this Agreement not being satisfied.

Section 5.7 **Schedules Update**. Seller will update the Schedules to this Agreement, from time to time, as needed, through the Closing Date, and promptly deliver the same to Buyer.

Section 5.8 **Intentionally Omitted**.

Section 5.9 **Public Announcements**. Unless otherwise required by applicable law, or as agreed by the parties, neither party shall make any public announcements regarding this Agreement or the transactions contemplated hereby without the prior written consent of the other party (which consent shall not be unreasonably withheld, conditioned or delayed).

Section 5.10 **Bulk Sales Laws**. The parties hereby waive compliance with the provisions of any bulk sales, bulk transfer or similar laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the Purchased Assets to Buyer.

Section 5.11 **Transfer Taxes**. Other than sales tax on vehicles being sold as part of the Purchased Assets, which will be paid by Buyer, if any, all transfer, documentary, sales, use, stamp, registration, value added and other such taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the documents to be delivered hereunder shall be borne and paid by Seller when due. Seller shall, at its own expense, timely file any tax return or other document with respect to such taxes or fees (and Buyer shall cooperate with respect thereto as necessary).

Section 5.12 **Further Assurances**. Following the Closing, each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give

9

effect to the transactions contemplated by this Agreement and the documents to be delivered hereunder. Without limiting the foregoing, Seller agrees to remit to Buyer any accounts receivable payments for periods after Closing received by Seller within 3 days after Seller's receipt of the same.

       Section 5.13  **Bankruptcy Matters**.

       (a)    In the event an objection is filed, an appeal is taken, or a stay pending appeal is requested from the Section 363 Order or any other order reasonably necessary in connection with the transaction contemplated herein, Seller shall promptly notify Buyer of such objection, appeal or stay request and shall provide to Buyer promptly a copy of the related objection, notice of appeal or order of stay. Seller shall also provide Buyer with written notice of any motion or application filed in connection with an objection or any appeal from either of such orders and Seller agrees to take all action as may be commercially reasonable and appropriate to defend against such appeal, petition or motion and Buyer shall cooperate in such efforts.

       (b)    Until Closing, Seller shall make reasonable efforts to consult and cooperate with Buyer regarding (a) any pleadings, motions, notices, statements, applications, schedules, reports, orders, or other papers to be filed with the Bankruptcy Court in relation to the implementation of the transaction contemplated herein, (b) any discovery taken in connection with the seeking entry of the Section 363 Order (including, not by way of limitation, depositions), and (c) any hearing relating to the Section 363 Order, including, not by way of limitation, the submission of any evidence or witness testimony in connection with such hearing.

## ARTICLE VI
## CONDITIONS TO CLOSING; TERMINATION PRIOR TO CLOSING

       Section 6.1  **Conditions Precedent to Obligations of Buyer**. Notwithstanding anything herein to the contrary, the obligations of Buyer to consummate the transactions described herein are subject to the fulfillment, on or prior to the Closing Date, of the following conditions precedent unless (but only to the extent) waived in writing by Buyer at or prior to the Closing:

       (a)    **Bankruptcy Matters**. The following are referred to herein collectively as "Bankruptcy Requirements"):

       (i)    Seller shall have obtained the consent of the Bankruptcy Court, and the Bankruptcy Court shall have entered an order (1) approving the transactions set forth herein in accordance with Sections 363(f) and 365 of the Bankruptcy Code, (2) authorizing the assumption and assignment of Assumed Contracts to be assumed by the Buyer, and (3) authorizing a "no stay" under Federal Rules of Bankruptcy Procedure Section 6004(h). Such order shall be in the form previously approved by Buyer, and the time for appeal of such order shall have expired.

       (ii)    Seller shall have filed a motion with the Bankruptcy Court and the Bankruptcy Court shall have entered an order approving terms and provisions relating to "stalking horse" protection, including a break-up fee in the amount of $150,000, expense

10

reimbursement, bidding procedures that include a minimum of $200,000 in a first overbid, plus $50,000 in any additional overbid increments, and other terms and provisions customary in a bid procedures order (the "Bid Procedures Order"). The order approving the Bid Procedures Agreement shall have set the time and place for the Section 363 auction.

(iii)     Seller shall have filed a motion with the Bankruptcy Court and the Bankruptcy Court shall have entered the Section 363 Order.

(iv)     Seller shall have ensured that proper notice of the 363 sale is given pursuant to Bankruptcy Rule 2002, including, not by way of limitation, to the Seller, any trustee, any committees and ad hoc committees, all creditors, indenture trustees, the United States Trustee, equity security holders, any consumer privacy ombudsman, governmental entities that may be affected by the sale, and holders of interests in the Purchased Assets or the Assumed Contracts. Such notice shall have included opportunity for objections and for a hearing.

(b)     **Related Transactions**. The transactions contemplated by the asset purchase agreements set forth on Schedule 6.1(b) ("Related Agreements") shall have closed or close simultaneously with this Agreement, it being the intent that the closing of the transaction contemplated herein and the transactions under such agreements are conditioned on each other successfully closing.

(c)     **Representations and Warranties**. The representations and warranties of Seller contained in this Agreement shall be true in all material respects when made and as of the Closing Date as though such representations and warranties had been made on and as of such Closing Date. Each and all of the terms, covenants, and conditions of this Agreement to be complied with or performed by Seller on or before the Closing Date pursuant to the terms hereof shall have been duly complied with and performed in all material respects.

(d)     **No Action**. No action or proceeding before a court or any other governmental agency or body shall have been instituted or threatened to restrain or prohibit the transactions herein contemplated, and no governmental agency or body shall have taken any other action with respect to the Purchased Assets, as a result of which Buyer reasonably and in good faith deems it inadvisable to proceed with the transactions hereunder.

(e)     **No Material Adverse Effect**. Since the date of this Agreement, there shall not have occurred any event, change or occurrence that has or could reasonably be expected to have a material adverse effect upon the Business, the Purchased Assets, Assumed Contracts, or Seller. Without limiting the foregoing, the parties expressly agree that there shall deemed to have been a material adverse effect on the Business, the Purchased Assets, Assumed Contracts, or Seller, in the event of a loss of any license or insurance required under law to operate the Business in substantially the same manner as of June 21, 2021.

(f)     **Required Consents**. Seller shall have obtained all of the Required Consents and the Transfer of Licenses from Seller to Buyer.

(g)     **Omitted**.

11

(h) **Leases**. Buyer and Notre Capital Properties, L.P. shall have entered into a new lease agreement in substantially the form attached hereto as <u>Exhibit D</u>, pursuant to which Buyer will lease the facility where the Business is currently operated.

(i) **Closing Deliveries**. Seller shall have made the deliveries required to be made by it under <u>Section 2.2(a)</u> hereof.

Section 6.2 **Conditions Precedent to Obligations of Seller**. Notwithstanding anything herein to the contrary, the obligations of Seller to consummate the transactions described herein are subject to the fulfillment, on or prior to the Closing Date, of the following conditions precedent unless (but only to the extent) waived in writing by Seller at or prior to the Closing:

(a) **Bankruptcy Matters**. Bankruptcy Requirements shall have been satisfied.

(b) **Related Transactions**. The transactions contemplated by the asset purchase agreements set forth on <u>Schedule 6.1(b)</u> shall have closed or close simultaneously with this Agreement, it being the intent that the closing of the transaction contemplated herein and the transactions under such agreements are conditioned on each other successfully closing.

(c) **Representations and Warranties**. The representations and warranties of Buyer contained in this Agreement shall be true in all material respects when made and as of the Closing Date as though such representations and warranties had been made on and as of such Closing Date. Each and all of the terms, covenants, and conditions of this Agreement to be complied with or performed by Buyer on or before the Closing Date pursuant to the terms hereof shall have been duly complied with and performed in all material respects.

(d) **No Action**. No action or proceeding before a court or any other governmental agency or body shall have been instituted or threatened to restrain or prohibit the transactions herein contemplated, and no governmental agency or body shall have taken any other action with respect to Seller or its owners, the Business, or the Purchased Assets, as a result of which Seller reasonably and in good faith deems it inadvisable to proceed with the transactions hereunder.

(e) **Closing Deliveries**. Buyer shall have made the deliveries required to be made by them under <u>Section 2.2(b)</u> hereof.

Section 6.3 **Termination Prior to Closing**. Notwithstanding anything herein to the contrary, this Agreement may be terminated at any time: (a) on or prior to the Closing Date by the written agreement of Seller and Buyer; (b) on or prior to the Closing Date by Buyer, if satisfaction of any condition to Buyer's obligations under <u>Section 6.1</u> of this Agreement becomes impossible or impractical with the use of commercially reasonable efforts (unless the failure results primarily from Buyer breaching any representation, warranty, or covenant herein) and such condition shall not have been waived by Buyer; (c) on or prior to the Closing Date by Seller, if satisfaction of any condition to Seller's obligations under <u>Section 6.2</u> of this Agreement becomes impossible or impractical with the use of commercially reasonable efforts (unless the failure results primarily

12

from Seller breaching any representation, warranty, or covenant herein) and such condition shall not have been waived by Seller; or (d) by Buyer or Seller, if the Closing Date shall not have taken place on or before August 16, 2021 (which date may be extended by the written agreement of Buyer and Seller); provided that the right to terminate this Agreement under this item (d) shall not be available to any party if the failure of the Closing to take place by said date results primarily from such party's (or such party's Affiliate's) breach of any representation, warranty covenant herein. If this Agreement is terminated pursuant to this Section, this Agreement shall be null and void and all rights and obligations of the parties hereunder shall terminate without any liability of any party to any other party, except that nothing herein shall prevent any party from pursuing any of its legal rights or remedies that may be granted to any party by law against the other party to this Agreement as a result of any default by the other party in the observance or in the due and timely performance of such party of any of the covenants herein contained.

## ARTICLE VII
## INDEMNIFICATION

Section 7.1    **Survival**.  All indemnification obligations of either Seller and Buyer shall survive the Closing for a period of eighteen (18) months, provided that the following shall survive the Closing for the period of the applicable statute of limitations under applicable law: (i) the Seller's indemnification obligation arising out of a breach of Section 3.1, 3.2, 3.3, or 3.11, and the Seller's indemnification obligation under Section 7.2(b) and (c), and (ii) the Buyer's indemnification obligation under Section 7.3(b) and (c).

Section 7.2    **Indemnification by Seller**.  Seller shall defend, indemnify and hold harmless Buyer, its affiliates and their respective members, managers, officers and employees from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to:

(a)    any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement or any document to be delivered hereunder;

(b)    any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Seller pursuant to this Agreement or any document to be delivered hereunder; or

(c)    any Excluded Asset, or any liability of the Seller (other than liabilities for Assumed Contracts arising from periods after the Closing).

Section 7.3    **Indemnification by Buyer**.  Buyer shall defend, indemnify and hold harmless Seller, its affiliates and their respective stockholders, directors, officers and employees from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to:

(a)    any inaccuracy in or breach of any of the representations or warranties of Buyer contained in this Agreement or any document to be delivered hereunder;

13

(b)     any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Buyer pursuant to this Agreement or any document to be delivered hereunder; or

(c)     any liabilities from Assumed Contracts arising from periods after the Closing Date.

Section 7.4     **Indemnification Procedures**.   Whenever any claim shall arise for indemnification hereunder, the party entitled to indemnification (the "Indemnified Party") shall promptly provide written notice of such claim to the other party (the "Indemnifying Party").   In connection with any claim giving rise to indemnity hereunder resulting from or arising out of any Action by a person or entity who is not a party to this Agreement, the Indemnifying Party, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such Action with counsel reasonably satisfactory to the Indemnified Party. The Indemnified Party shall be entitled to participate in the defense of any such Action, with its counsel and at its own cost and expense.  If the Indemnifying Party does not assume the defense of any such Action, the Indemnified Party may, but shall not be obligated to, defend against such Action in such manner as it may deem appropriate, including, but not limited to, settling such Action, after giving notice of it to the Indemnifying Party, on such terms as the Indemnified Party may deem appropriate and no action taken by the Indemnified Party in accordance with such defense and settlement shall relieve the Indemnifying Party of its indemnification obligations herein provided with respect to any damages resulting therefrom.  The Indemnifying Party shall not settle any Action without the Indemnified Party's prior written consent (which consent shall not be unreasonably withheld or delayed).

Section 7.5     **Tax Treatment of Indemnification Payments**.   All indemnification payments made by Seller under this Agreement shall be treated by the parties as an adjustment to the Purchase Price for tax purposes, unless otherwise required by law.

Section 7.6     **Effect of Investigation**.   Buyer's right to indemnification or other remedy based on the representations, warranties, covenants and agreements of Seller contained herein will not be affected by any investigation conducted by Buyer with respect to, or any knowledge acquired by Buyer at any time, with respect to the accuracy or inaccuracy of or compliance with, any such representation, warranty, covenant or agreement.

Section 7.7     **Set-Off**.   If an Indemnified Party is entitled to indemnification under this Agreement, then the Indemnifying Party agrees that the Indemnified Party may instruct Buyer to deduct from any Post-Closing Purchase Price the amount of the loss incurred by the Indemnified Party; provided, the foregoing is in addition to any and all other remedies to which the Indemnified Party is entitled and is merely an additional means by which the Indemnified Party may secure payment of indemnification.

Section 7.8     **Cumulative Remedies**.   The rights and remedies provided in this Article are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise.

14

## ARTICLE VIII
## MISCELLANEOUS

Section 8.1    **Expenses**.    All costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

Section 8.2    **Notices**.    All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid.   Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section):

If to Seller:                              Greater Austin Transportation Company
                                           10630 Joseph Clayton Drive, Bldg. A
                                           Austin, Texas 78753
                                           E-mail: johnb@yellowcabsa.com
                                           Attention: John Bouloubasis


with a copy to:                            Richard L. Fuqua
                                           Fuqua & Associates, PC
                                           8558 Katy Fwy Ste 119
                                           Houston, TX 77024-1809
                                           Email: RLFuqua@fuqualegal.com

                                           Dan Gartner
                                           Gartner Law Firm PC
                                           3 Riverway # 1800
                                           Houston, TX 77056
                                           dgartner@gartnerlaw.net

                                           Bruce Ruzinsky
                                           1401 McKinney St., Suite 1900
                                           Houston, Texas 77010
                                           bruzinsky@jw.com


If to Buyer:                               William M. George
                                           1300 Lydia
                                           Kansas City, MO 64106

15

E-mail: wmgeorge@ztrip.com
Attention: William M. George

with a copy to:

Foulston Siefkin LLP
32 Corporate Woods, Suite 600
9225 Indian Creek Parkway
Overland Park, Kansas 66210
Facsimile: 913-498-2101
E-mail: iyamaashi@foulston.com
Attention: Issaku Yamaashi

Foulston Siefkin LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206
E-mail: swead@foulston.com
Attention: Shannon Wead

Section 8.3    **Headings**.  The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

Section 8.4    **Severability**.  If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

Section 8.5    **Entire Agreement**.  This Agreement and the documents to be delivered hereunder constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.  In the event of any inconsistency between the statements in the body of this Agreement and the documents to be delivered hereunder, the Exhibits and Schedules (other than an exception expressly set forth as such in the Schedules), the statements in the body of this Agreement will control.

Section 8.6    **Successors and Assigns**.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Buyer may assign its rights or obligations hereunder to any affiliate without the prior written consent of the other party, and pursuant to such right Buyer hereby assigns the right to purchase the Vehicles to SLM.  No assignment shall relieve the assigning party of any of its obligations hereunder.

Section 8.7    **No Third-party Beneficiaries**.  Except as expressly provided herein, this Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

16

Section 8.8     **Amendment and Modification**.  This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto.

Section 8.9     **Waiver**.  No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving.  No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.  No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

Section 8.10    **Governing Law**.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction).

Section 8.11    **Waiver of Jury Trial**.  Each party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby.

Section 8.12    **Specific Performance**.  The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

Section 8.13    **Counterparts**.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[REMINDER OF PAGE INTENTIONALLY LEFT BLANK.]*

17

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**BUYER:**

**WHC ATX, LLC,**
By: WHC Worldwide, LLC, as sole member

By:_____
        William M. George, as Managing Member

**SELLER:**

**GREATER AUSTIN TRANSPORTATION COMPANY**

By:_____
Name:
Title:

## Schedule 1.1(a) to Asset Purchase Agreement

## Tangible Personal Property

Shop Equipment

| Q | Description |
|---|---|
| 5 | Vehicle Lifts |
| 1 | Alignment Machine |
| 1 | Tire Machine |
| 1 | Wheel Balancer |
|   | Various small tools |

Fixed Assets

MT Data Cameras
Centrodyne Meters
Cab Equipment
Meter
50 FABCARAVANDIVIDE
25 DIVIDER SCION 20 C
POWERWARE 9335 15 K
New Phone system
Copiers

Parts inventory and other property

| PART NUMBER | DESCRIPTION | BIN NUMBER | TOTAL INVENTORY |
|---|---|---|---|
| $35603762C | SCION COMPRESSOR CORE | | 1 |
| $AN427729C | 2011 PRUIS ENGINE CORE | | 1 |
| $CQ818712C | 2010 LINCOLN REAR AXLE CORE | | 1 |
| $EX344706C | ENGINE CORE 2014 TOTOYA SCION XB | | 1 |
| $K21860762C | 2011 GRAND MARQUIS WHEEL-RIM CORE | | 1 |
| $K30339762C | TRANS CORE 2010 CV | | 1 |
| $K32265762C | CORE REAR AXLE 2008 GRAND MARQUIS | | 1 |

| | | | |
|---|---|---|---|
| $M11373750 | A/C COMPRESSOR | | 1 |
| $M11373750C | A/C COMPRESSOR CORE | | 1 |
| $PF201732C | A/C COMPRESSOR CORE | | 1 |
| $PMO6O748C | ENGINE CORE 2013 SIENNA | | 1 |
| $RJ678741C | 2010 GRAND MARQUIS REAR AXLE CORE | | 1 |
| 120 | 20 OZ CARB CLNR | | 4 |
| 1393 | BATTERY CLAMPS | | 1 |
| 5113 | ELEGRS | | 2 |
| 090937CD | DRIAN PLUG-2011 CV | 3-C | 2 |
| 1010226 | RACK AND PINION | | 1 |
| 10103D | GASKET | | 1 |
| 1020246C | RACK PINION CORE | | 1 |
| 103352DX | RADIATOR FOR 2014 SCION XB | | 1 |
| 103448CF | MV RADIATOR | 9-A | 1 |
| 103611LW | RADIATOR FOR 2011 TOY SIENNA | | 1 |
| 10521 | EVAP CORE CLEANER | 1-D | 11 |
| 106007 | MANIFOLD | | 1 |
| 1061 | FUEL INJ. CLEANER | 1-E | 13 |
| 10834 | FUEL CAP 2013 SCION XB | 8-B | 1 |
| 10838T | FUEL CAP | | 1 |
| 11026 | CV ALTERNATOR; POLICE | 6-D | 1 |
| 1113 | ALTERNATOR | 6-D | 1 |
| 11195 | SCION ALT | 4-D | 3 |
| 11326 | TS ALTERNATOR | 4-D | 3 |
| 11432 | CV ALTERNATOR 2010 | 4-D | 4 |
| 1156 | BULB | DEFAULT | 2 |
| 11570 | MV ALTERNATOR 2010 | 4-D | 5 |
| 11572 | ALTERNATOR | | 3 |
| 11580C | ALT CORE | | 1 |
| 1161 | RADIATOR FLUSH | 1-D | 4 |
| 119145C | CV AXLE CORE | | 1 |
| 121.67075 | REAR ROTOR 2013 AND UP 17IN WHEEL | | 1 |
| 12341R70A00 | GASKET | 6-C | 1 |
| 12351R70A00 | GASKET, RR. HEAD | 6-C | 1 |
| 130165 | VSS | | 1 |
| 13203 | VAC PUMP OIL | | 1 |
| 146C | HYBRID BATTERY CORE | | 1 |
| 15124 | 02 SENSOR | | 1 |
| 15399 | THERMOSTAT | 3-C | 1 |
| 154142 | VALVE STEMS | | 6 |
| 1562031060 | TS OIL FILTER HOUSING | 2-B | 1 |

| | | | |
|---|---|---|---|
| 15787131 | REAR TAIL LIGHT ASSEMBLY | SHELF FD | 2 |
| 16004C | STARTER CORE | | 1 |
| 1610009441 | TS WATER PUMP | 8-E | 1 |
| 161227C | 2015 SCION XB ENGINE CORE | | 1 |
| 1636128350 | FAN ASSEMBLY | | 1 |
| 1636128360 | FAN ASSEMBLY | | 1 |
| 163630P100 | MOTOR | 4-A | 1 |
| 163630P250 | motor | CLOSE T | 1 |
| 1640131480 | TS RADIATOR CAP | 4-C | 1 |
| 164050P040 | TS COOLANT CAP | 8-D | 1 |
| 164700P040 | reserv | SHELF FD | 1 |
| 170503C | ENGINE CORE 300 CHRYLER 3.6 | | 1 |
| 1720469GE | FAN ASSEMBLY | | 1 |
| 1720569AD | FAN ASSEMBLY | 8-A | 1 |
| 1743013 | TPMS SENSOR | 1-B | 10 |
| 1743014 | TPMS SENSOR | 1-B | 5 |
| 1743041 | UNIVERSAL SENSORS | | 10 |
| 18047 | 02 SENSOR | 4-C | 1 |
| 18115R70A01 | HO EXHAUST GASKET UPPER | 6-C | 2 |
| 18126 | 02 SENSOR DODGE CARVAN | F-D | 1 |
| 18212SA7003 | HO EXHAUST GASKET LOWER | 6-C | 3 |
| 184840 | CV BRAKE CALIPER RT | 8-E | 1 |
| 184841 | CV BRAKE CALIPER LEFT FRONT | 8-E | 1 |
| 184850 | CV BRAKE CALIPER REAR | 8-E | 1 |
| 184851 | CV BRAKE CALIPER REAR | 8-E | 1 |
| 19565R15 GY | GOODYEAR TIRES | TIRE RACK | 1 |
| 1AR40ES3AH | MV HANDLE,RT REAR INSIDE DOOR(B) | 5-A | 1 |
| 1JE89DW1AA | MV VISOR LEFT | 5-A | 1 |
| 1JG12XXXAE | W/STRIP, FNT DOOR BO | SHELF FD | 1 |
| 1T1 | OIL | BULK TANK | 640 |
| 1U2Z14S411 | CV HORN PIGTAIL 01 | 3-B | 1 |
| 1U2Z14S411BCA | LTC SOCKET, RT HEADLAMP | 3-D | 1 |
| 1W7Z5E212ZB | CV CAT CONVERTER 02 | 2-D | 1 |
| 1W7Z6038BA | CV MOTOR MOUNT (RT) | 4-C | 1 |
| 20555R16 KELLY | TIRE | TIRE RACK | 2 |
| 20911162 | CI ALTERNATOR | 6-D | 1 |

| 2102 | FUEL SYSTEM CLEANER | 1-D | 12 |
|---|---|---|---|
| 21560R16 KELLY | TIRE | TIRE RACK | 1 |
| 21560R16 TOY | TOYO TIRES | | 3 |
| 21565R17 BRIDGESTONE | BRIDGESTONE TIRES | | 4 |
| 21565R17 KELLY | TIRES | | 3 |
| 2161 | POWER STEERING FLUID | 1-D | 2 |
| 22-1029C | RACK AND PINION CORE | | 1 |
| 220300P050 | TS THROTTLE BODY | 4-A | 1 |
| 2220431020 | METER | | 1 |
| 222710S010 | GASKET | 4-C | 1 |
| 22555R17 KELLY | TIRE | TIRE RACK | 2 |
| 22560R16 L | TIRES LEMANS | | 3 |
| 22560R17 KELLY | TIRE | TIRE RACK | 3 |
| 22565R16 KELLY | TIRES | | 7 |
| 22565R17 KELLY | TIRE | TIRE RACK | 1 |
| 22565R17 TY | TOYO TIRES | | 2 |
| 2286 | OUTLET SEAL | | 2 |
| 230177 | COIL | 3-C | 2 |
| 230212 | COIL FOR 2013 SCION XB | | 1 |
| 23232 | POWER STEERING FLUID 2013 CHRYSLER 300 | 1-D | 3 |
| 2344149 | 02 SENSOR DOWNSTREAM | | 1 |
| 2344169 | O2 SENSOR | 4-B | 1 |
| 2344209 | OXYGEN SENSOR | 4-B | 1 |
| 2344516 | 02 SENSOR UPSTREAM | | 1 |
| 2349008 | AIR FUEL SNR | | 1 |
| 2349022 | SIENNA AIR FUEL SNR 1 YR WARR | | 1 |
| 23555R17 KELLY | TIRE | TIRE RACK | 3 |
| 23560R16 KELLY | TIRE | TIRE RACK | 2 |
| 2390 | CV THERMOSTAT GASKET | | 1 |
| 24176 | COOLANT HOSE | | 1 |
| 2441 | RADIATOR | 9-A | 1 |
| 24483 | TS CABIN AIR FILTER | 5-C | 1 |
| 24RPRM | BATTERY | BATT RACK | 1 |
| 25118B | MV WHEEL STUD (F) | 7-C-9 | 1 |

| 25545R19 GY | GOODYEAR EAGLES | TIRE RACK | 1 |
|---|---|---|---|
| 25664287 | CI ACTUATOR,RT REAR DOOR LOCK | CLOSET | 1 |
| 2678 | RADIATOR MV | 9-A | 1 |
| 27058 | TRANSMISSION HOSE | | 3 |
| 27059 | TRANSMISSION HOSE | | 2 |
| 270600P24184 | ALTERNATOR | | 1 |
| 270600P24184C | ALTERNATOR CORE | | 2 |
| 271346 | CV STRUT | 4-C | 1 |
| 280005 | OIL SENDING UNIT CARAVAN | 7-C-4 | 1 |
| 28409 | HEATER HOSE | | 2 |
| 28418 | HEATER HOSE | | 2 |
| 28604 | 5/8 HOSE CONNECTOR | 7-C-4 | 3 |
| 28624 | HOSE CONNECTOR | 1-D | 3 |
| 28634 | HOSE CONNECTOR | 1-D | 3 |
| 2F1Z9A317AA | CV FUEL FILTER CLIP | 3-B | 1 |
| 2T1Z2A225C | FTC BRAKE HARDWARE RT REAR | 8-E | 1 |
| 2U5Z13411SA | CV SOCKET,FRT PARK LAMP 06 | 3-C | 1 |
| 2W7Z9D476AA | 500 EGR GASKET | 3-B | 1 |
| 3006 | PARKING BRAKE ADJUSTER | 7-A-5 | 1 |
| 3034 | 300 SPARK PLUGS 3.5L CHAMPION | 3-B | 6 |
| 303622PE | A/C CONDENSOR | 8-A | 1 |
| 31160 | WIPER BLADE | 1-A | 8 |
| 31200 | 20" WIPER BLADES | 1-A | 11 |
| 31280 | 28" WIPER BLADE | 1-A | 5 |
| 3135 | CONDESOR | 9-A | 2 |
| 3157 | MINIATURE BULBS | | 1.1 |
| 3157NA | MINI LAMP | | 2 |
| 33595 | FUEL FILTER CV | 12 | 1 |
| 3387 | CI OIL FILTER | 14 | 12 |
| 3411860 | EXPAN | 3-D | 1 |
| 3532 | CV CONDENSOR | 9-A | 2 |
| 3533048020 | TS TRANSMISSION FILTER | 8-E | 1 |
| 3543 | BC TRANS/AXLE SEAL | 7-B-9 | 1 |
| 36100 | CV SERPENTINE BELT IDLER | 4-C | 1 |
| 36472 | IDLER PULLEY | 8-B | 1 |
| 3684 | CABIN FILTER | 5-B | 2 |
| 3696 | CABIN FILTER 13-DODGE GRAND CARAVAN | | 3 |
| 37317 | PRESS SWITCH TOY SIE | | 1 |
| 3757ALLBP | MINI BULBS | | 7 |

| 38082 | IDLER PULLEY | | 2 |
|---|---|---|---|
| 38323 | TENSIONER | 6-B | 1 |
| 3852T | CV HORN | 3-A | 1 |
| 39282 | TENSIONER | | 2 |
| 39384 | EXPANSN VLV 2013 SCION XB | 8-C | 1 |
| 3980 | BC OIL FILTER | 13 | 4 |
| 3S4Z9450EA | FF GASKET | 3-B | 1 |
| 3U2Z14S411FHAB | CV PIGTAIL,RT PARK LAMP | 3-D | 1 |
| 3U2Z14S411FKAE | CV PIGTAIL; HEADLIGHT | 3-D | 2 |
| 3U2Z18124BP | CV STRUT | 9-E | 1 |
| 3W1Z11691AA | CV DIMMER SWITCH | 3-D | 1 |
| 3W1Z17C829AA | LTC MLDG,FRT BUMPER 05 | SHELF RR | 1 |
| 3W1Z2853AA | CV PARKING BRAK CABLE AT PEDAL | 8-E | 1 |
| 3W1Z54280B58AA | LTC PANEL,REAR LAMP | SHELF RR | 1 |
| 3W1Z5442528AA | LTC EMBLEM,REAR LID | CLOSET | 1 |
| 3W1Z5442528BA | LTC EMBLEM,REAR LID | CLOSET | 4 |
| 3W1Z5443720AA | LTC WEATHERSTRIP,TRUNK | SHELF FD | 1 |
| 3W3Z13008AA | GM HEADLAMP | CLOSET | 1 |
| 3W3Z1448AA | CV SPARE TIRE BOLT WRONG | 8-D | 1 |
| 3W7Z14524BAE | CV WINDOW SW BEZEL L 03 | 4-B | 1 |
| 4046 | CABIN FILTER | 5-C | 1 |
| 4078 | THERMOSTAT | | 2 |
| 4112 | LIFT SUPPORT | 5-A | 2 |
| 4221463 | PARKING BRAKE SWITCH | 3-D | 1 |
| 4243108040 | TS BRAKE ROTOR REAR | 8-C | 1 |
| 42621AE031 | TS WHEEL COVER | 2-B | 1 |
| 42851 | 4OZ SLIP ADD | 1-A | 2 |
| 43022TK8A00 | HO BRAKE PADS REAR | 8-B | 1 |
| 4345707010 | TS AXLE BRACKET RH | 4-A | 1 |
| 4351208040 | TS BRAKE ROTORS FRONT | 8-C | 4 |
| 435500R010 | HUB BEARING | | 1 |
| 4441008082 | HI PRESSURE STEERING LINE | 8-E | 1 |
| 4448886 | MV HARMONIC BALANCER | 6-B | 1 |
| 450238EC | CONVERTER | | 1 |
| 450456AE | GM BANK 1 CAT | 8-E | 1 |
| 4567413 | MV TRANSMISSION AXLE HOUSING | 10-D | 1 |

| 4575894AA | CT LATCH,LFT FRT | CLOSET | 1 |
|---|---|---|---|
| 4578044AF | 300 MOTOR MOUNT | 6-C | 1 |
| 4578085AA | 300 DIFFO MOUNT FRONT TOP | 7-D-8 | 2 |
| 4578191AA | 300 DIFFO MOUNT FRONT LOWER | 7-D-8 | 2 |
| 4581541AB | MV VACCUUM MOTOR | 7-E | 1 |
| 4589217AE | LATCH | SHELF FD | 1 |
| 4589243AG | MV HATCH LATCH | 3-A | 1 |
| 4591250 | DC EGR TUBE O RING | 3-B | 3 |
| 4593848AA | 300 SERPENTINE BELT IDLER PULLEY | 8-D | 1 |
| 4593894AA | 300 EGR VALVE | 7-E | 1 |
| 4606869AB | DC IGN COIL | 6-A | 1 |
| 4606869AD | DC IGNITION COIL | 6-A | 6 |
| 4621987AC | MV TIMING COVER GASKET | 5-A | 1 |
| 4628935AD | DC HOLD,CARPET | CLOSET | 1 |
| 4628936AF | DC COVER,REAR FLOOR | CLOSET | 1 |
| 4648973AD | MV PCV | 7-C-5 | 1 |
| 4648987AA | MV VALVE COVER GASKET | 5-A | 2 |
| 4659982 | MV TRANS SHIFT PACK GASKET | 7-A-6 | 1 |
| 4663759 | 300 PLENUM GASKET | 7-D-2 | 3 |
| 4677180AD | MV A/C RESISTOR'98 | 7-A-2 | 1 |
| 4677577AC | MV AC HOSE DISCHARGE 08 | 9-E | 1 |
| 4677910AA | MV RADIATOR SEAL | SHELF RR | 1 |
| 4685574AH | MV MAST,ANTENNA 06 | CLOSET | 1 |
| 4685727AA | MV DOOR LOCK SWITCH LFT FRONT | 7-B-6 | 1 |
| 4685732AC | MV SWITCH,LFT WINDOW | CLOSET | 1 |
| 4685764AB | MV ADAPTER,ANTENNA 06 | CLOSET | 1 |
| 4685844AA | MV SWITCH,WINDOW 06 | 7-B-6 | 3 |
| 4685845AA | MV WINDOW SWITCH 06 | 7-B-6 | 1 |
| 4694338AC | MV OIL COOLER | X | 1 |
| 4694995AA | MV LEAF SPRING SHACKLE LONG | 7-D-6 | 1 |
| 4694999AA | MV BOLT | 7-D-6 | 4 |
| 4717576AF | MV TRACK,RT REAR DOOR 05 | CLOSET | 1 |

| | | T | |
|---|---|---|---|
| 4717771AE | MV APPLIQUE,LFT FRT DOOR 05 | CLOSE T | 1 |
| 4717832AE | MLDG,RT FRT DOOR BELT 06 | CLOSE T | 1 |
| 4717961AB | MV ACTUATOR,REAR DOOR LOCK 06 | CLOSE T | 1 |
| 4721154AB | MV MASTER CYL | 6-B | 1 |
| 4721389AA | MV LEAF SPRING SHACKLE PLATE (REAR) | 7-D-6 | 6 |
| 4721541AH | MV BRAKE HOSE FNT LEFT | 10-D | 1 |
| 4721561AE | MV WHEEL SPEED SENSOR L/F | 7-C-8 | 1 |
| 4721672AC | DAMPER | 6-A | 1 |
| 4743040AA | MV LEAF SPRING SHACKLE BUSHING | 7-D-6 | 1 |
| 4743044AA | MV STRUT MOUNT BEARING | 7-C-8 | 1 |
| 4743224AA | MV LIFT GATE SHOCK; REAR | 8-A | 2 |
| 4766312AD | MV P/S RETURN HOSE | 9-E | 1 |
| 4789 | MV THERMOSTAT 05 | 7-C-2 | 1 |
| 4792317AB | MV CRANK SEAL FRONT | 7-D-2 | 1 |
| 4792836AA | DC SERPENTINE BELT IDLER PULLEY | 7-D-7 | 1 |
| 4792939AA | 300 OIL FILTER ADAPTER GASKET | 3-B | 2 |
| 4797666 | MV BRAKE ADJUSTER REAR | 7-A-5 | 1 |
| 4797667 | MV BRAKE ADJUSTER REAR | 7-A-5 | 1 |
| 4800696AA | MV FLYWHEEL | | 1 |
| 4801839ACC | STARTER CORE | | 1 |
| 4806230AD | DC BRKT,FRT BUMPER | SHELF FD | 1 |
| 48331-08010 | fr spring bumper | | 1 |
| 48510-A9890 | TS STRUT | | 1 |
| 4860696AB | MV EXT,RT QUARTER 05 | CLOSE T | 1 |
| 48609-08030 | TS STRUT MOUNT | | 1 |
| 4861962AC | DETECTOR | | 1 |
| 4868118AC | MV CHAIN,RT REAR DOOR 05 | CLOSE T | 1 |
| 4868332AE | MV RELAY,FAN 01 | 7-B-5 | 1 |
| 4872508020 | BUSHING FOR SIENNA | | 2 |
| 4877805ah | MV MASTER CYLINDER | | 1 |
| 4880210AHC | AXLE CORE | | 1 |
| 4886074AA | MV BAKE CALIPER BUSHING | 7-A-1 | 2 |
| 4886075AA | MV BRAKE CALIPER BOLT 05 | 7-A-1 | 2 |

| 4892055AC | 300 THERMOSTAT GASKET 3.5L | 7-D-3 | 1 |
|---|---|---|---|
| 4892312AC | 300 THERMOSTAT KIT | 6-D | 1 |
| 4894526AA | MV REGULATOR,RT FRT WINDOW | CLOSET | 1 |
| 4894904AC | MV TRACK | SHELF RR | 1 |
| 4895482AB | 300 SWAY BAR LINK | 10-D | 1 |
| 4896059AA | MV CRASH SENSOR ON RAD SUP | 7-A-7 | 4 |
| 4896803AA | 300 ALTERNATOR | 9-E | 1 |
| 4896805AEC | ALTERNATOR CORE | | 1 |
| 4912 | SPARK PLUG | 3-C | 7 |
| 4GL940749C | TRANS CORE 2007 GRAND MARQUE | | 1 |
| 4W1Z54218A42AA | LTC ACTUATOR,RT FRT LOCK | CLOSET | 1 |
| 4W7Z14B321AA | GM SENSOR,FRT | CLOSET | 1 |
| 4W7Z2A635AA | BRAKE CABLE | 8-E | 1 |
| 5003316AA | MV A/C RESISTOR PIGTAIL | 7-B-7 | 1 |
| 5005003AI | MV A/C CONTROL PANEL 03 | 6-B | 1 |
| 5013687AB | MV CAMBER BOLT PKG | 7-B-4 | 3 |
| 5013946AA | WIRING HARNESS | 7-D-8 | 1 |
| 5016932AA | MV LIFT GATE LIGHT LENS | 6-B | 1 |
| 5017117AA | MV RAD FAN PIGTAIL LEFT 06 | 7-A-5 | 1 |
| 5017119AA | MV PIGTAIL | 7-B-7 | 1 |
| 5017183AB | 300 THERMOSTAT BYPASS TUBE | 8-D | 2 |
| 5017678AA | MV ACTUATOR,RT REAR DOOR | 7-C-1 | 1 |
| 5018517AE | MV GUTTER,LFT TAIL GATE 06 | CLOSET | 1 |
| 5019052AF | MV LATCH,RT REAR DOOR 06 | CLOSET | 1 |
| 5019186AB | MV AC EXPANSION BLOCK REAR | 6-D | 2 |
| 5019987AA | MV BRAKE CALIPHER PIN KIT | 7-A-3 | 1 |
| 5020410AA | MV STOP,REAR DOOR BUMPER 06 | CLOSET | 5 |
| 5020974AB | MV TRACK MOLDING | SHELF RR | 1 |
| 5056268AB | DC LATCH,TRUNK LID | SHELF FD | 1 |
| 5058865AB | A/C LINE | 3-A | 1 |
| 5064178AC | ANTENNA MV 08-13 | SHELF FD | 2 |
| 5065173AJ | CT WEATHERSTRIP,REAR TRUNK | SHELF FD | 1 |

| 5065220AC | DC SHIELD,RT REAR SPLASH | CLOSET | 1 |
|---|---|---|---|
| 5065470AF | DC WINDOW REG RT FRONT | CLOSET | 1 |
| 5065473AF | CT REGULATOR,LFT REAR WIN. | CLOSET | 1 |
| 5065502AD | DC SHIELD,RT SPLASH 07 | CLOSET | 1 |
| 5065503AD | DC SHIELD,LFT SPLASH 07 | CLOSET | 1 |
| 5066503AB | MV A/C DRIER | 7-A-1 | 1 |
| 5083233AA | MV PLUG,LFT FRT PARKING LAMP | 7-B-7 | 1 |
| 5083344AA | BRAKE LIGHT SWITCH | 7-D-9 | 1 |
| 5085685AA | MV CAT GASKET GASKET | 7-B-5 | 1 |
| 5102969AC | MV FUSE BLOCK | 2-B | 1 |
| 5109174AB | MV CROSS MEMBER | SHELF RR | 1 |
| 5109613AA | MV STOP,REAR RUBBER DOOR | CLOSET | 1 |
| 5109863AA | MV LATCH,LFT FRT LOCK | CLOSET | 1 |
| 5113147AA | FILLER MV LT | SHELF RR | 1 |
| 5113548AC | MV COWL PANEL | SHELF RR | 1 |
| 512301 | 300 REAR HUB BEARING | 1-A | 1 |
| 513230 | CV HUB BEARING FRONT 06 | | 1 |
| 513257 | SCION HUB BEARING | | 2 |
| 5135251AA | MV REGULATOR,LFT FRT WINDOW | CLOSET | 1 |
| 5137608AB | 300 CALIPER BUSHING KIT | 7-A-3 | 1 |
| 5137778AC | 300 POWER STEERING COOLER CLIPS | 7-D-9 | 2 |
| 5139687AA | 300 AC EXPANSION BLOCK | 7-C-1 | 1 |
| 5140311AA | REAR DRIVE SHAFT ISOLATOR | 11 | 1 |
| 5145012020 | DEFLECTOR BUMPER | | 1 |
| 5149025AA | 300 AMBIENT TEMPERATURE SENSOR | 3-A | 3 |
| 5149141AF | CAMSHAFT SENSOR | 7-D-5 | 1 |
| 5149167AE | CRANK SENSOR | 7-B-4 | 1 |
| 5149168AI | MV IGNITION COIL 12 | 3-A | 2 |
| 5149168AJ | IGN COIL DODGE CARAVAN | | 1 |
| 5149180AA | MV O2 | 7-B | 2 |

| | | | |
|---|---|---|---|
| 5151025AA | MV SWAY BAR BUSHING RETAINER | 7-A-2 | 1 |
| 5151727AD | POWER STEERING PUMP | 2-A | 1 |
| 51717 | UPSTREAM O2 SENSOR | | 1 |
| 5175788AB | MV AIR BAG PIGTAIL | 7-B-8 | 1 |
| 5183153AA | RESISTOR | 9-E | 1 |
| 5184349AC | THROTTLE BODY | 7-E | 1 |
| 5184464AHC | 3.6LTR CORE | | 1 |
| 5184498AL | WATER PUMP | | 1 |
| 5184498AM | WATER PUMP CHY 300 | | 1 |
| 5184595AE | MV VALVE COVER GASKET LH | 7-D-7 | 1 |
| 52108844AA | TRANS HOSE FITTING | 7-D-9 | 2 |
| 5212812909 | TOW HOOK COVER | | 1 |
| 5253512120 | retaier | | 2 |
| 5253612100 | RET LT | | 1 |
| 53002 | MV BRAKE ROTOR 05 | 10-E | 4 |
| 53004 | MV BRAKE ROTOR FT 4WD 05 | 10-E | 4 |
| 53050 | DC RR ROTOR | 9-C | 5 |
| 53289 | CV CATYLITIC CONVERTER 02 (4.6 | 2-D | 1 |
| 53290 | CV CATYLITIC CONVERTER 02 (4.6 | 2-D | 1 |
| 5344012121 | SUPPORT HOODS | | 1 |
| 5363012640 | CABLE | | 3 |
| 5383 | MV BRAKE ROTOR REAR 4WD 05 | 10-E | 4 |
| 5464 | SPARK PLUGS IRIDIUM IX | 7-D-3 | 4 |
| 55366298AA | MV FUEL PUMP O RING | 7-A-4 | 1 |
| 56007080AB | RELAY | 7-D-8 | 3 |
| 56041018AD | MV MASS AIR FLOW SENSOR 05 | 7-A-3 | 2 |
| 56046118AD | MV TURN SIGNAL SWITCH 08 | 6-B | 1 |
| 56046241AG | MV CLOCKSPRING | 2-A | 1 |
| 56046251AD | ODOMETER SWITCH | 7-D-9 | 1 |
| 56046823AE | MASTER DOOR SWITCH FOR DODGE CHARGER | | 1 |
| 56641 | CI BRAKE ROTOR (F) | 2-D | 3 |
| 57010464AA | DC FRONT ABSORBER | SHELF RR | 1 |
| 578MF | BATTERY (CHEVY) | BATT RACK | 1 |
| 58620 | OESPRCTRUM | | 1 |
| 59356 | VALVE CORE | | 3 |
| 599030 | CV AC CONTROL PANEL | 4-B | 1 |
| 599030C | CORE | | 1 |
| 5F9Z1104AB | 500 HUB BEARING FRONT | 8-D | 1 |

| 5F9Z1177H | 500 AXLE SEAL RT | 3-D | 1 |
|---|---|---|---|
| 5F9Z2200B | F500 BRAKE PADS REAR 05 | 9-D | 1 |
| 5L2Z9341A | FF FUEL PUMP INERTIA SWITCH 06 | 3-D | 1 |
| 5U2Z14S411VA | CV BLOWER MOTOR SWITCH PGTL | 3-C | 3 |
| 5W1Z54218A42AA | CV ACTUATOR,LFT FRT DOOR LOCK | 3-D | 1 |
| 5W7Z16036APTM | CV MLDG,RT | CLOSE T | 2 |
| 5W7Z16037APTM | CV MLDG,LFT FENDER | CLOSE T | 1 |
| 5W7Z16700A | CV LATCH,HOOD 04 | SHELF FD | 2 |
| 5W7Z5426442A | CV ROD,REAR DOOR | CLOSE T | 5 |
| 5W7Z5426443A | CV ROD,REAR DOOR | CLOSE T | 5 |
| 6032920 | MV OIL PICK UP TUBE O RING 05 | 7-B-8 | 2 |
| 603551 | MV AXLE; | 4-A | 1 |
| 603551C | AXLE CORE | | 1 |
| 603553C | CORE | | 1 |
| 604214 | ACTUATOR | | 1 |
| 610266 | TS FNT STUDS | 8-C | 2 |
| 610312 | MV  WHEEL STUD REAR  DRUM | 7-B-8 | 2 |
| 6104257AA | HEX-BOLT | 7-A-1 | 2 |
| 6104450AA | BOLT -HEX | | 1 |
| 6104716AA | HEX BOLT NUT | 7-A-4 | 6 |
| 6105052AA | BOLT | 7-A-4 | 6 |
| 6105062AA | BOLT-HEX | | 3 |
| 6105069AA | BOLTS-HEX | | 1 |
| 611181 | WHEEL NUT | 3-B | 10 |
| 611183 | WHEEL NUT-2013 TOY SCION XB | | 2 |
| 611292 | LUG NUTS 2011 FORD CV | | 8 |
| 6211147061BO | PRIUS KICK PANEL | SHELF FD | 1 |
| 621840 | CROWN VIC FAN ASSEMBLY | 9-A | 1 |
| 622410 | SCION FAN ASS. | 8-A | 1 |
| 622700 | FAN ASSEMBLY | 10-A | 1 |
| 6231208020B0 | WEATHER STRIP CAR SIDE 12 SIENNA | SHELF FD | 1 |
| 624F | CM OIL FILTER | 14 | 2 |
| 626307HP | HEATER HOSE MANIFOLD | 8-D | 1 |
| 626314HP | HEATER HOSE 2010 DODGE | | 1 |

| | CARAVAN | | |
|---|---|---|---|
| 626315HP | HEATER HOSE | | 1 |
| 648d | rear hatch | | 1 |
| 6502311 | MV WHEEL STUD (F) | 7-C-5 | 16 |
| 65035AC | 3.5L TOYOTA CORE | | 1 |
| 6508025AA | 300 MOTOR MOUNT STUD | 7-A-7 | 1 |
| 6508707AA | MV WHEEL STUD FRONT '10 | 7-B-8 | 7 |
| 6509592AA | IDLER BOLT | 7-A-4 | 1 |
| 6512419 | DODGE CARAVAN COMPRESSOR | BATT RACK | 1 |
| 65EXT | FORD TAURUS BATTERY | BATT RACK | 2 |
| 6619 | SPARK PLUG | 7-D-3 | 15 |
| 674121 | CONVERTOR 2013 DODGE CARAVAN | | 2 |
| 6791147030 | FLOOR PLATE | 8-E | 1 |
| 68003706AA | MV CALIPER PIN KIT | 7-D-2 | 3 |
| 68003777AA | MV CALIPER PIN KIT REAR | 7-C-8 | 2 |
| 680110RGS | CV ROTORS FRONT | 10-C | 2 |
| 680129RGS | CV FRONT ROTOR | 10-C | 2 |
| 68018555AA | MV TRANS KIT 10 3.8L 6 SPEED | 5-D | 3 |
| 68029219AC | MV TIMING COVER | 5-A | 1 |
| 68029726AC | MV EVAPORATOR CORE | 1-A | 1 |
| 68030096AA | CV PIG TAIL | 7-B-7 | 1 |
| 68030380AA | MV LATCH,RT REAR DOOR | SHELF FD | 1 |
| 68030380AB | DOOR ACTUATOR | 1-A | 1 |
| 68030655AA | REGULATOR | 1-A | 1 |
| 68030657AA | WINDOW MOTOR | 2-A | 1 |
| 68030661AA | FRT RT WINDOW MOTOR 08-12 MV | 2-A | 2 |
| 680318636AA | A/C DRIER | | 1 |
| 68031863AA | MV AC DRIER 08 | 6-B | 1 |
| 68034400AI | CROSSOVER PIPE | 2-C | 1 |
| 68034898AB | 300 CLOCK SPRING | 2-A | 1 |
| 68036150ALC | CORE | | 10 |
| 68036151AMC | CONVERTOR CORE | | 12 |
| 68045313AA | MV HEADLIGHT PIGTAIL; RH | 7-B-3 | 1 |
| 68045336AA | MV PIGTAIL | 7-D-8 | 1 |
| 68050014AA | MV BLOWER MOTOR RESISTOR 2011 | 7-C-9 | 2 |
| 68050129AA | 300 FAN ASSEMBLY | | 1 |
| 68051638AB | 300 TOE ARM RH | 11 | 1 |
| 68053596AA | VALVE BRAK | | 1 |

| 68060507AB | MV FUEL PUMP 11 | | 1 |
|---|---|---|---|
| 68068296AA | MV HEATER CORE FITTINGS REAR | 7-C | 2 |
| 68078768AA | MV TPMS SENSOR 08 | 1-B | 1 |
| 68079744AD | OIL FILTER | | 1 |
| 68080123AF | MV SHIFT CABLE | | 1 |
| 68084862AA | BATTERY HOLD DOWN | 3-A | 1 |
| 68087340AA | MV WATER PUMP GASKET | 11 | 1 |
| 68100709AA | MV FOG LAMP COVER | SHELF RR | 1 |
| 68127953AA | RT SIDE EXHAUST TIP BRKT | SHELF FD | 1 |
| 68141058AA | MV TIE ROD | 11 | 1 |
| 68144206AC | CALIPER | 3-E | 1 |
| 68144206ACC | CALIPER CORE | | 1 |
| 68144207AC | CALIPER | 3-E | 1 |
| 68144207ACC | CALIPER CORE | | 1 |
| 68148113AA | DC THERMOSTAT HOUSING | 7-E | 1 |
| 68159271AA | BALL JOINTS | 3-A | 2 |
| 6818008020 | WEATHERSTRIP ASSY 11-13 SIENNA | SHELF RR | 1 |
| 68190404AB | WIRING 3-W | | 1 |
| 68192437AA | MV BRAKE CALIPER BRACKET | 7-E | 1 |
| 68195675AB | TUBE HEATER | 7-E | 1 |
| 68217405ABC | TIPM CORE | | 1 |
| 68226707AA | TERMINAL | 7-B-9 | 1 |
| 68229216AA | 300 CONTROL ARM LOWER REAR RT | 11 | 1 |
| 68274396aac | core | | 1 |
| 68298871AA | WINDOW DOOR SWITCH | | 1 |
| 68299450aa | HEAT ACTUATOR | 7-C-9 | 2 |
| 692155206 | SIENNA HANDLE | | 1 |
| 6935008020 | TS TRUNK LATCH | 8-D | 1 |
| 6941008040 | TS PLATE,REAR STRICKER | CLOSET | 2 |
| 696RMF | TC BATTERY | 10-E | 1 |
| 6F2Z2552A | CV BRAKE CALIPER | 8-D | 1 |
| 6K840 | 300 SERPENTINE BELT 2.7L | 9-D | 4 |
| 6W1Z2A635AA | PARKING BRAKE CABLE | 8-E | 1 |
| 6W1Z2C204A | CV WHEEL SPEED SENSOR WIRE | 3-B | 1 |
| 6W1Z3A130A | CV TIE ROD END | 9-D | 1 |
| 6W1Z3A130B | CV TIE ROD END OUTER | 9-D | 2 |
| 6W1Z5423200AA | WINDOW MOTOR | | 1 |
| 6W1Z5440338A | LTC REIN. | SHELF | 1 |

| | | RR | |
|---|---|---|---|
| 6W1Z8200AA | LTC GRILL 05 | CLOSET | 2 |
| 6W3Z17F798A | GM  ABSORBER,FRT | CLOSET | 1 |
| 6W7Z14527BB | CV WINDOW SWITCH BEZEL | 4-B | 1 |
| 6W7Z15A201AA | CV MARKER,RT FRT 06 | 10-A | 1 |
| 6W7Z16055B | GM SHIELD,RT FRT SPLASH 06 | CLOSET | 2 |
| 6W7Z3078B | CV CONTROL ARM LOWER RH | 3-E | 1 |
| 6W7Z5403599BAC | CV KICK PANEL | SHELF FD | 1 |
| 6W7Z5413208AAC | CV SCUFF PLATE PASS. FRONT | 10-D | 1 |
| 6W7Z5422635AC | CV HANDLE,INSIDE REAR DOOR | SHELF FD | 1 |
| 6W7Z54264B52A | CV LATCH,REAR INSIDE DOOR | CLOSET | 4 |
| 6W7Z54264B53A | CV LATCH,INSIDE REAR DOOR | CLOSET | 4 |
| 6W7Z6A666AA | CV PCV VALVE ELECTRIC | 3-D | 1 |
| 714EX | MV BRAKE SHOE | 9-D | 2 |
| 726MP | 726MP | 13 | 6 |
| 7410 | BATTERY TERMINAL SIDEPOST | 1-B | 4 |
| 7461002081BO | GRIP | 8-D | 1 |
| 7516 | FW RADIATOR CAP | 7-C-3 | 4 |
| 7544152050 | SCION EMBLEM | BODY SHOP | 3 |
| 76400781 | SPARE TIRE | | 1 |
| 77900TAOC12 | CLOCK SPRING | 3-A | 1 |
| 780623RGS | MV BRAKE ROTORS REAR 08 | 9-C | 2 |
| 780928RGS | BRAKE ROTORS | 10-C | 5 |
| 7U2Z14S411RA | LT HEADLITE PIGTAIL | 3-D | 2 |
| 7W1Z1104A | CV HUB BEARING FRONT 06 | 3-E | 1 |
| 7W3Z1130A | GM COVER | 4-C | 1 |
| 7W3Z721A | CENTER CAP | | 1 |
| 7W7Z18124D | CV STRUT FRONT | 9-E | 1 |
| 7W7Z5425324A | WEATHER STRIP | SHELF FD | 1 |
| 80041 | 5 GALLON GEAR LUBE | | 2 |
| 81844 | MIRROR ADHSV | | 6 |
| 8299812610 | TS HEADLIGHT PIGTAIL WIRES | 8-D | 1 |
| 83108 | MV A/C ACCUMULATOR | 6-C | 1 |
| 83227 | TRANS MOUNT | | 1 |
| 8338AC | ENG CORE | | 1 |

| 8404008020 | TS WINDOW SWITCH | 8-D | 1 |
|---|---|---|---|
| 84091080770a0 | upper switch | | 1 |
| 8430708020 | TS CLOCKSPRING | 8-D | 1 |
| 84963AE010 | DOOR SWITCH | 8-D | 1 |
| 85080 | BLACK SILICONE | | 2 |
| 8511047240 | WIPER MOTOR FOR A PRIUS | | 1 |
| 8524112130 | WIPER ARM | 8-D | 1 |
| 85868 | LICENSE LIGHT PIGTAIL | 8-D | 3 |
| 8610108150 | TS ANTENNA WIRE | CLOSE T | 1 |
| 86300AE010 | TS BASE,ANTENNA | SHELF FD | 1 |
| 8630908040 | TS ANTENNA | SHELF FD | 2 |
| 87338949C | COMPRESSOR CORE | | 2 |
| 87339025C | COMPRESSOR CORE | | 1 |
| 87716722 | SCION COMPRESSOR | | 2 |
| 8832008070 | COMPRESSOR FOR SIENNA | | 1 |
| 88460AZ002 | TOYOTA CONDESER ASSY | 9-A | 1 |
| 887031A011 | AC HOSE | 9-D | 1 |
| 88846501 | AXLE | | 1 |
| 88964571 | CI POWER STEERING PUMP | 7-E | 1 |
| 8.95E+45 | OXYGEN SENSOR | 4-C | 1 |
| 89807545 | COMPRESSOR | | 1 |
| 8E5Z13K359AA | MULIT FUNCTION SWITCH | 3-D | 1 |
| 8E5Z14529AA | CV WINDOW SWITCH MASTER '10 | 3-C | 1 |
| 8L8Z16A023A | FE BRKT,FRT BUMPER | SHELF RR | 1 |
| 8L8Z16A024A | BRKT FT BUMP ESCAPE | SHELF RR | 1 |
| 8W3Z1007A | CV WHEEL | 10-A | 1 |
| 8W7Z13412AA | CV LP PIGTAIL | 8-D | 2 |
| 8W7Z17508A | CV WIPER MOTOR | 3-E | 1 |
| 8W7Z5404810AB | CV ASHTRAY | SHELF FD | 1 |
| 8WZ713C788C CORE | LCM CORE | | 1 |
| 9005 | HEADLIGHT BULB (HI) | 1-B | 3 |
| 9005BP | BULB | 1-B | 9 |
| 9006 | HEADLIGHT BULB | 1-B | 3 |
| 9007 | HEADLIGHT BULB | 1-B | 4 |
| 9007BP | LIGHT BULB | | 5 |
| 9008 | HEADLIGHT BULB | 1-B | 2 |
| 90080-10111 | WASHER BOLTS FOR SCION XB ALTERNATOR | | 3 |

| | | | |
|---|---|---|---|
| 9008017238 | TS AXLE NUT | 7-C-5 | 1 |
| 9008494001 | ED LUG NUTS | 3-B | 4 |
| 9012BP | HEADLIGHT BULB | 1-B | 3 |
| 9012LLBP | BULBS | | 1 |
| 9012STBP | BULBS | | 1 |
| 9012XVBP | BULBS 300 CHRYSLER 2013 | | 4 |
| 9023035 | STAT HOUSING 2013 CHRYSLER 300 | 7-C-1 | 1 |
| 902313 | THERMOSTAT HOUSING | 7-C-1 | 1 |
| 90903-63014 | TS RADIAL BEARING STRUT | | 1 |
| 9091901247 | TS SPARK PLUGS | 7-D-3 | 2 |
| 90919A2007 | IGNITION COIL | 8-D | 1 |
| 90947A2058 | TS BRAKE HOSE REAR FRAME RAIL TO AXLE | 3-B | 1 |
| 9098011659 | TS HEADLAMP PIGTAIL | 8-D | 1 |
| 9098702032 | FAN RELAY | 4-C | 1 |
| 9132PK | RETAINERS | | 1 |
| 9201C | 4.6 L CORE | | 1 |
| 924706 | 300 SHIFT INTERLOCK | 7-A-4 | 2 |
| 946UV | PAG OIL | | 4 |
| 94RAC | BATTERY CORE | | 1 |
| 94REXT | 300 BATTERY | BATT RACK | 1 |
| 96RPRM | BATTERY | | 1 |
| 980757RGS | MV BRAKE ROTOR | 9-B | 1 |
| 99211 | COP BOOT 2012 DODGE GRAND CARAVAN | | 5 |
| 99326 | HEATER CORE | | 1 |
| 9L3Z1A189A | TPMS SENSOR ESCAPE | 3-B | 1 |
| 9T1Z6126413A | TC LATCH | SHELF FD | 1 |
| 9W1Z18124A | CV STRUT FRONT 07 | 10-A | 1 |
| A30378 | FUEL PUMP | | 1 |
| A3904 | AIR FILTERS | 5-B | 2 |
| A6900 | TS AIR FILTER | 5-B | 2 |
| A9010 | TS AIR FILTER | 5-C | 5 |
| AFLS131 | MASS AIR FLOW SENSOR | 3-C | 1 |
| AFLS131C | MASS AIR FLOW SENSOR CORE | CORE RACK | 1 |
| AG1Z8A080S | OVERFLOW TANK | 2-C | 1 |
| APP5325 | SPARK PLUG | 3-C | 8 |
| AT1Z2001A | TC BRAKE PADS FRONT | 8-E | 1 |
| AW7P-AA | USED TRANSMISSION 1 YR WARRANTY | | 1 |

| | | | |
|---|---|---|---|
| B3217 | ENGINE MOUNT /2011 DODGE GRAND CARAVAN | | 1 |
| B62067 | ENGINE MOUNT | | 1 |
| B62070 | TRANS MOUNT | | 1 |
| B9669 | ENGINE MOUNT | | 1 |
| BATTERY CORE | BATTERY CORE | | 4 |
| BD126260 | FRONT ROTOR | | 2 |
| BH620506 | CV BRAKE HOSE LFT FRT | 8-E | 1 |
| BH620633 | CV BRAKE HOSE REAR | 8-E | 1 |
| BH620881 | MV BRAKE HOSE LEFT FNT | DEFAULT | 1 |
| BJ07073 | PRIUS BALL JOINT | 4-C | 1 |
| BP3757 | WAG-BP3757NALL-BULB | | 16 |
| BR3Z4676A | CV SEAL | 3-C | 1 |
| BW1Z9H307A | CV FUEL PUMP 10 | 2-C | 1 |
| C2036 | COMPRESSOR | | 1 |
| C2742 | COMPRESSOR FOR 2012 TOYOTA SIENNA | | 1 |
| C2742DE | COMPRESSOR | 2-A | 1 |
| CAF1794C | TS CABIN AIR FILTER | 5-C | 6 |
| CG404024 | HOOD SHOCKS | 10-A | 2 |
| CG758 | CV IAC GASKET | 3-C | 2 |
| CH1046103 | 300 CHROME FRONT BPR. INS | SHELF RR | 1 |
| CH1047103 | 300 BPR. MLD. RT CHROME | SHELF RR | 2 |
| CH1100906 | T/C REAR COVER | | 1 |
| CH1202103C | MV GRILL | CLOSET | 1 |
| CH1248147 | FENDER LINER | SHELF RR | 1 |
| CH1248147C | mv lh skirt | CLOSET | 1 |
| CH1249147C | mv rh skirt | CLOSET | 1 |
| CH1320284 | 300 MIRROR LT SIDE POWER W/ HEAT | SHELF FD | 1 |
| CH1320290 | LT MIRROR | SHELF FD | 1 |
| CH2502192C | HLAMP ASM LH;HLGN;8-13 TWN&CTY | SHELF FD | 2 |
| ch2502192v | t/c lt headlight | | 1 |
| CH2800199C | MV LT HEADLIGHT | SHELF FD | 1 |

| CH2819118 | CT LAMP,RT TAIL | SHELF FD | 1 |
|---|---|---|---|
| CH8233 | CV SHAFT | | 1 |
| CKD1324 | FRONT PAD | 9-B | 5 |
| CP6690 | WATER PUMP | | 1 |
| CV18 | IGNITION COIL BOOT | 4-B | 7 |
| D349073 | SHOCK | 8-A | 2 |
| D8BZ4241C | CV SPIDER GEAR PIN BOLT | 3-B | 1 |
| DG1Z54406A10A | TRUNK SHOCKS | | 2 |
| DSR119 | JUMP STARTER | | 1 |
| E8DZ6397B | FF ENGINE DOWEL CORRECT | 3-D | 1 |
| EGR1801 | CV EGR VALVE | 10-D | 1 |
| EGV1042 | EGR VALVE | | 1 |
| ENGINE | ENGINE | | 1 |
| ES3494 | CV TIE ROD END | 2-B | 2 |
| ES3693 | CV TIE ROD END OUTER RT 03 | 4-B | 1 |
| ES3694 | CV TIE ROD END OUTER | 4-B | 3 |
| ES800403 | MV TIE ROD OUTER, RIGHT SIDE | 10-A | 3 |
| EV800934 | TIE ROD END | 10-A | 2 |
| F8AZ19B888AB | CV A/C MODE DOOR | 3-C | 1 |
| F8AZ3050AA | CV BALL JOINT (LWR/DLR) | 4-C | 1 |
| F8AZ5444891AA | GM ROD,LFT TRUNK TORSION | SHELF RR | 1 |
| F8UZ8213AA | CV EMBLEM,FRT | SHELF FD | 1 |
| F8VZ54432A38 | CV TRUNK LATCH SWITCH 06 | 3-C | 1 |
| FA1900 | AIR FILTER | 5-C | 2 |
| FA70873 | FAN ASSEMBLY 2014 SCION XB | | 1 |
| FD503 | COP COIL | 4-B | 2 |
| FG986 | FORD FUEL FILTER | 14 | 1 |
| FK326 | 300 TRANS FILTER | 5-D | 5 |
| FO1000455 | CV COVER,FRT BUMPER | B/S | 1 |
| FO1106208 | MM REAR REBAR | | 1 |
| FO2503222 | GM LAMP,RT HEAD | 2-A | 1 |
| FO2526103 | GM MARKER,LFT | SHELF FD | 1 |
| FO2800173 | GM LAMP,LFT TAIL | SHELF FD | 1 |
| FO2801160 | CV LAMP,LFT TAIL | SHELF FD | 2 |
| FO2801212 | 03-09 GRAND MARQUI T/L | SHELF FD | 1 |
| FOTZ9155B | FE FUEL FILTER | 14 | 1 |
| FOVY1107A | CV WHEEL STUD (R) | 3-B | 10 |

| | | | |
|---|---|---|---|
| FT1122 | FILTER | 5-D | 3 |
| GL661 | CV ALTERNATOR 06 | 4-D | 2 |
| GL8684C | ALTERNATOR CORE | | 1 |
| GM1100815C | BMP COVER REAR LOWER 05-09 UPLANDER | BODY SHOP | 1 |
| GM2502261 | CI HEADLAMP ASSM LFT | SHELF FD | 1 |
| H11 | BULB | 1-B | 6 |
| H11-55W | HALOGEN BULBS | | 10 |
| H1155BP | BULBS H11 | 1-B | 10 |
| H2500 | DC OIL FILTER 3.3 & 3.8 | 13 | 14 |
| H4477 | SCION OIL FILTER | 14 | 5 |
| H4670 | DC OIL FILTER 3.3 &3.8 | 12 | 3 |
| H5025 | MV CALIPER SLIDE PINS REAR DISC | 7-A-1 | 2 |
| H5066 | BRAKE CALIPHER KIT | | 1 |
| H7 | LTC HEADLIGHT BULB | 1-B | 1 |
| HP3960 | HEADLIGHT PIGTAIL | 8-D | 1 |
| ISK35SZOAA | WHEEL CAP | | 4 |
| K060771 | SERP. BELT | 9-D | 1 |
| K070610 | SERPENTINE BELT | | 1 |
| K200168 | CV SWAY BAR BUSHINGS | 4-B | 1 |
| K200220 | MV SWAY BAR BUSHINGS | | 2 |
| K26241762C | TRANS CORE | | 1 |
| K60923 | CV BELT | 9-D | 1 |
| K700537 | CV SWAY BAR LINK | 9-B | 2 |
| K7258 | SWAY BAR LINK | 2-B | 4 |
| K80140 | CV SWAY BAR LINK | 4-A | 2 |
| K80823 | DC SWAY BAR LINKS-MOOG | | 1 |
| K8337 | BUSHING | | 1 |
| K8837 | BUSHING | 4-B | 1 |
| KG5572 | CV SHOCK REAR 00 | 4-A | 1 |
| KO40357SF | A/C BELT | 9-D | 1 |
| LF594F | FUSION OIL FILTER | 12 | 6 |
| LF697 | OIL FILTER | 12 | 12 |
| LX2830100 | TOYOTA REFLECTOR LT REAR | SHELF FD | 1 |
| M-525 | MV EXP. VALVE | 7-C-1 | 1 |
| M3244 | CM OIL FILTER | 12 | 8 |
| M490 | EXPANSION VALVE | | 1 |
| M562 | EXPANSION VALVE | | 1 |
| MCBU9007 | HALOGEN HEAD LIGHTS | EA | 6 |
| MGA49737 | AIR FILTER 2014 DOD GRAND CARAVAN | | 4 |

| | | | |
|---|---|---|---|
| MGA49746 | AIR FILTER | 5-B | 1 |
| MGL51334 | MGL51334 | | 2 |
| MGL51522 | CI OIL FILTER | 12 | 3 |
| MGL57045 | CI OIL FILTER 3.6 | 13 | 5 |
| MGL57047 | TS OIL FILTER | 12 | 6 |
| MGL57064 | PRIUS OIL FILTER | 13 | 3 |
| MGL57502 | FT OIL FILTER | 13 | 3 |
| MOTYH588 | SWITCH ASS | 3-C | 1 |
| MS97204 | MV INTAKE GASKET | 7-C-4 | 1 |
| MVATF | TRANS FLUID, MULTI VEHICLE | BULK TANK | 82 |
| N110180AC | ALETRNATOR CORE SCION XB | | 1 |
| N612831A | STARTER | | 1 |
| N612831AC | CORE | | 1 |
| N808237S101A | CV BRAKE CALIPER BOLT | 3-D | 2 |
| OB036095 | SCION 2014 XB WHEEL | | 1 |
| OILDRI | OIL DRY | | 5 |
| OL106 | MIGHTY OIL SYSTEM FLUSH | 1-E | 1 |
| OS30622R | MV OIL PAN GASKET SET 05 | 5-A | 1 |
| P23560R17 MILESTAR | TIRE | | 6 |
| PAL030 | FUSE PAL 30A | 1-B | 2 |
| PAL040 | FUSE PAL 40A | 1-B | 2 |
| PC893 | 2011 DODGE VAN CRANK SENSOR | | 1 |
| PF53 | OIL FILTER POLICE CAR | 13 | 1 |
| PFS616 | FUEL PUMP | | 1 |
| PG4476F | SCION OIL FILTER | 14 | 1 |
| PM4031 | PRUIS BLOWER MOTOR | 9-C | 1 |
| PRUIS | PRUIS | | 1 |
| PT189 | PIGTAIL SOCKET | 7-B-3 | 2 |
| PT254 | HD LITE PIGTAIL | 7-B-3 | 1 |
| R110180AC | CORE | | 1 |
| R134 | FREON | | 1 |
| R134A30 | FREON | BULK TANK | 39.8 |
| R4801624AGC | ALTERNATOR CORE DOD CARAVAN | | 4 |
| R5151727AD | MV POWERSTEERING PUMP | 2-A | 1 |
| R613032A | STARTER | | 1 |
| R61303AC | STARTER CORE | | 1 |
| R61312AC | CORE | | 1 |
| R613180A | STARTER | | 2 |
| R8059524AKC | CORE | | 1 |

| | | | |
|---|---|---|---|
| REM16004 | STARTER | | 1 |
| REM16004C | STARTER CORE | | 1 |
| RESTOCKING FEE | RESTOCKING FEE | | 5 |
| RF243 | CV FAN MODULE | 4-B | 3 |
| RK622035 | CONTROL ARM | | 1 |
| RK622036 | CONTROL ARM | | 1 |
| RL150562ACC | PCM CORE | | 1 |
| RL801779AGC | CORE | | 1 |
| RR28 | CROWN VIC FAN MOD | 4-B | 2 |
| RS46BD5AC | MV PLATE,RT FRT SCUFF | 5-A | 1 |
| RS47BD5AC | MV PLATE,LFT FRT SCUFF | 5-A | 1 |
| RT1194 | THERMOSTAT | 3-D | 1 |
| RU572 | 08 MERCURY GRAND MARQUIS RESISTOR | | 1 |
| RU631 | BLOWER RESTR | | 1 |
| S160 | MV O2 SENSOR 05 | 7-D-1 | 5 |
| SA988C | STARTER CORE | | 2 |
| SB580403 | CI ROTOR | 10-D | 2 |
| SBK8848 | LINK KIT | 2-B | 2 |
| SC1040A | CV FRONT BRAKE PAD | 10-B | 1 |
| SC1057 | CHRYSLER 300 PADS | 9-B | 1 |
| sc1100113c | rear cover scion | | 1 |
| SC1184A | BRAKE | 9-B | 1 |
| SC1589 | BRAKE PAD | 10-B | 2 |
| SC1596 | DC REAR BRAKE PAD | 10-B | 1 |
| SC1719 | BRAKE PAD | 10-B | 1 |
| SC931 | FRONT BRAKES | 10-B | 1 |
| SE10001HP | CV TPMS | 3-C | 1 |
| SG214058 | LIFT SUPPORT | | 6 |
| SG314073 | HOOD SHOCKS | | 2 |
| SLS247 | STOPLIGHT SW | 3-A | 1 |
| SM1057 | BRAKE PADS 2014 CHRY 300 | | 1 |
| SM1058C | BRAKES PADS 2014 CHRYSLER | | 1 |
| SM1327 | MV BRAKE PAD FRONT | | 1 |
| SP149125AE | SPARK PLUG | 3-D | 6 |
| SP493 | CV SPARK PLUGS 2011 | 3-C | 7 |
| SPORE10PM5 | 300 SPARK PLUGS | 3-B | 12 |
| SPRE14PMC5 | 300 SPARK PLUG 2.7L | 3-B | 6 |
| SYN530 | OIL | 15 | 3 |
| SZFR5LP13G | 300 SPARK PLUG 3.5 | 3-B | 5 |
| T333AF | 300 TRANS FILTER | 5-D | 8 |
| TO1014101V | UPPER COVER RAVA 4 | | 1 |
| TO1015108V | LOWER COVER | | 1 |
| TO1100286V | TS REAR COVER | BODY | 1 |

| | | SHOP | |
|---|---|---|---|
| TO1241245C | FENDER RT | | 1 |
| TO12419171 | RT SKIRT | | 1 |
| TO2502207 | TS HEADLAMP ASSM. LEFT | SHELF RR | 1 |
| TO2519147N | HEADLIGHT RT | | 1 |
| UF648 | COP COIL | 3-A | 1 |
| V1013803AE | MV BRAKE PAD; FNT | 10-D | 3 |
| V1013984AD | MV BRAKE PADS FRONT W/REAR DRUM | 10-D | 1 |
| V2013948AD | MV BRAKE PADS REAR 06-07 | 9-B | 4 |
| W708503S441 | CV BALL JOINT LOWER NUT | 3-D | 1 |
| W709529S437 | WP | 7-A-6 | 4 |
| WAGD1056C | WAGNER SST BRAKE PADS 2013 DODGE CHARGER | | 1 |
| WC14164 | MV WHEEL CYLENDER 05 | 7-C-5 | 2 |
| WT5205 | MV COOLANT SENSOR | 7-C-2 | 1 |
| XF2Z9D676AA | FW TUBE | 10-E | 1 |
| XF3Z18504AA | CV BLOWER MOTOR SQUIRREL CAGE | 4-B | 1 |
| XT10QLVC | FORD TRANSMISSION OIL | 1-E | 10 |
| XW7Z5425324AA | CV WEATHERSTRIP,RT REAR BODY OPEN | SHELF FD | 1 |
| XW7Z5443720AA | WEATHERSTRIP FORD | SHELF FD | 1 |
| XW7Z5451822BA | WEATHER STRIP | SHELF FD | 2 |
| YG343 | CV AC ORIFICE TUBE | 3-A | 1 |
| YH1717 | CV BLOWER MTR RES W/MANUAL AIR | 3-B | 4 |
| ZV691X9AH | SEAT BELT | 2-C | 1 |

## Schedule 1.1(e) to Asset Purchase Agreement

### Telephone and fax numbers, domain names, and trade names

The following numbers, to the extent owned by Seller:

| Number: | Queue: | Extension SA: | Name: |
|---|---|---|---|
| 2102222222 | San Antonio Main | 8667 | Kevin Duray |
| 2104615460 | SA SafeRide | 8666 | John Bouloubasis |
| 2104615465 | VIA Express Dispatchers | 8637 | Randy Cardenas |
| 2106460235 | Special Accounts SA | 8636 | Accounts Receivable |
| 2106508603 | VIA Special Accounts | 8634 | Cashiers |
| 2106508615 | MOD SA | 8631 | Mario Robledo |
| 2106508620 | SA Dispatch | 8623 | Sal Zuniga |
| 2106508627 | SA Dispatch | 8621 | Bill Kellogg |
| 2106555465 | VIA LINK | 8611 | Cynthia Velez |
| 2106666666 | VIA Express Customers | 8601 | Andrew Rocha |
| 2108268294 | Townecar SA | 8626 | SA Conference Room |
| 5124347713 | MOD Colombia | **Extension Austin** | **Name:** |
| 5124347756 | Austin SafeRide | 7883 | Felipe Gonzalez |
| 5124347772 | Austin Dispatch | 7775 | Julia Garcia |
| 5124347773 | Austin Dispatch | 7760 | John Bouloubasis |
| 5124347777 | Austin Special Accounts | 7733 | Scarlet Mccarther |
| 5124529999 | Austin Main Line | 7724 | Austin Office |
| 7132230303 | MSP | 7720 | Lauren Smith |
| 7132244445 | Houston Delivery | 7716 | Yvonne Rigolo |
| 7132252666 | Fiesta Taxi | 7716 | Claims |
| 7132361111 | Houston Main Line | 7714 | Austin Main Office |
| 7132361122 | Houston | **Extension Houston:** | **Name:** |
| 7132368755 | Houston Dispatch | 5913 | Service Writer |
| 7132368877 | Houston Townecar | 5904 | Melinda Malek |
| 7132369400 | Fiesta Dispatch | 5903 | Chris Aguirre |
| 7132369401 | Fiesta Taxi Dispatch | 5902 | Ozzy Gonzalez |
| 7132369402 | Fiesta Dispatch | 5885 | Paula Cooper |
| 7134285712 | Houston Dispatch | 5870 | Susan Paschal |
| 7134285714 | Houston Conference room | 5866 | Manuel Huaman |
| 7134285789 | Houston Logisticare | 5865 | Christi Bernard |
| 7134285828 | Customer call driver (app) | 5836 | Melissa Mcghee |
| 7134285844 | Houston accounts | 5832 | Julia Saldana |
| 7134285846 | Houston Dispatch | 5830 | Don Helmer |
| 7134285860 | Metro Starters | 5824 | Cashier |

| | | | |
|---|---|---|---|
| 7134285883 | Metro Starters | 5823 | Cashier |
| 7134285884 | Metro Starters | 5815 | Nick Plaznich |
| 7134285888 | MSP Spanish | 5811 | Francis Valeriano |
| 7134285999 | Metro | 5810 | Lobby |
| 7136990000 | United | 5809 | Rosario Harter |
| 7137378423 | Houston Townecar | 5805 | Customer Service/Safety |
| 9563295017 | Micro Mcallen Dispatch | 5766 | Yaling Zhang |
| 9563295018 | Micro Mcallen CS | 5763 | Rose Estrada |
| 8325531710 | Direct Driver Connect (app) | 5756 | Lobby Rose |
| 5124441010 | 10/10 Taxi | 5753 | Jessica Hubbard |
| 7134285738 | Houston Special Accounts | 5751 | Jeanette Johnson |
| | | 5745 | Lisseth Deltoro |
| | | 5731 | Danny Davis |
| | | 5729 | Lobby francis |
| | | 5728 | Claims Intake |
| | | 5722 | Ana Marie Munoz |
| | | 5721 | Kayla Ruiz |
| | | 5720 | Pete Arzola |
| | | 5717 | Jacob Garza |
| | | 5716 | Ericka Zamarripa |
| | | 5714 | Houston Conference Room |
| | | 5705 | Pamela Jefferson |
| | | 5704 | Brenda Hagger |
| | | 5702 | Mike Spears |
| | | 5701 | Pete Arzola |

The following trade names: Greater Austin Transportation Company, GATC.

Fax numbers, domain names, and URLs used by Seller in connection with the Business.

## Schedule 3.5 to Asset Purchase Agreement

## Assumed Contracts

None, other than Seller's obligation to transfer title to Vehicles upon the full satisfaction of promissory notes issued by Seller's drivers.

## Schedule 3.7 to Asset Purchase Agreement

## Compliance with Laws and Governmental Authorizations

City permit and self-insurance certificates held by Seller may be affected by the bankruptcy filing.

<u>**Schedule 3.8 to Asset Purchase Agreement**</u>

<u>**Legal Proceedings**</u>

[Attached]

## ATTACHMENT SOFA #7

| Matter/Name | Plaintiff(s) | Court | Case # | ENTITY INVOLVED |
|---|---|---|---|---|
| SUTTON, Derrick/LINDSEY, June v. Greater Houston Transportation Company | Sutton, Derrick Lindsey, June | Harris Co. Court at Law No. 2 | 1110527 | Greater Houston Transportation Company |
| WARD, Delphynn v. Edward Williams and Greater Houston Transportation Company | Ward, Delphynn | Harris Co. Court at Law No. 3 | 1116979 | Greater Houston Transportation Company |
| NORRIS, Shirley v. Greater Houston Transportation Company and AMOUMA, Mark A. | Norris, Shirley | Harris Co. Court at Law No. 2 | 1126060 | Greater Houston Transportation Company |
| AICHEN, Zainul v. Greater Houston Transportation Company | Aichen, Zainul | Harris Co. Court at Law No. 1 | 1140369 | Greater Houston Transportation Company |
| ACCC Insurance Company v Greater Houston Transportation Company dba United Cab Company & CESAR LUIS ESCOBAR | ACCC Insurance Company | Harris Co. Court at Law No. 4 | 1142853 | Greater Houston Transportation Company |
| PHAM, Hong v. Greater Houston Transportation Company & Rena Rahn | | Harris Co. Court at Law No. 4 | 1144791 | Greater Houston Transportation Company |
| MORALES, Jr., Felipe, et al v. Greater Houston Transportation Company, Cab Admin Services, Inc. dba YC Company of Houston & ANNE, Ledida Nicole | Morales, Felipe Morales, Jr. et al v/f of Alexander Morales, minor | Harris Co. Court at Law No. 2 | 1148554 | Greater Houston Transportation Company |
| BROCK, Nancy v Greater Houston Transportation Company dba Acca YC Company and/or YC & Patrick Fredarica Clemons | Brock, Nancy | Harris Co. Court at Law No. 1 | 1150477 | Greater Houston Transportation Company |
| CENTRAL Mutual Ins Co & Charles Helms, Jr. v. Greater Houston Transportation Company dba YC | Central Mutual Insurance Company | Harris Co. Court at Law No. 3 | 1154856 | Greater Houston Transportation Company |
| ALLSTATE Fire & Casualty Insurance Company, et al v. Greater Houston Transportation Company dba Yellow Cab | Allstate Fire & Casualty Insurance Company | Harris Co. Court at Law No. 4 | 1155225 | Greater Houston Transportation Company |
| BEDFORD, Tardstay v Greater Houston Transportation Company | Bedford, Tardstay | Harris Co. Court at Law No. 3 | 1155439 | Greater Houston Transportation Company |
| AUTO CLUB County Mutual Ins. Co. v Greater Houston Transportation Company & Rene R. Barrios | Auto Club County Mutual Insurance Ins. Co. | Harris Co. Court at Law No. 3 | 1155600 | Greater Houston Transportation Company |
| TAYLOR, Quintin and COLLINS, Arbeitha v. Greater Houston Transportation Company dba YC | TAYLOR, Quintin and COLLINS, Arbeitha | 190th Civil District Court - Harris County | 201856270 | Greater Houston Transportation Company |
| DE LA GARZA, Sarah v Greater Houston Transportation Company dba YC & RAZA, Ahmed | DE LA GARZA, Sarah | 129th Civil District Court - Harris County | 201939713 | Greater Houston Transportation Company |
| HARRISON, Robin F. v HALL, James A. & Greater Houston Transportation Company dba YC | HARRISON, Robin F. | 215th District Court - Harris County | 201977553 | Greater Houston Transportation Company |
| Alvarez, Kemia v SAINT GINAT | Alvarez, Kemia | Justice Court, Harris County, Precinct 1, Place 3 | 181220496957 | Greater Houston Transportation Company |
| GEICO-TAYLOR, LASHAMECA v Pierre Monique & Greater Houston Transportation Company | GEICO-TAYLOR, LASHAMECA | Justice Court, Harris Co. - Precinct 5, Place 1 | 195E00290264 | Greater Houston Transportation Company |

| Case Style | Company | Court | Case Number | |
|---|---|---|---|---|
| AMICA Mutual Insurance Company as Subrogee of Patrick Moore v. Greater Houston Transportation Company & Mohamed Malick Barry | Amica Mutual Insurance Company | Justice Court, Harris County, Precinct 1, Place 1 | 201100223621 | Greater Houston Transportation Company |
| ALLSTATE Fire & Casualty Insurance Company as Subrogee of Gwen Reed v. Greater Houston Transportation Company & Shaunte Coleman | Allstate Fire and Casualty Insurance Company as Subrogee of Aleksandr Nizman | Justice Court, Harris County, Precinct 1, Place 1 | 201100228862 | Greater Houston Transportation Company |
| JENNINGS, Richard v. Greater Houston Transportation Company, Albina Yarga Bruce & Larry Conrad Ochs | Jennings, Richard | Justice Court, Harris County, Precinct 1, Place 2 | 1232200218926 | Greater Houston Transportation Company |
| GLOSBY, Gary v. Greater Houston Transportation Company & Alexandria Media Kebede | Glosby, Gary | Justice Court, Harris County, Precinct 1, Place 2 | 2012200195428 | Greater Houston Transportation Company |
| ALLSTATE County Mutual Insurance Company as Subrogee of Patricia Ramirez v. Greater Houston Transportation Company & Benjamin Ihemeje | Allstate County Mutual Insurance Company | Justice Court, Harris County, Precinct 5, Place 1 | 2055100337670 | Greater Houston Transportation Company |
| WILLIAMS, Sophronia v Greater Houston Transportation Company & Shanikala Denise Hanson | Williams, Sophronia | Justice Court, Harris County, Precinct 5, Place 2 | 2155200143323 | Greater Houston Transportation Company |
| ARMKINS Specialty Auto, Inc. d/b/a Old America's County Mutual as Subrogee of Maria Hernandez v. Greater San Antonio Transportation Company & Luis R. Jauregui Mas | Armkins Specialty Auto, Inc. | JP Court – Bexar Co. Precinct 2, Place 2 | 1252000101 | Greater San Antonio Transportation Company |
| STATE FARM v. Greater San Antonio Transportation Company dba YC | State Farm | JP Court – Bexar Co. Precinct 1, Place 2 | 12JS002019 | Greater San Antonio Transportation Company |
| Steele v. Greater Houston Transportation Company/Greater Austin Transportation Company | Steele, Erica | 270th Civil District Court – Harris County | 2015-54117 | Greater Houston Transportation Company |
| PEREZ/PEREZ v. Greater Houston Transportation Company dba YC/DELIVERNOE NIXIEINA | Perez, Diane & Ridey | 234th Civil District Court – Harris County | 2016-32-0437 | Greater Houston Transportation Company |
| VERA, Raymond v. Greater Houston Transportation Company - JAMES HALL | Vera, Raymond | 80th Civil District Court – Harris County | 2016-67400 | Greater Houston Transportation Company |
| ALARCON v. Greater San Antonio Transportation Company and Lommea | ALARCON, YOLANDA | 408th Judicial District Court – Bexar County District Clerk | 2016C18753 | Greater San Antonio Transportation Company |
| DAVIS, Destiny v. Greater Houston Transportation Company | Davis, Destiny | 234th Civil District Court – Harris County | 2017-74036 | Greater Houston Transportation Company |
| SANCHEZ, Ruben v. Greater Houston Transportation Company & THRELL TURNER | Sanchez, Ruben | 270th Civil District Court – Harris County | 2017-78833 | Greater Houston Transportation Company |
| LAYMOND, James v. Mortorez Ahmed and Greater Houston Transportation Company | Laymond, James | 270th Civil District Court – Harris County | 2017-70566 | Greater Houston Transportation Company |

| Case Style | Name | Court | Cause Number | Defendant |
|---|---|---|---|---|
| ESPARZA, Mary & MARTINEZ-DUENAS, Zulma v. Greater San Antonio Transportation Company; & GOTCOM, Akbal | Esparza, Mary Duenas, Zulma | 407th Judicial District Court | 2017-CI-17286 | Greater San Antonio Transportation Company |
| NEWKIRK, Annaleigh CRUZ et al. v. YASHUVI, Taz, et al | NEWKIRK, Annaleigh CRUZ | 1960th Civil District Court - Bexar Co. | 2017CI23897 | Greater San Antonio Transportation Company |
| GLORIA, Stephanie v. KANANSIEH and Greater San Antonio Transportation Company | GLORIA, Stephanie | Bexar Co. Court at Law No. 10 | 2017CO04356 | Greater San Antonio Transportation Company |
| SALDIVAR, Nancy L v MAXWELL, Ineledine & Greater Houston Transportation Company | SALDIVAR, Nancy L | 295th Civil District Court | 2018-22725 | Greater Houston Transportation Company |
| JACKSON, Margaret v BUFKIN-LEWIS, Reneé D. | Jackson, Margaret | 215th Civil District Court | 2018-34859 | Greater Houston Transportation Company |
| SANTILLAN, Ginith v Greater Houston Transportation Company and SETH BIZIMANA | Santillan, Ginith | 333rd Civil District Court | 2018-50545 | Greater Houston Transportation Company |
| BROWN, Gail (John Wesley Brown-deceased) v Greater Houston Transportation Company & Adesji Femfuru | Brown, Independent Executive of the Estate of John Wesley Brown, Sr., Deceased; Gail | 270th Civil District Court | 2018-45707 | Greater Houston Transportation Company |
| BADNA, Maria v FALL, James & Greater Houston Transportation Company | BADNA, Maria | 61st Civil District Court - Harris County | 2018-67874 | Greater Houston Transportation Company |
| RAMOS, Jose v Greater Houston Transportation Company, TX TAXI, Cab | Chaudi, Emmanuel | 157th Civil District Court - Harris County | 2018-68315 | Greater Houston Transportation Company |
| JONES, Willie Lee v Greater Houston Transportation Company | JONES, Willie Lee | 189th Civil District Court - Harris County | 2018-60192 | Greater Houston Transportation Company |
| JONES, Don v Greater Houston Transportation Company dba YC & V BRODIS | JONES, Don | 190th Civil District Court - Harris County | 2018-69067 | Greater Houston Transportation Company |
| BARILLAS, Marlon v. Greater Houston Transportation Company & ARMANDO | Barillas, Marlon | 61st Civil District Court - Harris County | 2018-67895 | Greater Houston Transportation Company |
| RYNNE, Mary v Greater Houston Transportation Company, Azima SALUM | RYNNE, Mary | 281st Civil District Court - Harris County | 2018-75572 | Greater Houston Transportation Company |
| GONZALEZ, Damaris & FLORES, Hilda v Greater Houston Transportation Company dba aka YC Houston | GONZALEZ, Damaris & FLORES, Hilda | 189th Civil District Court - Harris County | 2018-78472 | Greater Houston Transportation Company |
| HAWKINS, Vanka v. VIERA, Clarise | HAWKINS, Vanka | 129th Civil District Court - Harris County | 2018-79288 | Greater Houston Transportation Company |
| PRINGLE, Karl and ANDERSON, Haley v Greater Houston Transportation Company | Pringle, Karl Anderson, Haley Wainright, Dawson | 281st Civil District Court - Harris County | 2018-80101 | Greater Houston Transportation Company |
| GONZALEZ, Deborah A. v Greater Houston Transportation Company dba aka YC JONES, Deborah A. | JONES, Deborah A. | 151st Civil District Court - Harris County | 2018-85721 | Greater Houston Transportation Company |
| OLATUNBOSUN, Emmanuel and RAMOS, Paul vs. Greater Houston Transportation Company db YC | Olatunbosun, Emmanuel | 269th Civil District Court - Harris County | 2018-83550 | Greater Houston Transportation Company |

| Style | Claimant | Court | Cause No. | Defendant |
|---|---|---|---|---|
| TEXIESAN, Julius Alex v. Sciortico, Shannon Deborah / EAGLE, Sharron Michelle v Greater Houston Transportation Company dba YC et all | Charo, Lester | 133rd Civil District Court - Harris County | 2018-84556 | Greater Houston Transportation Company |
| BALDEZ, Nancy v. Greater Houston Transportation Company and SHARVAL | BALDEZ, Nancy | 125th Civil District Court - Harris County | 2018-84712 | Greater Houston Transportation Company |
| WILLIAMS, Xelarna v Greater Houston Transportation Company & Phillip Milanda Aweih | WILLIAMS, Xelarna | 55th Civil District Court - Harris County | 2018-86338 | Greater Houston Transportation Company |
| HANCOCK, Mary v. Greater San Antonio Transportation Company, DINSHAVE | HANCOCK, Mary | 45th Civil District Court - Bexar Co. | 2018CI00223 | Greater San Antonio Transportation Company |
| HILL, Raymond v. YELLOW CAB TAXI and JESSE | HILL, Raymond | 131st Judicial District Court - Bexar Co. | 2018CI00738 | Greater San Antonio Transportation Company |
| DEL CUETO, Andrew v. Nunez, Robert and Greater San Antonio Transportation Company | DEL CUETO, Andrew | 190th Civil District Court - Bexar Co. | 2018CI05373 | Greater San Antonio Transportation Company |
| REYES, Blanca v. ABDALLAH, Noureddin & Greater San Antonio Transportation Company | REYES, Blanca | 285th Judicial District Court - Bexar County | 2018CI05640 | Greater San Antonio Transportation Company |
| GONZALEZ, Melinda v. Greater San Antonio Transportation Company, FLORES, A | GONZALEZ, Melinda | 73rd Judicial District Court - Bexar Co. | 2018CI13144 | Greater San Antonio Transportation Company |
| BUCK, Jack Lee/POWER, Lee v. Greater San Antonio Transportation Company & Alberto Flores | BUCK, Jack Lee/POWER, Lee | 166th Civil District Court - Bexar Co. | 2018CI14294 | Greater San Antonio Transportation Company |
| ALVARADO, Roberto v. FAROOQ, Abdul & Greater San Antonio Transportation Company | Alvarado, Robert | 285th Judicial District Court - Bexar County | 2018CI17623 | Greater San Antonio Transportation Company |
| RUIZ, Frank et al v. Greater San Antonio Transportation Company & MOSSAIN, Ginger | Ruiz, Frank Mares, Tristan | 37th Judicial District Court | 2018CI17820 | Greater San Antonio Transportation Company |
| RODRIGUEZ, Joseph v. AFRID and Greater San Antonio Transportation Company | RODRIGUEZ, Joseph | 160th Civil District Court - Bexar Co. | 2018CI-23165 | Greater San Antonio Transportation Company |
| GARCIA, Patricia v. Greater San Antonio Transportation Company, HUMBERTO, Edgar | Garcia, Patricia | 45th Civil District Court - Bexar Co. | 2018-CI-21185 | Greater San Antonio Transportation Company |
| SULLIVAN, Ara v Greater Houston Transportation Company & GREEN, Yolanda | Sullivan, ARA | 270th Civil District Court - Harris County | 2019-03585 | Greater Houston Transportation Company |
| Villafranca Body Shop v. Greater Austin Transportation Company d/b/o VC | Villa Franca Body Shop | Travis Co. Court at Law No. 1 | 2019-03883 | Greater Houston Transportation Company |
| TORRES, Juan C. v. AFEWERKI, Dawit & YELLOW Cab co. | TORRES, Juan C. | 270th Civil District Court - Harris County | 2019-08527 | Greater Houston Transportation Company |

| Case | Party | Court | Case Number | Defendant |
|---|---|---|---|---|
| BRAGGS, Linda Young v. Greater Houston Transportation Company d/b/a YC & Bamidele Adewunmi & Bianca Range/Frame* | BRAGGS, Linda Young | 270th Civil District Court - Harris County | 2019-11085 | Greater Houston Transportation Company |
| ROBERTS, Brady v. FIESTA CAB CO. | Roberts, Brady | 215th Civil District Court - Harris County | 2019-56276 | Fiesta Cab Company |
| BRAGGS, Linda Young v. VAZQHI BRPNE MARTESILUS & Greater Houston Transportation Company | BRAGGS, Linda Young | 189th Civil District Court - Harris County | 2019-15953 | Greater Houston Transportation Company |
| STEWART, Cathy & BLACK, Jevandolynn v Greater Houston Transportation Company & HOWINGTON, Jevandolyn | STEWART, Cathy & BLACK, Jevandolynn | 333rd Civil District Court - Harris County | 2019-26129 | Greater Houston Transportation Company |
| Miranda SAVALA v. Mauricio Aguila BARRIOS & Greater Houston Transportation Company d/ba YC | Mtranin SAVALA | 128th Civil District Court - Harris County | 2019-32689 | Greater Houston Transportation Company |
| SMITH, Everett Harrison III & Rebecca T. v Greater Houston Transportation Company & John Doe | SMITH, Everett Harrison III & Rebecca T. | 164th Civil District Court - Harris County | 2019-27743 | Greater Houston Transportation Company |
| MOORE, Ebony v. Greater Houston Transportation Company & Francis JEFFERSON | Moore, Ebony | 127th Civil District Court - Harris County | 2019-41482 | Greater Houston Transportation Company |
| JUSTICE, Carol Denise v. Greater Houston Transportation Company & MILLS, Jermaine | JUSTICE, Carol Denise | 215th Civil District Court - Harris County | 2019-47562 | Greater Houston Transportation Company |
| BRENT, Kiana, N. v Greater Houston Transportation Company & BENDALY KASSAFALAN | BRENT, Kiana, N. | 333rd Civil District Court - Harris County | 2019-53894 | Greater Houston Transportation Company |
| QUIJANO, Anastacia Torres v. FRANCISCO, Arun | QUIJANO, Anastacia Torres | 215th Civil District Court - Harris County | 2019-57126 | Greater Houston Transportation Company |
| HAMPTON, Nevan v. Greater Houston Transportation Company & FREDERICK | HAMPTON, Nevan | 295th Civil District Court - Harris County | 2019-64699 | Greater Houston Transportation Company |
| AMADOR, Olivin J. v. Greater Houston Transportation Company & MONAN EKVAL | AMADOR, Olivin J. | 281st Civil District Court - Harris County | 2019-67017 | Greater Houston Transportation Company |
| ARMAS, Daniel v Taxis Fiesta, Inc. dba Fiesta Cab Company and Greater Houston Transportation Company & Cesar Luis Escobar | Armas, Daniel Lopez, Claudia | 333rd Civil District Court - Harris County | 2019-73266 | Greater Houston Transportation Company; Fiesta Cab Company |
| HORERILLAD, Lydia v Tajudeen A. Oshiodi | Horerillad, Lydia | 151st Civil District Court - Harris County | 2019-88372 | Greater Houston Transportation Company; Fiesta Cab Company |
| MARTINEZ, Christedie v Greater Houston Transportation Company & David CBI | Martinez, Christedes | 151st Civil District Court - Harris County | 2019-85977 | Greater Houston Transportation Company |

| Case | Name | Court | Case Number | Company |
|---|---|---|---|---|
| HARSFIELD, Cynthia v. Greater San Antonio Transportation Company & Ahmed Rasheed | Harsfield, Cynthia | 224th Judicial District Court - Bexar Co. | 2019CI06511 | Greater San Antonio Transportation Company |
| DUMAPIAS, Myra v. Greater San Antonio Transportation Company, ELMI, All Ahmen | Dumapias, Myra | 285th Judicial District Court - Bexar County | 2019CI02781 | Greater San Antonio Transportation Company |
| URRUTIA, Victoria & Jonathan v. Greater San Antonio Transportation Company & WORKU, Berhane | Urrutia, Jonathan Urrutia, Victoria | 37th Judicial District Court | 2019CI05779 | Greater San Antonio Transportation company |
| AUGUST, Katherine v. Greater San Antonio Transportation Company, MIDDONG, Salvatore | August, Katherine | 73rd Judicial District Court - Bexar Co. | 2019CI04674 | Greater San Antonio Transportation Company |
| BOCANEGRA, Luis et all v. Greater San Antonio Transportation Company, ALVARADO, Hilario | Bocanegra, Tina Rodriguez, Kimberly Martinez, Joline | 288th Judicial District Court - Bexar County | 2019CI11950 | Greater San Antonio Transportation Company |
| HODGES, Walter & XULBANE, James N. v. Greater San Antonio Transportation Company | Hodges, Walter Xulbane, James | 408th Judicial District Court - Bexar Co. | 2019CI13394 | Greater San Antonio Transportation Company |
| SCHOBER, Brian v. WALKER, Thomas & Greater San Antonio Transportation Company | Schober, Brian | Bexar County Civil Court 10 | 2019CIV00632 | Greater San Antonio Transportation Company |
| MARTINEZ, Cynthia v Greater San Antonio Transportation Company, ELMI, All Ahmed | Martinez, Cynthia | Bexar County Civil Court 3 | 2015CI05069 | Greater San Antonio Transportation Company |
| CUELLAR, Cristina v. Greater San Antonio Transportation Company, ROHAN, Samiulahi | Cuellar, Cristina | Bexar County Civil Court 3 | 2015CIV07025 | Greater San Antonio Transportation Company |
| GEICO v Greater San Antonio Transportation Company, AYATULLAHI, Adil | GEICO | Bexar Co. Court at Law No. 10 | 2015CIV07414 | Greater San Antonio Transportation Company |
| TERRY, Laura Corne v Greater Houston Transportation Company & Dontrell Corton, Viva Cotton, Carlos O Matatter | Terry, Laura | 334th Civil District Court - Harris County | 2020-01398 | Greater Houston Transportation Company |
| ZAMORA, Elmer v Greater Houston Transportation Company, Felix Akinadehmu & Wai Loon Ng | Zamora, Elmer | 269th Civil District Court - Harris County | 2020-01898 | Greater Houston Transportation Company |
| MCPHERSON, James & NEAL, Oliver v Greater Houston Transportation Company & Taivo Pawehnimi | McPherson, James Neal, Oliver | 157th Civil District Court - Harris County | 2020-03332 | Greater Houston Transportation Company |
| GARCIA, Carlos v Greater Houston Transportation company asa YC and Benaboem Vecidelona | Garcia, Carlos | 11th Civil District Court - Harris County | 2020-03240 | Greater Houston Transportation Company |
| BROOKINS, Elizabeth v Greater Houston Transportation Company & Taivo Pawehnimi | Brookins, Elizabeth | 80th Civil District Court - Harris County | 2020-05360 | Greater Houston Transportation Company |
| UNITED Financial Casualty Company v Greater Houston Transportation Company | United Financial Casualty Company | 157th Civil District Court - Harris County | 2020-05878 | Greater Houston Transportation Company |

| Style | Party | Court | Cause No. | Defendant |
|---|---|---|---|---|
| ANSARI, Mostafa v. Greater Houston Transportation Company & Oluwakemida Aleshin | Ansari, Mostafa | 11th Civil District Court - Harris County | 2020-1182 | Greater Houston Transportation Company |
| Jadelis, Johnny v. Babineaux, Michael and Greater Houston Transportation Company | Jadelis, Johnny | 164th Civil District Court - Harris County | 2020-12719 | Greater Houston Transportation Company |
| HENSON, Linda v Applause Warehouse & Yellow Cab Company of Houston, Inc., et al | Henson, Linda | 125th Civil District Court - Harris County | 2020-15025 | Greater Houston Transportation Company |
| BRANCH, Theordias v Greater Houston Transportation Company; Pablo Sosa & Sara Deennese | Branch, Theordias | 333rd Civil District Court - Harris County | 2020-20665 | Greater Houston Transportation Company |
| ROBBINS, Charles v Greater Houston Transportation Company dba YC & Rashnq Clement | Robbins, Charles | 270th Civil District Court - Harris County | 2020-21207 | Greater Houston Transportation Company |
| BENSON, Tommy v Greater Houston Transportation Company; Taxi Plaza RGV, Fiesta Cab Company & John Doe | Benson, Tommy | 234th Civil District Court - Harris County | 2020-24989 | Fiesta Cab Company |
| JOHNSON, Sparkle v Greater Houston Transportation Company dba YC & Ta Chyra Watson | Johnson, Sparkle | 61st Civil District Court - Harris County | 2020-25422 | Greater Houston Transportation Company |
| GRAVES, Jamarcus Smith v Greater Houston Transportation Company | Graves, Jamarcus | 333rd Civil District Court - Harris County | 2020-27911 | Greater Houston Transportation Company |
| BROWN, John v Greater Houston Transportation Company dba YC & Wilbert Rhodes | Brown, John | 80th Civil District Court - Harris County | 2020-28156 | Greater Houston Transportation Company |
| THROSH, Lorenzo v Greater Houston Transportation Company dba YC4 & John Doe | Throsh, Lorenzo | 151st Civil District Court - Harris County | 2020-31786 | Greater Houston Transportation Company |
| EPPS, Diana v Greater Houston Transportation Company & Fredrica Dewayne Williams | Epps, Diana | 151st Civil District Court - Harris County | 2020-33115 | Greater Houston Transportation Company |
| WOLFE, Randy v Greater Houston Transportation Company & NOIKU, Godwin Chisimenam | Wolfe, Randy | 157th Civil District Court - Harris County | 2020-34153 | Greater Houston Transportation Company |
| KISHINENSKY, Leonid and The Kishinevsky Law Firm PLLC v. Greater Houston Transportation Company dba YC | Kishinevsky, Leonid | 215th Civil District Court - Harris County | 2020-34500 | Greater Houston Transportation Company |
| TORALES, Regina v Greater Houston Transportation Company dba YC & Iternah Morales | Torales, Regina | 80th Civil District Court - Harris County | 2022-35655 | Greater Houston Transportation Company |
| JEFFERSON, Juanita v Greater Houston Transportation Company, Yellow Cab Service Corporation & George Adesina | Jefferson, Juanita | 157th Civil District Court - Harris County | 2020-36087 | Greater Houston Transportation Company |

| Caption | Plaintiff | Court | Case No. | Defendant |
|---|---|---|---|---|
| JOHNSON, Jacob and HAMILTON, Brenda v Greater Houston Transportation Company & Marvis Clemons | Johnson, Jacob | 157th Civil District Court - Harris County | 2020-4277 | Greater Houston Transportation Company |
| EAGLE, Sharla Michelle v Greater Houston Transportation Company dba YC et all | Eagle, Sharla | 164th Civil District Court - Harris County | 2020-63405 | Greater Houston Transportation Company |
| RACHAL, Betty & Mardin v Greater Houston Transportation Company & Hussein Abusalif | Rachal, Mardin / Rachal, Betty | 151st Civil District Court - Harris County | 2020-69888 | Greater Houston Transportation Company |
| AVILA, Marilyn v Greater Houston Transportation Company & Adel G.S. Baez | Avila, Marilyn | 11th Civil District Court - Harris County | 2020-52756 | Greater Houston Transportation Company |
| PERKINS, Donald & Gloria v Greater Houston Transportation Company dba YC & Lucky Enabulele | Perkins, Donald / Perkins, Gloria | 334th Civil District Court - Harris County | 2020-63590 | Greater Houston Transportation Company |
| THOMAS, Lakedicia v Greater Houston Transportation Company dba YC & Francisco Castillo | Thomas, Lakedicia | 127th Civil District Court - Harris County | 2020-58342 | Greater Houston Transportation Company |
| RUIZ, Margirita, Indiv and a/n/f of R.R., a minor v Greater Houston Transportation Company & Wayne Allan Dobson | Marjorio, Ruiz | 151nd Civil District Court - Harris County | 2020-57478 | Greater Houston Transportation Company |
| GUEMEZ, Lydia v Greater Houston Transportation Company & Benjamin Emeka Ihemije | Guemez, Lydia | 269th Civil District Court - Harris County | 2020-59938 | Greater Houston Transportation Company |
| BROWN, Kerry Dan Jr. v Greater Houston Transportation Company & Lawrence Anam Onwubuch | Brown, Kerry | 295th Civil District Court - Harris County | 2020-59945 | Greater Houston Transportation Company |
| RAMIREZ, Patricia v Greater Houston Transportation Company dba YC & Benjamin Emeka Ihemije | Ramirez, Patricia | 80th Civil District Court - Harris County | 2020-67024 | Greater Houston Transportation Company |
| JEFFERSON, Celia v Greater Houston Transportation Company & Gary P. Harwell Wakefield | Jefferson, Celia | 125th Civil District Court - Harris County | 2020-67426 | Greater Houston Transportation Company |
| CONTRERAS, Anna Maria Beatriz v Greater Houston Transportation Company, Carlos Montano & Matthew Allen | Contreras, Ana Maria | 333rd Civil District Court - Harris County | 2020-70387 | Greater Houston Transportation Company |
| GARCIA, Horacio v Greater Houston Transportation Company & Terrance Grant | Garcia, Horacio | 281st Civil District Court - Harris County | 2020-70364 | Greater Houston Transportation Company |
| MONTGOMERY, Nerita v Greater Houston Transportation Company dba YC | Montgomery, Nerita | 157th Civil District Court - Harris County | 2020-72034 | Greater Houston Transportation Company |
| CHARLES, Tyrone v Greater Houston Transportation Company & Jenny Doe | Charles, Tyrone | 61st Civil District Court - Harris County | 2020-73570 | Greater Houston Transportation Company |
| MARTINEZ, Ardana & BRENT, Rushard v Greater Houston Transportation Company, Jacquina Kelley & Bolaji O'Sun-File | Martinez, Ardana / Brent, Rushard | 127th Civil District Court - Harris County | 2020-73577 | Greater Houston Transportation Company |
| ECHAVARRIA, Juan Antonio Aguilar v Greater Houston Transportation Company dba YC & "John Doe" | Aguilar Echavarria, Juan | 295th Civil District Court - Harris County | 2020-75902 | Greater Houston Transportation Company |

| | | | | |
|---|---|---|---|---|
| MORRIS, Tenesha v. Greater Houston Transportation Company dba YC & Georgia Slade | | 61st Civil District Court - Harris County | 2020-83778 | Greater Houston Transportation Company |
| OLIVARES, Joshua v Greater San Antonio Transportation Company dba SA YC & Nasim Dawood | Oliveras, Joshua | 438th Judicial District Court - Bexar Co. | 2020CV00464 | Greater San Antonio Transportation Company |
| CEPEDA, Jaime H. v. Greater San Antonio Transportation Company dba YC, Brandon R Jones & Mohamed J Heffny | Cepeda, James | 166th Civil District Court - Bexar Co. | 2020CV03527 | Greater San Antonio Transportation Company |
| KELLY, Janie v Greater San Antonio Transportation Company, YC of San Antonio & Donald Ward | Kelly, Janie Yellow Cab Company of San Antonio | 152th Judicial District Court - Bexar Co. | 2020CV08640 | Greater San Antonio Transportation Company |
| MORALES, Jennifer Nicole v Greater San Antonio Transportation Company & Omadullah Malikzai | Morales, Jennifer | 407th Judicial District Court | 2020CD13658 | Greater San Antonio Transportation Company |
| LOMBOZANA, Daniela & Stephanie Mendez v Greater San Antonio Transportation Company et al | Lombozana, Daniela Mendez, Stephanie | 57th Judicial District Court - Bexar Co. | 2020CI16264 | Greater San Antonio Transportation Company |
| AMER, Fathia, Yasmeen Ahmem & Eman Altamr v Greater San Antonio Transportation Company & Francisco Rodriguez | Amer, Fathia Ahmed, Yasmeen Altameh, Eman | 150th Judicial District Court - Bexar Co. | 2020CI28683 | Greater San Antonio Transportation Company |
| MCGILLIS, Amanda asif Cosimo Washington, minor v Greater San Antonio Transportation Company et al | McGillis, Amanda | Bexar County Civil Court 3 | 2020CV00793 | Greater San Antonio Transportation Company |
| MONTFORD, John v Greater San Antonio Transportation Company & Nasseridan S Abdullah | Montford, John | Bexar County Civil Court 3 | 2020CV01661 | Greater San Antonio Transportation Company |
| RODRIGUEZ, Lisandra, et al v YHALE, Negasi H. | Rodriguez, Lisandra Lopez Jr., Robert | Bexar County Civil Court 10 | 2020CV02120 | Greater San Antonio Transportation Company |
| BEXCO County Mutual Insurance Company v Greater San Antonio Transportation Company & Teqpah T. Fatoya | Bexco County Mutual Insurance Company | Bexar County Civil Court 10 | 2020CV06552 | Greater San Antonio Transportation Company |
| SIMS, Terrance v Greater Houston Transportation Company & Eric Wilkerson | Sims, Terrence | 55th Civil District Court - Harris County | 2021-05959 | Greater Houston Transportation Company |
| MAURICE, Becky v Greater Houston Transportation Company & Attiful Agboola | Maurice, Becky | 190th Civil District Court - Harris County | 2021-17540 | Greater Houston Transportation Company |
| PREDET, Curvig v Greater Houston Transportation Company, Montano Carlos & Matthew Alan Waterford | Predt, Curvia, and Chamin, Grey | 165th Civil District Court - Harris County | 2021-17690 | Greater Houston Transportation Company |
| MANNERS, David Tatum v Greater Houston Transportation Company, Carlos Albert Pineda & Dansell J. Murphy | Manners, David | 127th Civil District Court - Harris County | 2021-20538 | Greater Houston Transportation Company |
| JONES, Denise v Greater Houston Transportation Company & GRANT, Terrance Jermaine | Jones, Denise | 215th Civil District Court - Harris County | 2021-22910 | Greater Houston Transportation Company |

| Case | Party | Court | Cause No. | Transportation Company |
|---|---|---|---|---|
| SANTOS, Emely v Greater Houston Transportation Company & Chelsey McDonel | Santos, Emely | 164th Civil District Court - Harris County | 2021-35607 | Greater Houston Transportation Company |
| BARNES, Erica v Greater Houston Transportation Company aka YC & Tajudeen Alabi Otunola | Barnes, Erica | 125th Civil District Court - Harris County | 2021-65276 | Greater Houston Transportation Company |
| DEBOUSSELLE, Lillian v Greater Houston Transportation Company & Juan Garcia | DEBOUSSELLE, Lillian | 55th Civil District Court - Harris County | 2021-38542 | Greater Houston Transportation Company |
| BUGBABE, Ntemsa v Greater Houston Transportation Company, Steve Hamer, Mike Speers, Yaping Zhou & Terrin Keith Stafford | Bugbabe, Ntemsa | 164th Civil District Court - Harris County | 2021-39958 | Greater Houston Transportation Company |
| MALONE, Wyrrell Morris v Greater Houston Transportation Company dba YC | Malone, Wyrrell; Malone, Deidra | 113th Civil District Court - Harris County | 2021-51359 | Greater Houston Transportation Company |
| PRESTON, Lauren v Greater Houston Transportation Company & Bruce Albina | Preston, Lauren | 80th Civil District Court - Harris County | 2021-32300 | Greater Houston Transportation Company |
| PROGRESSIVE County Mutual Insurance Company v Greater Houston Transportation Company & Taiya Clay | Progressive County Mutual Insurance Company | 55th Civil District Court - Harris County | 2021-34797 | Greater Houston Transportation Company |
| VASQUEZ, Arturo Serrano v Greater Houston Transportation Company & Rene Rolando Banilos | Vasquez, Arturo | 133rd Civil District Court - Harris County | 2021-55522 | Greater Houston Transportation Company |
| WILLIAMS, Debra v Greater Houston Transportation Company | Williams, Debra | 125th Civil District Court - Harris County | 2021-65793 | Greater Houston Transportation Company |
| RAMON, Victor v Greater San Antonio Transportation Company & Joseph U Nwaiker | Ramon, Victor | 131st Judicial District Court - Bexar Co. | 2021CI04023 | Greater San Antonio Transportation Company |
| NAVAIRA, Gloria v Greater San Antonio Transportation Company, Norco Transportation Company & John Doe | NAVAIRA, Gloria | 57th Judicial District Court - Bexar Co. | 2021-CI-04422 | Greater San Antonio Transportation Company |
| BANKS, Rose v Greater San Antonio Transportation Company dba San Antonio Yellow Cab & Amail Jay | Banks, Rose | 224th Judicial District Court - Bexar Co. | 2021CI05861 | Greater San Antonio Transportation Company |
| ATKINSON, Elizabeth v Greater San Antonio Transportation Company & Someret T Solumun | Atkinson, Elizabeth | Bexar County Civil Court 3 | 2021CV01539 | Greater San Antonio Transportation Company |
| HERNANDEZ, David v Greater San Antonio Transportation Company & Jeremias Beas | Hernandez, David | Bexar County Civil Court 3 | 2021CV02147 | Greater San Antonio Transportation Company |
| ADE, Grace v Odama Ghani Karim Ullah Sin | Ade, Grace | Justice Court, Bexar County, Precinct 2, Place 1 | 2132000212 | Greater San Antonio Transportation Company |
| VASQUEZ, JORGE LUIS v. Rio Grande | Vasquez, Jorge | 398th Judicial District Court | C-1-19-19-H | Texas Piens Rio Grande Valley, Inc. |
| HAYS, James v Emeka Anthony Egbue | HAYS, James | Travis County Court at Law No. 1 | C-1-CV-17-009954 | Greater Austin Transportation Company |

| Style | Name | Court | Case Number | Entity |
|---|---|---|---|---|
| SISAKHDES v Greater Austin Transportation Company | Sigakhdes, Daryla | Travis County Court at Law No. 2 | C-1-CV-18-001386 | Greater Austin Transportation Company |
| HYNAR, MISTY v EHRDEN, JUSTIN & Greater Austin Transportation Company | Hyhar, Misty | Travis County Court at Law No. 2 | C-1-CV-19-003394 | Greater Austin Transportation Company |
| CARNEY, John Paul v Greater Austin Transportation Company & CARL BARNES | Carney, John | Travis County Court at Law No. 1 | C-1-CV-19-001748 | Greater Austin Transportation Company |
| GOODING, William & Mirecle v Greater Austin Transportation Company & SHEINKO, Abdelwahed | Gooding, William & Miracle | Travis County Court at Law No. 2 | C-1-CV-19-003577 | Greater Austin Transportation Company |
| PROGRESSIVE County Mutual v Greater Austin Transportation Company & OMONIGERE, Osehon Egiebe | Progressive County Mutual Insurance Company | Travis County Court at Law No. 2 | C-1-CV-19-010173 | Greater Austin Transportation Company |
| CHARBONNEAU, Coble v Greater Austin Transportation Company & Wessen Yelele Lemma | Charbonneau, Coble | Travis County Court at Law No. 1 | C-1-CV-20-002442 | Greater Austin Transportation Company |
| GEICO Secure Insurance Company v Adm Zaid | Geico Secure Insurance Company | Travis County Court at Law No. 2 | C-1-CV-20-003366 | Greater Austin Transportation Company |
| USAA General Indemnity Co. v Greater Austin Transportation Company & Abdelwaheb A. Sheiino | USAA General Indemnity Co. | Travis County Court at Law No. 2 | C-1-CV-20-003276 | Greater Austin Transportation Company |
| PROGRESSIVE County Mutual Insurance Company v Greater Austin Transportation Company & Adawid Devine | Progressive County Mutual Insurance Company | Travis County Court at Law No. 2 | C-1-CV-20-005280 | Greater Austin Transportation Company |
| NAWARRO, Gerancio, et al v. Greater Houston Transportation Company, Fiesta Cab Co., & Jonathan Gonzalez (CL-20-5474-A) 714-85-04160315-8931R | Navarro, Gerancio; Ramirez, Kella | Hidalgo County Court at Law No. 1 | CL-20-5547-A | Fiesta Cab Company/ Greater Houston Transportation Company |
| STATE FARM Mutual Automobile Insurance Company as Subrogee of Jesus Zamora v Fiesta Cab Co. & Rubert Insurance Company Gille | State Farm Mutual Automobile Insurance Company | Hidalgo Civil Court at Law No. 2 | CL-22-3409-B | Fiesta Cab Company |
| Reynolds, Andrea v. Greater Austin Transportation Company & Williams | Reynolds, Andrea | 250th Judicial District Court - Travis Co. | D-1-GN-15-006778 | Greater Austin Transportation Company |
| Auni, Joanne v. Greater Austin Transportation Company | Auni, Joanne | 459th Judicial District Court - Travis Co. | D-1-GN-17000764 | Greater Austin Transportation Company |
| ROMERO/SCHWEINESEN v Greater Austin Transportation Company and Abdelkhalek BELBHAR | Romero, Oscar; Schweinesen, Stephen | 224th Judicial District Court - Brazar Co. | D-1-GN-18-000481 | Greater Austin Transportation Company |
| SCOTTLAND UNDERWOOD v. Greater Austin Transportation Company and Tamar Cruz | Underwood, Scottland | 201st Judicial District Court - Travis Co. | D-1-GN-18-001478 | Greater Austin Transportation Company |
| BELL, MICHENE v. YC of AUSTIN & SEPATE SOLOMON | Bell, Michelle | 459th Judicial District Court of Travis County | D-1-GN-19-003937 | Greater Austin Transportation Company |
| HAYNES, Donia, ET AL v Greater Austin Transportation Company & ABDUL WAHAB | Thomas, Mark & Rashad; Haynes, Donia | 98th Judicial District Court - Travis Co. | D-1-GN-19-005611 | Greater Austin Transportation Company |
| QUINONES, Nicole v Greater Austin Transportation Company & KHAN, Sajid | Quinones, Nicole | 250th Judicial District Court - Travis Co. | D-1-GN-19-006201 | Greater Austin Transportation Company |

| | | | | |
|---|---|---|---|---|
| HEREDIA, DEVON v Greater Austin Transportation Company & Kazuabihi | Heredia, Devon | 200th Judicial District Court, Travis Co. | D-1-GN-19-007504 | Greater Austin Transportation Company |
| IME, Randa v Greater Austin Transportation Company, ATX Yellow Cab LLC and YCPS | IME, Randa | 345th Judicial District Court | D-1-GN-20-000478 | Greater Austin Transportation Company |
| PICKS, Lexus v Greater Austin Transportation Company and Sharma Aike Mohmmed | Picks, Lexus | 53rd Judicial District Court | D-1-GN-20-000584 | Greater Austin Transportation Company |
| RODRIGUEZ, Alma Rangel (estate of Mark Rodriguez) v Greater Austin Transportation Company & Josie Odum Obnadia | Rodriguez, Alma | 53rd Judicial District Court | D-1-GN-20-000738 | Greater Austin Transportation Company |
| WRIGHT, Tierra & SANCHEZ, Eleanor v Greater Austin Transportation Company & ELAHRANI, Hamid | Wright, Tierra | 98th Judicial District Court | D-1-GN-20-001779 | Greater Austin Transportation Company |
| GREEN, Renea v YCP/DEIVINE, Ashvina & Greater Austin Transportation Company | Green, Renee | 53rd Judicial District Court | D-1-GN-20-002289 | Greater Austin Transportation Company |
| PENALOZA, Gerardo & SANCHEZ, Diana v Greater Austin Transportation Company & Jeffrz Zancay | Penaloza, Gerardo Sanchez, Diana | 250th Judicial District Court - Travis Co. | D-1-GN20-003352 | Greater Austin Transportation Company |
| MARTINEZ, Leslie & CHAVEZ, Samantha v Greater Austin Transportation Company & HOCANSEN, Patrick | Martinez, Leslie Chavez, Samantha | 261st Judicial District Court | D-1-GN-20-003573 | Greater Austin Transportation Company |
| CARRERA, Juan Soto v Greater Austin Transportation Company & Bernay Widoagasphai | Carrera, Juan | 250th Judicial District Court - Travis Co. | D-1-GN-20-003740 | Greater Austin Transportation Company |
| MITCHELL, Samantha v. Jarar | MITCHELL, Samantha | Justice of Peace, Precinct 1, Travis County | J1-CV-18-003512 | Greater Austin Transportation Company |
| KNIGHT, Kelley Krista v Greater Austin Transportation Company & Raman Shah | Knight, Kelley | Justice of Peace, Precinct 2, Travis County | J2-CV-20-000412 | Greater Austin Transportation Company |
| ARMSTRONG, James / JOSEPH v Greater Austin Transportation Company dba YC, BRYAN | Armstrong, James Armstrong, Joseph | 200th Judicial District Court - Travis Co. | No. D-1-GN-18-005107 | Greater Austin Transportation Company |
| PROGRESSIVE County Mutual v YC Service Corporation & Mohammed Ashraw | Progressive County Mutual Insurance Company | 53th Civil District Court - Travis County | 2019-44657 | Greater Houston Transportation Company |
| PROGRESSIVE County Mutual Insurance Company v Greater Houston Transportation Company & Azevuvxi Isaac Fgllmi | Progressive County Mutual Insurance Company | 157th Civil District Court - Harris County | 2019-11085 | Greater Houston Transportation Company |
| BOSSOM, Craig A. v AMIR FADSHANMIR and YELLOW | BOSSOM, Craig A | 333rd Judicial District Court - Travis Co. | D-1-GN-18-000396 | Greater Austin Transportation Company |
| JORDAN, Jonathan v. MOMINUL KKAH | Jordan, Jonathan | 151st Civil District Court - Harris County | 2017-24598 | Greater Houston Transportation Company |
| ELLIS, Lonita v. Milton Birmingham and Greater Houston Transportation Company | ELLIS, Lonita | 157th Civil District Court - Harris County | 2016-38441 | Greater Houston Transportation Company |
| SANVEE, George Akquette v. Hamid Beniyved | SANVEE, George Akquette | 270th Civil District Court - Harris County | 2017-75588 | Greater Houston Transportation Company |

| COUNTEE, Ida v. Greater Houston Transportation Company and Esheku | COUNTEE, Ida | 157th Civil District Court - Harris County | 2017-53401 | Greater Houston Transportation Company |
| HAACK, Kimberly v. Greater San Antonio Transportation Company & Waleed Knakrieh | Haack, Kimberly | 224th Judicial District Court - Bexar Co. Bexar County Presiding Court | 2020CCI02399 | Greater San Antonio Transportation Company |
| MCDONALD, Patricia v. Greater San Antonio Transportation Company & Vicente | | 438th Judicial District Court - Bexar Co. Bexar County Presiding Court | 2020-CI19932 | Greater San Antonio Transportation Company |
| GEICO County Mutual Insurance Company v Greater Houston Transportation Company & Michaud Utnel | Geico County Mutual Insurance Company | Justice Court, Harris County, Precinct 4, Place 1 | 214100054018 | Greater Houston Transportation Company |
| BRIDGES, Eleanora v Tedforedead Tedfagi | BRIDGES, Eleanora | 152th Civil District Court - Harris County | 2018-50550 | Greater Houston Transportation Company |
| LISCUM, Alexis v Salah Hassan Ismael | Liscum, Alexis | Harris Co. Court at Law No. 1 | 1128835 | Greater Houston Transportation Company, |
| THOMPSON, Jones v Tiffany Fitzgerald (70775-08242018-365) | Thompson, Jones | Harris Co. Court at Law No. 1 | 1139623 | Greater Houston Transportation Company, |

## Schedule 6.1(b) to Asset Purchase Agreement

### Related Agreements

- Asset Purchase Agreement, dated as of the even date of this Agreement, by and between WHC STX, LLC and Greater San Antonio Transportation Company

- Asset Purchase Agreement, dated as of the even date of this Agreement, by and between WHC HTX, LLC, Texas Taxi, Inc., Greater Houston Transportation Company, Fiesta Cab Company, Yellow Cab Paratransit Services, Inc., Eagle Executive Transportation Services, Inc., Eagle WAV, Inc., Hail A Cab App, Inc., and Cab Administrative Services, Inc.

<u>**Exhibit A to Asset Purchase Agreement**</u>

<u>**Bill of Sale**</u>

[Attached]

## BILL OF SALE

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Greater Austin Transportation Company, a Texas corporation ("Seller"), hereby grants, bargains, transfers, sells, assigns, conveys and delivers to WHC ATX, LLC, a Texas limited liability company ("Buyer"), all of Seller's right, title and interest in and to the Purchased Assets as such term is defined in that certain Asset Purchase Agreement, dated as of [____], 2021 (the "Purchase Agreement"), by and between Seller and Buyer, to have and to hold the same unto Buyer, its successors and assigns, forever.

Seller agrees that the representations and warranties of Seller in Article III of the Purchase Agreement apply to this Bill of Sale.

This Bill of Sale will inure to the benefit of and will bind Seller and its successors and assigns.

IN WITNESS WHEREOF, THE UNDERSIGNED PARTIES HAVE DULY EXECUTED THIS BILL OF SALE AS OF [____], 2021.

**WHC ATX, LLC,**
By: WHC Worldwide, LLC, as sole member


By:_____
      William M. George, as Managing Member


**GREATER AUSTIN TRANSPORTATION COMPANY**


By:_____
Name:
Title:

## Exhibit B to Asset Purchase Agreement

### Assignment

[Attached]

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement ("Agreement") is made effective as of [      ], 2021, between Greater Austin Transportation Company, a Texas corporation ("Assignor"), and WHC ATX, LLC, a Texas limited liability company ("Assignee").

WHEREAS, Assignor and Assignee are parties to that certain Asset Purchase Agreement dated as of [      ], 2021("Purchase Agreement"); and

WHEREAS, Assignor desires to assign, transfer, convey and deliver to Assignee all of Assignor's right, title and interest in and to the Assumed Contracts set forth in the Purchase Agreement and Assignee desires to accept such assignment, transfer and conveyance, all pursuant to the terms and provisions hereof.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby act and agree as follows:

1.      Assignment and Assumption. Assignor hereby irrevocably assigns, transfers, conveys and delivers to Assignee all of Assignor's right, title and interest in and to Assumed Contracts, effective as of the Closing. Assignee hereby accepts the Assignment and assumes all duties, obligations and liabilities of Assignor arising under the Assumed Contracts from and after the Closing.

2.      Miscellaneous. Capitalized terms used herein but not otherwise defined shall have the meaning assigned to such terms in the Purchase Agreement. This Agreement may be executed in counterparts. This Agreement shall be binding upon and inure to the benefit of the parties and their successors, legal representatives and permitted assigns. This Agreement shall be governed by the laws the State of Texas, without regard to the conflict of laws principles thereof.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement or caused this Agreement to be duly executed on their respective behalf, by their respective officers thereunto duly authorized, all as of the day and year first above written.

**WHC ATX, LLC,**
By: WHC Worldwide, LLC, as sole member

By:_____
        William M. George, as Managing Member

**GREATER AUSTIN TRANSPORTATION COMPANY**

By:_____
Name:
Title:

**Exhibit C to Asset Purchase Agreement**

**Bill of Sale (Vehicles) with Silver Lining Motors, LLC**

[Attached]

## BILL OF SALE
## (VEHICLES)

In consideration for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Greater Austin Transportation Company, a Texas corporation ("Seller"), hereby grants, bargains, transfers, sells, assigns, conveys and delivers to Silver Lining Motors, LLC, a Missouri limited liability company ("Buyer"), all of such Seller's right, title and interest in and to the vehicles listed on Exhibit A to this Bill of Sale.

This Bill of Sale is being executed and delivered by the undersigned parties as a condition to and in connection with the closing of the Asset Purchase Agreement, dated [____], 2021, by and between Seller and WHC ATX, LLC ("Purchase Agreement").

Seller agrees that the representations and warranties of Seller in Article III of the Purchase Agreement apply to this Bill of Sale, and the Purchase Agreement is incorporated herein for said purpose.

This Bill of Sale will inure to the benefit of and will bind the Seller and its successors and assigns.

**SILVER LINING MOTORS, LLC,**
By: WHC Worldwide, LLC, as sole member

By:_____
        William M. George, as Managing Member

**GREATER AUSTIN TRANSPORTATION COMPANY**

By:_____
Name:
Title:

**Exhibit A to Bill of Sale (Vehicles)**

| Vehicle Year | Vehicle Make | Vehicle Model | VIN | Vehicle Plate Number | Odometer Current |
|---|---|---|---|---|---|
| 2015 | TOYOTA | SCION XB | JTLZE4FE0FJ068972 | FPB3255 | 196034 |
| 2015 | TOYOTA | SCION XB | JTLZE4FE3FJ073115 | GPP7812 | 235477 |
| 2014 | TOYOTA | SCION XB | JTLZE4FE3EJ062825 | FFD6530 | 270474 |
| 2014 | TOYOTA | SCION XB | JTLZE4FEXEJ065043 | FJL7453 | 207280 |
| 2014 | TOYOTA | SCION | JTLZE4FEXEJ057170 | FJL7454 | 284627 |
| 2015 | TOYOTA | SCION | JTLZE4FEXFJ074097 | GPP7810 | 237432 |
| 2016 | DODGE | VAN | 2C4RDGBG4GR203214 | MKW2670 | 217121 |
| 2014 | TOYOTA | SCION XB | JTLZE4FE2EJ063299 | FFD6526 | 206584 |
| 2015 | TOYOTA | SCION XB | JTLZE4FE5FJ075996 | HFH1297 | 242327 |
| 2015 | TOYOTA | SCION XB | JTLZE4FE2FJ072795 | GPP7807 | 152647 |
| 2015 | TOYOTA | SCION XB | JTLZE4FE8FJ073577 | GPP7813 | 258702 |
| 2014 | FORD | TAURUS | 1FAHP2E83EG167983 | JYV6132 | 208342 |
| 2013 | DODGE | W/C VAN | 2C4RDGCG1DR580917 | CWS3207 | 374455 |
| 2011 | DODGE | VAN | 2DN4RN4DG1BR605860 | DN5P889 | 389802 |
| 2014 | CHRYSLER | 300 | 2C3CCAAG0EH288583 | FYP8833 | 285183 |
| 2014 | DODGE | VAN | 2C4RDGCG0ER205389 | GCX7865 | 300051 |
| 2014 | Toyota | Scion XB | JTLZE4FE2EJ063058 | FJL7456 | 274703 |
| 2015 | Toyota | Scion XB | JTLZE4FE1FJ069175 | FPB3261 | 256097 |
| 2014 | Dodge | w/c van | 2C4RDGCG5ER209485 | 1NJGJ | 261985 |
| 2010 | LINCOLN | TOWN CAR | 2LNBL8CVXAX613201 | GZB2216 | 332925 |
| 2011 | LINCOLN | TOWN CAR | 2LNBL8CV3BX765225 | FYP8834 | 283171 |
| 2016 | DODGE | VAN | 2C4RDGBG9GR243370 | MKW2669 | 220050 |
| 2013 | TOYOTA | SCION | JTLZE4FE4DJ048589 | DCG9345 | 289929 |
| 2011 | FORD | CROWN VIC | 2FABP7BV1BX173039 | GKY7744 | 241130 |
| 2013 | CHRYSLER | 300 | 2C3CCAAGXDH544632 | LXF0650 | 253364 |
| 2013 | TOYOTA | SCION XB | JTLZE4FE2DJ036554 | CHY8665 | 258359 |
| 2013 | TOYOTA | SCION | JTLZE4FE9DJ047941 | DCG9348 | 246547 |
| 2013 | TOYOTA | PRIUS | JTDKN3DU9D5687996 | NKY6439 | 335528 |
| 2013 | CHRYSLER | 300 | 2C3CCAAG9DH534013 | CRF3778 | 295271 |
| 2015 | TOYOTA | SCION XB | JTLZE4FE0FJ068728 | FPB3262 | 183531 |
| 2014 | DODGE | VAN | 2C4RDGCG7ER155591 | DZH6644 | 227114 |
| 2014 | CHRYSLER | 300 | 2C3CCAAG9EH127925 | FBF6850 | 315246 |

| 2014 | CHRYSLER | 300 | 2C3CCAAG8EH127513 | FBF8552 | 264394 |
|------|----------|-----|-------------------|---------|--------|
| 2014 | TOYOTA | PRIUS | JTDKN3DU3E1736814 | LRH3823 | 274401 |
| 2014 | DODGE | VAN | 2C4RDGCG3ER427473 | HGD7201 | 252330 |
| 2014 | TOYOTA | SCION | JTLZE4FE8EJ063386 | FFD6529 | 326306 |
| 2013 | DODGE | CHARGER | 2C3CDXBG7DH603263 | GCX7931 | 218327 |
| 2013 | DODGE | VAN | 2C4RDGBG9DR668051 | LLL6952 | 183000 |
| 2016 | CHEVROLET | IMPALA | 2G1WC5E3XG1176384 | KTR2782 | 158811 |
| 2013 | DODGE | VAN | 2C4RDGBG9DR680720 | LDH4843 | 208720 |
| 2014 | DODGE | VAN | 2C4RDGCG6ER155095 | FLV6129 | 248387 |
| 2013 | DODGE | VAN | 2C4RDGCG5DR726736 | LHY0905 | 260653 |
| 2014 | DODGE | VAN | 2C4RDGCGXER267401 | DYZ0003 | 213188 |
| 2016 | DODGE | VAN | 2C4RDGBG1GR218043 | MKW2671 | 241327 |
| 2013 | TOYOTA | VAN | 5TDKK3DC5DS335220 | KBX8636 | 450008 |
| 2015 | TOYOTA | SCION XB | JTLZE4FE2FJ075602 | HFH1296 | 259505 |

**Exhibit D to Asset Purchase Agreement**

**Lease Agreement**

[Attached]

# LEASE

This Lease Agreement ("**Lease**") is made and entered into as of [_____], 2021 ("**Commencement Date**"), by and between Notre Capital Properties, L.P.s ("**Landlord**"), and WHC ATX, LLC, a Texas limited liability company ("**Tenant**").

## RECITALS

WHEREAS, Landlord desires to lease the Leased Premises (as defined below) to Tenant, and Tenant desires to lease the same from Landlord, on the terms and conditions set forth in this Lease.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein, the parties agree as follows:

## ARTICLE I - LEASED PREMISES; PURPOSE

**1.1**    **Leased Premises**.  Upon the terms and conditions herein, Landlord hereby leases to Tenant approximately 9,085 square feet of space ("**Leased Premises**") within an approximately [19,200] square foot building ("**Building**"), located at   [___], Suite [____], as further described in Exhibit "A" hereto ("**Property**"), as further depicted on Exhibit "B" attached hereto. As used herein, Leased Premises shall also include (1) such non-exclusive rights-of-way, easements and similar rights with respect to the Building and Property as may be reasonably necessary for access to and egress from the Leased Premises, including all common areas thereof, and (2) 25 parking stalls suitable for vehicular parking.

**1.2**    **No New Improvements**. Tenant will take possession of the Leased Premises on the Commencement Date in its "AS IS" condition.

**1.3**    **Use; Access.**  Tenant may use the Leased Premises solely for the purpose of the operation of a taxi cab and any other use reasonably incidental thereto.  Tenant, and its employees, agents, contractors, patients, and invitees, will have access to the Leased Premises 24 hours per day, 7 days per week.

## ARTICLE II – TERM

**2.1**    **Term**. The term of this Lease will be for thirty six (36) months, commencing on the Commencement Date ("**Term**") unless said term shall be sooner terminated as provided herein.

**2.2**    **Renewal Options**. Provided Tenant is not then in default of any of the terms and provisions of this Lease beyond any applicable notice and cure periods, Tenant shall have the option (the "**Renewal Option**") to renew this Lease for two (2) consecutive terms of one (1) year after the initial Term of this Lease ("**Renewal Term**") upon the same terms and conditions as the initial Term of this Lease, except that the monthly Rent for Renewal Term shall be mutually agreed upon by Landlord and Tenant; provided that the Rent will be increased by [___]% at the beginning

1

of each Renewal Term. In order to exercise a Renewal Option, Tenant must advise Landlord in writing of its desire to renew no later than six (6) calendar months prior to the end of the Term.

## ARTICLE III – RENT; OPERATING EXPENSES

**3.1     Rent**. Subject to any adjustments to the Term as set forth in Article II, Tenant shall pay to Landlord $[____] per month ("**Base Rent**").

**3.2     Late Charge**. If Tenant fails to pay Rent within 15 days after due, the amount unpaid will be subject to (i) a late payment charge, as Additional Rent, of 5% of the amount unpaid, to cover Landlord's additional administrative costs; provided, the first two (2) times in any lease year that Tenant fails to pay Rent on or before the date it was due, Tenant shall not be required to pay such late payment charge if Tenant pays the unpaid amount within five (5) business days after Landlord delivers written notice of such failure, and (ii) interest on all such unpaid sums (other than the late payment charge), which interest shall commence accruing on the payment due date at a per annum rate equal to 7%.

**3.3     Operating Expenses**. It is the intent of both parties that, except as otherwise expressly provided herein, the Base Rent herein specified shall be net to the Landlord throughout the Term. Therefore, except as otherwise expressly provided herein, Tenant's shall pay all reasonable, necessary, and actual operating, maintenance, and repair costs for the Leased Premises that arise during the Term, as well as Tenant's Proportionate Share (as defined below) of the costs of repair and maintenance of the Building and common areas except for those items excluded below (all such costs, "**Operating Expenses**"). As used herein, "**Tenant's Proportionate Share**" means [_____]%, calculated by dividing the square footage of the Leased Premises by the total square footage of the Building. Tenant agrees to pay the same to Landlord as "**Additional Rent**" (with Base Rent and Additional Rent herein collectively referred to as "**Rent**"), unless they are paid directly by Tenant. Notwithstanding the foregoing, Operating Expenses shall not include any of the following:

> (a)     Any capital expenditures (including, without limitation, expenditures related to the repair and maintenance of the structural components of the Building, the roof, the foundation, and exterior walls);

> (b)     The costs of repairs, if and to the extent that any such costs is actually reimbursed by the insurance carried by Landlord or subject to award under any eminent domain proceeding;

> (c)     Depreciation, amortization, and interest payments, or principal and interest on indebtedness or any cost of financing or refinancing the Building or the Property;

> (d)     Costs associated with operating the entity which constitutes Landlord (as the same are distinguished from the costs of operation of the Building or the Property), such as compensation paid to officers or executives of Landlord, management fees, and fees paid for accounting and legal matters for such entity;

2

(e)     Costs, including attorneys' fees and settlement judgments and/or payments in lieu thereof, arising from actual or potential claims, disputes, litigation or arbitration pertaining to Landlord, Building and/or the Property;

(f)     Costs of repairs which would have been covered by casualty insurance but for Landlord's failure to maintain casualty insurance to cover the replacement value of the Building or the Property as required by this Lease;

(g)     Costs of bringing the Building or the Property into compliance with law;

(h)     Any other costs, expenses or obligations specifically assumed by Landlord under this Lease;

(i)     Costs to repair any damage to the Building or the Property arising from the intentional act or omission or negligence of Landlord;

(j)     Tax penalties and interest or fees thereon;

(k)     Any property management fees; and

(l)     Reserves for any Operating Expenses not permitted under this Section or for bad debts, future repairs, improvements, additions or any expenditures that would be incurred subsequent to the current lease year.

**3.4     Utilities and Other Services**. Landlord represents and warrants that, as of the Commencement Date, the Leased Premises are supplied with all utilities necessary and customary for the operation of an automobile showroom, and Landlord agrees to make all such utilities available for use by Tenant during the Term, provided that Tenant shall pay the cost of using all such utilities used within the Leased Premises.

**3.5     Taxes**. Tenant shall pay Landlord Tenant's Proportionate Share of all taxes, assessments, charges, and fees which during the Term hereof may be imposed, assessed or levied by any governmental or public authority against or upon the Property (collectively, "**Taxes**").

**3.6     Audit**. Tenant, at its expense, shall have the right, no more frequently than once per calendar year, upon written notice to Landlord, to cause independent certified public accountant to audit Landlord's books and records relating to Operating Expenses. Tenant shall pay all audit costs and fees.  Any audit conducted by Tenant must be conducted by an independent accounting firm that is compensated on an hourly or fixed fee basis, and not on a contingency or success fee basis. Landlord shall promptly refund to Tenant any overpayment of Operating Expenses identified by such audit, and Tenant shall promptly pay to Landlord any underpayment of Operating Expenses identified by such audit.  In the event an audit reveals that Operating Expenses were overstated by Landlord by more than ten percent (10%), Landlord shall reimburse Tenant for the reasonable costs of such audit.

3

## IV. MAINTENANCE AND REPAIRS; ALTERATIONS; SIGNAGE

**4.1**    <u>**Maintenance and Repair by Tenant**</u>. During the Term, Tenant, at its own cost and expense, shall maintain and repair all interior parts of the Leased Premises and keep them in good working order, subject to ordinary wear and tear. However, Tenant will not be obligated to pay for those items specifically excluded from Operating Expenses. If Tenant incurs any cost in maintaining or repairing such items specifically excluded from Operating Expenses, Tenant may deduct the cost of such repair from the Rent next due. Tenant's work, repairs and replacements shall be performed and installed free and clear of liens and encumbrances.

**4.2**    <u>**Maintenance and Repair by Landlord**</u>. During the Term, Landlord, at its own cost and expense, shall maintain, repair and, if necessary, replace, the structural components of the Building, roof, exterior walls, and foundations. Tenant shall promptly give Landlord written notice of any required repairs to any such items that Landlord is required to repair under this Section, and Landlord shall promptly repair the same. However, in the event Landlord fails to commence repair of any such matters within 10 days after delivery of notice to Landlord, Tenant may arrange for the repair and deduct the cost of such repair, plus 7%, from the Rent next due.

**4.3**    <u>**Alterations**</u>. Tenant may make such alterations, additions, improvements, or any other changes to the Leased Premises without the consent of the Landlord as long as (i) such alterations, additions, improvements, or changes involve no more than $50,000 in any 12-month period, and are nonstructural in nature, and (ii) Tenant gives notice thereof to Landlord. All other means alterations, additions, improvements, or changes require the prior written consent of the Landlord which shall not be unreasonably withheld, delayed, or conditioned. Tenant shall present to the Landlord plans and specifications for such work at the time any required consent is sought. All such work shall be done in a good and workmanlike manner and diligently prosecuted to completion. Any alterations, additions, or improvements to or of the Leased Premises, including, but not limited to, wall covering, paneling, and built-in cabinet work (but excepting movable furniture, equipment, trade fixtures and other personal property of Tenant that can be removed without damage to the Building, any of which may be removed by Tenant at any time), shall at the expiration of the Term become a part of the realty and shall be surrendered with the Leased Premises. Tenant shall have the right to install on the Leased Premises such equipment, trade fixtures, and personal property as is reasonably necessary for Tenant to conduct its business.

**4.4**    <u>**Signs**</u>. Tenant may place and display, with the consent of Landlord, any signs, awnings, and canopies on the Building or otherwise within the Leased Premises as long as they comply with all applicable laws and regulations.

## V. ASSIGNMENT AND SUBLEASES

**5.1**    <u>**Assignment and Subleases**</u>. Except for Permitted Transfers (as defined below), Tenant may not assign, encumber or transfer this Lease or any interest therein, and shall not sublet the Leased Premises or any part thereof, or any right or privilege appurtenant thereto, or allow any other person (except for Tenant's employees, agents, servants, and invitees, and sublessees and assignees as expressly permitted under this Lease) to occupy or use the Leased Premises, or any portion thereof, without first obtaining the written consent of Landlord, which consent may not be

unreasonably withheld, delayed, or conditioned. The giving of consent in one instance shall not preclude the need for Tenant to obtain Landlord's consent to further transfers.

**5.2    Permitted Transfers**. Notwithstanding the foregoing, Tenant may, without the consent of Landlord, assign its entire interest under this Lease to its Affiliate (defined below) or to a successor to Tenant by purchase, merger, consolidation or reorganization, provided that all of the following conditions are satisfied in Landlord's reasonable discretion (a "Permitted Transfer"): (a) no uncured event of default exists under this Lease; (b) in the event of a successor to Tenant by purchase, merger, consolidation or reorganization, Tenant's successor shall own all or substantially all of the assets of Tenant; (c) in the event of a successor to Tenant by purchase, merger, consolidation or reorganization, Tenant's successor shall have a net worth which is at least equal to Tenant's net worth as of the day prior to the proposed purchase, merger, consolidation or reorganization; (d) such Affiliate or Tenant successor is not on OFAC list; and (e) Tenant shall give Landlord written notice of the Permitted Transfer, along with all applicable documentation and other information necessary for Landlord to determine that the requirements of this Section have been satisfied. As used herein, "**Affiliate**" means a person or an entity, which directly or indirectly through one or more intermediaries, controls or is controlled by or is under common control with Tenant; and the term "control" means the right and power, direct or indirect, to direct or cause the direction of the management and policies of a person or business entity, corporation or otherwise.

## VII. INSURANCE; INDEMNITY

**7.1    Tenant's Insurance**. Tenant shall, at Tenant's expense, obtain and keep in force during the Term a policy of Commercial General Liability Insurance with Broad Form General Liability Endorsement, or equivalent, in an amount of not less than $1,000,000 per occurrence and $2,000,000 aggregate, of bodily injury and property damage combined, and shall insure Tenant with Landlord as an additional insured against liability arising out of the use, occupancy or maintenance of the Leased Premises. In addition, Tenant shall, at Tenant's expense, obtain and keep in force during the Term for the benefit of Tenant, fire and extended coverage insurance in an amount sufficient to cover the full replacement cost, as the same may exist from time to time, of all of Tenant's personal property, fixtures, equipment, and Tenant's improvements to the Leased Premises.

**7.2    Waiver of Subrogation**. Landlord and Tenant intend that their respective property loss risks shall be borne by reasonable insurance carriers to the extent above provided, and Landlord and Tenant hereby agree to look solely to, and seek recovery only from, their respective insurance carriers in the event of a property loss to the extent that such coverage is agreed to be provided hereunder. Notwithstanding anything to the contrary, the parties each hereby waive all rights and claims against each other for such losses, and waive all rights of subrogation of their respective insurers, provided such waiver of subrogation shall not affect the right to the insured to recover thereunder. The parties agree that their respective insurance policies are now, or shall be, endorsed such that the waiver of subrogation shall not affect the right of the insured to recover thereunder.

5

**7.3**     **Indemnity**. Each party shall indemnify and save harmless the other party against and from all costs, fees, interests, charges, reimbursements, obligations, expenses, liabilities, losses, damages, injunctions, suits, actions, fines, penalties, claims, and demands of every kind or nature, including reasonable counsel fees, by or on behalf of any person, party, or governmental authority whatsoever arising out of any breach of this Agreement, unless such matter arises out of the negligence or willful misconduct of the other party, its agents, contractors, or employees

## VIII. CASUALTY

**8.1**     **Casualty – Landlord Obligation.** During the Term, if the Leased Premises shall be damaged or destroyed by fire or other casualty ("**Casualty**"), then, unless the Lease is terminated as provided in this Section 8, Landlord shall repair and restore the Leased Premises to substantially the same condition of the Leased Premises immediately prior to such Casualty, provided Landlord's obligation is limited to the extent of the insurance proceeds received by Landlord. Landlord shall have no obligation to repair and restore Tenant's trade fixtures, decorations, signs, or contents to the Leased Premises or any personal property of Tenant.

**8.2**     **Casualty – Tenant Obligation.** During the Term, if Tenant's personal property shall be damaged or destroyed by Casualty, then, unless the Lease is terminated as provided in this Section 8, Tenant shall repair and restore the same to substantially the same condition immediately prior to such Casualty, provided the Casualty is insured under Tenant's insurance policies, and Tenant's obligation is limited to the extent of the insurance proceeds received by Tenant.

**8.3**     **Option to Terminate.** Landlord and Tenant shall each have the option of terminating the Lease following the Casualty if: (i) the Leased Premises is rendered or would be rendered wholly untenantable for a period in excess of 6 months; (ii) the Leased Premises is damaged in whole or in Significant Part (as defined below) as a result of a risk which is not covered by Landlord's insurance policies; (iii) Landlord's lender does not permit a sufficient amount of the insurance proceeds to be used for restoration purposes; (iv) the Leased Premises is damaged in whole or in Significant Part during the last 2 years of the Term (provided that if Tenant duly exercises its Renewal Option, then Landlord will be obligated to repair and restore pursuant to this Article). If Landlord or Tenant elects to terminate this Lease, then it shall give notice of the cancellation to the other party within 60 days after the date of the Casualty. Tenant shall also have the option of terminating the Lease if: (i) Landlord has failed to substantially restore the damaged Leased Premises within 12 months of the Casualty, subject to the provisions of Section 8.8 ("**Restoration Period**"); and (ii) Tenant gives Landlord notice of the termination after the end of the Restoration Period and the Leased Premises are not restored at the time that Tenant gives Landlord such notice. As used herein, "**Significant Part**" means if the Leased Premises are damaged or destroyed by Casualty to the extent of 50% or more of the then-monetary value thereof.

**8.4**     **Insurance Proceeds.** Landlord and Tenant shall cooperate with each other, to such extent as such other party may reasonably require, in connection with the prosecution or defense of any action or proceeding arising out of, or for the collection of, any insurance proceeds that may be due in the event of any loss, and each party will execute, acknowledge and deliver to the other such instruments as may be required to facilitate the recovery of any insurance proceeds.

6

**8.5** **Notice.** Tenant shall give prompt notice to Landlord of all fires and other occurrences in, on or about the Leased Premises which result in any death or in any damage or destruction to the Leased Premises or any part thereof costing in excess of $100,000.

## IX. CONDEMNATION

**9.1** **Total Condemnation**. If the whole of the Leased Premises shall be acquired or taken by condemnation proceeding, then this Lease shall cease and terminate as of the date of title vesting in such proceeding. If this Lease is terminated as provided in this Section, rent shall be paid up to the day that possession is so taken by public authority and Landlord shall make an equitable refund of any rent paid by Tenant in advance.

**9.2** **Partial Condemnation**. If any part of the Leased Premises shall be taken as aforesaid, and such partial taking shall render that portion not so taken unsuitable for Tenant's operations, then this Lease shall cease and terminate as aforesaid. If such partial taking is not extensive enough to render the Leased Premises unsuitable for Tenant's operations, as reasonably determined by Tenant, then this Lease shall continue in effect except that the Base Rent and Additional Rent shall be reduced in the same proportion that the portion of the Leased Premises taken bears to the total area initially demised, and Landlord shall, upon receipt of the award in condemnation, make all necessary repairs or alterations to the Building in which the Leased Premises are located, provided that Landlord shall not be required to expend for such work an amount in excess of the amount received by Landlord as damages for the part of the Leased Premises so taken. "**Amount received by Landlord**" shall mean that part of the award in condemnation which is free and clear to Landlord of any collection by mortgage lenders for the value of the diminished fee.

**9.3** **Landlord's or Tenant's Option to Terminate**. If more than 50% of the Building or the Property shall be taken as aforesaid, Landlord or Tenant may, by written notice to the other party within 30 days of such taking, terminate this Lease. If this Lease is terminated as provided in this Section, rent shall be paid up to the day that possession is so taken by public authority and Landlord shall make an equitable refund of any rent paid by Tenant in advance.

**9.4** **Award**. The Landlord shall be entitled to all proceeds of any taking; provided, however, that this provision shall not prohibit Tenant from prosecuting by separate action against the condemning authority any claim it may have for business damages, provided that the prosecution of such claim by Tenant does not reduce the award to Landlord.

**9.5** **Definition**. As used in this Article, the term "**condemnation proceeding**" means any action or proceeding in which any interest in the Leased Premises is taken for any public or quasi-public purpose by any lawful authority through exercise of eminent domain or right of condemnation or by purchase or otherwise in lieu thereof.

## X. FINANCING; SUBORDINATION

**10.1** **Subordination**. Tenant's rights under this Lease are subordinate to Landlord's mortgagee who has a mortgage or deed of trust interest in the Property, provided that so long as Tenant continues to perform all of its obligations under this Lease, its tenancy shall remain in full

force and effect notwithstanding Landlord's default in connection therewith. To the fullest extent allowed by applicable law, the foregoing subordination is self-operative and no further interest of subordination is required. Upon request by Tenant, Landlord agrees to cause its existing mortgagee to execute a customary and reasonable subordination, non-disturbance and attornment agreement with respect to this Lease. At Landlord's request, Tenant will, without charge, execute, acknowledge and deliver to Landlord (or, at Landlord's request) a similar subordination, non-disturbance and attornment agreement for any future mortgagee of Landlord. In no event will the Tenant be required to guarantee or be obligated on such mortgage or lien.

      **10.2**   **Attornment**. Any sale, assignment, or transfer of Landlord's interest under this Lease or in the Leased Premises including any such disposition resulting from Landlord's default under a mortgage, shall be subject to this Lease and also Tenant shall attorn to Landlord's successor and assigns and shall recognize such successor or assigns as Landlord under this Lease, regardless of any rule of law to the contrary or absence of privity of contract.

## XI. EVENTS OF DEFAULT; REMEDIES

      **11.1**   **Default by Tenant**. Upon the occurrence of any of the following "**Events of Default**", Landlord shall have the remedies set forth in Section 11.2:

         (a)     Tenant fails to pay any installment of Base Rent or Additional Rent or any other sum due hereunder, within 10 days after Tenant receives written notice of sums due.

         (b)     Tenant fails to perform any other obligation under this Lease within 30 days after written notice of such default shall have been given to Tenant by Landlord or, if cure would reasonably require more than 30 days to complete, if Tenant fails to commence performance within the 30-day period or fails diligently and continuously to pursue such cure to completion.

         (c)     Tenant shall become bankrupt or insolvent or file any debtor proceedings or have taken against such party in any court pursuant to state or federal statute, a petition in bankruptcy or insolvency, reorganization, or appointment of a receiver or trustee; or Tenant petitions for or enters into an arrangement; or suffers this Lease to be taken under a writ of execution; or Tenant makes a transfer in fraud of creditors or an assignment for the benefit of credits; or there shall be a receiver or trustee appointed for the Leased Premises or for all or substantially all of the assets of Tenant.

      **11.2**   **Remedies**. In the event of the occurrence of any of the Events of Default described in Section 11.1, Landlord, at its election, may exercise one or more of the following options, the exercise of any of which shall not be deemed to preclude the exercise of any others herein listed or otherwise provided by statute or general law at the same time or at subsequent times or actions:

         (a)     Terminate this Lease by giving Tenant written notice of termination, in which event this Lease shall terminate on the date specified in such notice and all rights of Tenant under this Lease shall expire and terminate as of such date, Tenant shall remain liable for all obligations under this Lease up to the date of such termination and Tenant shall surrender the Leased Premises to Landlord on the date specified in such notice; and

if Tenant fails to so surrender, Landlord shall have the right, without notice, to enter upon and take possession of the Leased Premises and to expel and remove Tenant and its effects without being liable for prosecution or any claim of damages therefor;

(b)       Terminate this Lease as provided in the immediately preceding subsection and recover from Tenant, all damages Landlord may incur by reason of Tenant's Event of Default, including without limitation, the then present value (discounted at a rate equal to the then issued treasury bill having a maturity approximately equal to the remaining Term of this Lease had such Event of Default not occurred) of (i) the total Rent which would have been payable hereunder by Tenant for the period beginning with the day following the date of such termination and ending with the expiration date of the Term as originally scheduled hereunder, minus (ii) the aggregate reasonable rental value of the Leased Premises for the same period (taking into account all relevant factors including, without limitation, the length of the remaining Term, the then current market conditions in the general area, the likelihood of reletting for a period equal to the remainder of the Term, net effective rates then being obtained by landlords for similar type space in similar buildings in the general area, vacancy levels in the general area, current levels of new construction in the general area and how that would affect vacancy and rental rates during the period equal to the remainder of the Term and inflation), plus (iii) the costs of recovering the Leased Premises, and all other reasonable expenses incurred by Landlord due to Tenant's Events of Default, including, without limitation, reasonable attorneys' fees, plus (iv) the unpaid Rent earned as of the date of termination, plus interest at the lesser of 12% and the maximum rate permitted by law ("**Default Rate**"), all of which sum shall be immediately due and payable by Tenant to Landlord;

(c)       Without terminating this Lease, and without notice to Tenant, Landlord may in its own name, but as agent for Tenant enter into and take possession of the Leased Premises and re-let the Leased Premises, or any portion thereof, as agent of Tenant, upon any terms and conditions as Landlord may deem necessary or desirable. Landlord shall have no obligation to attempt to re-let the Leased Premises or any part thereof except to the extent required by applicable law. Upon any such re-letting, all rentals received by Landlord from such re-letting shall be applied first to the costs incurred by Landlord in accomplishing any such re-letting, and thereafter shall be applied to the Rent owed by Tenant to Landlord during the remainder of the Term of this Lease and Tenant shall pay any deficiency between the remaining Rent due hereunder and the amount received by such re-letting as and when due hereunder;

(d)       allow the Leased Premises to remain unoccupied, so long as Landlord satisfies any duty established by applicable law to mitigate its damages, and collect Rent from Tenant as it becomes due; or

(e)       pursue such other remedies as are available at law or in equity.

9

## XII. PROVISIONS APPLICABLE AT TERMINATION OF LEASE

**12.1    Surrender of Leased Premises**. Upon the expiration of this Lease, Tenant will surrender the Leased Premises in the same condition as they existed as of the Commencement Date, subject to ordinary wear and tear. Before surrendering the Leased Premises, Tenant shall remove all of its personal property and trade fixtures and such property or the removal thereof shall in no way damage the Leased Premises, and Tenant shall be responsible for all costs, expenses and damages incurred in the removal thereof.

**12.2    Holding Over**. In the event that Tenant remains in possession of the Leased Premises after the expiration of this Lease without the written permission of Landlord, and without the execution of a new lease, Tenant shall be deemed occupying the Leased Premises as a tenant at sufferance only, at a rental rate equal to (i) during the first 6 months of the holdover period, 125% of the Base Rent in effect upon the date of such expiration, and (ii) 150% of the Base Rent in effect upon the date of such expiration thereafter, together with the Additional Rent, subject to all the conditions, provisions and obligations of this Lease insofar as the same are applicable to such tenancy. Acceptance by Landlord of Base Rent or Additional Rent after such expiration shall not constitute a renewal of this Lease or permit Tenant to continue such holdover. The foregoing provisions of the Section are in addition to and do not affect Landlord's right of re-entry or any rights of Landlord hereunder or as otherwise provided by law. If Tenant fails to surrender the Leased Premises upon the expiration of this Lease despite demand to do so by Landlord, Tenant shall indemnify and hold Landlord harmless from all loss or liability, including, without limitation, any claim made by any succeeding tenant founded on or resulting from such failure to surrender.

## XIII. ATTORNEYS' FEES

If either party institutes a suit against the other for violation of or to enforce any covenant or condition of this Lease, or if either party intervenes in any suit in which the other is a party to enforce or protect its interest in or rights under this Lease, then the Prevailing Party shall be entitled to all of its costs and expenses, including reasonable attorneys' fees. The term **"Prevailing Party"** means the party, either Landlord or Tenant, that establishes a breach of this Lease by the other party or otherwise establishes liability of the other party for wrongful conduct, regardless of whether actual damages are awarded. In the case where both parties prevail on different claims, the Prevailing Party shall be the party that is awarded the greater amount of damages..

## XIV. ESTOPPEL CERTIFICATE

Tenant shall, within 30 days after Landlord's request, execute and deliver to Landlord a written certification (a) ratifying this Lease; (b) certifying whether or not this Lease is in full force and effect and whether or not it has been assigned, modified, supplemented or amended, except by such writing as shall be stated; (c) if all conditions under this Lease to be performed by Landlord have been satisfied or, if not, the manner in which they have not been satisfied; (d) that there are no defenses or offsets against the enforcement of this Lease by the Landlord, or stating those claimed by Tenant; (e) the amount of advance Rent, if any, (or none if such is the case) paid by Tenant; and (f) the date to which rental has been paid. Within 15 days after the request of Tenant, Landlord shall deliver a similar certificate in favor of Tenant.

10

## XV. MISCELLANEOUS PROVISIONS

**15.1    No Partnership.** Landlord does not by this Lease, in any way or for any purpose, become a partner or joint venturer of Tenant in the conduct of its business or otherwise.

**15.2    Force Majeure.** Landlord and Tenant shall be excused for the period of any delay in the performance of any obligations hereunder (except for the payment of money) when prevented from so doing by cause or causes reasonably beyond such performing party's control, including labor disputes, civil commotion, war, governmental regulations or controls, fire or other casualty, inability to obtain any material or service not related to such party's negligence, acts of God, or inclement weather.

**15.3    No Waiver.** Failure of either party to insist upon the strict performance of any provision or to exercise any option hereunder shall not be deemed a waiver of such breach. No provision of this Lease shall be deemed to have been waived unless such waiver be in writing signed by the waiving party.

**15.4    Notice.** Any notice required or desired to be given to a party hereto shall be valid and sufficient if in writing and addressed to the addresses listed below and delivered by personal delivery or overnight delivery or mailed by United States registered or certified mail, with postage and charges prepaid thereon. Any notice shall be deemed to have been given on the day delivered if personally delivered, the day after sending if delivered by overnight delivery, or 3 days after mailing (or the date of first refusal if earlier) if sent by registered or certified mail. Landlord or Tenant may designate the place to which notices shall be given and addressed by giving at least 15 days' prior written notice to the other party, such notice to be given in accordance with the foregoing provisions of this Section. The initial address for each party shall be as follows:

As to Landlord:                     Notre Capital Properties, L.P.

_____

_____

_____

As to Tenant:                       WHC ATX, LLC
c/o WHC Worldwide, LLC
1300 Lydia Ave.
Kansas City, MO 64106

**15.5    Captions; Attachments; Defined Terms.** The captions to the Section of this Lease are for convenience of reference only and shall not be deemed relevant in resolving questions of construction or interpretation under this Lease. Exhibits referred to in this Lease, and any addendums and schedules attached to this Lease and initialed by the parties shall be deemed to be incorporated in this Lease as though part hereof.

**15.6    Partial Invalidity.** If any provision of this Lease or the application thereof to any person or circumstance shall to any extent be invalid, the remainder of this Lease or the application

11

of such provision to persons or circumstances other than those as to which it is held invalid shall not be affected thereby and each provision of this Lease shall be valid and enforced to the fullest extent permitted by law.

15.7   **Broker's Commissions**. Each party represents and warrants that there are no claims for brokerage commissions or finder's fees in connection with this Lease and agrees to indemnify the other party against and hold it harmless from all liabilities arising from such claim, including any attorneys' fees connected therewith.

15.8   **Use of Pronouns**. The use of the neuter singular pronoun to refer to Landlord or Tenant shall be deemed a proper reference even though Landlord or Tenant may be an individual, a partnership, a corporation, or a group of two or more individuals or corporation. The necessary grammatical changes required to make the provisions of this Lease apply in the plural sense where there is more than one Landlord or Tenant and to corporations, associations, partnerships, or individuals, males or females, shall in all instances be assumed as though in each case fully expressed.

15.9   **Provisions Binding, Etc**. Except as otherwise provided, all provisions herein shall be binding upon and shall inure to the benefit of the parties, their legal representative, heirs, successors, and assigns. Each provision to be performed by Tenant shall be construed to be both a covenant and a condition, and if there shall be more than one Tenant, they shall all be bound, jointly and severally, by such provisions.

15.10   **Entire Agreement, Etc.** This Lease and the Exhibits, Riders, and/or any Addenda, if any, attached hereto, constitute the entire agreement between the parties, and supersede all prior agreements, written or oral, between the parties. All Exhibits, Riders, and/or Addenda mentioned in this Lease are incorporated herein by reference. Any prior conversations or writings are merged herein and extinguished. No subsequent amendment to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed. Submission of this Lease for examination does not constitute an option for the Leased Premises and becomes effective as a lease only upon execution and delivery thereof by Landlord to Tenant. If any provision contained in Rider or Addenda is inconsistent with a provision in the body of this Lease, the provision contained in said Rider or Addenda shall control. The captions and Section numbers appearing herein are inserted only as a matter of convenience and are not intended to define, limit, construe, or describe the scope or intent of any Section or Paragraph.

15.11   **Choice of Law**. This Lease shall be governed by and construed in accordance with the laws of the State of Texas.

15.12   **Waiver of Jury Trial**. THE PARTIES HERETO SHALL, AND THEY HEREBY DO, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, FOR THEMSELVES, THEIR HEIRS, PERSONAL REPRESENTATIVES, SUCCESSORS OR ASSIGNS, WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER ON ANY MATTERS WHATSOEVER ARISING OUT OF, OR IN ANY WAY CONNECTED WITH, THIS LEASE, THE LEASED PREMISES, ACTIONS OF ANY PARTY, AND/OR CLAIM OF INJURY OR DAMAGE. THIS

12

PROVISION IS A MATERIAL INDUCEMENT TO THE PARTIES ENTERING INTO THIS LEASE.

**15.13  Counterparts**. This Lease may be executed in counterparts, each of which constitutes an original and all of which taken together shall constitute one agreement.

**15.14  Condition Precedent**. Notwithstanding anything herein to the contrary, this Lease will be conditioned on, and will not become effective until and unless, the transactions contemplated under the Asset Purchase Agreement, by and between Tenant, as purchaser, and various sellers, subject to the jointly administered bankruptcy Case Nos. 21-60064, 21-60065, 21-60066, 21-60067, and 21-60069 under Chapter 11 of Title 11 of the United States Code, as amended and the rules and regulations promulgated thereunder, in the United States Bankruptcy Court for the Southern District of Texas, are fully closed and consummated.

*[Signature Page Follows]*

13

IN WITNESS WHEREOF, Landlord and Tenant have duly executed this instrument as of the date first above written.

**"Landlord"**

**NOTRE CAPITAL PROPERTIES, L.P.**

By: _____
Name:
Title:

**"Tenant"**

**WHC ATX, LLC**
By: WHC Worldwide, LLC, as sole member

By:_____
      William M. George, Managing Member

14

**Exhibit "A"**

**Description of Property**

Exhibit "B"

**Depiction of Leased Premises**

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("Agreement") is dated as of [    ], 2021, by and among WHC STX, LLC, a Texas limited liability company ("Buyer"), and Greater San Antonio Transportation Company, a Texas corporation ("Seller").  Seller and Buyer are sometimes referred to collectively herein as the "Parties."

## RECITALS

WHEREAS, Seller operates a taxicab business in the San Antonio, Texas area, using the trade names Yellow Cab, Fiesta Cab, Taxis Fiesta, and United Cab (the "Business");

WHEREAS, Seller is currently a debtor-in-possession in the jointly administered bankruptcy cases, Case Nos. 21-60064, 21-60065, 21-60066, 21-60067, and 21-60069 (the "Bankruptcy Proceeding"), under Chapter 11 of Title 11 of the United States Code, as amended and the rules and regulations promulgated thereunder (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"); and

WHEREAS, the Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, certain core assets and properties of the Business, on the terms and subject to the conditions set forth in this Agreement and in accordance with Sections 363(f) and 365 of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## PURCHASE AND SALE

Section 1.1  **Purchase and Sale of Assets**.  Subject to the terms and conditions set forth herein, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title and interest in the assets used in the Business, including, but not limited to, the following (collectively, "Purchased Assets"), free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance ("Encumbrance"):

(a)  All vehicles owned by Seller and as identified on the bill of sale, attached hereto as Exhibit C ("Vehicles");

(b)  all machinery, equipment, tools, furniture, office equipment, dispatch equipment, computer hardware, installed vehicle equipment, supplies, materials, inventory, and other items of tangible personal property used in the Business of every kind owned or leased by Seller (wherever located and whether or not carried on the books of the Seller), together with any express or implied warranty by the manufacturers or sellers or lessors of any item or component part thereof and all maintenance records and other documents relating thereto ("Tangible Personal Property"), including without limitation such Tangible Personal Property listed on Schedule 1.1(a) attached hereto;

*Ex. 3*

(c)    all rights and interests of Seller in the Assumed Contracts (as defined in Section 3.5);

(d)    all approvals, consents, licenses, registrations, or permits issued, granted, given or otherwise made available by or under the authority of any governmental body or pursuant to any applicable federal, state, local, municipal, or other law, ordinance, code, regulation, or statute ("Legal Requirements") relating to the Business and all pending applications therefor or renewals thereof ("Governmental Authorizations"), in each case to the extent transferable to Buyer;

(e)    copies of all information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form ("Records") related to the operations of the Business, including client and customer lists, referral sources, production reports, service and warranty Records, logs, operating guides and manuals, and, subject to applicable Legal Requirements, copies of all personnel Records of Employees (as defined herein); and

(f)    All intellectual property owned by Seller, including without limitation telephone and fax numbers and related listings, domain names, URLs, trademarks and trade names used solely in the operation of the Business, including those described in Schedule 1.1(e) attached hereto.

Section 1.2    **Excluded Assets**.  Notwithstanding the foregoing, the Purchased Assets shall not include the Seller's cash, cash equivalents, and accounts receivable for periods prior to Closing (the "Excluded Assets").

Section 1.3    **No Assumption of Liabilities**.  Other than liabilities for (i) Driver Deposits (as defined below) and (ii) Seller's obligations under the Assumed Contracts for periods after the Closing, Buyer shall not assume any liabilities or obligations of Seller of any kind, whether known or unknown, contingent, matured or otherwise, whether currently existing or hereinafter created. As used herein, "Driver Deposits" mean Seller's driver deposits at the Closing, net of any amount owed by the drivers at the Closing; provided, however, that the aggregate Driver Deposits to be assumed by Buyer under this Agreement and under all Related Agreements (as defined in Section 6.1(b)) shall not exceed $350,000.

Section 1.4    **Purchase Price**.

(a)    The aggregate purchase price ("Purchase Price") for the Purchased Assets for Seller will consist of (i) "Closing Purchase Price" (as defined below), which will be payable at Closing by wire transfer of immediately available funds in accordance with wire instructions as provided by Seller, (ii) "Post-Closing Purchase Price" (as defined below), which will be paid on the first and second anniversary of the Closing, by wire transfer of immediately available funds in accordance with the same wire instructions, and (iii) the assumption of Driver Deposits under Section 1.3.

2

(b)      As used herein, "Closing Purchase Price" means a portion of the $1,720,000 allocable to the Purchased Assets, among all assets purchased under this Agreement and under the Related Agreements, which allocation shall be effected pursuant to Section 1.5, it being the intent that the aggregated cash purchase price paid by Buyer at Closing under this Agreement and the closing under the Related Agreements will be $1,720,000.

(c)      As used herein, "Post-Closing Purchase Price" means an amount calculated as 5% times Base Gross Revenue for the 12-month period immediately preceding (1) the first anniversary date, with respect to the first Post-Closing Purchase Price payment, and (2) the second anniversary date, with respect to the second Post-Closing Purchase Price payment.

(d)      As used herein, "Base Gross Revenue" means all driver lease or owner fees collected by the Buyer and Buyer's retained spread on revenue contracts, but excluding credit card fees, vehicle loan notes, accident deductibles, voucher shorts, or higher limit insurance fees for contracts, determined consistent with the same methodologies used in the calculations shown on Schedule 1.4 attached hereto.

Section 1.5      **Allocation of Purchase Price**. Prior to Closing, Seller and Buyer shall reasonably agree in writing with respect to the manner in which the Purchase Price will be allocated among the Purchased Assets for all purposes (including tax and financial accounting).  Buyer and Seller shall file all tax returns (including amended returns and claims for refund) and information reports in a manner consistent with such allocation. Buyer shall be entitled to deduct and withhold from the Purchase Price all taxes that Buyer may be required to deduct and withhold under any applicable tax law.  All such withheld amounts shall be treated as delivered to Seller hereunder.

## ARTICLE II
## CLOSING

Section 2.1      **Closing**.  The closing of the transactions contemplated by this Agreement (the "Closing") shall occur via the e-mail delivery by each party hereto of the documents and other deliverables required by this Agreement, on August 5, 2021, or such other date and place mutually convenient to the parties, after satisfaction of all conditions precedent to closing set forth in this Agreement, provided, however, that if all conditions precedent have occurred, the closing shall be no later than the fifth (5th) business day after satisfaction of all conditions precedent. The date of the closing is referred to herein as the "Closing Date."  The consummation of the transactions contemplated by this Agreement shall be deemed to occur at 12:01 a.m. on the Closing Date.

Section 2.2      **Closing Deliverables**.

(a)      At the Closing, Seller shall deliver to Buyer the following:

(i)      one or more bills of sale in the form of Exhibit A hereto and duly executed by Seller, transferring the Purchased Assets to Buyer;

(ii)      evidence of discharge of all Encumbrances with respect to the Purchased Assets;

3

(iii)    an assignment and assumption agreement in the form of Exhibit B hereto (the "Assignment") and duly executed by Seller, effecting the assignment to and assumption by Buyer of the Assumed Contracts;

(iv)    employment offer letter agreements with John Bouloubasis and Mike Spears, in the form reasonably acceptable to Buyer, containing a noncompetition covenant (the "Employment Agreement");

(v)    a bill of sale, attached hereto as Exhibit C, duly executed by Seller, transferring title to the vehicles owned by Seller to Silver Lining Motors, LLC, a Missouri limited liability company and an affiliate of Buyer ("SLM") and such other documentation necessary to transfer title to the Vehicles to SLM;

(vi)    copies of all documents evidencing Transfer of Licenses (as defined in Section 5.2) and any other Governmental Authorizations necessary to transfer the Purchased Assets and the Business to Buyer;

(vii)    if required, tax clearance certificates from the taxing authorities in the jurisdictions that impose taxes on Seller or where Seller has a duty to file tax returns in connection with the transactions contemplated by this Agreement and evidence of the payment in full or other satisfaction as of the Closing Date of any taxes owed by Seller in those jurisdictions;

(viii)    such other customary instruments of transfer, assumption, filings or documents, in form and substance reasonably satisfactory to Buyer, as may be required to give effect to this Agreement;

(ix)    a certified copy of the Bankruptcy Court order referenced in Section 6.1(a) ("Section 363 Order"); and

(x)    Certificate executed by an officer of Seller, certifying that each covenant and agreement of Seller to be performed prior to or as of the Closing pursuant to this Agreement has been performed and each representation and warranty of Seller is true and correct on the Closing Date, as if made on and as of the Closing Date.

(b)    At the Closing, Buyer shall deliver to Seller the following:

(i)    the Closing Purchase Price;

(ii)    the Assignment duly executed by Buyer; and

(iii)    Certificate executed by an officer of Buyer, certifying that each covenant and agreement of Buyer to be performed prior to or as of the Closing pursuant to this Agreement has been performed and each representation and warranty of Buyer is true and correct on the Closing Date, as if made on and as of the Closing Date.

**ARTICLE III**

4

## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this Article III are true and correct as of the date hereof.  For purposes of this Article III, "Seller's knowledge," "knowledge of Seller" and any similar phrases shall mean that any director, manager, or officer of Seller either is actually aware of the particular fact or matter or, by virtue of such person's position with the Seller, reasonably would be expected to be aware of the particular fact or matter.

Section 3.1    **Organization and Authority of Seller; Enforceability**.  Seller is a corporation duly organized, validly existing and in good standing under the laws of the state of Texas.  Seller has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby.  Subject to the Section 363 Order, the execution, delivery and performance by Seller of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Seller.  This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Seller, and (assuming due authorization, execution and delivery by Buyer) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms.

Section 3.2    **No Conflicts; Consents**.  The execution, delivery and performance by Seller of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Seller; (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Seller, the Purchased Assets, or the Business; (c) conflict with, or result in (with or without notice or lapse of time or both) any violation of, or default under, or give rise to a right of termination, acceleration or modification of any obligation or loss of any benefit under any contract or other instrument to which Seller is a party or to which any of the Purchased Assets are subject; or (d) result in the creation or imposition of any Encumbrance on the Purchased Assets.  Subject to the Section 363 Order, no consent, approval, waiver or authorization is required to be obtained by Seller from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Seller of this Agreement and the consummation of the transactions contemplated hereby.

Section 3.3    **Title to Purchased Assets**.  Seller owns and has good title to the Purchased Assets, free and clear of Encumbrances, except for any Encumbrances which will be released and terminated at Closing in accordance with the Section 363 Order. Seller owns or possesses adequate licenses or other valid rights to all of its intellectual property. Seller has not granted any license or similar rights in any of its intellectual property to any third party.

Section 3.4    **Condition of Assets**.  Each of the Vehicles and Tangible Personal Property is in good condition and are adequate for the uses to which they are being put, and none of such Vehicles or Tangible Personal Property are in need of maintenance or repairs except for ordinary, routine maintenance and repairs that are not material in nature or cost.

5

Section 3.5 **Assumed Contracts**. Schedule 3.5 attached hereto includes each contract included in the Purchased Assets assumed by Seller pursuant to a final order in the Bankruptcy Proceeding and assigned to and assumed by Buyer (the "Assumed Contracts"). Each Assumed Contract is valid and binding on Seller in accordance with its terms and is in full force and effect. Seller is not, and to Seller's knowledge, no other party thereto, is in breach of or default under or is alleged to be in breach of or default under, or has provided or received any notice of any intention to terminate, any Assumed Contract. No event or circumstance has occurred that, with or without notice or lapse of time or both, would constitute an event of default under any Assumed Contract or result in a termination thereof or would cause or permit the acceleration or other changes of any right or obligation or the loss of benefit thereunder. Complete and correct copies of each Assumed Contract have been made available to Buyer. There are no disputes pending or threatened under any Assumed Contract. Buyer reserves the right to amend or modify Schedule 3.5 in Buyer's sole and absolute discretion.

Section 3.6 **Non-foreign Status**. Seller is not a "foreign person" as that term is used in Treasury Regulations Section 1.1445-2.

Section 3.7 **Compliance with Laws and Governmental Authorizations**. Except as disclosed in Schedule 3.7 hereto, Seller is in compliance in all material respects with all applicable Legal Requirements and Governmental Authorizations applicable to the ownership and use of the Purchased Assets, including without limitation environmental and occupational safety and health Legal Requirements, and with respect to the operation of its Business.

Section 3.8 **Legal Proceedings**. Except as disclosed in Schedule 3.8 hereto, there is no claim, action, suit, proceeding or governmental investigation ("Action") of any nature pending, or, to Seller's knowledge, threatened, against or by Seller (a) relating to or affecting the Business, the Purchased Assets, or the Assumed Contracts; or (b) that challenges or seeks to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such Action.

Section 3.9 **Brokers**. No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller, and Buyer will not be liable for any of the foregoing.

Section 3.10 **Employees; Independent Contractors**. Seller has provided Buyer a complete and accurate list of all Employees, including name; age; job title; date of hiring; current compensation; sick and vacation leave that is accrued but unused; service credited for purposes of vesting and eligibility to participate under any benefit plan; and any applicable employment contract. Seller is not (i) a party to or otherwise bound by any collective bargaining or other type of union agreement, (ii) a party to, involved in or, to Seller's knowledge, threatened by, any labor dispute or unfair labor practice charge or (iii) currently negotiating any collective bargaining agreement. Seller has not experienced any work stoppage within the three (3) year period preceding the Closing. Seller has previously disclosed all employee benefit plans to Buyer in writing. Seller and its benefit plans are, and at all times have been, in compliance in all material respects with all applicable Legal Requirements. Seller has also provided Buyer a complete and

6

accurate list of each independent contractor who provides services to Seller pursuant to an agreement (such persons, "Independent Contractors", and such agreements, "Independent Contractor Agreements"), which list shall include the name; age; date of engagement, and the material terms of such agreement. Each Independent Contractor Agreement is valid and binding on Seller in accordance with its terms and is in full force and effect; Seller is not, and to Seller's knowledge, no other party thereto, is in breach of or default under or is alleged to be in breach of or default under, or has provided or received any notice of any intention to terminate, any Independent Contractor Agreement; no event or circumstance has occurred that, with or without notice or lapse of time or both, would constitute an event of default under any such agreement or result in a termination thereof or would cause or permit the acceleration or other changes of any right or obligation or the loss of benefit thereunder. Complete and correct copies of each Independent Contractor Agreement have been made available to Buyer.  There are no disputes pending or threatened under any Independent Contractor Agreement.

Section 3.11    **Taxes**. (a) Seller has timely filed all tax returns that it was required to file and, except with respect to federal income tax, has timely paid in full all taxes (including without limitation any ad valorem taxes on the Purchased Assets) that it was required to pay as reflected on such tax returns, (b) there are no Encumbrances for taxes on any of its Purchased Assets, (c) Seller has not granted any waiver of any statute of limitations with respect to, or any extension of a period for the assessment of, any taxes and (d) there is no action, suit, proceeding, investigation, audit, claim, assessment or judgment now pending against the Seller or relating to the Business or any of its Purchased Assets or Assumed Contracts in respect of any taxes.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this Article IV are true and correct as of the date hereof.

Section 4.1    **Organization and Authority of Buyer; Enforceability**.  Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the state of Texas.  Buyer has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby.  The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Buyer.  This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Buyer, and (assuming due authorization, execution and delivery by Seller) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms.

Section 4.2    **No Conflicts; Consents**.  The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Buyer; or (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Buyer.

7

No consent, approval, waiver or authorization is required to be obtained by Buyer from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby.

**ARTICLE V**
**COVENANTS**

Section 5.1    **Employees**. Immediately before Closing, Seller will, in full compliance with all applicable Legal Requirements, terminate the employment of all employees of Seller, as identified in writing by Seller and delivered to Buyer ("Employees"). Buyer shall have no obligation or liability with respect to the employment or termination by Seller of any Employees, including any liability or obligation for or with respect to termination, payroll, overtime, accrued benefits, continuing benefits, severance or otherwise. Immediately prior to the Closing Date, Seller shall pay out and satisfy all Employees' accrued vacation, sick, holiday or other paid time off. At Closing, Buyer will initially offer employment to Employees on a strictly "at-will" basis. Buyer shall not assume any obligation or liability to any employee under any Legal Requirements (including without limitation FLSA or workers compensation laws for covered injuries or accidents) which occur on or before the Closing Date.

Section 5.2    **Transfer of Licenses**. Seller and Buyer will cooperate with each other and use commercially reasonable efforts to cause the transfer of Governmental Authorizations from Seller to Buyer which are necessary for the operation of the Purchased Assets, including without limitation the transfer of licenses and authorizations and/or applications with the City of San Antonio Police Department, Ground Transportation Unit ("Transfer of Licenses").

Section 5.3    **Assumed Contracts – Consents, etc**. Promptly following the execution of this Agreement, Seller will use commercially reasonable efforts to obtain the third-party consents, waivers and estoppels that are required to assign to Buyer the Assumed Contracts (the "Required Consents"). Seller will give proper notice to the counterparties to the Assumed Contracts under applicable Legal Requirements, will assume the Assumed Contracts in the Bankruptcy Proceeding, and will cooperate with Buyer to assign all Seller's rights and interests under the Assumed Contracts. Without limiting any of the foregoing, Buyer will assume Seller's contracts with Seller's drivers pursuant to which the drivers have the right to purchase the vehicles, and Buyer will credit the drivers for all payments made by the drivers through the Closing. Buyer reserves the right to amend or modify Schedule 3.5 in Buyer's sole and absolute discretion.

Section 5.4    **Information**. Seller will afford to the Buyer and authorized representatives and agents (which shall include accountants, attorneys, bankers, and other consultants) of Buyer full and complete access during normal business hours to and the right to inspect the properties, books, and records of Seller applicable to the Purchased Assets and Assumed Contracts, and will furnish Buyer with such additional financial and operating data and other information related to the Purchased Assets and Assumed Contracts as Buyer may from time to time reasonably request. Buyer's right of access and inspection shall be exercised in such a manner as not to interfere unreasonably with the operations of the Seller's Business and shall be subject to reasonable advance notice.

8

Section 5.5    **Operations**. Subject to Bankruptcy Court's approval, after the execution and delivery of this Agreement and until Closing, Seller will (i) carry on its Business in substantially the same manner as presently conducted and not make any material change in its Business; (ii) maintain its Purchased Assets and all parts thereof in the same operating condition, ordinary wear and tear excepted;(iii) perform all of their obligations under all Assumed Contracts; (iv) keep in full force and effect present insurance policies; and (iv) use reasonable commercial efforts to maintain and preserve its business organizations intact, retain its present Employees and maintain its relationships with customers, vendors, drivers, and others having business relations with the Seller and its Business. Seller will give notice to Buyer within 1 business day if any event occurs which has, or is reasonably likely to have, a material adverse effect on the Business, the Purchased Assets, Assumed Contracts, or the Seller.

Section 5.6    **Negative Covenants**. Subject to Bankruptcy Court's approval, after the execution and delivery of this Agreement and until Closing, Seller will not, without the prior written consent of Buyer: (i) create or assume any Encumbrance upon any Purchased Assets; (ii) sell, assign, lease, or otherwise transfer or dispose of any Purchased Assets; (iii) waive any material rights or claims of Seller affecting the Purchased Assets or Assumed Contracts; (iv) commence a lawsuit; or (v) take, or agree to take, any action which would make any of the representations and warranties of the Seller contained in this Agreement untrue, or result in any of the closing conditions set forth in this Agreement not being satisfied.

Section 5.7    **Schedules Update**. Seller will update the Schedules to this Agreement, from time to time, as needed, through the Closing Date, and promptly deliver the same to Buyer.

Section 5.8    **Intentionally Omitted**.

Section 5.9    **Public Announcements**. Unless otherwise required by applicable law, or as agreed by the parties, neither party shall make any public announcements regarding this Agreement or the transactions contemplated hereby without the prior written consent of the other party (which consent shall not be unreasonably withheld, conditioned or delayed).

Section 5.10    **Bulk Sales Laws**. The parties hereby waive compliance with the provisions of any bulk sales, bulk transfer or similar laws of any jurisdiction that may otherwise be applicable with respect to the sale of any or all of the Purchased Assets to Buyer.

Section 5.11    **Transfer Taxes**. Other than sales tax on vehicles being sold as part of the Purchased Assets, which will be paid by Buyer, if any, all transfer, documentary, sales, use, stamp, registration, value added and other such taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the documents to be delivered hereunder shall be borne and paid by Seller when due. Seller shall, at its own expense, timely file any tax return or other document with respect to such taxes or fees (and Buyer shall cooperate with respect thereto as necessary).

Section 5.12    **Further Assurances**. Following the Closing, each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give

9

effect to the transactions contemplated by this Agreement and the documents to be delivered hereunder. Without limiting the foregoing, Seller agrees to remit to Buyer any accounts receivable payments for periods after Closing received by Seller within 3 days after Seller's receipt of the same.

Section 5.13   **Bankruptcy Matters**.

(a)   In the event an objection is filed, an appeal is taken, or a stay pending appeal is requested from the Section 363 Order or any other order reasonably necessary in connection with the transaction contemplated herein, Seller shall promptly notify Buyer of such objection, appeal or stay request and shall provide to Buyer promptly a copy of the related objection, notice of appeal or order of stay. Seller shall also provide Buyer with written notice of any motion or application filed in connection with an objection or any appeal from either of such orders and Seller agrees to take all action as may be commercially reasonable and appropriate to defend against such appeal, petition or motion and Buyer shall cooperate in such efforts.

(b)   Until Closing, Seller shall make reasonable efforts to consult and cooperate with Buyer regarding (a) any pleadings, motions, notices, statements, applications, schedules, reports, orders, or other papers to be filed with the Bankruptcy Court in relation to the implementation of the transaction contemplated herein, (b) any discovery taken in connection with the seeking entry of the Section 363 Order (including, not by way of limitation, depositions), and (c) any hearing relating to the Section 363 Order, including, not by way of limitation, the submission of any evidence or witness testimony in connection with such hearing.

## ARTICLE VI
## CONDITIONS TO CLOSING; TERMINATION PRIOR TO CLOSING

Section 6.1   **Conditions Precedent to Obligations of Buyer**. Notwithstanding anything herein to the contrary, the obligations of Buyer to consummate the transactions described herein are subject to the fulfillment, on or prior to the Closing Date, of the following conditions precedent unless (but only to the extent) waived in writing by Buyer at or prior to the Closing:

(a)   **Bankruptcy Matters**. The following are referred to herein collectively as "Bankruptcy Requirements"):

(i)   Seller shall have obtained the consent of the Bankruptcy Court, and the Bankruptcy Court shall have entered an order (1) approving the transactions set forth herein in accordance with Sections 363(f) and 365 of the Bankruptcy Code, (2) authorizing the assumption and assignment of Assumed Contracts to be assumed by the Buyer, and (3) authorizing a "no stay" under Federal Rules of Bankruptcy Procedure Section 6004(h). Such order shall be in the form previously approved by Buyer, and the time for appeal of such order shall have expired.

(ii)   Seller shall have filed a motion with the Bankruptcy Court and the Bankruptcy Court shall have entered an order approving terms and provisions relating to "stalking horse" protection, including a break-up fee in the amount of $150,000, expense

10

reimbursement, bidding procedures that include a minimum of $200,000 in a first overbid, plus $50,000 in any additional overbid increments, and other terms and provisions customary in a bid procedures order (the "Bid Procedures Order"). The order approving the Bid Procedures Agreement shall have set the time and place for the Section 363 auction.

(iii)    Seller shall have filed a motion with the Bankruptcy Court and the Bankruptcy Court shall have entered the Section 363 Order.

(iv)    Seller shall have ensured that proper notice of the 363 sale is given pursuant to Bankruptcy Rule 2002, including, not by way of limitation, to the Seller, any trustee, any committees and ad hoc committees, all creditors, indenture trustees, the United States Trustee, equity security holders, any consumer privacy ombudsman, governmental entities that may be affected by the sale, and holders of interests in the Purchased Assets or the Assumed Contracts. Such notice shall have included opportunity for objections and for a hearing.

(b)    **Related Transactions**. The transactions contemplated by the asset purchase agreements set forth on Schedule 6.1(b) ("Related Agreements") shall have closed or close simultaneously with this Agreement, it being the intent that the closing of the transaction contemplated herein and the transactions under such agreements are conditioned on each other successfully closing.

(c)    **Representations and Warranties**. The representations and warranties of Seller contained in this Agreement shall be true in all material respects when made and as of the Closing Date as though such representations and warranties had been made on and as of such Closing Date. Each and all of the terms, covenants, and conditions of this Agreement to be complied with or performed by Seller on or before the Closing Date pursuant to the terms hereof shall have been duly complied with and performed in all material respects.

(d)    **No Action**. No action or proceeding before a court or any other governmental agency or body shall have been instituted or threatened to restrain or prohibit the transactions herein contemplated, and no governmental agency or body shall have taken any other action with respect to the Purchased Assets, as a result of which Buyer reasonably and in good faith deems it inadvisable to proceed with the transactions hereunder.

(e)    **No Material Adverse Effect**. Since the date of this Agreement, there shall not have occurred any event, change or occurrence that has or could reasonably be expected to have a material adverse effect upon the Business, the Purchased Assets, Assumed Contracts, or Seller. Without limiting the foregoing, the parties expressly agree that there shall deemed to have been a material adverse effect on the Business, the Purchased Assets, Assumed Contracts, or Seller, in the event of a loss of any license or insurance required under law to operate the Business in substantially the same manner as of June 21, 2021.

(f)    **Required Consents**. Seller shall have obtained all of the Required Consents and the Transfer of Licenses from Seller to Buyer.

(g)    **Omitted**.

11

(h)     **Leases**. Buyer and DC Real Estate Holdings, LLC shall have entered into a new lease agreement in substantially the form attached hereto as <u>Exhibit D</u>, pursuant to which Buyer will lease the facility where the Business is currently operated.

(i)     **Closing Deliveries**. Seller shall have made the deliveries required to be made by it under <u>Section 2.2(a)</u> hereof.

Section 6.2     **Conditions Precedent to Obligations of Seller**. Notwithstanding anything herein to the contrary, the obligations of Seller to consummate the transactions described herein are subject to the fulfillment, on or prior to the Closing Date, of the following conditions precedent unless (but only to the extent) waived in writing by Seller at or prior to the Closing:

(a)     **Bankruptcy Matters**. Bankruptcy Requirements shall have been satisfied.

(b)     **Related Transactions**. The transactions contemplated by the asset purchase agreements set forth on <u>Schedule 6.1(b)</u> shall have closed or close simultaneously with this Agreement, it being the intent that the closing of the transaction contemplated herein and the transactions under such agreements are conditioned on each other successfully closing.

(c)     **Representations and Warranties**. The representations and warranties of Buyer contained in this Agreement shall be true in all material respects when made and as of the Closing Date as though such representations and warranties had been made on and as of such Closing Date. Each and all of the terms, covenants, and conditions of this Agreement to be complied with or performed by Buyer on or before the Closing Date pursuant to the terms hereof shall have been duly complied with and performed in all material respects.

(d)     **No Action**. No action or proceeding before a court or any other governmental agency or body shall have been instituted or threatened to restrain or prohibit the transactions herein contemplated, and no governmental agency or body shall have taken any other action with respect to Seller or its owners, the Business, or the Purchased Assets, as a result of which Seller reasonably and in good faith deems it inadvisable to proceed with the transactions hereunder.

(e)     **Closing Deliveries**. Buyer shall have made the deliveries required to be made by them under <u>Section 2.2(b)</u> hereof.

Section 6.3     **Termination Prior to Closing**. Notwithstanding anything herein to the contrary, this Agreement may be terminated at any time: (a) on or prior to the Closing Date by the written agreement of Seller and Buyer; (b) on or prior to the Closing Date by Buyer, if satisfaction of any condition to Buyer's obligations under <u>Section 6.1</u> of this Agreement becomes impossible or impractical with the use of commercially reasonable efforts (unless the failure results primarily from Buyer breaching any representation, warranty, or covenant herein) and such condition shall not have been waived by Buyer; (c) on or prior to the Closing Date by Seller, if satisfaction of any condition to Seller's obligations under <u>Section 6.2</u> of this Agreement becomes impossible or impractical with the use of commercially reasonable efforts (unless the failure results primarily

12

from Seller breaching any representation, warranty, or covenant herein) and such condition shall not have been waived by Seller; or (d) by Buyer or Seller, if the Closing Date shall not have taken place on or before August 16, 2021 (which date may be extended by the written agreement of Buyer and Seller); provided that the right to terminate this Agreement under this item (d) shall not be available to any party if the failure of the Closing to take place by said date results primarily from such party's (or such party's Affiliate's) breach of any representation, warranty covenant herein. If this Agreement is terminated pursuant to this Section, this Agreement shall be null and void and all rights and obligations of the parties hereunder shall terminate without any liability of any party to any other party, except that nothing herein shall prevent any party from pursuing any of its legal rights or remedies that may be granted to any party by law against the other party to this Agreement as a result of any default by the other party in the observance or in the due and timely performance of such party of any of the covenants herein contained.

## ARTICLE VII
## INDEMNIFICATION

Section 7.1    **Survival**.  All indemnification obligations of either Seller and Buyer shall survive the Closing for a period of eighteen (18) months, provided that the following shall survive the Closing for the period of the applicable statute of limitations under applicable law: (i) the Seller's indemnification obligation arising out of a breach of Section 3.1, 3.2, 3.3, or 3.11, and the Seller's indemnification obligation under Section 7.2(b) and (c), and (ii) the Buyer's indemnification obligation under Section 7.3(b) and (c).

Section 7.2    **Indemnification by Seller**.  Seller shall defend, indemnify and hold harmless Buyer, its affiliates and their respective members, managers, officers and employees from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to:

(a)    any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement or any document to be delivered hereunder;

(b)    any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Seller pursuant to this Agreement or any document to be delivered hereunder; or

(c)    any Excluded Asset, or any liability of the Seller (other than liabilities for Assumed Contracts arising from periods after the Closing).

Section 7.3    **Indemnification by Buyer**.  Buyer shall defend, indemnify and hold harmless Seller, its affiliates and their respective stockholders, directors, officers and employees from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including attorneys' fees and disbursements, arising from or relating to:

(a)    any inaccuracy in or breach of any of the representations or warranties of Buyer contained in this Agreement or any document to be delivered hereunder;

13

(b)     any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Buyer pursuant to this Agreement or any document to be delivered hereunder; or

(c)     any liabilities from Assumed Contracts arising from periods after the Closing Date.

Section 7.4     **Indemnification Procedures**.   Whenever any claim shall arise for indemnification hereunder, the party entitled to indemnification (the "Indemnified Party") shall promptly provide written notice of such claim to the other party (the "Indemnifying Party").   In connection with any claim giving rise to indemnity hereunder resulting from or arising out of any Action by a person or entity who is not a party to this Agreement, the Indemnifying Party, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such Action with counsel reasonably satisfactory to the Indemnified Party.   The Indemnified Party shall be entitled to participate in the defense of any such Action, with its counsel and at its own cost and expense.   If the Indemnifying Party does not assume the defense of any such Action, the Indemnified Party may, but shall not be obligated to, defend against such Action in such manner as it may deem appropriate, including, but not limited to, settling such Action, after giving notice of it to the Indemnifying Party, on such terms as the Indemnified Party may deem appropriate and no action taken by the Indemnified Party in accordance with such defense and settlement shall relieve the Indemnifying Party of its indemnification obligations herein provided with respect to any damages resulting therefrom.   The Indemnifying Party shall not settle any Action without the Indemnified Party's prior written consent (which consent shall not be unreasonably withheld or delayed).

Section 7.5     **Tax Treatment of Indemnification Payments**.   All indemnification payments made by Seller under this Agreement shall be treated by the parties as an adjustment to the Purchase Price for tax purposes, unless otherwise required by law.

Section 7.6     **Effect of Investigation**.   Buyer's right to indemnification or other remedy based on the representations, warranties, covenants and agreements of Seller contained herein will not be affected by any investigation conducted by Buyer with respect to, or any knowledge acquired by Buyer at any time, with respect to the accuracy or inaccuracy of or compliance with, any such representation, warranty, covenant or agreement.

Section 7.7     **Set-Off**.   If an Indemnified Party is entitled to indemnification under this Agreement, then the Indemnifying Party agrees that the Indemnified Party may instruct Buyer to deduct from any Post-Closing Purchase Price the amount of the loss incurred by the Indemnified Party; provided, the foregoing is in addition to any and all other remedies to which the Indemnified Party is entitled and is merely an additional means by which the Indemnified Party may secure payment of indemnification.

Section 7.8     **Cumulative Remedies**.   The rights and remedies provided in this Article are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise.

14

## ARTICLE VIII
## MISCELLANEOUS

Section 8.1 **Expenses**. All costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

Section 8.2 **Notices**. All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section):

If to Seller:

Greater San Antonio Transportation Company
9600 I-35 N
San Antonio, TX 78233-6418
E-mail: johnb@yellowcabsa.com
Attention: John Bouloubasis

with a copy to:

Richard L. Fuqua
Fuqua & Associates, PC
8558 Katy Fwy Ste 119
Houston, TX 77024-1809
Email: RLFuqua@fuqualegal.com

Dan Gartner
Gartner Law Firm PC
3 Riverway # 1800
Houston, TX 77056
dgartner@gartnerlaw.net

Bruce Ruzinsky
1401 McKinney St., Suite 1900
Houston, Texas 77010
bruzinsky@jw.com

If to Buyer:

William M. George
1300 Lydia
Kansas City, MO 64106

15

E-mail: wmgeorge@ztrip.com
Attention: William M. George

with a copy to:                          Foulston Siefkin LLP
                                         32 Corporate Woods, Suite 600
                                         9225 Indian Creek Parkway
                                         Overland Park, Kansas 66210
                                         Facsimile: 913-498-2101
                                         E-mail: iyamaashi@foulston.com
                                         Attention: Issaku Yamaashi

                                         Foulston Siefkin LLP
                                         1551 N. Waterfront Parkway, Suite 100
                                         Wichita, Kansas 67206
                                         E-mail: swead@foulston.com
                                         Attention: Shannon Wead

     Section 8.3    **Headings**.  The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

     Section 8.4    **Severability**.  If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

     Section 8.5    **Entire Agreement**.  This Agreement and the documents to be delivered hereunder constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.  In the event of any inconsistency between the statements in the body of this Agreement and the documents to be delivered hereunder, the Exhibits and Schedules (other than an exception expressly set forth as such in the Schedules), the statements in the body of this Agreement will control.

     Section 8.6    **Successors and Assigns**.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Buyer may assign its rights or obligations hereunder to any affiliate without the prior written consent of the other party, and pursuant to such right Buyer hereby assigns the right to purchase the Vehicles to SLM.  No assignment shall relieve the assigning party of any of its obligations hereunder.

     Section 8.7    **No Third-party Beneficiaries**.  Except as expressly provided herein, this Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

Section 8.8    **Amendment and Modification**.  This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto.

Section 8.9    **Waiver**.  No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving.  No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.  No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

Section 8.10    **Governing Law**.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction).

Section 8.11    **Waiver of Jury Trial**.  Each party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby.

Section 8.12    **Specific Performance**.  The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

Section 8.13    **Counterparts**.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[REMINDER OF PAGE INTENTIONALLY LEFT BLANK.]*

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**BUYER:**

**WHC STX, LLC,**
By: WHC Worldwide, LLC, as sole member


By:_____
       William M. George, as Managing Member


**SELLER:**

**GREATER SAN ANTONIO TRANSPORTATION COMPANY**


By:_____
Name:
Title:

**Schedule 1.1(a) to Asset Purchase Agreement**

**Tangible Personal Property**

Shop Equipment

| Q | Description |
|---|---|
| 2 | Paint Booth |
| 8 | Vehicle Lifts |
| 1 | Alignment Machine |
| 1 | Tire Machine |
| 1 | Wheel Balancer |
| | Various small tools |

Fixed Assets

| | |
|---|---|
| Signbacks30 | Sign Back Frames |
| Signbacks30 | 127 40X61 FABCARAVANDIVID |
| Signbacks30 | 45 FAB CAMRY&20 FABCROW |
| Signbacks30 | FABCROWNVICTORIADIVIDE |
| Signbacks30 | Acquired Signbacks |
| Signbacks30 | Signbacks |
| Signbacks30 | SA Signback material |
| ShopEquip30 | FABCARAVANDIVIDER |
| ShopEquip30 | HVAC |
| ShopEquip30 | Spray Paint Booth |
| ShopEquip30 | SWT00 |

Parts inventory and other property

| PART NUMBER | DESCRIPTION | BIN NUMBER | TOTAL INVENTORY |
|---|---|---|---|
| 00289-ATFWS | TS ATF WORLD STANDARD ATF | S5-4 | 11 |
| 90161 | CV MM LTC OIL DRAIN PLUG | CAB1-4 | 1 |
| 090720AH | TRANSMISSION | | 2 |
| 0W20MOTORCRAFT | 0W20 MOTOR CRAFT OIL | S17-5 | 1 |
| 102-0246C | RACK AND PINION CORE | | 1 |
| 103130 | CV MM LTC RADIATOR | STAIR | 1 |

19

| 105.0931 | BRAKE PADS | S2-4 | 2 |
|---|---|---|---|
| 105.1589 | MV FRONT BRAKE PADS 17" WHEEL | S3-4 | 2 |
| 105.1596 | MV REAR BRAKE PADS 17 WHEEL | S3-4 | 2 |
| 106.1324 | TS FRONT BRAKE PADS 11 AND UP | S5-4 | 1 |
| 10840 | FORD GAS CAP | CAB2-3 | 5 |
| 110 | BG MOA | S16-3 | 7 |
| 11570 | MV 3.6L ALTERNATOR | S9-4 | 5 |
| 11580 | 2011 AND UP MV ALTERNATOR 3.6LTR | S9-4 | 2 |
| 11580C | ALT CORE 3.6 LTR ENG | CORE BANK | 3 |
| 117.44092 | TS FRONT BRAKE HARDWARE 11 UP | S5-4 | 1 |
| 11761038 | REAR CALIPER BOOT KIT | S2-4 | 1 |
| 121.44158 | TS FRONT BRAKE ROTOR 11 AND UP | S5-4 | 2 |
| 12220 | 22 WIPER | | 4 |
| 12830 | MV ALT 08-10 | S9-4 | 1 |
| 12830C | ALTERNATOR CORE | CORE BANK | 1 |
| 13 | CV MM LTC SPARK PLUGS | CAB1-4 | 13 |
| 13964 | MV ALT 08 | S9-4 | 1 |
| 14209 | MV THERMOSTAT 3.3 08 UP PLASTIC HOUSING | PEG9 | 3 |
| 14789 | MV THERMOSTAT | S1-3 | 3 |
| 14D1589CH | MV FRONT BRAKE PADS 17" WHEEL | S3-4 | 1 |
| 16100-29085 | TS WATER PUMP | S6-4 | 1 |
| 164R8080 | LTC KEY FOB | CAB3-1-15 | 4 |
| 16572-0P240 | RADIATOR HOSE | PEG3 | 1 |
| 16T | 16 WIPER BLADE | | 3 |
| 194 | BULB | | 116 |
| 194cp | bulb | | 10 |
| 19565R15A | ADVANTA TIRE | TIRE RACK | 1 |
| 1AC50DX9AB | MV SWITCH | S9-3 | 1 |
| 1AL871D5AB | MV SEAT SHIELD | PEG2 | 1 |
| 1AL921D5AB | MV SEAT SHIELD | PEG2 | 1 |
| 1AL931D5AC | MV SEAT SHIELD | PEG2 | 2 |
| 1AN68RXFAA | MV MOUDLING | S12-4 | 1 |
| 1AN69RXFAA | MV MIRROR APP | S12-4 | 1 |
| 1AR40ES3AH | MV GRAB HANDLE | S12-4 | 1 |

20

| 1BE421XFAA | MV MOULDING | S12-4 | 1 |
|---|---|---|---|
| 1ED881D5AA | MV DS PASS INBOARD ARMREST | S12-1 | 1 |
| 1HV971DVAA | MV SEAT TRIM | PEG2 | 1 |
| 1JB15DX9AB | MV PASSS SEAT PANEL | PEG2 | 1 |
| 1JK561W1AA | MV HANDLE | S12-4 | 1 |
| 1S7Z6584BA | ESC VALVE COVER GASKET | S8-2 | 2 |
| 1W7Z5411318AAA | M GM TRUNK MLDNG | S16 | 2 |
| 1W7Z5423394AA | CV WINDOW MOTOR | S6-5 | 1 |
| 20369S | MV LOWER HOSE | PEG3 | 1 |
| 20T | 20IN WIPER | | 5 |
| 21565R16A | 21565R16 ADVANTA 700ER TIRE | TIRE RACK | 2 |
| 21579 | TPMS BAND FORD | PEG9 | 6 |
| 222710V010 | TS THROTTLE BODY ORING | S5-4 | 2 |
| 22560R16L | LANDSAIL TIRE | TIRE RACK | 1 |
| 22560R17L | LANDSAIL TRIE | TIRE RACK | 2 |
| 22565R16C | TIRE COOPER CS3 | TIRE RACK | 2 |
| 22565R16V | VERCELLI TIRE | TIRE RACK | 2 |
| 22565R17H | OHTSU TIRE | TIRE RACK | 4 |
| 22643M | MV RADIATOR HOSE LOWER | PEG3 | 1 |
| 23555R17L | LANDSAIL TIRE | TIRE RACK | 4 |
| 23560R16A | ADVANTA TIRE | TIRE RACK | 4 |
| 23565R16DORAL | 23565R16 DORAL | TIRE RACK | 1 |
| 23565R16TE | 23565R16 TOYO EXTENZA | TIRE RACK | 1 |
| 23570R16C | COOPER TIRE | TIRE RACK | 1 |
| 23786 | CV,MM ALTERNATOR | S6-4 | 1 |
| 23786C | ALT CORE | CORE BANK | 1 |
| 23931 | mv heater hose | PEG3 | 2 |
| 24FS | SIENNA BATTERY | | 1 |
| 2500-0024-00 | SCREEN M7 COMPLETE | S14-2 | 1 |
| 2642049 | mv axle shim | S15-1 | 2 |
| 2642051 | SHIM | S15-1 | 2 |
| 300083 | MM AC COND | STAIR | 1 |

21

| 300313 | PULEY | S9-1 | 1 |
|---|---|---|---|
| 301.0932 | REAR PADS | S2-4 | 2 |
| 301.1021 | MV REAR BRAKE PADS 16" WHEEL | S3-4 | 2 |
| 301.1273 | MV FRONT BRAKE PADS 16" WHEEL | S3-4 | 2 |
| 30160 | WIPER | | 3 |
| 30200 | WIPER | | 4 |
| 30260 | WIPER | | 4 |
| 303526 | MV AC COND | STAIR | 1 |
| 310 | BG TRANS FLUSH | S16-2 | 5 |
| 310S | ATC CLEANER SINGLE | S16-2 | 2 |
| 3122 | 22 wiper blade | PEG4 | 2 |
| 31266 | TS BRAKE ROTOR FRONT 09 | S5-4 | 1 |
| 3157cp | bulb | | 14 |
| 330108 | BG POWER STEERING KIT | S16-2 | 1 |
| 34-78-72 | CONTENINTAL DUAL POST BATTERY | BATT RACK | 2 |
| 344080 | MV SHOCK REAR 08 - 10 | S4-2 | 2 |
| 3459S | CV AXLE SEAL | S1-8 | 4 |
| 3516821011 | TS TRANS PAN GASKET | S5-4 | 1 |
| 35651 | MV TSTAT GASKET | S1-3 | 2 |
| 3604 | MM PINION SEAL | S7-5 | 1 |
| 3671 | 17 FORD SPARE TIRE AND TOOL KIT | TIRE RACK | 2 |
| 3757na | mini bulb | | 10 |
| 38018 | MV IDLER PULLEY 08 UP 4891720AA | S9-5 | 1 |
| 38323 | MV TENSIONER 08 & UP | S9-5 | 1 |
| 39015 | MV EXPANSION VALVE | S10-2 | 3 |
| 39016 | MV EXPANSION BLOCK | S10-2 | 1 |
| 39064 | MV EXPANSION VALVE | S10-2 | 2 |
| 39282 | 3.6 TENSIONER | S9-5 | 1 |
| 398338 | CV HEATER CORE | S14-1 | 1 |
| 3L3Z12B579BA | LTC SENSOR ASSY. | S6-3 | 1 |
| 3L3Z6710AA | OIL PAN GASKET] | S8-2 | 1 |
| 3M4Z8575B | ESC THERMOSTAT | S5-2 | 1 |
| 3W1Z13734AA | LTC LEFT REAR DOOR REFLECTOR | S6-1 | 2 |
| 3W1Z15A851AA | CV PARKING BRK SWI 03-UP | S7-2 | 1 |
| 3W1Z17005BA | LTC JACK HOLDER | S6-1 | 1 |
| 3W1Z17A385AAB | LTC LISC BRACKET | S7-5 | 1 |
| 3W1Z17C829AA | t-c bumper mldng rh | S16 | 1 |
| 3W1Z17C829NB | TC FRT BUM MLDNG 06 | S16 | 1 |
| 3W1Z19834AA | LTC BLOWER WHEEL | S15-1 | 1 |
| 3W1Z3A130BB | LTC TIE ROD | S4-3 | 5 |

| 3W1Z3K661AA | MM TIE ROD BOOT | S4-3 | 3 |
|---|---|---|---|
| 3W1Z5422666AAC | LTC GRAB HANDLE | S6-2 | 1 |
| 3W1Z5422671AAB | LTC PULL HANDLE COVER | S6-2 | 5 |
| 3W1Z5422692AA | LTC HANDLE RETAINER CLIP | S6-2 | 6 |
| 3W1Z5443720AA | TC TRNK WEATHER STRIP 04 | S12-5 | 2 |
| 3W1Z5444891AA | ltc t-bar for trunk | PEG9 | 2 |
| 3W1Z54611D10AA | MM AIR BAG DRIVERS SEAT | S7-1 | 1 |
| 3W3Z1130CA | MM WHEEL ORNAMENT | S15-2 | 6 |
| 3W7Z1130BA | CV HUB CAP | S15-2 | 1 |
| 3W7Z17603AA | cv washer nozzle spayer | PEG4 | 1 |
| 3W7Z2C219BB | CV ABS MODULE | S5-5 | 1 |
| 3W7Z9A589CA | CV SPACER | S7-4 | 1 |
| 3WZ71007FCP | MM STEEL WHEEL | STAIR | 4 |
| 4202-0000-00 | MODULE 4202 | S14-2 | 2 |
| 4343 | AIR FILTER CV MM LTC | CAB1-6 | 1 |
| 438 | BG INFORCE | S16-8 | 2 |
| 44020 | 3.6 LTR WATER PUMP | S9-1 | 5 |
| 4567413 | MV EXTENSION HOUSING | S9-2 | 1 |
| 4567506 | MV TRANS ADAPTER | S9-2 | 1 |
| 4589243AF | MV LIFT GATE LATCH | S2-1 | 1 |
| 4589417AH | D/S LOCK ACTUATOR | S13-1 | 1 |
| 4589581AE | MV LIFTGATE LATCH 10 | S2-1 | 1 |
| 4589693AD | MV DRIVERS SIDE DOOR LOCK ACT | S13-2 | 1 |
| 4591959AA | MV TRANS FILLER CAP | S8-3 | 1 |
| 4593665AB | MV BELT | PEG1 | 2 |
| 4602535AI | MV WINDOW SWITCH 10 UP | S9-3 | 1 |
| 4602539AD | MV WINDOW SWITCH 08 SLIDING DOOR | S9-3 | 2 |
| 4621987AC | MV TIMING GASKET | S8-2 | 1 |
| 4648930AA | MV OIL PAN | S8-3 | 1 |
| 4659982 | MV GASKET SOLENOID PACK | S8-3 | 1 |
| 4671929AC | MV CRUISE CONTROL SWITCH 08 | S9-2 | 3 |
| 4677577AC | MV AC DISHARGE LINE 08 | PEG6 | 1 |
| 4677755AE | MV RADIATOR 08 UP | STAIR | 1 |
| 4682810AB | MV EXHAUST NUT | S1-9 | 4 |
| 4684285AB | BODY MOUNT | CAB2-4 | 1 |
| 4694932AA | MV STRUT BELLOW | S5-1 | 2 |
| 46A0873A | MM INNER TIE ROD END | S7-1 | 3 |
| 46A0874A | MM OUTER LH TIE ROD END | S7-1 | 1 |
| 46A0875A | MM OUTER RH TIE ROD END | S7-1 | 1 |
| 4721356AA | BUSHING REAR AXLE | S5-3 | 2 |
| 4721497AC | POWER STEERING RESV 8 UP | S9-2 | 1 |
| 4721541AH | MV BRAKE LINE REAR 08 | PEG9 | 1 |

23

| 4721578AE | MV HUB BEARING | S10-4 | 1 |
|---|---|---|---|
| 4721581AA | ISOLATOR SPRING | S3-1 | 2 |
| 4721599AC | JOUNCE BUMPER | S3-1 | 2 |
| 4721602AB | MV STRUT BEARING 08 UP | S4-1 | 4 |
| 4721746AB | MV CROSSMEMBER BOLT | S5-3 | 5 |
| 4721860AB | MV STEEL WHEEL | STAIR | 1 |
| 4726256AA | MV HUBCAP 08 UP | S13-4 | 1 |
| 4736299AB | MV FLYWHEEL | S7-1 | 1 |
| 4743676AD | MV POWER STEERING RESV 2011 UP | S9-1 | 1 |
| 4743813AB | MV WHEEL COVER 08 | S13-4 | 1 |
| 4748046AC | MV STARTER | S5-1 | 1 |
| 4748046ACCORE | STARTER CORE | CORE BANK | 1 |
| 4766910AI | MV LOWER CONTROL ARM 08 UP RH | S13-3 | 1 |
| 47769-50010 | TS CALIPER PIN BUSHING | S5-4 | 4 |
| 47771-33020 | SHIM | S5-4 | 4 |
| 47775-06030 | CALIPER PIN BOOT | S5-4 | 4 |
| 4781172AA | MV WATER PUMP GASKET 07 DOWN | S10-2 | 5 |
| 4782681AB | 300 SWAY BAR BUSHING | S8-4 | 2 |
| 4792317AB | MV CRANK SEAL ALL | S1-9 | 1 |
| 4801304AC | mv alternator 3.8 | S9-5 | 1 |
| 4801839AB | MV 3.6L STARTER | S5-1 | 3 |
| 4801839ABC | STARTER CORE | CORE BANK | 1 |
| 4805157 | EMBLEM | S14-2 | 1 |
| 4805857AB | mv foglamp 08 up dodge | S16-5 | 1 |
| 4806271AA | GROMMET BUMPER | S13-2 | 6 |
| 4809106 | MV INSOLATOR | S1-9 | 1 |
| 4809759AC | MV FUEL PUMP JUMPER HARNESS | S9-1 | 1 |
| 4809783AA | MV FUEL PUMP ORING LIP | S9-1 | 1 |
| 4857351AB | MV LICENSE PLATE BRACKET | S10-5 | 2 |
| 4861592AA | SHIM STARTER | S5-1 | 1 |
| 4861660AA | MV TENSIONER BELT 08-10 3.3 | S9-5 | 1 |
| 4861737AA | MV AIR FILTER 2011 UP NEW | CAB2-6 | 37 |
| 4862306AB | MV POWER STEERING HOSE press 08 up | PEG6 | 1 |
| 4868118AC | MV DOOR HARNESS PASS SIDE 07 | S12-2 | 2 |
| 4869591AF | MV HARNESS DRIVERS DOOR 08 UP | S12-2 | 2 |
| 4869979AE | D/S SLIDING DOOR HARNESS | S12-2 | 1 |
| 48725-08020 | TS REAR BEAM BUSHINGS | S5-4 | 1 |

24

| 4877805AH | MV MASTER CYLINDER | S4-3 | 1 |
|---|---|---|---|
| 4880383AA | MV ENG SUPPORT | S2-2 | 1 |
| 4880603AA | MOUNT 08 | S2-2 | 1 |
| 4881012AC | MV CATALYTIC CONVERTER GASKET | PEG9 | 1 |
| 4882136 | MV EXPANSION VALVE ORING | S10-2 | 5 |
| 4885475AC | MV BLOWER MOTOR FRONT | S10-1 | 1 |
| 4885803AA | MV EXPANSION VALVE ORING | S10-2 | 3 |
| 4886075AA | MV CALIPER PIN | S1-8 | 4 |
| 4894894AA | MV BRACKET FRONT FENDER | PEG2 | 1 |
| 4894895AA | FENDER BRACKET | PEG2 | 2 |
| 4894896AA | MV BRACKET FENDER WELDMENT | PEG2 | 1 |
| 4894897AA | HINGE PILLAR | PEG2 | 1 |
| 4894902AC | RAIL | S16 | 1 |
| 4894904AC | MV TRACK SLIDE RT | S16 | 1 |
| 4894905AC | SLIDING DOOR TRACK | S16 | 1 |
| 4894929AF | CHANNEL FRONT GLASS | S16 | 1 |
| 4895482AB | 300 SWAY BAR LINK | S8-4 | 1 |
| 4895483AC | 300 SWAY BAR LINK | S8-4 | 1 |
| 4U7Z9J460AA | CV DPFE SENSOR | S1-10 | 9 |
| 4W1Z5493BA | SWAY BAR BUSHINGS | S3-2 | 4 |
| 4W1Z5493DA | MM SWAY BAR BUSHING | S3-2 | 1 |
| 4W7Z17F798AA | ISOLATOR | S16 | 1 |
| 4W7Z17F799AA | ISOLATOR | S16 | 1 |
| 50/50 PREMIX | ANTIFREEZE |  | 2 |
| 50006 | FORD COIL FD503 | S7-4 | 1 |
| 5005203AC | mv trans cooler line | CAB2-5 | 1 |
| 5005204AG | TRANS COOLER LINES | S8-5 | 2 |
| 5008SM | MV HUB CABS | S14-3 | 2 |
| 5013457AA | ATF | S17-5 | 4 |
| 5013946AA | KNOCK SENSOR PIGTAIL | PEG9 | 1 |
| 5013947AA | MV HEADLIGHT HARNESS | S16-5 | 1 |
| 5017113AA | MV HEADLIGHT HARNESS | S16-4 | 2 |
| 5017117AA | MV HEADLIGHT HARNESS | S16-4 | 2 |
| 5018395AA | WIRING | S9-2 | 11 |
| 5018689AA | MV KEY | CAB3-1-18 | 1 |
| 5019245AA | MV REAR WASHER PUMP | S13-2 | 2 |
| 5019987AA | MV CALIPER BOLT | S1-8 | 3 |
| 5020669AA | MV APPLIQ LT REAR | S15 | 1 |
| 5020672AG | HINGE | S12-2 | 2 |
| 5020678AA | MV RH SLIDING DOOR LOCK ACTUATOR | S13-2 | 2 |
| 5020679AA | MV LOCK ACTUATOR LH SLIDING | S13-2 | 1 |

25

|  | DOOR  08 UP |  |  |
|---|---|---|---|
| 5020799AC | D/S INNER DOOR HANDLE | S12-2 | 1 |
| 5026149AH | MV IGNITION NODE | S9-2 | 1 |
| 5026976AB | MV HORN DS LOW NOTE 2011 | S9-5 | 1 |
| 5026986AC | HORN 08-10 | S9-5 | 2 |
| 5058674AD | MV FAN MODULE 08 UP | STAIR | 1 |
| 5066497AA | mv ac line gasket kit | S1-9 | 2 |
| 5066498AA | mv ac line gasket kit | S1-9 | 12 |
| 5078 | throttle body cleaner |  | 6 |
| 5082050AC | MV CLOCKSPRING 07 DOWN | S12-3 | 1 |
| 5083344AA | MV BRAKE SWITCH 08 | S3-4 | 1 |
| 5085685AA | MV EXHAUST GASKET | PEG9 | 2 |
| 5094018AN | MV ORC | S13-2 | 1 |
| 5109273AA | MV HOOD RELEASE CABLE | PEG9 | 1 |
| 5109586AD | ext | PEG2 | 1 |
| 5113110AC | MV T/C  STEP PLATE REAR BUMP 08 | S16 | 1 |
| 5113126AA | MV GRILL ASSY | S16 | 1 |
| 5113220AA | MV FOG LIGHT FILLER | S10-5 | 1 |
| 5113232AA | MV FOGLIGHT BEZEL | S10-5 | 1 |
| 5113359AB | GROMMET TAIL LAMP | S13-2 | 15 |
| 5113360AA | GROMMET | S13-2 | 10 |
| 5127562AD | MV FUEL PUMP | S9-1 | 1 |
| 5136091AA | MV EXPANSION VALVE ORING | S10-2 | 4 |
| 5136101AB | MV EXPANSION VALVE 04-07 FRONT | S10-3 | 1 |
| 5149141AF | CAM POSITION SENSOR | CAB2-4 | 1 |
| 5149168AI | MV COIL IGNITION 2011 3.6 | CAB1-3 | 1 |
| 5149180AA | MV O2 SENSOR | S5-3 | 1 |
| 5151025AA | MV SWAY BAR RETAINER 08 UP | S1-7 | 2 |
| 5161919AA | MV ALTERNATOR PIGTAIL 08 UP | S9-4 | 3 |
| 5174115AA | MV AC LINE WASHER | S10-2 | 4 |
| 5182025AA | MV FOGLIGHTS 10 UP | S16-2 | 4 |
| 5182211AB | WW HOSE ASSY | PEG1 | 1 |
| 5183147AB | REAR AC  BLOWER MOTOR | S10-1 | 1 |
| 5183153AA | MV RESISTOR REAR 08 | S10-2 | 1 |
| 5183474AA | MV TRANS HARNESS JUMPER | PEG9 | 1 |
| 5184101AG | MV CAM PHASER ACTUATOR | CAB2-4 | 2 |
| 5184150AF | MV 3.6L OIL CONTROL VALVE | S8-1 | 4 |
| 5184296AH | ARM VALVE | S8-4 | 72 |
| 5184332AA | TAPPET 3.6 | S8-4 | 24 |
| 5184370AH | mv camshaft pos sensor 2 bank 2 | S8-1 | 2 |
| 5184378AF | CAMSHAFT | S8-4 | 1 |
| 5184380AF | CAMSHAFT ASSY | S8-4 | 1 |

26

| 5184454AE | CROSSOVER GASKET | S8-3 | 2 |
|---|---|---|---|
| 5184498AJ | MV WATERPUMP 3.6L | S9-1 | 1 |
| 5184570AH | MV THERMOSTAT 2011 UP 3.6 | S9-1 | 2 |
| 5184595AE | MV VALVE COVER GASKET 2011 RH | S8-2 | 3 |
| 5184596AE | MV VALVE COVER GASKET 2011 LH | S8-2 | 4 |
| 5184617AD | MV BELT TENSIONER 3.6L | S9-5 | 1 |
| 5184778AB | PLUG TUBE SEAL | S8-2 | 18 |
| 5189351AA | MV WASHER RESV CAP | S1-3 | 2 |
| 52127AE020 | toyota sienna foglight cover | S6-5 | 1 |
| 5273730AB | MV REAR BUSHING | CAB2-4 | 1 |
| 5273883AD | MV FRONT ENGINE MOUNT RADIATOR 2011 | S2-3 | 2 |
| 5273893AE | MV ENGINE MOUNT RACK 2011 | S2-3 | 1 |
| 5273994AB | MV ENGINE MOUNT AIR FILTER 2011 3.6 | S2-3 | 2 |
| 5273996AE | MV ENGINE MOUNT BATTERY 3.6 | S2-3 | 2 |
| 5281301AA | MV IDLER PULLEY 2011 | S9-5 | 2 |
| 55111417C | COMPRESSOR CORE | CORE BANK | 1 |
| 55366298AA | fuel pump oring | S9-1 | 1 |
| 56029085AB | MV O2 SENSOR | S1-7 | 2 |
| 56046118AC | MV TURN SIGNAL 08 UP | S9-2 | 1 |
| 56046707AG | MV FOB | CAB3-1-12 | 1 |
| 58648 | OVERLOAD SHOCK | S4-1 | 1 |
| 599030 | AC CONTROL HEAD | S7-3 | 1 |
| 5C2Z9E936BA | MM SPACER GASKET | S7-2 | 2 |
| 5L3Z4215A | CV DIFF SPIDER GEAR SET | S6-5 | 1 |
| 5M6Z1177LA | ESC CV AXLE SEAL LH SIDE | S5-2 | 1 |
| 5M6Z1177RA | ESC CV AXLE SEAL | S5-2 | 2 |
| 5M6Z9644A | ESC SENSOR DOWNSTREAM 02 | S5-3 | 1 |
| 5W1Z1107A | LTC WHEEL STUD | S1-10 | 19 |
| 5W1Z1130AA | LTC CENTER CAP | S15-2 | 3 |
| 5W1Z14529BA | LTC WINDOW SWITCH MASTER | S6-3 | 1 |
| 5W1Z14B004AA | mm impact sensor | S1-5 | 1 |
| 5W1Z2C204A | CV ABS SENSOR FRONT | S6-2 | 1 |
| 5W1Z7A110A | LTC SHIFT INDICATOR | S7-3 | 1 |
| 5W20 PRONTO | SYNTHETIC OIL | S17-5 | 7 |
| 5W3C277 | LOWER CONTROL ARM BUSHING RH | S2-5 | 1 |
| 5W3C278 | LOWER CONTROL ARM BUSHING LH | S2-5 | 1 |

27

| 5W3Z1130EA | MM WHEEL COVER | STAIR | 4 |
|---|---|---|---|
| 5W7Z13C788AC | CV LCM | S6-2 | 1 |
| 5W7Z15A434AA | WIRE ASSY | PEG9 | 1 |
| 5W7Z5426442A | rod | PEG2 | 2 |
| 5W7Z5426443A | cv door link | PEG2 | 4 |
| 604B | MV TRANS. FILTER | CAB1-7 | 5 |
| 6070SC | TS HUBCAP SET | STAIR | 1 |
| 60924 | CV CAT CONVERTER GASKET | PEG9 | 2 |
| 6101614 | MV EXHAUST BOLT | S1-9 | 3 |
| 610266 | TS WHEEL STUD | CAB2-2 | 2 |
| 6104257AA | MV CALIPER MOUNTING BOLT | S3-4 | 2 |
| 611-181.1 | LUGNUT | S1-9 | 10 |
| 611066 | TS WHEEL NUT | CAB2-2 | 2 |
| 626-314HP | MV HEATER HOSE KIT | PEG7 | 2 |
| 64211 | h11 bulb | | 37 |
| 6501474 | TRANS PAN BOLTS | S1-10 | 35 |
| 6501979 | OIL PAN BOLTS | S1-10 | 33 |
| 6502311 | MV WHEEL STUD | S1-6 | 25 |
| 6503287 | MV ARMREST BOLT | S1-3 | 1 |
| 6503835 | MV WHEEL STUD | S1-6 | 14 |
| 6504672 | MV LUG NUT | S1-6 | 8 |
| 6506502AA | MV BATTERY BOLT | PEG9 | 1 |
| 6507629AB | TIE ROD END NUT | S3-5 | 5 |
| 6507676AA | NUT | S13-3 | 4 |
| 6508273AA | MV STRUT NUT 08 UP | S1-8 | 6 |
| 6508274AA | END LINK NUT | S4-5 | 4 |
| 6508538AA | MV BATTERY BOX CLIP | PEG9 | 1 |
| 6508707AA | MV STUD REAR WHEEL | S1-6 | 5 |
| 6509131AA | MV BALL STUDS | S1-7 | 2 |
| 6509159AA | MV BATTERY BOLT | PEG9 | 1 |
| 6509297AA | MV HATCH SHOCK STUD 08 | S1-7 | 1 |
| 6509407AA | BOLT | S1-6 | 4 |
| 65232 | OIL DRAIN PLUG 14X1.25 | CAB2-2 | 1 |
| 65263 | TS OIL DRAIN PLUG ASSY | CAB2-2 | 3 |
| 68003697AC | FRONT CALIPER 08 MV | S3-2 | 1 |
| 68003697ACC | CALIPER CORE | CORE BANK | 1 |
| 68003699AA | RF CALIPER BRACKET | S3-3 | 2 |
| 68003706AA | MV CALIPER BOLT KIT 08 FRONT | S3-4 | 4 |
| 68003707AC | FRONT CALIPER 08 MV | S3-2 | 1 |
| 68003707ACC | CALIPER CORE | CORE BANK | 1 |
| 68003777AA | MV CALIPER PIN KIT REAR | S3-5 | 2 |
| 68018555AAP | MV MERCEDES TRANSMISSION | CAB2-7 | 17 |

| | FILTER | | |
|---|---|---|---|
| 68023327AC | MV C/MEMBER | S16 | 1 |
| 68023328AA | RADIATOR BRACE | PEG2 | 4 |
| 68023335AB | MV LT FENDER BRACKET | PEG2 | 1 |
| 68028050AB | LISC LIGHT ASSY | S16-6 | 1 |
| 68028440AB | MV REAR BLADE 08 | PEG4 | 1 |
| 68029175AA | MV RESISTOR BLOWER | S10-3 | 1 |
| 68029178AC | MV SWITCH POWER WINDOW PASS DOOR | S9-2 | 1 |
| 68029719AB | MV BLOWER MOTOR 08 FRONT | S10-1 | 1 |
| 68029848AD | CALIPER | S4-4 | 1 |
| 68029848ADC | CALIPER CORE | CORE BANK | 1 |
| 68029849AD | MV CALIPER REAR | S4-4 | 1 |
| 68029849ADC | CALIPER CORE | CORE BANK | 1 |
| 68030655AA | MV WINDOW REG 08 UP DRIVER SIDE | S14-1 | 1 |
| 68030661AA | MV WINDOW MOTOR 08 UP | S14-2 | 1 |
| 68030834AA | SEAL AC | S10-3 | 2 |
| 68031388AA | MV CRANK RETAINER REAR | S8-2 | 1 |
| 68031968AA | AC LINE SEAL | S10-3 | 3 |
| 68032108AA | AC SEAL | S10-3 | 2 |
| 68032275AB | MV HEADLIGHT HARNESS CONN | S16-4 | 1 |
| 68032913AA | MV WIPER ARM CAP REAR | PEG5 | 2 |
| 68040225AA | MV INNER TIE ROD 08 UP | S4-2 | 3 |
| 68042864AC | MV STRUT 08 UP | S3-1 | 4 |
| 68042866aa | cabin filter dc | | 31 |
| 68045336AA | MV FAN MODULE PIGTAIL 08 UP | PEG1 | 1 |
| 68049176AB | R/R CALIPER 17 WHEEL | S8-5 | 1 |
| 68049177AB | LEFT REAR CALIPER | S8-5 | 1 |
| 68053288AC | MV ABS MOD 09-10 | S4-3 | 2 |
| 68057718AA | MV EXPANSION VALVE REAR 08 | S10-3 | 3 |
| 68057721AA | MV BLOWER MOTOR RESISTOR REAR | S10-3 | 1 |
| 68060507AA | MV FUEL PUMP | S8-2 | 1 |
| 68064503AB | MV DOOR HARNESS | S12-2 | 1 |
| 68064507AB | HARNESS DOOR | S12-2 | 1 |
| 68064801AD | MV 2011 BRAKE BOOSTER | S4-4 | 1 |
| 68065088AB | MV VENT WINDOW SWITCH 10 | S9-3 | 1 |
| 68066878AA | MV KEY FOB | CAB3-1-19 | 1 |
| 68078306AA | MV WIPER ARM REAR 08 UP | PEG4 | 1 |
| 68078604AA | TIMING COVER GASKET KIT | S8-3 | 3 |

29

| | | | |
|---|---|---|---|
| 68078768AA | MV TPMS SENSOR | S1-5 | 1 |
| 68078772AC | MV PINCH SENSOR | S3-1 | 2 |
| 68078886AC | MV SLIDING DOOR HARNESS | S12-2 | 1 |
| 68079589AA | MV FRONT SEAL 2011 3.6 L | S1-9 | 1 |
| 68079744AD | MV OIL FILTER 3.6 L 11 NEWER | CAB1-2 | 12 |
| 68084862AA | MV BATTERY HOLD DOWN | PEG9 | 1 |
| 68087340AA | MV WATER PUMP GASKET 2011 UP | S9-1 | 1 |
| 68100708AA | MV FOGLIGHT COVER 2013 | S15-3 | 1 |
| 68105838AA | MV PCV HOSE 3.6L HOSE | S1-8 | 1 |
| 68110871AA | MV MASTER WINDOW SWITCH | S9-3 | 1 |
| 68125729AB | MV REAR STEP WITH CHROME | S16 | 2 |
| 68127990AB | MV REAR HUB SENSOR 2013 | S10-4 | 1 |
| 68140000AA | STABILIZER BUSHING | S1-7 | 2 |
| 68141126AA | MV CONSOLE SWITCH | S9-2 | 1 |
| 68142156AA | FAN RELAY AND PIGTAIL ASSY | S1-5 | 1 |
| 68144165AA | CALIPER PIN SET | S3-4 | 2 |
| 68144206AB | MV REAR CALIPER 17IN WHEEL | S8-5 | 1 |
| 68144207AB | CALIPER LEFT REAR | S8-5 | 1 |
| 68144549AD | REAR SHOCK 2011-14 | S3-1 | 3 |
| 68156146AA | MV TIE ROD OUTER  2011 UP | S3-5 | 1 |
| 68157856AA | MV TIE ROD INNER 2011 | S3-5 | 3 |
| 68164490AA | MV EXPANSION VALVE 08 FRONT | S10-3 | 1 |
| 68210979AA | SPRING ISOLATOR | S4-1 | 1 |
| 68223854AA | 3.6 L REAR MAIN SEAL | S8-4 | 1 |
| 68226707AA | MV POSITIVE TERMINAL 2014 | S5-3 | 3 |
| 68226708AA | MV NEGATIVE BATTERY TERMINAL 2014 | S5-3 | 3 |
| 68261930AA | KIT 6 WAY FEMALE | S9-1 | 5 |
| 68298866AA | MV WINDOW MASTER SWITCH | S9-3 | 1 |
| 68299450AA | MV AC BLEND DOOR | S9-2 | 1 |
| 6830 | COOLANT FLUSH KIT | S16-6 | 4 |
| 68320463AA | MV AIR DAM | S16 | 1 |
| 68369289AA | MV STRUT MOUNT | S4-1 | 4 |
| 68425713AA | CLOCKSPRING(56046497AF) | S12-3 | 2 |
| 69227-08030B0 | HANDLE COVER | S12-3 | 3 |
| 6K908 | LTC SERPENTINE BELT | PEG1 | 1 |
| 6L3Z7H103AA | MM SPEED SENSOR | PEG9 | 1 |
| 6U5Z17700AA | rearview mirror assy | S6-1 | 1 |
| 6W1Z1007A | WHEEL | STAIR | 1 |
| 6W1Z16C826AB | LTC HOOD LIFT | S3-3 | 2 |
| 6W1Z19980AA | LTC AC CONTROL | S7-2 | 1 |
| 6W1Z2078AA | MM BRAKE HOSE LEFT | PEG9 | 1 |
| 6W1Z4234A | AXLE SHAFT 36 SPLINE 28 SPL 3W1Z | STAIR | 4 |

30

| 6W1Z5426413A | T/C REAR DR LATCH LT | S7-2 | 1 |
|---|---|---|---|
| 6W1Z5E490AA | LTC SWAY BAR BOLT | S3-3 | 2 |
| 6W1Z7E395A | LTC SHIFT CABLE | S7-1 | 1 |
| 6W3Z15A211AA | M GM FOGLIGHT HARNESS | PEG9 | 1 |
| 6W3Z15A434AA | mm harness rf blinker | S6-3 | 1 |
| 6W3Z17E810AA | mm delete | S6-5 | 1 |
| 6W3Z17E811AA | MM DELETE PANEL FOG | S6-5 | 2 |
| 6W3Z5421819AC | driver side door handle | S6-1 | 2 |
| 6W7Z1012AA | LTC LUG NUT | S1-11 | 1 |
| 6W7Z14527BA | MM BEZEL | S7-2 | 3 |
| 6W7Z5413228BAB | CV SCUFF PLATE RH | S12-4 | 1 |
| 6W7Z5413229BAA | STEP PLATE CHARCOAL | S12-5 | 1 |
| 6W7Z5413229BAB | MM STEP PLATE LH | S12-4 | 1 |
| 6W7Z8327B | M GM SPLASH SHIELD FRT BUMP RT 08 | PEG2 | 2 |
| 6W7Z8327C | M GM FRT BUMP SPLASH SHIELD LT 08 | PEG2 | 1 |
| 701 | BG FRIGI QUIET A/C DYE | S16-4 | 10 |
| 708 | BG FRIGI-FRESH | S16-6 | 16 |
| 7443cp | bulb | | 6 |
| 75130 | SHOP TOWELS | | 16 |
| 75403 | DOOR LOCK KNOBS | PEG1 | 4 |
| 770K6 | BELT | | 4 |
| 787143 | socket h11 | | 19 |
| 7W1Z18125A | MM REAR SHOCK | S4-1 | 1 |
| 7W1Z18125G | LTC SHOCK REAR | S4-1 | 2 |
| 7W3Z1130A | MM CENTER CAP 17 INCH | S15-2 | 1 |
| 7W7Z1007CCP | CV STEEL WHEEL | STAIR | 1 |
| 7W7Z1130A | MM CENTER CAP | S7-1 | 3 |
| 7W7Z5443200A | MM TRUNK LATCH | S7-2 | 1 |
| 7W7Z7052A | LTC TAILSHAFT SEAL | PEG9 | 2 |
| 7WT109 | TUBING | S5-2 | 5 |
| 8042 | 3.6 LTR ENGINE | | 1 |
| 8101 | PENRAY FUEL SERVICE | S15-2 | 1 |
| 81048 | pin | PEG1 | 1 |
| 8121A-12011 | SCION HEADLIGHT | S5-3 | 1 |
| 8122A-12011 | DAYTIME RUNNING LIGHTS | S5-3 | 1 |
| 83108 | MV DRYER/ACCUMALATOR | S10-2 | 1 |
| 84032 | BG BRAKE FLUID | S17-1 | 3 |
| 84040-08020 | TS MASTER WINDOW SWITCH | S5-4 | 1 |
| 860 | BG BRAKE STOP SQUEAL"""" | S16-4 | 14 |
| 86392-AE010 | ANT BASE | PEG6 | 2 |
| 87248-08030 | HEATER HOSE TEE | S5-4 | 2 |
| 8933 | 3.3L ENGINE | TIRE | 1 |

|  |  | RACK |  |
|---|---|---|---|
| 89377 | 3.6L BELT TENSIONER | S9-5 | 1 |
| 8C3Z14028AA | MM DOOR LOCK SWITCH | S6-3 | 1 |
| 8L2Z3A006A | POWER STEERING RESV CAP | PEG9 | 1 |
| 8L8Z13466B | ESC FOGLIGHT BULB | S5-2 | 1 |
| 8L8Z3B676D | FE I-SHAFT | S7-2 | 1 |
| 8L8Z3C611A | ESC SHAFT BOOT | S7-2 | 1 |
| 8W1Z1130D | LTC CENTER CAP CHROME | S15-2 | 1 |
| 8W1Z5461203AA | MM BUCKLE | S7-4 | 1 |
| 8W3Z1007A | MM WHEEL | STAIR | 1 |
| 8W7Z13412AA | MM LISC PLATE HARNESS | S7-5 | 1 |
| 8W7Z54253A10A | CV WEATHERSTRIP | S12-5 | 1 |
| 9006 | CV HEADLIGHT BULB | S16-5 | 2 |
| 9007 | MV HEADLAMPS | S16-5 | 2 |
| 9008 | HEADLIGHT BULB | S16-5 | 12 |
| 9012LL | CHRY 300 HEADLAMP BULB | S16-6 | 1 |
| 9407 | MV SPARK PLUG | CAB2-5 | 12 |
| 9715 | MV BRAKE DRUM REAR | S3-3 | 2 |
| 97543-PEDI | STEERING WHEEL COVER | STAIR | 1 |
| 9M6Z19849A | ESC REAR EXPANSION VALVE HYBRID | S6-3 | 2 |
| 9W1Z54645A04AA | LTC ARMREST LATCH MAGNETIC | S1-11 | 2 |
| 9W3Z17C829A | moulding | S16 | 2 |
| 9W7Z14527AC | HOUSING BEZEL | S7-2 | 1 |
| 9W7Z14528AC | BEZEL | S7-2 | 1 |
| 9W7Z54611B08AC | PRETENSIONER SEATBELT | S7-1 | 1 |
| 9W7Z54611B68AA | SEATBELT RETRACTOR | S7-1 | 1 |
| 9W7Z54611B69AA | RETRACTORS | S7-1 | 1 |
| AD1032 | BUSHING KIT | S4-1 | 2 |
| AM6Z3A329A | ESC IN SHAFT | S3-2 | 1 |
| AMS4118 | MM HOOD SHOCK SUPPORT | S3-3 | 2 |
| AMS6124 | MV TAILGATE SHOCK | S2-1 | 2 |
| ASH12154 | STRUT ASSY | S4-1 | 2 |
| AW1Z13832A | MM HORN ASSY | S6-5 | 2 |
| BKCOE3 | BRAKE PIN KIT | S2-4 | 1 |
| BR54103 | CV MM LTC BRAKE ROTOR FRONT | WALL | 4 |
| BR54105 | CV MM LTC BRAKE ROTOR REAR | WALL | 4 |
| BR900524 | MV FRONT BRAKE ROTOR 16" WHEEL | WALL | 3 |
| BR900526 | MV BRAKE ROTORS REAR 08 | WALL | 4 |
| BR901088 | MV BRAKE ROTOR 2014 17 WHEEL FRONT | WALL | 5 |
| BR901090 | MV REAR BRAKE ROTOR 2014 17 WHEEL | WALL | 6 |

32

| BRAB185 | MM ABS SENSOR | S6-1 | 1 |
|---|---|---|---|
| BRPK5681 | LTC CALIPER PIN KIT | S2-4 | 2 |
| BT68 | MM TENSIONER | S6-3 | 2 |
| BW1Z10A936A | jewel | S7-3 | 1 |
| BW3Z15A434BA | PIGTAIL SIDE MARKER HARNESS | PEG9 | 1 |
| BW7Z5461200AA | PRETENSIONER | S12-4 | 1 |
| C371 | MV SPRING RAMP ASSIST | CAB3-2 | 2 |
| CA875 | BG HEADLIGHT RESTORATION KIT | S16-4 | 5 |
| CB85087 | LH UPPER CONTROL ARM | S7-4 | 1 |
| CB85088 | RH UPPER CONTROLL ARM | S7-4 | 1 |
| CERBK041AB | MV AC DISCHARGE HOSE | S11-3 | 2 |
| CH2503191 | MV RH HEADLIGHT 08 | STAIR | 1 |
| CH2800178 | MV LH TAIL LIGHT 08 | S13-1 | 3 |
| CH2800179 | MV LH TAIL LIGHT 08 T/COU | S13-1 | 1 |
| CH2800198 | LH TAILLAMP TOWN AND COUNTRY | STAIR | 3 |
| CH2800199 | MV TAILLAMP ASSY 2011 LH SIDE | S13-1 | 1 |
| CH2801198 | RH TAILLAMP ASSY 11-15 T&C | STAIR | 3 |
| CH2801199 | MV TAILLAMP ASSY 2011 RH SIDE | STAIR | 2 |
| CH3113102 | MV  COOLING FAN  RIGHT 04-06 | STAIR | 1 |
| CH3115123 | MV LEFT COOLING FAN 05 | STAIR | 1 |
| COOLANT | ANTIFREEZE | TANK | 96 |
| core trans | depoist trans | | 2 |
| CVRT54103 | FRONT BRAKE ROTOR MERC  LTC | WALL | 1 |
| CVRT54105 | REAR BRAKE ROTOR MERC LTC | WALL | 1 |
| CVYS249 | FORD IDLER PULLEY | S7-3 | 4 |
| D1056 | CHRY 300 FRONT PADS | S2-4 | 1 |
| DG508 | CV MM LTC  SPARK PLUG COIL | S7-5 | 4 |
| DX416 | UPPER CONTROL ARM RH | S7-4 | 1 |
| DX560 | MM TIE ROD END RH SIDE | S4-3 | 5 |
| DX561 | MM TIE ROD END LH SIDE | S4-3 | 5 |
| DX602 | LOWER CONTROL ARM RH | WALL | 2 |
| DX603 | LOWER CONTROL ARM LH | WALL | 1 |
| DX685 | MM STRUT ASSY | S4-2 | 8 |
| DY1034 | CV 02 SENSOR DOWNSTREAM | S6-5 | 16 |
| E2157 | CV FUEL PUMP | S7-4 | 29 |
| E83Z9F670A | CV IAC GASKET | S5-4 | 1 |
| E9SZ1424A | CV SPARETIRE HOLD WASHER | S1-11 | 1 |
| EM3038 | TRANSMISSION MOUNT | S5-5 | 1 |
| engine cores | 3.6 dodge vans | | 5 |
| ES70599 | MV INJECTOR O-RING | CAB3-2 | 2 |
| EV279 | PCV VALVE | S1-10 | 1 |
| EV281 | MM PCV VALVE | S1-10 | 1 |
| F02592227 | MM FOGLIGHT | S12-1 | 2 |

33

| F2AZ9B242A | CV FUEL BUTTON | S1-10 | 1 |
|---|---|---|---|
| F2UZ1521999A | door lock guide | PEG1 | 1 |
| F2UZ7H183A | CV TAIL HOUSING PLUG | S7-5 | 1 |
| F2VYZA191A | MM TRANS PAN GASKET | S8-2 | 1 |
| F3LY7A039A | MM TRANSMISSION HOUSING | S7-5 | 1 |
| F3TZ7L278A | CV COLUMN KIT BUSHINGS | S1-10 | 6 |
| F4SZ9B989AA | MM TPS SEN | S1-5 | 2 |
| F65Z9E936BA | LTC THROTTLE BODY GASKET | S7-2 | 1 |
| F6AZ5410182AA | CV RETAINER | S7-5 | 4 |
| F7AZ7086A | CV MM TAILSHAFT GASKET | S7-5 | 1 |
| F8AZ13550AA | lisc lamp | S7-5 | 2 |
| F8AZ13N020AA | clip | S7-3 | 3 |
| F8AZ18519AA | CV AC FAN CONTROL KNOB | S7-3 | 2 |
| F8AZ5K484AA | CV SWAY BAR LINK | S3-3 | 1 |
| F8CZ8A223AA | FORD EMBLEM | S14-2 | 1 |
| F8SZ14526AA | 20 AMP FUSE | CAB3-1-18 | 1 |
| F8VZ13550BA | LTC LICENSE PLATE LIGHT LENS | S7-3 | 1 |
| F8VZ54432A38AA | CV TRUNK SWITCH | S1-11 | 4 |
| F90006 | HARNESS | S16-5 | 1 |
| FA1884 | MKX AIR FILTER | S8-1 | 1 |
| FA1912 | MKZ AIR FILTER | S8-1 | 1 |
| FC1074 | MM YELLOW GAS CAP | CAB2-3 | 2 |
| FG872 | ESC FUEL FILTER HYBRID | S5-2 | 1 |
| FG986 | CV MM LTC FUEL FILTER | CAB1-6 | 1 |
| FL500S | MKZ OIL FILTER ASSY | S8-1 | 2 |
| FL910S | FOCUS C-MAX OIL FILTER | S5-3 | 2 |
| FO2503222 | HEADLIGHT GM | STAIR | 1 |
| FO2593227 | MM FOG LAMP ASSY | S12-1 | 1 |
| FO2801173 | MM TAIL LIGHT 08 RT | STAIR | 1 |
| FO2801210 | FORD ESCAPE RT TAILLENSE | S11-1 | 1 |
| FOZZ18A287A | RETAINER | S15-1 | 2 |
| FP66 | ESCAPE CABIN AIR FILTER | S5-2 | 2 |
| FT1167 | CV MM LTC  TRANS FILTER | CAB1-5 | 4 |
| FT172 | MKZ TRANS FILTER | S8-1 | 2 |
| GWBN44100 | GLOVES LATEX | | 1 |
| GWON46100 | LATEX GLOVES | | 2 |
| H10 | TC FOG LIGHT BULB | S16-4 | 7 |
| H11 | LIGHT BULB | S16-4 | 2 |
| H7 | HEADLIGHT BULB | S16-4 | 7 |
| H75 | FORD KEY | CAB3-1-18 | 31 |
| H92PT | MM KEY | CAB3-1 | 1 |
| HP2830 | BATERY LUGS | PEG1 | 1 |

| HUB35 | HUB BEARING | S5-5 | 1 |
|---|---|---|---|
| JACKMV | JACK ASSY | TIRE RACK | 2 |
| JBW8276 | COLD WELD | | 4 |
| JK6926 | MM DRIVE BELT | PEG1 | 1 |
| L000PSX24W | MV FOG LIGHT BULB | S16-5 | 2 |
| LP21CS | LICENSE LITGHT | S17-1 | 1 |
| LS44 | 194 SOCKET PIGTAIL | PEG9 | 2 |
| M1204 | MV OIL FILTER 08-10 | WALL | 21 |
| M1210 | CV OIL FILTER & LTC"""" | CAB2-6 | 24 |
| MM1072 | BLOWER WHEEL | S15-1 | 1 |
| MM891 | CV BLOWER MOTOR | S15-1 | 2 |
| MM901 | LTC BLOWER MOTOR | S15-1 | 1 |
| MM929 | MM BLOWER MOTOR | S15-1 | 2 |
| MOGUL | FAN MODULE FORD | S6-3 | 4 |
| MS928081 | MV INTAKE MANIFOLD SET | S8-3 | 2 |
| OS18757 | TRANS PAN GASKET | S8-3 | 1 |
| OS30622R | MV OIL PAN GASKET 3.3 | S8-2 | 1 |
| OS30833 | 3.6L OIL PAN GASKET | S8-2 | 1 |
| P931 | MM BRAKE HARDWARE KIT FRONT | S2-4 | 8 |
| PA5432 | TS AIR FILTER | CAB2-2 | 2 |
| PA5567 | ESC HYBRID AIR FILTER | S5-3 | 1 |
| PA6165 | MV AIR FILTER 3.6 L | CAB2-6 | 7 |
| PDRBR55066 | ROTOR | | 1 |
| PF1703 | ESC OIL FILTER | S5-2 | 1 |
| PF1768 | TP OIL FILTER | CAB2-3 | 1 |
| PF5277 | FUEL FILTER | CAB1-6 | 1 |
| PF53 | CV OIL FILTER POLICE ED | CAB2-4 | 1 |
| PR020 | ESC WIPER BLADE | PEG5 | 2 |
| PRT5944 | PRIUS FRONT ROTORS | S8-5 | 2 |
| PS383 | MM ELECTRIC FUEL PUMP | S6-3 | 1 |
| PW464 | MM WATER PUMP 08 | S6-2 | 1 |
| Q8-6209-SC | RETRACTOR | S14-2 | 2 |
| Q8-6325-A | LAP AND SHOULDER BELT REGULAR | S14-1 | 6 |
| R134 | FREON | FREON | 92 |
| R5111104AC | AC COMPRESSOR | S10-4 | 1 |
| R8090720AH | REMAN TRANS | | 6 |
| R8259595ABC | 3.6LTR ENGINE CORE | CORE BANK | 4 |
| RF272 | MM COOLING FAN | STAIR | 2 |
| RH881D5AA | SHIELD | PEG2 | 1 |
| RR-28 | MM FAN  CONTROL | S6-3 | 2 |

| RS527 | cv radiator cap | S1-4 | 1 |
|---|---|---|---|
| RT1234 | CV THERMOSTAT | S1-4 | 1 |
| S324C4BLK | FLOOR MATS | S8-4 | 4 |
| SA1001RM | MM STARTER | S5-5 | 1 |
| SA1001RMCORE | SA1001RMCORE STARTER | CORE BANK | 2 |
| SL82315 | SWAY BAR LINK | S4-5 | 4 |
| SL85005 | SWAY BAR LINKS | S3-2 | 2 |
| SM5679 | STRUT MOUNT | S4-1 | 2 |
| SPP137E | TS SPARK PLUG BOOT | S5-4 | 6 |
| starter core | core | | 1 |
| STP202C | CV P/S PUMP | S5-5 | 1 |
| SW5219 | STOP LAMP SWITCH | S7-3 | 2 |
| SW6524 | CV TURN SIGNAL SW 04-UP | S5-5 | 1 |
| SW6950 | MM LOCK ACTUATOR | S6-1 | 1 |
| SW7193 | MM WINDOW SWITCH | S6-3 | 1 |
| SW7194 | CV WINDOW SWITCH | S6-2 | 1 |
| SW7225 | SEAT SWITCH | S6-2 | 1 |
| SW7241 | mm master window switch | S6-3 | 1 |
| SW7262 | SWITCH | S6-2 | 1 |
| SYN | OIL | TANK | 505 |
| T4 | SYNTHETIC TRANS FLUID T4 | TANK | 765 |
| TO2503172 | TS HEADLAMP | STAIR | 1 |
| TX515 | ESC SHAFT | S3-2 | 1 |
| TZ911D5AA | SHIELD | PEG2 | 1 |
| VS50564R | CV VALVECOVER GASKET | S8-2 | 1 |
| w20014 | brake fluid | | 4 |
| W520214S440 | MM TIE ROD NUT | S4-3 | 14 |
| W708543S436 | CV SPARE TIRE HOOK | S1-11 | 1 |
| W710298S441 | MM RS UPPER CONTROL ARM | S3-3 | 3 |
| WLM149 | MM WINDOW MOTOR RH SIDE | S6-1 | 1 |
| WLR1 | MM PASS WINDOW REGULATOR | S6-1 | 1 |
| WLR3 | MM DRIVERS SIDE WINDOW REGULATOR | S6-1 | 1 |
| WPT1361 | FAN CONNECTOR | S9-1 | 1 |
| WPT1499 | HEADLIGHT PIGTAIL 9008 | S16-5 | 1 |
| WPT605 | MM BLOWER MOTOR WIRING PIGTAIL | S15-1 | 2 |
| XF2Z1621850AA | DOOR LOCK KNOBS | PEG1 | 2 |
| XW7Z5443720AA | MM TRUNK WEATHERSTRIP | S12-5 | 2 |
| YF2448 | LOW SIDE SCHRADER VALVE | PEG9 | 1 |
| YF2959 | ORING | S1-9 | 1 |
| YF3534 | MM SEAL KIT AC | PEG9 | 4 |
| YH1717 | MM BLOWER RESISTOR | S6-3 | 1 |

| YH1750 | ESC DOOR ACTUATOR BATTERY | S5-2 | 1 |
|--------|---------------------------|------|---|
| YH1754 | MM AC BLEND | S6-3 | 4 |
| YH1755 | LTC BLEND DOOR ACT | S6-2 | 2 |
| YH1766 | MM BLEND DOOR ACTUATOR | S6-3 | 1 |
| YH1800 | CV BLEND DOOR ACT MANUAL COPS | S6-3 | 1 |
| YH1818 | LTC BLOWER RESISTOR | S6-3 | 1 |
| YH1826 | MM CONTROL RELAY | S6-3 | 1 |
| YH588 | CV BLOWER SWITCH | S7-3 | 1 |
| YS249 | MM IDLER PULLEY | S6-3 | 1 |

## Schedule 1.1(e) to Asset Purchase Agreement

## Telephone and fax numbers, domain names, and trade names

Following numbers, to the extent owned by Seller:

| Number: | Queue: | | Extension SA: | Name: |
|---|---|---|---|---|
| 2102222222 | San Antonio Main | | 8667 | Kevin Duray |
| 2104615460 | SA SafeRide | | 8666 | John Bouloubasis |
| 2104615465 | VIA Express Dispatchers | | 8637 | Randy Cardenas |
| 2106460235 | Special Accounts SA | | 8636 | Accounts Receivable |
| 2106508603 | VIA Special Accounts | | 8634 | Cashiers |
| 2106508615 | MOD SA | | 8631 | Mario Robledo |
| 2106508620 | SA Dispatch | | 8623 | Sal Zuniga |
| 2106508627 | SA Dispatch | | 8621 | Bill Kellogg |
| 2106555465 | VIA LINK | | 8611 | Cynthia Velez |
| 2106666666 | VIA Express Customers | | 8601 | Andrew Rocha |
| 2108268294 | Towncar SA | | 8626 | SA Conference Room |
| 5124347713 | MOD Colombia | | **Extension Austin** | **Name:** |
| 5124347756 | Austin SafeRide | | 7883 | Felipe Gonzalez |
| 5124347772 | Austin Dispatch | | 7775 | Julia Garcia |
| 5124347773 | Austin Dispatch | | 7760 | John Bouloubasis |
| 5124347777 | Austin Special Accounts | | 7733 | Scarlet Mccarther |
| 5124529999 | Austin Main Line | | 7724 | Austin Office |
| 7132230303 | MSP | | 7720 | Lauren Smith |
| 7132244445 | Houston Delivery | | 7716 | Yvonne Rigolo |
| 7132252666 | Fiesta Taxi | | 7716 | Claims |
| 7132361111 | Houston Main Line | | 7714 | Austin Main Office |
| | | | **Extension Houston:** | **Name:** |
| 7132361122 | Houston | | 5913 | Service Writer |
| 7132368755 | Houston Dispatch | | 5904 | Melinda Malek |
| 7132368877 | Houston Towncar | | 5903 | Chris Aguirre |
| 7132369400 | Fiesta Dispatch | | 5902 | Ozzy Gonzalez |
| 7132369401 | Fiesta Taxi Dispatch | | 5885 | Paula Cooper |
| 7132369402 | Fiesta Dispatch | | 5870 | Susan Paschal |
| 7134285712 | Houston Dispatch | | 5866 | Manuel Huaman |
| 7134285714 | Houston Conference room | | 5865 | Christi Bernard |
| 7134285789 | Houston Logisticare | | 5836 | Melissa Mcghee |
| 7134285828 | Customer call driver (app) | | 5832 | Julia Saldana |
| 7134285844 | Houston accounts | | 5830 | Don Helmer |
| 7134285846 | Houston Dispatch | | | |

| | | | |
|---|---|---|---|
| <u>7134285860</u> | Metro Starters | 5824 | Cashier |
| <u>7134285883</u> | Metro Starters | 5823 | Cashier |
| <u>7134285884</u> | Metro Starters | 5815 | Nick Plaznich |
| <u>7134285888</u> | MSP Spanish | 5811 | Francis Valeriano |
| <u>7134285999</u> | Metro | 5810 | Lobby |
| <u>7136990000</u> | United | 5809 | Rosario Harter |
| <u>7137378423</u> | Houston Townecar | 5805 | Customer Service/Safety |
| <u>9563295017</u> | Micro Mcallen Dispatch | 5766 | Yaling Zhang |
| <u>9563295018</u> | Micro Mcallen CS | 5763 | Rose Estrada |
| <u>8325531710</u> | Direct Driver Connect (app) | 5756 | Lobby Rose |
| <u>5124441010</u> | 10/10 Taxi | 5753 | Jessica Hubbard |
| <u>7134285738</u> | Houston Special Accounts | 5751 | Jeanette Johnson |
| | | 5745 | Lisseth Deltoro |
| | | 5731 | Danny Davis |
| | | 5729 | Lobby francis |
| | | 5728 | Claims Intake |
| | | 5722 | Ana Marie Munoz |
| | | 5721 | Kayla Ruiz |
| | | 5720 | Pete Arzola |
| | | 5717 | Jacob Garza |
| | | 5716 | Ericka Zamarripa |
| | | 5714 | Houston Conference Room |
| | | 5705 | Pamela Jefferson |
| | | 5704 | Brenda Hagger |
| | | 5702 | Mike Spears |
| | | 5701 | Pete Arzola |

The following trade names: Greater San Antonio Transportation Company, GSATC.

Fax numbers, domain names and URLs used by Seller in connection with the Business.

## Schedule 3.5 to Asset Purchase Agreement

## Assumed Contracts

None, other than Seller's obligation to transfer title to Vehicles upon the full satisfaction of promissory notes issued by Seller's drivers.

**Schedule 3.7 to Asset Purchase Agreement**

**Compliance with Laws and Governmental Authorizations**

City permit and self-insurance certificates held by Seller may be affected by the bankruptcy filing.

**Schedule 3.8 to Asset Purchase Agreement**

**Legal Proceedings**

[Attached]

# ATTACHMENT SOFA #7

| Matter Name | Plaintiff(s) | Court | Cause # | ENTITY INVOLVED |
|---|---|---|---|---|
| SUTTON, Derrick/LINDSEY, June v. Greater Houston Transportation Company | Sutton, Derrick Lindsey, June | Harris Co. Court at Law No. 2 | 1110627 | Greater Houston Transportation Company |
| WARD, Dalaywin v. Edward Williams and Greater Houston Transportation Company | Ward, Dalaywin | Harris Co. Court at Law No. 3 | 1116979 | Greater Houston Transportation Company |
| MORRIS, Shirley v. Greater Houston Transportation Company and AMCAkj, Mark A. | Morris, Shirley | Harris Co. Court at Law No. 2 | 1125060 | Greater Houston Transportation Company |
| ABEDEN, Zainul v. Greater Houston Transportation Company | Abeden, Zainul | Harris Co. Court at Law No. 1 | 12-60699 | Greater Houston Transportation Company |
| ACCC Insurance Company v Greater Houston Transportation Company dba United Cab Company & CESAR LUIS ESCOBAR | ACCC Insurance Company | Harris Co. Court at Law No. 4 | 1142583 | Greater Houston Transportation Company |
| PHAM, Honey v. Greater Houston Transportation Company & Rene Rohn | | Harris Co. Court at Law No. 4 | 1144791 | Greater Houston Transportation Company |
| MORALES Jr., Felipe, et al v. Greater Houston Transportation Company, Ceh Admin Services, Inc. dba YC Company of Houston & ARVIE, Leticia Rincón | Morales, Felipe; Morales, Julian; et al/Leticia Rincón Arvie, mister | Harris Co. Court at Law No. 2 | 1148554 | Greater Houston Transportation Company |
| BROCK, Nancy v Greater Houston Transportation Company dba YC Company and/or YC & Ignacio Fredrino Clemente | Brock, Nancy | Harris Co. Court at Law No. 1 | 1150477 | Greater Houston Transportation Company |
| CENTRAL Mutual Insurance Co. & Charles Holms, Jr. v. Greater Houston Transportation Company dba YC | Central Mutual Insurance Company | Harris Co. Court at Law No. 3 | 1154856 | Greater Houston Transportation Company |
| ALLSTATE Fire & Casualty Insurance Company, et al. v. Greater Houston Transportation Company dba Yellow Insurance Company Cab | Allstate Fire & Casualty Insurance Company | Harris Co. Court at Law No. 4 | 1155225 | Greater Houston Transportation Company |
| REDFORD, Tarahey v Greater Houston Transportation Company | Bedford, Tarahey | Harris Co. Court at Law No. 3 | 1154439 | Greater Houston Transportation Company |
| AUTO CLUB County Mutual Ins. Co. v Greater Houston Transportation Company dba YC & RAZA, Ahmad | Auto Club County Mutual Insurance Ins. Co. | 129th Civil District Court – Harris County | 2015597713 | Greater Houston Transportation Company |
| DE LA GARZA, Sarah v Greater Houston Transportation Company dba YC & RAZA, Ahmad | DE LA GARZA, Sarah | 129th Civil District Court – Harris County | 201039713 | Greater Houston Transportation Company |
| HARRISON, Robin F. v HALL, James A. & Greater Houston Transportation Company dba YC | HARRISON, Robin F | 215th Civil District Court – Harris County | 201977953 | Greater Houston Transportation Company |
| TAYLOR, Cydnirr and COLLINS, Antelatta v. Greater Houston Transportation Company dba YC | TAYLOR, Cydnirr and COLLINS, Antelatta | 190th Civil District Court – Harris County | 201856270 | Greater Houston Transportation Company |
| Alvarez, Kenia v SAINT GINAT | Alvarez, Kenia | Justice Court, Harris County, Precinct 1, Place 2 | 181120-046957 | Greater Houston Transportation Company |
| GEICO-TAYLOR, LASHANECA v Pierre Nzingue & Greater Houston Transportation Company | GEICO-TAYLOR, LASHANECA | Justice Court, Harris Co. – Precinct 5, Place 1 | 19JSC00290264- | Greater Houston Transportation Company |

43

| Case | Party | Court | Case Number | Company |
|---|---|---|---|---|
| AMICA Mutual Insurance Company as Subrogee of Patrick Moore v Greater Houston Transportation Company & Mohamed Malick Barry | Amica Mutual Insurance Company | Justice Court, Harris County, Precinct 1, Place 1 | 201100238621 | Greater Houston Transportation Company |
| ALLSTATE Fire & Casualty Insurance Company as Subrogee of Gwen Reed v Greater Houston Transportation Company & Shailene Coleman | Allstate Fire and Casualty Insurance Company as Subrogee of Adekanmi Nariman | Justice Court, Harris County, Precinct 1, Place 1 | 201100228862 | Greater Houston Transportation Company |
| JENNINGS, Richard v Greater Houston Transportation Company, Alzina Varga Braus & Larry Conrad Cobbs | Jennings, Richard | Justice Court, Harris County, Precinct 1, Place 2 | 201120010916 | Greater Houston Transportation Company |
| GLASBY, Gary v Greater Houston Transportation Company & Adebamba Malik Kebede | Glasby, Gary | Justice Court, Harris County, Precinct 1, Place 2 | 202200015128 | Greater Houston Transportation Company |
| ALLSTATE County Mutual Insurance Company as Subrogee of Patrick Ramirez v Greater Houston Transportation Company & Benjamin Inemee | Allstate County Mutual Insurance Company | Justice Court, Harris County, Precinct 5, Place 2 | 200510933787C | Greater Houston Transportation Company |
| WILLIAMS, Sophroncia v Greater Houston Transportation Company & Sharelda Denise Henson | Williams, Sophronde | Justice Court, Harris County, Precinct 5, Place 2 | 215200140323 | Greater Houston Transportation Company |
| AMKINS Specialty Auto, Inc. dba Old American County Mutual as Subrogee of Maria Hernandez v Greater San Antonio Transportation Company & Luis R. Burrago Mas | Amkins Specialty Auto, Inc | Justice Court - Bexar Co. Precinct 1, Place 2 | 112SC001181 | Greater San Antonio Transportation Company |
| STATE FARM v. Greater San Antonio Transportation Company dba YC | State Farm | JP Court - Bexar Co. Precinct 1, Place 2 | 1250SC0219 | Greater San Antonio Transportation Company |
| STEELE v. Greater Houston Transportation Company/Greater Austin Transportation Company/YGDX, Inc. | Steele, Erica | JP Court - Bexar Co. Precinct 1, Place 2 | 2015-6417 | Greater Houston Transportation Company |
| PEREZ/HEREDY v. Greater Houston Transportation Company dba YC/DELIVERENCE NKEENYA | Perez, Diane & Ricky | 334th Civil District Court - Harris County | 2015-34437 | Greater Houston Transportation Company |
| VERA, Raymond v Greater Houston Transportation Company - JAMES HALL | Vera, Raymond | 80th Civil District Court - Harris County | 2015-67400 | Greater Houston Transportation Company |
| ALARCON v. Greater San Antonio Transportation | ALARCON, YOLANDA | 408th Judicial District Court - Bexar Co. | 2016C10756 | Greater San Antonio Transportation Company |
| DAVIS, Destiny v. Greater Houston Transportation Company and Jamesa | Davis, Destiny | 234th Civil District Court - Harris County | 2017-44326 | Greater Houston Transportation Company |
| SANCHEZ, Ruben v. Greater Houston Transportation Company & J. TIRELL TURNER | Sanchez, Ruben | 270th Civil District Court - Harris County | 2017-78833 | Greater Houston Transportation Company |
| LAYMOND, James v. Mentdor Ahmad and Greater Houston Transportation Company | Laymond, James | 270th Civil District Court - Harris County | 2017-79066 | Greater Houston Transportation Company |

44

| Style | Plaintiff | Court | Cause No. | Defendant |
|---|---|---|---|---|
| ESPARZA, Mary & MARTINEZ-DUENAS, Zulma v. Greater San Antonio Transportation Company & GOTTOM, Robel | Esparza, Mary; Duenas, Zulma | 437th Judicial District Court | 2017-CI-17286 | Greater San Antonio Transportation Company |
| NEWKIRK, Annaleigh CRUZ et al. v. HASHMI, Taz, et al. | NEWKIRK, Annaleigh CRUZ | 166th Civil District Court - Bexar Co. | 2017CI04556 | Greater San Antonio Transportation Company |
| GLORIA, Stephanie v. KAHANEK and Greater San Antonio Transportation Company | GLORIA, Stephanie | Bexar Co. Court at Law No. 10 | 2017CV06556 | Greater San Antonio Transportation Company |
| SALDIVAR, Nancy L. v. MAXWELL, Jhedisha & Greater Houston Transportation Company | SALDIVAR, Nancy L | 295th Civil District Court - Harris County | 2016-27725 | Greater Houston Transportation Company |
| JACKSON, Margaret v. BURKHALTER, Renda G. Greater Houston Transportation Company | Jackson, Margaret | 115th Civil District Court - Harris County | 2016-34899 | Greater Houston Transportation Company |
| SANTILLAN, GENITH v Greater Houston Transportation Company and SETH BIZIMANA | Santillan, Genith | 333rd Civil District Court - Harris County | 2018-36545 | Greater Houston Transportation Company |
| BROWN, Gail (John Wesley) (Brown-deceased) v. Greater Houston Transportation Company & Adolph Familjure | Brown, Independent Executor of the Estate of John Wesley Brown, Sr., Deceased, Gail Familjure | 270th Civil District Court - Harris County | 2018-45707 | Greater Houston Transportation Company |
| GAONA, Maria v HALL, James & Greater Houston Transportation Company | GAONA, Maria | 61st Civil District Court - Harris County | 2018-47874 | Greater Houston Transportation Company |
| RAMOS, Jose v Greater Houston Transportation Company, Kamran SALIM | Ortuoji, Emmanuel | 157th Civil District Court - Harris County | 2018-58815 | Greater Houston Transportation Company |
| JONES, Willie Lee/JONES Dian v Greater Houston Transportation Company | JONES, Willie Lee | 189th Civil District Court - Harris County | 2018-60192 | Greater Houston Transportation Company |
| GONZALEZ, Damaris & FLORES, Hilda v Greater Houston Transportation Company dba as YC | GONZALEZ, Damaris & FLORES | 190th Civil District Court - Harris County | 2018-78427 | Greater Houston Transportation Company |
| JONES, Don v Greater Houston Transportation Company dba YC & V BRCOKS | JONES, Don | 190th Civil District Court - Harris County | 2018-63067 | Greater Houston Transportation Company |
| BARILLAS, Marion v Greater Houston Transportation Company & ARMANDO | Barillas, Marion | 151st Civil District Court - Harris County | 2018-67895 | Greater Houston Transportation Company |
| RYNNE, Mary v Greater Houston Transportation Company | RYNNE, Mary | 281st Civil District Court - Harris County | 2018-75972 | Greater Houston Transportation Company |
| HAWKINS, Vanina v. VIEYRA, Clarise | HAWKINS, Vanina | 129th Civil District Court - Harris County | 2018-79268 | Greater Houston Transportation Company |
| PRINGLE, Karl and ANDERSON, Hailey v Greater Houston Transportation Company | Pringle, Karl; Anderson, Hailey; Wainright, Davidson | 281st Civil District Court - Harris County | 2018-60101 | Greater Houston Transportation Company |
| JONES, Deborah A. v Greater Houston Transportation Company and EDMU WANNA KOBOTO | JONES, Deborah A. | 151st Civil District Court - Harris County | 2018-83721 | Greater Houston Transportation Company |
| OLATUNBOSSUN, Emmanuel and RAMOS, Paul vs. Greater Houston Transportation Company dba YC | Olatunbossun, Emmanuel | 269th Civil District Court - Harris County | 2018-83959 | Greater Houston Transportation Company |

| Cause / Case | Claimant, Lester | Court | | Defendant |
|---|---|---|---|---|
| TEMISAN, Julius Alex v. Sunrock, Shannon Dafkovi / EAGLE, Shakira Michelle v. Greater Houston Transportation Company d/b/a YC et al | | 333rd Civil District Court - Harris County | 2018-60055 | Greater Houston Transportation Company |
| BAUDEZ, Nancy v. Greater Houston Transportation Company and SHAHVAL | BAUDEZ, Nancy | 125th Civil District Court - Harris County | 2018-84712 | Greater Houston Transportation Company |
| WILLIAMS, Kasanna V Greater Houston Transportation Company & Phillip Mikaluda Aweh | WILLIAMS, Kasanna | 55th Civil District Court - Harris County | 2018-85338 | Greater Houston Transportation Company |
| HANCOCK, Mary v. Greater San Antonio Transportation Company, JARSHAVE | HANCOCK, Mary | 45th Civil District Court - Bexar Co. | 2018CI00213 | Greater San Antonio Transportation Company |
| HILL, Raymond v. YELLOW CAB TAXI and JESSE | HILL, Raymond | 131st Judicial District Court - Bexar Co. | 2018CI00738 | Greater San Antonio Transportation Company |
| DEL CUETO, Andrew v. Nunez, Robert and Greater San Antonio Transportation Company | DEL CUETO, Andrew | 166th Civil District Court - Bexar Co. | 2025CI03973 | Greater San Antonio Transportation Company |
| FLORES, Blanca v. ABDALLAH, Watereldin & Greater San Antonio Transportation Company | FLORES, Blanca | 285th Judicial District Court - Bexar County | 2018CI06610 | Greater San Antonio Transportation Company |
| GONZALEZ, Melinda v. Greater San Antonio Transportation Company, FLORES, A. | GONZALEZ, Melinda | 73rd Judicial District Court - Bexar Co. | 2016CI13244 | Greater San Antonio Transportation Company |
| BUCK, Jack Lee/POWER, Lee v. Greater San Antonio Transportation Company & Alberto Nunez | BUCK, Jack Lee/POWER, Lee | 166th Civil District Court - Bexar Co. | 2018CI14394 | Greater San Antonio Transportation Company |
| ALVARADO, Roberto v. FaRDOO, Abdul & Greater San Antonio Transportation Company | | 285th Judicial District Court - Bexar County | 2018CI17629 | Greater San Antonio Transportation Company |
| RUIZ, Frank et al v. Greater San Antonio Transportation Company; S. HOSSAIN, Ginger | RUIZ, Frank; Juarez, Tristan | 37th Judicial District Court | 2018CI17820 | Greater San Antonio Transportation Company |
| RODRIGUEZ, Joseph v. AFRIDI and Greater San Antonio Transportation Company | RODRIGUEZ, Joseph | 166th Civil District Court - Bexar Co. | 2018CI23165 | Greater San Antonio Transportation Company |
| GARCIA, Patricia v. Greater San Antonio Transportation Company, HUMBERTO, Edgar | Garcia, Patricia | 45th Civil District Court - Bexar Co. | 2018-CI-24185 | Greater San Antonio Transportation Company |
| SULLIVAN, Ara v Greater Houston Transportation Company & GREEN, Yolanda | Sullivan, ARA | 270th Civil District Court - Harris County | 2019-03350 | Greater Houston Transportation Company |
| Villafranca Body Shop v. Greater Austin Transportation Company d/b/a YC | Villa Franca Body Shop | Travis Co. Court at Law No. 1 | 2019-03563 | Greater Houston Transportation Company |
| TORRES, Juan C. v. AFENWEAU, David & YELLOW CAB CO. | TORRES, Juan C | 270th Civil District Court - Harris County | 2019-09327 | Greater Houston Transportation Company |

46

| Case | Plaintiff | Court | Case Number | Defendant |
|---|---|---|---|---|
| BRAGGS, Linda Young v. Greater Houston Transportation Company a/k/a YC & Samidele Adewunmi & Bianca Rangel/Turner | BRAGGS, Linda Young | 270th Civil District Court - Harris County | 2019-11085 | Greater Houston Transportation Company |
| ROBERTS, Brady v. FIESTA CAB CO. | Roberts, Brady | 215th Civil District Court - Harris County | 2019-16276 | Fiesta Cab Company |
| BRAGGS, Linda Young v. YADZIN BERRIS HASTECLLIS & Greater Houston Transportation Company | BRAGGS, Linda Young | 189th Civil District Court - Harris County | 2019-19953 | Greater Houston Transportation Company |
| STEWART, Cathy & BLACK, Jocendolyn v Greater Houston Transportation Company & HOVINGTON, Robert | STEWART, Cathy & BLACK | 333rd Civil District Court - Harris County | 2019-32129 | Greater Houston Transportation Company |
| MIRANDA SAVALA v. Mauricio Ayala BARRIOS & Greater Houston Transportation Company cba YC | Miranda SAVALA | 129th Civil District Court - Harris County | 2019-32489 | Greater Houston Transportation Company |
| SMITH, Everett Harrison II & Rebecca T. v Greater Houston Transportation Company & John Doe | SMITH, Everett Harrison II & Rebecca T. | 164th Civil District Court - Harris County | 2019-32748 | Greater Houston Transportation Company |
| MOORE, Ebony v. Greater Houston Transportation Company & Pamela JEFFERSON | Moore, Ebony | 127th Civil District Court - Harris County | 2019-41442 | Greater Houston Transportation Company |
| JUSTICE, Carol Denise v. Greater Houston Transportation Company & MILLS, Jermaine | JUSTICE, Carol Denise | 215th Civil District Court - Harris County | 2019-47562 | Greater Houston Transportation Company |
| BRENT, Kiana, N. v. Greater Houston Transportation Company & BANGALY SAMAKLAN | BRENT, Kiana, N. | 333rd Civil District Court - Harris County | 2019-53694 | Greater Houston Transportation Company |
| QUIIANO, Anastasea Torrez v. FRANCISCO, Arun | QUIIANO, Anastasea Torrez | 215th Civil District Court - Harris County | 2019-57120 | Greater Houston Transportation Company |
| HAMPTON, Nevain v. Greater Houston Transportacion Company & FREDERICK | HAMPTON, Nevain | 295th Civil District Court - Harris County | 2019-64699 | Greater Houston Transportation Company |
| AMADOR, Olivin J. v. Greater Houston Transportation Company & MORAN ENVAL | AMADOR, Olivin J. | 281st Civil District Court - Harris County | 2019-67127 | Greater Houston Transportation Company |
| JARAMAS, Dienato v Taxis Fuerto, Inc. dba Fiesta Cab Company and Greater Houston Transportation Company, & Cesar Luts Escobar | Armas, Danial Lopez, Claudia | 333rd Civil District Court - Harris County | 2019-72266 | Greater Houston Transportation Company, Fiesta Cab Company |
| HOERLAND, Lydia v Aguileen, A. Obhidi | Hershfield, Lydia | 151st Civil District Court - Harris County | 2019-98372 | Greater Houston Transportation Company, Fiesta Cab Company |
| MARTINEZ, Christeda v Greater Houston Transportation Company & David Obi | Martinez, Christeda | 151st Civil District Court - Harris County | 2019-99977 | Greater Houston Transportation Company |

| | | | | |
|---|---|---|---|---|
| HARTSFIELD, Cynthia v. Greater San Antonio Transportation Company & Ahmad Raphael | Hartsfield, Cynthia | 224th Judicial District Court - Bexar Co. | 2019C00611 | Greater San Antonio Transportation Company |
| DUMAPIAS, Myra v. Greater San Antonio Transportation Company, ELMI, Ali Ahmed | Dumapias, Myra | 285th Judicial District Court - Bexar County | 2019CI23781 | Greater San Antonio Transportation Company |
| URRUTIA, Victoria & Jonathan v. Greater San Antonio Transportation Company & MONGU, Bahnani | Urrutia, Victoria | 37th Judicial District Court | 2019CI09779 | Greater San Antonio Transportation Company |
| AUGUST, Katherine v. Greater San Antonio Transportation Company, MODOONG, Salvatore | August, Katherine | 73rd Judicial District Court - Bexar Co. | 2019CI10074 | Greater San Antonio Transportation Company |
| BOCANEGRA, Luis et al v. Greater San Antonio Transportation Company; ALVARADO, Mario | Bocanegra, Tina Rodriguez, Kimberly Martinez, Jaime | 285th Judicial District Court - Bexar County | 2019CI11950 | Greater San Antonio Transportation Company |
| HODGES, Walter & KILBANE, James N. v. Greater San Antonio Transportation Company | Hodges, Walter Kilbane, James | 408th Judicial District Court - Bexar Co. | 2019CI23394 | Greater San Antonio Transportation Company |
| SCHOBER, Bryan v. WALKER, Thomas & Greater San Antonio Transportation Company | Schober, Bryan | Bexar County Civil Court 10 | 2019CV00632 | Greater San Antonio Transportation Company |
| MARTINEZ, Cynthia v. Greater San Antonio Transportation Company; ELMI, Ali Ahmed | Martinez, Cynthia | Bexar County Civil Court 3 | 2019CV00089 | Greater San Antonio Transportation Company |
| CUELLAR, Cristina v. Greater San Antonio Transportation Company | Cuellar, Cristina | Bexar County Civil Court 3 | 2019CV07035 | Greater San Antonio Transportation Company |
| GEICO v Greater San Antonio Transportation Company, AYATULLAH, Adil | GEICO | Bexar Co. Court at Law No. 10 | 2019CV07414 | Greater San Antonio Transportation Company |
| TERRY, Laura Corinn v Greater Houston Transportation Company & Darrell Cotton, Viva Cotton, Cress G Mayberry | Terry, Laura | 334th Civil District Court - Harris County | 2020-03388 | Greater Houston Transportation Company |
| ZAMORA, Elmer v Greater Houston Transportation Company, Felix Aldnachima & Wal-Loon Ng | Zamora, Elmer | 262th Civil District Court - Harris County | 2020-01898 | Greater Houston Transportation Company |
| MCPHERSON, James & NEAL, Oliver v'Deniel Houston Transportation Company & Taiwo Fawehinmi | McPherson, James Neal, Oliver | 157th Civil District Court - Harris County | 2020-03323 | Greater Houston Transportation Company |
| GARCIA, Carlos v Greater Houston Transportation Company aka YC and Exhaustoon Velazbates | Garcia, Carlos | 11th Civil District Court - Harris County | 2020-03140 | Greater Houston Transportation Company |
| BROOKINS, Elizabeth v Greater Houston Transportation Company & Taiwo Fawehinmi | Brookins, Elizabeth | 80th Civil District Court - Harris County | 2020-05580 | Greater Houston Transportation Company |
| UNITED Financial Casualty Company v Greater Houston Transportation Company | United Financial Casualty Company | 157th Civil District Court - Harris County | 2020-05878 | Greater Houston Transportation Company |

48

| Case | Party | Court | Case Number | Entity |
|---|---|---|---|---|
| ANSARI, Mostafa v. Greater Houston Transportation Company & Oluwadamola Adebisi | Ansari, Mostafa | 11th Civil District Court - Harris County | 2020-11182 | Greater Houston Transportation Company |
| JEDLINS, Johnny v Babineaux, Michael and Greater Houston Transportation Company | Jedlins, Johnny | 164th Civil District Court - Harris County | 2020-32719 | Greater Houston Transportation Company |
| HENSON, Linda v Appliance Warehouse & Yellow Cab Company of Houston, Inc., et al | Henson, Linda | 125th Civil District Court - Harris County | 2020-15025 | Greater Houston Transportation Company |
| BRANCH, Thelandrea v Greater Houston Transportation Company; Pablo Saez & Sara Damascus | Branch, Thelandrea | 333rd Civil District Court - Harris County | 2020-20665 | Greater Houston Transportation Company |
| ROBBINS, Charles v Greater Houston Transportation Company dba YC & Fashina Clement | Robbins, Charles | 270th Civil District Court - Harris County | 2020-22207 | Greater Houston Transportation Company |
| BENSON, Tommy v Greater Houston Transportation Company, Taxi Fiesta RGV, Fiesta Cab Company & John Doe | Benson, Tommy | 234th Civil District Court - Harris County | 2020-24989 | Fiesta Cab Company |
| JOHNSON, Spanky v Greater Houston Transportation Company dba YC & Ta Crynne Watson | Johnson, Spankie | 61st Civil District Court - Harris County | 2020-25422 | Greater Houston Transportation Company |
| GRAVES, Jamarcus Smith v Greater Houston Transportation Company | Graves, Jamarcus | 333rd Civil District Court - Harris County | 2020-27311 | Greater Houston Transportation Company |
| BROWN, John v Greater Houston Transportation Company dba YC & Wilbert Rhodes | Brown, John | 80th Civil District Court - Harris County | 2020-28124 | Greater Houston Transportation Company |
| THRASH, Lorenza v Greater Houston Transportation Company dba YCR & John Doe | Thrash, Lorenza | 151st Civil District Court - Harris County | 2020-32786 | Greater Houston Transportation Company |
| EPPS, Diana v Greater Houston Transportation Company & Fredrick Dewayne Williams | Epps, Diana | 151st Civil District Court - Harris County | 2020-33115 | Greater Houston Transportation Company |
| WOLFE, Randy v Greater Houston Transportation Company & N.OKIU, Godwin Oziemmem | Wolfe, Randy | 157th Civil District Court - Harris County | 2020-34155 | Greater Houston Transportation Company |
| ROSHANIDOK, Leonid and The Rozhinevsky Law Firm PLLC, v Greater Houston Transportation Company dba YC | Roshanidok, Leonid | 215th Civil District Court - Harris County | 2020-34600 | Greater Houston Transportation Company |
| TORRES, Regina v Greater Houston Transportation Company dba YC & Hernan Morales | Torres, Regina | 80th Civil District Court - Harris County | 2020-35655 | Greater Houston Transportation Company |
| JEFFERSON, Juanita v Greater Houston Transportation Company, Yellow Cab Service Corporation & George Adetola | Jefferson, Juanita | 157th Civil District Court - Harris County | 2020-38687 | Greater Houston Transportation Company |

| | | | | |
|---|---|---|---|---|
| JOHNSON, Jacob and HAMILTON, Brandi v Greater Houston Transportation Company & Harris Clemons | Johnson, Jacob | 157th Civil District Court - Harris County | 2020-62277 | Greater Houston Transportation Company |
| EAGLE, Sharila Michelle v Greater Houston Transportation Company (YC et al) | Eagle, Sharila | 164th Civil District Court - Harris County | 2020-49405 | Greater Houston Transportation Company |
| RODRIGUEZ, Martin v Greater Houston Transportation Company & Hussein Abaseli | Rodriguez, Martin | 151st Civil District Court - Harris County | 2020-48888 | Greater Houston Transportation Company |
| AYALA, Marilyn v Greater Houston Transportation Company & Adelio S. Basa | Ayala, Marilyn | 111th Civil District Court - Harris County | 2020-52156 | Greater Houston Transportation Company |
| PERKINS, Donald & Gloria v Greater Houston Transportation Company dba YC & Lucy Enablude | Perkins, Donald; Perkins, Gloria | 334th Civil District Court - Harris County | 2020-53590 | Greater Houston Transportation Company |
| THOMAS, Lakeisha v Greater Houston Transportation Company dba aaa YC & Lucy Enablude | Thomas, Lakeisha | 127th Civil District Court - Harris County | 2020-53812 | Greater Houston Transportation Company |
| RUIZ, Marjorie, Indiv and h/n/f of R.R., a minor v Greater Houston Transportation Company & Wayne Allan Osborn | Marjorie, Ruiz | 152nd Civil District Court - Harris County | 2020-57479 | Greater Houston Transportation Company |
| CLEMIED, Lydia v Greater Houston Transportation Company & Benjamin Emelia Ihamieje | Clemted, Lydia | 269th Civil District Court - Harris County | 2020-59958 | Greater Houston Transportation Company |
| BROWN, Kerry Dan Jr. v Greater Houston Transportation Company & Lawrence Allan Dominbach | Brown, Kerry | 269th Civil District Court - Harris County | 2020-59945 | Greater Houston Transportation Company |
| RAMIREZ, Patricia v Greater Houston Transportation Company dba YC & Benjamin Emelia Ihamieje | Ramirez, Patricia | 80th Civil District Court - Harris County | 2020-67032X | Greater Houston Transportation Company |
| JEFFERSON, Celia v Greater Houston Transportation Company, Carlos Montsinec & Matthew Allan Wakefield | Jefferson, Celia | 129th Civil District Court - Harris County | 2020-67426 | Greater Houston Transportation Company |
| CONTRERAS, Anna Maria Beatriz v Greater Houston Transportation Company & Guy P. Harwell | Contreras, Ana Maria | 333rd Civil District Court - Harris County | 2020-70282? | Greater Houston Transportation Company |
| GARCIA, Horacio v Greater Houston Transportation Company & Terrence Grant | Garcia, Horacio | 281st Civil District Court - Harris County | 2020-70364 | Greater Houston Transportation Company |
| MONTGOMERY, Nerita v Greater Houston Transportation Company dba YC | Montgomery, Nerita | 157th Civil District Court - Harris County | 2020-72834 | Greater Houston Transportation Company |
| CHARLES, Tyrone v Greater Houston Transportation Company & John Doe | Charles, Tyrone | 61st Civil District Court - Harris County | 2020-75970 | Greater Houston Transportation Company |
| MARTINEZ, Ariana & BRENT, Rushard v Greater Houston Transportation Company, Lashonia Kohllo & Brent V Gezette | Martinez, Ariana; Brent, Rushard | 127th Civil District Court - Harris County | 2020-75877 | Greater Houston Transportation Company |
| ECHAVARRIA, Juan Antonio Aguilar v Greater Houston Transportation Company dba YC & "John Doe" | Aguilar Echavarria, Juan | 269th Civil District Court - Harris County | 2020-75902 | Greater Houston Transportation Company |

| | | | | |
|---|---|---|---|---|
| MORRIS, Teresha v. Greater Houston Transportation Company dba YC & Georgia Slade | Morris, Teresha | 61st Civil District Court - Harris County | 2020-83778 | Greater Houston Transportation Company |
| CUVARES, Joshua v Greater San Antonio Transportation Company dba SA YC & Nazim Conrod | Cuvares, Joshua | 438th Judicial District Court - Bexar Co. | 2020CCI0464 | Greater San Antonio Transportation Company |
| CEPEDA, Jaime H., v Greater San Antonio Transportation Company dba YC, Brandon R. Jones & Mohamed I Heffre | Cepeda, James | 156th Civil District Court - Bexar Co. | 2020CCI03327 | Greater San Antonio Transportation Company |
| KELLY, James v Greater San Antonio Transportation Company, YC of San Antonio & Daniel Wazo | Kelly, Jamie / Yellow Cab Company of San Antonio | 224th Judicial District Court - Bexar Co. | 2020CCI06540 | Greater San Antonio Transportation Company |
| MORALES, Jennifer Nicole v Greater San Antonio Transportation Company & Omoludin Kalilasi | Morales, Jennifer | 407th Judicial District Court | 2020CI15056 | Greater San Antonio Transportation Company |
| LOREDZANA, Daniela & Stephanie Monterey v Greater San Antonio Transportation Company | Lorenzano, Daniela / Monterez, Stephanie | 57th Judicial District Court - Bexar Co. | 2020CI16264 | Greater San Antonio Transportation Company |
| AMER, Fathia, Yasmeen Ahmen & Eman Altamen v Greater San Antonio Transportation Company & Francisco Rodriguez | Amer, Fathia / Ahmed, Yasmeen / Altamen, Eman | 150th Judicial District Court - Bexar Co. | 2020CI22663 | Greater San Antonio Transportation Company |
| McGILLIS, Amanda anf Cosmo Washington, minor v Greater San Antonio Transportation Company & Tregizh T. Fishaye | McGillis, Amanda | Bexar County Civil Court 3 | 2020CI00733 | Greater San Antonio Transportation Company |
| MONTFORD, John v Greater San Antonio Transportation Company & Naserelldin S. Abdallah | Montford, John | Bexar County Civil Court 3 | 2020CI01466c | Greater San Antonio Transportation Company |
| RODRIGUEZ, Leandra, et al v HALL, Nejesei H. | Rodriguez, Leandra / Lopez, Jr., Robert | Bexar County Civil Court 10 | 2020CI01120 | Greater San Antonio Transportation Company |
| GEICO County Mutual Insurance Company v Greater San Antonio Transportation Company & Tregizh T. Fishaye | Geico County Mutual Insurance Company | Bexar County Civil Court 10 | 2020CI05552 | Greater San Antonio Transportation Company |
| SIMS, Terrence v Greater Houston Transportation Company & Eric Wilkinson | Sims, Terrence | 55th Civil District Court - Harris County | 2021-06993 | Greater Houston Transportation Company |
| MAURICE, Becky v Greater Houston Transportation Company & Anbiul Agboola | Maurice, Becky | 190th Civil District Court - Harris County | 2021-17540 | Greater Houston Transportation Company |
| PROFFIT, Curvia v Greater Houston Transportation Company, Montana Carlos & Matthew Alan Wakefield | Profit, Curvia, and Charmin, Gary | 165th Civil District Court - Harris County | 2021-17680 | Greater Houston Transportation Company |
| MANNERS, David Tatum v Greater Houston Transportation Company, Carlos Albert Pineda & Doricell J. Murphy | Manners, David | 127th Civil District Court - Harris County | 2021-00558 | Greater Houston Transportation Company |
| JOINER, Denise v Greater Houston Transportation Company & GRANT, Terrence Jermaine | Joiner, Denise | 215th Civil District Court - Harris County | 2021-72910 | Greater Houston Transportation Company |

| Case | Party | Court | Case No. | Transportation Company |
|---|---|---|---|---|
| SANTOS, Emely v Greater Houston Transportation Company & Chiedu Morwei | Santos, Emely | 164th Civil District Court - Harris County | 2021-25607 | Greater Houston Transportation Company |
| BARNES, Erica v Greater Houston Transportation Company aka YC & Tajudeen Azeez Oshogi | Barnes, Erica | 129th Civil District Court - Harris County | 2022-06176 | Greater Houston Transportation Company |
| DEROUSSELLE, Lillian v Greater Houston Transportation Company & Juan Garcia | DEROUSSELLE, Lillian | 55th Civil District Court - Harris County | 2021-28542 | Greater Houston Transportation Company |
| BUGGAGE, Nkema v Greater Houston Transportation Company, Steve Hamer, Mike Spears, Yaping Zhoa & Terrin Keith Sanford | Buggage, Nkema | 164th Civil District Court - Harris County | 2021-269968 | Greater Houston Transportation Company |
| MACHINE, Wynell Morris v Greater Houston Transportation Company dba YC | Machine, Wynell; Mabane, Deedra | 113th Civil District Court - Harris County | 2021-34399 | Greater Houston Transportation Company |
| PRESTON, Lauren v Greater Houston Transportation company & Bruce Allana | Preston, Lauren | 80th Civil District Court - Harris County | 2021-92200 | Greater Houston Transportation Company |
| PROGRESSIVE County Mutual Insurance Company v Taye Greater Houston Transportation Company Clay | Progressive County Mutual Insurance Company | 55th Civil District Court - Harris County | 2021-34797 | Greater Houston Transportation Company |
| VASQUEZ, Arturo Serrano v Greater Houston Transportation Company & Rene Rolando Barrios | Vasquez, Arturo | 133rd Civil District Court - Harris County | 2021-55522 | Greater Houston Transportation Company |
| WILLIAMS, Debra v Greater Houston Transportation Company | Williams, Debra | 125th Civil District Court - Harris County | 2021-55725 | Greater Houston Transportation Company |
| RAMON, Victor v Greater San Antonio Transportation Company & Joseph U Nwaike | Ramon, Victor | 131st Judicial District Court - Bexar Co. | 2021CI04083 | Greater San Antonio Transportation Company |
| NAVARA, Gloria v Greater San Antonio Transportation Company, Metro Transportation Company & John Doe | NAVARA, Gloria | 57th Judicial District Court - Bexar Co. | 2021-CI-04422 | Greater San Antonio Transportation Company |
| BANKS, Rose v Greater San Antonio Transportation Company dba San Antonio Yellow Cab & Amir Iey | Banks, Rose | 224th Judicial District Court - Bexar Co. | 2021CI05981 | Greater San Antonio Transportation Company |
| ATKINSON, Elizabeth v Greater San Antonio Transportation Company & Semere T Selamun | Atkinson, Elizabeth | Bexar County Civil Court 3 | 2021CV04559 | Greater San Antonio Transportation Company |
| HERNANDEZ, David v Greater San Antonio Transportation Company & Veronica Evans | Hernandez, David | Bexar County Civil Court 3 | 2021CV02147 | Greater San Antonio Transportation Company |
| ADE, Grace v Osama Abou Krami Utah Sin | Ade, Grace | Justice Court, Bexar County, Precinct 1, Place 1 | 2152000212 | Greater San Antonio Transportation Company |
| VASQUEZ, JORGE LUIS v. Rio Grande | Vasquez, Jorge | 139th Judicial District Court, | C-1119-19-H | Valley, Inc. / Texas Fiesta Rio Grande |
| HAYS, James v. Emeka Anthony Egbue | HAYS, James | Travis County Court at Law No. 1 | D-1-GN-21-008954 | Greater Austin Transportation Company |

52

| Style | Party | Court | Case No. | Defendant |
|---|---|---|---|---|
| SIGARDES v Greater Austin Transportation Company dba YC, JOHN SOLEMAN, GUYANDRO | Esguerdes, Daniela | Travis County Court at Law No. 2 | C4-CV-18-000386 | Greater Austin Transportation Company |
| MYNAL, MARY v SMEDOJI, Justin & Greater Austin Transportation Company | Mynar, Mary | Travis County Court at Law No. 2 | C4-CV-19-000864 | Greater Austin Transportation Company |
| CONREY, John Paul v Greater Austin Transportation Company & CALLAR ENES | Conrey, John | Travis County Court at Law No. 1 | C4-CV-19-001743 | Greater Austin Transportation Company |
| GOODING, William & Mirisce v Greater Austin Transportation Company and SHEMO, Abdelwahed | Gooding, William & Mirisce | Travis County Court at Law No. 2 | C4-CV-19-000377 | Greater Austin Transportation Company |
| PROGRESSIVE County Mutual v Greater Austin Transportation Company & O'MORGORE, Coznah | Progressive County Mutual Insurance Company | Travis County Court at Law No. 2 | C4-CV-19-001273 | Greater Austin Transportation Company |
| CHARBONNEAU, Coblie v Greater Austin Transportation Company & Wossari Natalie Lemme | Charbonneau, Coblie | Travis County Court at Law No. 1 | C1-CV-20-000442 | Greater Austin Transportation Company |
| GEICO Secure Insurance Company v Adm Zaid | Geico Secure Insurance Company | Travis County Court at Law No. 2 | C4-CV-20-003066 | Greater Austin Transportation Company |
| USAA General Indemnity Co. v Greater Austin Transportation Company & Abdelwaheb A. Shalma | USAA General Indemnity Co. | Travis County Court at Law No. 2 | C4-CV-20-003276 | Greater Austin Transportation Company |
| PROGRESSIVE County Mutual Insurance Company v Greater Austin Transportation Company & Devine | Progressive County Mutual Insurance Company | Travis County Court at Law No. 2 | C4-CV-20-005180 | Greater Austin Transportation Company |
| NAVARRO, Geronda, et al v Greater Austin Transportation Company, Fiesta Cab Co. & Jurnathan Gonzales (CL-20-1547-A) 71466-04160018.8818R | Navarro, Geronda; Ramirez, Kella | Hidalgo County Court at Law No. 1 | CL20-1547-A | Fiesta Cab Company; Greater Houston Transportation Company |
| STATE FARM Mutual Automobile Insurance Company as Subrogee of Jesus Zamora v Fiesta Cab Co & Robert Insurance Company Gallie | State Farm Mutual Automobile Insurance Company | Hidalgo Civil Court at Law No. 2 | CL-20-3449-S | Fiesta Cab Company |
| Reynolds, Andrea v. Greater Austin Transportation Company & Williams | Reynolds, Andrea | 250th Judicial District Court - Travis Co. | D-1-GN-15-005778 | Greater Austin Transportation Company |
| Aures, Joanne v. Greater Austin Transportation Company | Aures, Joanne | 459th Judicial District Court - Travis Co. | D-1-GN-17000764 | Greater Austin Transportation Company |
| ROMERO/SCHWENENSEN v Greater Austin Transportation Company and Abdelrohmen (RELBHAI) | Romero, Oscar; Schwenensen, Stephen | 224th Judicial District Court - Bexar Co. | D-1-GN-18-000481 | Greater Austin Transportation Company |
| SCOTTLAND UNDERWOOD v. Greater Austin Transportation Company and Tamer Cruz | Underwood, Scottland | 201st Judicial District Court - Travis Co. | D-1-GN-18-002172 | Greater Austin Transportation Company |
| BELL, Michelle v. YC of AUSTIN & SENATE SOLOMON McKinleth | Bell, Michelle | 455th Judicial District Court of Travis County | D-1-GN-19-003937 | Greater Austin Transportation Company |
| HANNES, Donta, ET AL v Greater Austin Transportation Company & ABDUL WAHAB | Thomas, Mack & Rachual; Haynes, Donta | 98th Judicial District Court - Travis Co. | D-1-GN-19-005611 | Greater Austin Transportation Company |
| QUINONES, Nicole v Greater Austin Transportation Company & EKIAN, Siyid | Quinones, Nicole | 250th Judicial District Court - Travis Co. | D-1-GN-19-005201 | Greater Austin Transportation Company |

| Case | Party | Court | Case Number | Company |
|---|---|---|---|---|
| HEREDIA, DEVON v Greater Austin Transportation Company & Ikjup Iqbla | Heredia, Devon | 250th Judicial District Court - Travis Co. | D-1-GN-18-007554 | Greater Austin Transportation Company |
| IVIE, Rondy v Greater Austin Transportation Company, ATX Yellow Cab LLC and YCPS | Ivie, Rondy | 345th Judicial District Court | D-1-GN-20-000478 | Greater Austin Transportation Company |
| POLK, Lexus v Greater Austin Transportation Company and Sharma Alias Mohamed | Polk, Lexus | 53rd Judicial District Court | D-1-GN-22-000594 | Greater Austin Transportation Company |
| RODRIGUEZ, Alma Range! (estate of Mark Rodriguez) v Greater Austin Transportation Company & Ivonne Ochoa Diaessi | Rodriguez, Alma | 53rd Judicial District Court | D-1-GN-20-000728 | Greater Austin Transportation Company |
| WRIGHT, Tierra & SANCHEZ, Eleanor v Greater Austin Transportation Company & ELAHRANI, Hamic | Wright, Tierra | 98th Judicial District Court | D-1-GN-20-002779 | Greater Austin Transportation Company |
| GREEN, Renee v VO/DEVINE, Adwena & Greater Austin Transportation Company | Green, Renee | 53rd Judicial District Court | | Greater Austin Transportation Company |
| PENALOZA, Gerardo & SANCHEZ, Diana v Greater Austin Transportation Company & Jartai Zanzay | Penaloza, Gerardo Sanchez, Diana | 250th Judicial District Court - Travis Co. | D-1-GN-20-003352 | Greater Austin Transportation Company |
| MARTINEZ, Leslie & CHAVEZ, Samantha v Greater Austin Transportation Company & DOCANSEFA, Patrick | Martinez, Leslie Chavez, Samantha | 261st Judicial District Court | D-1-GN-20-003573 | Greater Austin Transportation Company |
| CABRERA, Juan Soto v Greater Austin Transportation Company & Berkey Nicholoiperhal | Cabrera, Juan | 250th Judicial District Court - Travis Co. | D-1-GN-20-005740 | Greater Austin Transportation Company |
| MITCHELL, Samantha v. zzar | MITCHELL, Samantha | Justice of Peace, Precinct 2, Travis County | 11-CIV-18-003912 | Greater Austin Transportation Company |
| KNIGHT, Kelley Aleasa v Greater Austin Transportation/ Knight, Kelley Isaac Palmm | Knight, Kelley | Justice of Peace, Precinct 2, Travis County | 22-CV-82-000442 | Greater Austin Transportation Company |
| ARMSTRONG, James / JOSEPH v Greater Austin Transportation Company dba YC, BRYAN | Armstrong, James Armstrong, Joseph | 200th Judicial District Court - Travis Co. | No. D-1-GN-19-005407 | Greater Austin Transportation Company |
| PROGRESSIVE County Mutual v YC Service Corporation & Mohammed Ashawa | Progressive County Mutual Insurance Company | 55th Civil District Court - Harris County | 2019-44857 | Greater Houston Transportation Company |
| PROGRESSIVE County Mutual Insurance Company v Greater Houston Transportation Company & Adewoji Insurance Company | Progressive County Mutual Insurance Company | 157th Civil District Court - Harris County | 2019-44857 | Greater Houston Transportation Company |
| BOSSON, Craig A. V HAMI RADSHAHAMI and YELLOW | Bosson, Craig A | 333rd Civil District Court - Travis Co. | D-1-GN-18-000956 | Greater Austin Transportation Company |
| JORDAN, Jonathan v. MOMINUL MIAH | Jordan, Jonathan | 151st Civil District Court - Harris County | 2017-24696 | Greater Houston Transportation Company |
| ELLIS, Lenita v. Milton Birmingham and Greater Houston Transportation Company | Ellis, Lenita | 157th Civil District Court - Harris County | 2018-38441 | Greater Houston Transportation Company |
| SANIVEE, George Alquette v. Hamid Benzayed | SANIVEE, George Alquette | 270th Civil District Court - Harris County | 2017-75838 | Greater Houston Transportation Company |

| COUNTEE, Ida v. Greater Houston Transportation Company and Esteru | COUNTEE, Ida | 157th Civil District Court - Harris County | 2017-52401 | Greater Houston Transportation Company |
| HAACK, Kimberly v Greater San Antonio Transportation Company & Walleed Nakawiah | Haack, Kimberly | 224th Judicial District Court - Bexar Co. Bexar County Presiding Court | 2020CI03399 | Greater San Antonio Transportation Company |
| MCDONALD, Parricka v. Greater San Antonio Transportation Company & Wilma | | 438th Judicial District Court - Bexar Co. Bexar County Presiding Court | 2024CI06582 | Greater San Antonio Transportation Company |
| GEICO County Mutual Insurance Company v Greater Houston Transportation Company & Midland Utani | Geico County Mutual Insurance Company | Justice Court, Harris County, Precinct 4, Place 1 | 2141000546818 | Greater Houston Transportation Company |
| BRIDGES, Eleonora v Tedramichael Tesfatsp | BRIDGES, Eleonora | 129th Civil District Court - Harris County | 2018-50550 | Greater Houston Transportation Company |
| LISCUM, Alexis v Salah Hassan Ismaeli | Liscum, Alexis | Harris Co. Court at Law No. 1 | 1129825 | Greater Houston Transportation Company |
| THOMPSON, Jonas v Tiffany Fitzgerald (70775-09242018-3S5) | Thompson, Jonas | Harris Co. Court at Law No. 1 | 1135623 | Greater Houston Transportation Company |

55

## Schedule 6.1(b) to Asset Purchase Agreement

### Related Agreements

- Asset Purchase Agreement, dated as of the even date of this Agreement, by and between WHC ATX, LLC and Greater Austin Transportation Company

- Asset Purchase Agreement, dated as of the even date of this Agreement, by and between WHC HTX, LLC, Texas Taxi, Inc., Greater Houston Transportation Company, Fiesta Cab Company, Yellow Cab Paratransit Services, Inc., Eagle Executive Transportation Services, Inc., Eagle WAV, Inc., Hail A Cab App, Inc., and Cab Administrative Services, Inc.

**Exhibit A to Asset Purchase Agreement**

**Bill of Sale**

[Attached]

## BILL OF SALE

For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Greater San Antonio Transportation Company, a Texas corporation ("Seller"), hereby grants, bargains, transfers, sells, assigns, conveys and delivers to WHC STX, LLC, a Texas limited liability company ("Buyer"), all of Seller's right, title and interest in and to the Purchased Assets as such term is defined in that certain Asset Purchase Agreement, dated as of [    ], 2021 (the "Purchase Agreement"), by and between Seller and Buyer, to have and to hold the same unto Buyer, its successors and assigns, forever.

Seller agrees that the representations and warranties of Seller in Article III of the Purchase Agreement apply to this Bill of Sale.

This Bill of Sale will inure to the benefit of and will bind Seller and its successors and assigns.

IN WITNESS WHEREOF, THE UNDERSIGNED PARTIES HAVE DULY EXECUTED THIS BILL OF SALE AS OF [    ], 2021.

**WHC STX, LLC,**
By: WHC Worldwide, LLC, as sole member


By:_____
        William M. George, as Managing Member


**GREATER SAN ANTONIO TRANSPORTATION COMPANY**


By:_____
Name:
Title:

58

<u>**Exhibit B to Asset Purchase Agreement**</u>

<u>**Assignment**</u>

[Attached]

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption Agreement ("Agreement") is made effective as of [   ], 2021, between Greater San Antonio Transportation Company, a Texas corporation ("Assignor"), and WHC STX, LLC, a Texas limited liability company ("Assignee").

WHEREAS, Assignor and Assignee are parties to that certain Asset Purchase Agreement dated as of [   ], 2021 ("Purchase Agreement"); and

WHEREAS, Assignor desires to assign, transfer, convey and deliver to Assignee all of Assignor's right, title and interest in and to the Assumed Contracts set forth in the Purchase Agreement and Assignee desires to accept such assignment, transfer and conveyance, all pursuant to the terms and provisions hereof.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby act and agree as follows:

1.     _Assignment and Assumption._ Assignor hereby irrevocably assigns, transfers, conveys and delivers to Assignee all of Assignor's right, title and interest in and to Assumed Contracts, effective as of the Closing. Assignee hereby accepts the Assignment and assumes all duties, obligations and liabilities of Assignor arising under the Assumed Contracts from and after the Closing.

2.     _Miscellaneous._ Capitalized terms used herein but not otherwise defined shall have the meaning assigned to such terms in the Purchase Agreement. This Agreement may be executed in counterparts. This Agreement shall be binding upon and inure to the benefit of the parties and their successors, legal representatives and permitted assigns. This Agreement shall be governed by the laws the State of Texas, without regard to the conflict of laws principles thereof.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement or caused this Agreement to be duly executed on their respective behalf, by their respective officers thereunto duly authorized, all as of the day and year first above written.

**WHC STX, LLC,**
By: WHC Worldwide, LLC, as sole member

By:_____
     William M. George, as Managing Member


**GREATER SAN ANTONIO TRANSPORTATION COMPANY**

By:_____
Name:
Title:

60

**<ins>Exhibit C to Asset Purchase Agreement</ins>**

**<ins>Bill of Sale (Vehicles) with Silver Lining Motors, LLC</ins>**

[Attached]

**BILL OF SALE**
**(VEHICLES)**

In consideration for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Greater San Antonio Transportation Company, a Texas corporation ("Seller"), hereby grants, bargains, transfers, sells, assigns, conveys and delivers to Silver Lining Motors, LLC, a Missouri limited liability company ("Buyer"), all of such Seller's right, title and interest in and to the vehicles listed on Exhibit A to this Bill of Sale.

This Bill of Sale is being executed and delivered by the undersigned parties as a condition to and in connection with the closing of the Asset Purchase Agreement, dated [___], 2021, by and between Seller and WHC STX, LLC ("Purchase Agreement").

Seller agrees that the representations and warranties of Seller in Article III of the Purchase Agreement apply to this Bill of Sale, and the Purchase Agreement is incorporated herein for said purpose.

This Bill of Sale will inure to the benefit of and will bind the Seller and its successors and assigns.

**SILVER LINING MOTORS, LLC,**
By: WHC Worldwide, LLC, as sole member


By:_____
        William M. George, as Managing Member


**GREATER SAN ANTONIO TRANSPORTATION COMPANY**


By:_____
Name:
Title:

**Exhibit A to Bill of Sale (Vehicles)**

| Vehicle Year | Vehicle Make | Vehicle Model | VIN | Vehicle Plate Number | Odometer Current |
|---|---|---|---|---|---|
| 2014 | DODGE | CARAVAN | 2C4RDGCG5ER122864 | FBS9778 | 170207 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG6GR196234 | MZJ5348 | 83974 |
| 2011 | DODGE | CARAVAN | 2D4RN5DG6BR657703 | BBC3573 | 327576 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG1GR234727 | LRZ6594 | 74739 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG2ER273628 | DWY2134 | 192843 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG8GR348062 | MJZ0940 | 60329 |
| 2015 | DODGE | CARAVAN | 2C4RDGBG2FR648999 | LRZ6593 | 77115 |
| 2013 | DODGE | CARAVAN | 2C4RDGBG8DR518593 | JPM4485 | 174776 |
| 2016 | DODGE | CARAVAN | 2C4RDGCG5GR266983 | LRZ6592 | 77288 |
| 2016 | DODGE | CARAVAN | 2C4RDGBGXGR131533 | LVR5351 | 74772 |
| 2013 | Dodge | Caravan | 2C4RDG86DR518592 | NWN8542 | 148351 |
| 2013 | DODGE | CARAVAN | 2C4RDGCGXDR632823 | LZL1548 | 223246 |
| 2013 | DODGE | CARAVAN | 2C4RDGBG0DR632846 | LZT1612 | 200761 |
| 2017 | DODGE | CARAVAN | 2C4RDGCG3HR863728 | LXC5805 | 39434 |
| 2017 | DODGE | CARAVAN | 2C4RDGCG6HR826060 | LXC5806 | 49247 |
| 2016 | DODGE | CARAVAN | 2C4RDGB0GR359511 | LXC5816 | 27296 |
| 2016 | DODGE | CARAVAN | 2C4RDGCG5GR361138 | MJZ0942 | 72705 |
| 2016 | DODGE | CARAVAN | 2CHRDGBG3GR395418 | MLN9949 | 52711 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG2DR590498 | LLL6953 | 102201 |
| 2014 | DODGE (6) | CARAVAN | 2C4RDGCG4ER320268 | DMX4843 | 173042 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG4ER120202 | DXY3185 | 203054 |
| 2013 | DODGE | CARAVAN | 2c4rdgbg9dr632859 | TONYL10 | 175000 |

| 2016 | DODGE | CARAVAN | 2C4RDGBG9GR203208 | MNX6497 | 118837 |
|------|-------|---------|-------------------|---------|--------|
| 2014 | DODGE | CARAVAN | 2C4RDGCG1ER121016 | LHY0488 | 126123 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG8GR203216 | MWG0681 | 127739 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG9GR218033 | MWS2129 | 157288 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG7DR627318 | DMX4480 | 205073 |
| 2014 | DODGE | CARAVAN | 2C4RDGBG4ER433378 | HPJ0904 | 195352 |
| 2016 | DODGE | CARAVAN | 2c4rdgbg2gr203213 | mws2130 | 142250 |
| 2013 | DODGE | CARAVAN | 2C4RDGBG7DR632827 | MVW0642 | 133807 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG6ER127975 | DXY3186 | 177260 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG5ER273574 | DXY3193 | 135666 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG3ER121003 | FZR2705 | 209403 |
| 2019 | DODGE | CARAVAN | 2C4RDGBG2KR547682 | LTM3114 | 114697 |
| 2013 | DODGE | CARAVAN | 2C4EDGCG6DR575129 | CWS3208 | 323601 |
| 2009 | TOYOTA | SIENNA | 5TDKK3DC9BS117567 | MGZ6098 | 328548 |
| 2012 | TOYOTA | SIENNA | 5TDZK3DC9CS274659 | MZS2506 | 250000 |
| 2016 | DODGE | CARAVAN | 2C4RDGBGXGR170624 | GWD4846 | 254368 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG1GR170642 | GWD1304 | 245351 |
| 2016 | DODGE | CARAVAN | 2c4rdgbg1gr170639 | GWD4845 | 152186 |
| 2016 | dodge | caravan | 2c4rdgbg7gr170631 | WJD6355 | 175328 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG9GR170629 | GWD1309 | 185572 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG6DR591170 | CWP0610 | 495411 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG0DR521227 | HSK9278 | 345338 |
| 2013 | DODGE | CARAVAN | 2C4RDGBG4DR633224 | NWN7149 | 202000 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG4DR626403 | DRN9129 | 347399 |

64

| 2019 | DODGE | CARAVAN | 2C4RDGBG2KR754573 | MVG4509 | 69000 |
| 2009 | TOYOTA | SIENNA | 5TDZK23C39S271454 | LBZ8293 | 365852 |
| 2017 | DODGE | CARAVAN | 2C4RDGBGH5R776558 | KBG2734 | 87452 |
| 2013 | DODGE | CARAVAN | 2D4RDGCG5DR817313 | LDH4842 | 102159 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG7DR610728 | LGZ7552 | 85000 |
| 2014 | DODGE (6) | CARAVAN | 2C4RDGCG6ER154139 | FBS8625 | 201758 |
| 2014 | DODGE | CARAVAN | 2c4rdgcg0er273563 | KFV2355 | 150982 |
| 2016 | DODGE | CARAVAN | 2C4RDGCG9GR139220 | LMX1498 | 139220 |
| 2012 | DODGE | CARAVAN | 2C4RDGG4CR149664 | LRZ6590 | 80016 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG2ER401013 | LHY0489 | 258397 |
| 2014 | DODGE(6) | CARAVAN | 2C4RDGBG4ER433431 | HPJ0914 | 124719 |
| 2014 | DODGE(6) | CARAVAN | 2C4RDGCG8ER245512 | DYZ0018 | 193854 |
| 2011 | MERCURY | MARQUIS | 2MEBM7FV7BX604642 | DM1H476 | 354981 |
| 2016 | DODGE | CARAVAN | 2C4RDGBG1GR243377 | MNX6495 | 122159 |
| 2013 | DODGE | CARAVAN | 2C4RDGCG2DR610667 | DSL0261 | 217731 |
| 2017 | FORD | EXPLORER | 1FM5K8AR5GHGB22637 | NBW9905 | 70246 |
| 2016 | DODGE | CARAVAN | 2c4rdgbgxgr235830 | mvw0643 | 139672 |
| 2014 | DODGE(6) | CARAVAN | 2C4RDGCG9ER267471 | GKN4709 | 162004 |
| 2014 | DODGE (6) | CARAVAN | 2C4RDGCG0ER155450 | LGW5952 | 166463 |
| 2014 | DODGE(6) | CARAVAN | 2C4RDGCGOER206610 | LMR4791 | 166326 |
| 2014 | DODGE | CARAVAN | 2C4RDGCG9ER205519 | MZS5913 | 211250 |

65

**<u>Exhibit D to Asset Purchase Agreement</u>**

**<u>Lease Agreement</u>**

[Attached]

# LEASE

This Lease Agreement ("**Lease**") is made and entered into as of [_____], 2021 ("**Commencement Date**"), by and between DC Real Estate Holdings, LLC, ("**Landlord**"), and WHC STX, LLC, a Texas limited liability company ("**Tenant**").

## RECITALS

WHEREAS, Landlord desires to lease the Leased Premises (as defined below) to Tenant, and Tenant desires to lease the same from Landlord, on the terms and conditions set forth in this Lease.

NOW, THEREFORE, in consideration of the premises and the mutual covenants contained herein, the parties agree as follows:

## ARTICLE I - LEASED PREMISES; PURPOSE

**1.1**   <u>Leased Premises</u>.  Upon the terms and conditions herein, Landlord hereby leases to Tenant approximately 8,500 square feet of space ("**Leased Premises**") within an approximately [___] square foot building ("**Building**"), located at   [___], Suite [___], as further described in <u>Exhibit "A"</u> hereto ("**Property**"), as further depicted on <u>Exhibit "B"</u> attached hereto. As used herein, Leased Premises shall also include (1) such non-exclusive rights-of-way, easements and similar rights with respect to the Building and Property as may be reasonably necessary for access to and egress from the Leased Premises, including all common areas thereof, and (2) 140 parking stalls suitable for vehicular parking.

**1.2**   <u>No New Improvements</u>. Tenant will take possession of the Leased Premises on the Commencement Date in its "AS IS" condition.

**1.3**   <u>Use; Access</u>.  Tenant may use the Leased Premises solely for the purpose of the operation of a taxi cab and any other use reasonably incidental thereto.  Tenant, and its employees, agents, contractors, patients, and invitees, will have access to the Leased Premises 24 hours per day, 7 days per week.

## ARTICLE II – TERM

**2.1**   <u>Term</u>. The term of this Lease will be for thirty six (36) months, commencing on the Commencement Date ("**Term**") unless said term shall be sooner terminated as provided herein.

**2.2**   <u>Renewal Options</u>. Provided Tenant is not then in default of any of the terms and provisions of this Lease beyond any applicable notice and cure periods, Tenant shall have the option (the "**Renewal Option**") to renew this Lease for two (2) consecutive terms of two (2) consecutive terms of one (1) year after the initial Term of this Lease ("**Renewal Term**") upon the same terms and conditions as the initial Term of this Lease, except that the monthly Rent for Renewal Term shall be mutually agreed upon by Landlord and Tenant; provided that the Rent will

1

be increased by [\_\_\_]% at the beginning of each Renewal Term. In order to exercise a Renewal Option, Tenant must advise Landlord in writing of its desire to renew no later than six (6) calendar months prior to the end of the Term.

## ARTICLE III – RENT; OPERATING EXPENSES

     **3.1**    <u>Rent</u>. Subject to any adjustments to the Term as set forth in Article II, Tenant shall pay to Landlord $[\_\_\_] per month ("**Base Rent**").

     **3.2**    <u>Late Charge</u>. If Tenant fails to pay Rent within 15 days after due, the amount unpaid will be subject to (i) a late payment charge, as Additional Rent, of 5% of the amount unpaid, to cover Landlord's additional administrative costs; provided, the first two (2) times in any lease year that Tenant fails to pay Rent on or before the date it was due, Tenant shall not be required to pay such late payment charge if Tenant pays the unpaid amount within five (5) business days after Landlord delivers written notice of such failure, and (ii) interest on all such unpaid sums (other than the late payment charge), which interest shall commence accruing on the payment due date at a per annum rate equal to 7%.

     **3.3**    <u>Operating Expenses</u>. It is the intent of both parties that, except as otherwise expressly provided herein, the Base Rent herein specified shall be net to the Landlord throughout the Term. Therefore, except as otherwise expressly provided herein, Tenant's shall pay all reasonable, necessary, and actual operating, maintenance, and repair costs for the Leased Premises that arise during the Term, as well as Tenant's Proportionate Share (as defined below) of the costs of repair and maintenance of the Building and common areas except for those items excluded below (all such costs, "**Operating Expenses**"). As used herein, "**Tenant's Proportionate Share**" means [\_\_\_\_\_]%, calculated by dividing the square footage of the Leased Premises by the total square footage of the Building. Tenant agrees to pay the same to Landlord as "**Additional Rent**" (with Base Rent and Additional Rent herein collectively referred to as "**Rent**"), unless they are paid directly by Tenant. Notwithstanding the foregoing, Operating Expenses shall not include any of the following:

          (a)    Any capital expenditures (including, without limitation, expenditures related to the repair and maintenance of the structural components of the Building, the roof, the foundation, and exterior walls);

          (b)    The costs of repairs, if and to the extent that any such costs is actually reimbursed by the insurance carried by Landlord or subject to award under any eminent domain proceeding;

          (c)    Depreciation, amortization, and interest payments, or principal and interest on indebtedness or any cost of financing or refinancing the Building or the Property;

          (d)    Costs associated with operating the entity which constitutes Landlord (as the same are distinguished from the costs of operation of the Building or the Property), such as compensation paid to officers or executives of Landlord, management fees, and fees paid for accounting and legal matters for such entity;

2

(e)     Costs, including attorneys' fees and settlement judgments and/or payments in lieu thereof, arising from actual or potential claims, disputes, litigation or arbitration pertaining to Landlord, Building and/or the Property;

(f)     Costs of repairs which would have been covered by casualty insurance but for Landlord's failure to maintain casualty insurance to cover the replacement value of the Building or the Property as required by this Lease;

(g)     Costs of bringing the Building or the Property into compliance with law;

(h)     Any other costs, expenses or obligations specifically assumed by Landlord under this Lease;

(i)     Costs to repair any damage to the Building or the Property arising from the intentional act or omission or negligence of Landlord;

(j)     Tax penalties and interest or fees thereon;

(k)     Any property management fees; and

(l)     Reserves for any Operating Expenses not permitted under this Section or for bad debts, future repairs, improvements, additions or any expenditures that would be incurred subsequent to the current lease year.

**3.4     Utilities and Other Services**. Landlord represents and warrants that, as of the Commencement Date, the Leased Premises are supplied with all utilities necessary and customary for the operation of an automobile showroom, and Landlord agrees to make all such utilities available for use by Tenant during the Term, provided that Tenant shall pay the cost of using all such utilities used within the Leased Premises.

**3.5     Taxes**. Tenant shall pay Landlord Tenant's Proportionate Share of all taxes, assessments, charges, and fees which during the Term hereof may be imposed, assessed or levied by any governmental or public authority against or upon the Property (collectively, "**Taxes**").

**3.6     Audit**. Tenant, at its expense, shall have the right, no more frequently than once per calendar year, upon written notice to Landlord, to cause independent certified public accountant to audit Landlord's books and records relating to Operating Expenses. Tenant shall pay all audit costs and fees.  Any audit conducted by Tenant must be conducted by an independent accounting firm that is compensated on an hourly or fixed fee basis, and not on a contingency or success fee basis. Landlord shall promptly refund to Tenant any overpayment of Operating Expenses identified by such audit, and Tenant shall promptly pay to Landlord any underpayment of Operating Expenses identified by such audit.  In the event an audit reveals that Operating Expenses were overstated by Landlord by more than ten percent (10%), Landlord shall reimburse Tenant for the reasonable costs of such audit.

3

## IV. MAINTENANCE AND REPAIRS; ALTERATIONS; SIGNAGE

**4.1    Maintenance and Repair by Tenant**. During the Term, Tenant, at its own cost and expense, shall maintain and repair all interior parts of the Leased Premises and keep them in good working order, subject to ordinary wear and tear. However, Tenant will not be obligated to pay for those items specifically excluded from Operating Expenses. If Tenant incurs any cost in maintaining or repairing such items specifically excluded from Operating Expenses, Tenant may deduct the cost of such repair from the Rent next due. Tenant's work, repairs and replacements shall be performed and installed free and clear of liens and encumbrances.

**4.2    Maintenance and Repair by Landlord**. During the Term, Landlord, at its own cost and expense, shall maintain, repair and, if necessary, replace, the structural components of the Building, roof, exterior walls, and foundations. Tenant shall promptly give Landlord written notice of any required repairs to any such items that Landlord is required to repair under this Section, and Landlord shall promptly repair the same. However, in the event Landlord fails to commence repair of any such matters within 10 days after delivery of notice to Landlord, Tenant may arrange for the repair and deduct the cost of such repair, plus 7%, from the Rent next due.

**4.3    Alterations**. Tenant may make such alterations, additions, improvements, or any other changes to the Leased Premises without the consent of the Landlord as long as (i) such alterations, additions, improvements, or changes involve no more than $50,000 in any 12-month period, and are nonstructural in nature, and (ii) Tenant gives notice thereof to Landlord. All other means alterations, additions, improvements, or changes require the prior written consent of the Landlord which shall not be unreasonably withheld, delayed, or conditioned. Tenant shall present to the Landlord plans and specifications for such work at the time any required consent is sought. All such work shall be done in a good and workmanlike manner and diligently prosecuted to completion. Any alterations, additions, or improvements to or of the Leased Premises, including, but not limited to, wall covering, paneling, and built-in cabinet work (but excepting movable furniture, equipment, trade fixtures and other personal property of Tenant that can be removed without damage to the Building, any of which may be removed by Tenant at any time), shall at the expiration of the Term become a part of the realty and shall be surrendered with the Leased Premises. Tenant shall have the right to install on the Leased Premises such equipment, trade fixtures, and personal property as is reasonably necessary for Tenant to conduct its business.

**4.4    Signs**. Tenant may place and display, with the consent of Landlord, any signs, awnings, and canopies on the Building or otherwise within the Leased Premises as long as they comply with all applicable laws and regulations.

## V. ASSIGNMENT AND SUBLEASES

**5.1    Assignment and Subleases**. Except for Permitted Transfers (as defined below), Tenant may not assign, encumber or transfer this Lease or any interest therein, and shall not sublet the Leased Premises or any part thereof, or any right or privilege appurtenant thereto, or allow any other person (except for Tenant's employees, agents, servants, and invitees, and sublessees and assignees as expressly permitted under this Lease) to occupy or use the Leased Premises, or any portion thereof, without first obtaining the written consent of Landlord, which consent may not be

4

unreasonably withheld, delayed, or conditioned. The giving of consent in one instance shall not preclude the need for Tenant to obtain Landlord's consent to further transfers.

**5.2** **Permitted Transfers**. Notwithstanding the foregoing, Tenant may, without the consent of Landlord, assign its entire interest under this Lease to its Affiliate (defined below) or to a successor to Tenant by purchase, merger, consolidation or reorganization, provided that all of the following conditions are satisfied in Landlord's reasonable discretion (a "Permitted Transfer"): (a) no uncured event of default exists under this Lease; (b) in the event of a successor to Tenant by purchase, merger, consolidation or reorganization, Tenant's successor shall own all or substantially all of the assets of Tenant; (c) in the event of a successor to Tenant by purchase, merger, consolidation or reorganization, Tenant's successor shall have a net worth which is at least equal to Tenant's net worth as of the day prior to the proposed purchase, merger, consolidation or reorganization; (d) such Affiliate or Tenant successor is not on OFAC list; and (e) Tenant shall give Landlord written notice of the Permitted Transfer, along with all applicable documentation and other information necessary for Landlord to determine that the requirements of this Section have been satisfied. As used herein, "**Affiliate**" means a person or an entity, which directly or indirectly through one or more intermediaries, controls or is controlled by or is under common control with Tenant; and the term "control" means the right and power, direct or indirect, to direct or cause the direction of the management and policies of a person or business entity, corporation or otherwise.

## VII. INSURANCE; INDEMNITY

**7.1** **Tenant's Insurance**. Tenant shall, at Tenant's expense, obtain and keep in force during the Term a policy of Commercial General Liability Insurance with Broad Form General Liability Endorsement, or equivalent, in an amount of not less than $1,000,000 per occurrence and $2,000,000 aggregate, of bodily injury and property damage combined, and shall insure Tenant with Landlord as an additional insured against liability arising out of the use, occupancy or maintenance of the Leased Premises. In addition, Tenant shall, at Tenant's expense, obtain and keep in force during the Term for the benefit of Tenant, fire and extended coverage insurance in an amount sufficient to cover the full replacement cost, as the same may exist from time to time, of all of Tenant's personal property, fixtures, equipment, and Tenant's improvements to the Leased Premises.

**7.2** **Waiver of Subrogation**. Landlord and Tenant intend that their respective property loss risks shall be borne by reasonable insurance carriers to the extent above provided, and Landlord and Tenant hereby agree to look solely to, and seek recovery only from, their respective insurance carriers in the event of a property loss to the extent that such coverage is agreed to be provided hereunder. Notwithstanding anything to the contrary, the parties each hereby waive all rights and claims against each other for such losses, and waive all rights of subrogation of their respective insurers, provided such waiver of subrogation shall not affect the right to the insured to recover thereunder. The parties agree that their respective insurance policies are now, or shall be, endorsed such that the waiver of subrogation shall not affect the right of the insured to recover thereunder.

5

**7.3**    **Indemnity.** Each party shall indemnify and save harmless the other party against and from all costs, fees, interests, charges, reimbursements, obligations, expenses, liabilities, losses, damages, injunctions, suits, actions, fines, penalties, claims, and demands of every kind or nature, including reasonable counsel fees, by or on behalf of any person, party, or governmental authority whatsoever arising out of any breach of this Agreement, unless such matter arises out of the negligence or willful misconduct of the other party, its agents, contractors, or employees

## VIII. CASUALTY

**8.1**    **Casualty – Landlord Obligation.** During the Term, if the Leased Premises shall be damaged or destroyed by fire or other casualty ("**Casualty**"), then, unless the Lease is terminated as provided in this Section 8, Landlord shall repair and restore the Leased Premises to substantially the same condition of the Leased Premises immediately prior to such Casualty, provided Landlord's obligation is limited to the extent of the insurance proceeds received by Landlord. Landlord shall have no obligation to repair and restore Tenant's trade fixtures, decorations, signs, or contents to the Leased Premises or any personal property of Tenant.

**8.2**    **Casualty – Tenant Obligation.** During the Term, if Tenant's personal property shall be damaged or destroyed by Casualty, then, unless the Lease is terminated as provided in this Section 8, Tenant shall repair and restore the same to substantially the same condition immediately prior to such Casualty, provided the Casualty is insured under Tenant's insurance policies, and Tenant's obligation is limited to the extent of the insurance proceeds received by Tenant.

**8.3**    **Option to Terminate.** Landlord and Tenant shall each have the option of terminating the Lease following the Casualty if: (i) the Leased Premises is rendered or would be rendered wholly untenantable for a period in excess of 6 months; (ii) the Leased Premises is damaged in whole or in Significant Part (as defined below) as a result of a risk which is not covered by Landlord's insurance policies; (iii) Landlord's lender does not permit a sufficient amount of the insurance proceeds to be used for restoration purposes; (iv) the Leased Premises is damaged in whole or in Significant Part during the last 2 years of the Term (provided that if Tenant duly exercises its Renewal Option, then Landlord will be obligated to repair and restore pursuant to this Article). If Landlord or Tenant elects to terminate this Lease, then it shall give notice of the cancellation to the other party within 60 days after the date of the Casualty. Tenant shall also have the option of terminating the Lease if: (i) Landlord has failed to substantially restore the damaged Leased Premises within 12 months of the Casualty, subject to the provisions of Section 8.8 ("**Restoration Period**"); and (ii) Tenant gives Landlord notice of the termination after the end of the Restoration Period and the Leased Premises are not restored at the time that Tenant gives Landlord such notice. As used herein, "**Significant Part**" means if the Leased Premises are damaged or destroyed by Casualty to the extent of 50% or more of the then-monetary value thereof.

**8.4**    **Insurance Proceeds.** Landlord and Tenant shall cooperate with each other, to such extent as such other party may reasonably require, in connection with the prosecution or defense of any action or proceeding arising out of, or for the collection of, any insurance proceeds that may be due in the event of any loss, and each party will execute, acknowledge and deliver to the other such instruments as may be required to facilitate the recovery of any insurance proceeds.

6

**8.5   Notice.** Tenant shall give prompt notice to Landlord of all fires and other occurrences in, on or about the Leased Premises which result in any death or in any damage or destruction to the Leased Premises or any part thereof costing in excess of $100,000.

## IX. CONDEMNATION

**9.1   Total Condemnation.** If the whole of the Leased Premises shall be acquired or taken by condemnation proceeding, then this Lease shall cease and terminate as of the date of title vesting in such proceeding. If this Lease is terminated as provided in this Section, rent shall be paid up to the day that possession is so taken by public authority and Landlord shall make an equitable refund of any rent paid by Tenant in advance.

**9.2   Partial Condemnation.** If any part of the Leased Premises shall be taken as aforesaid, and such partial taking shall render that portion not so taken unsuitable for Tenant's operations, then this Lease shall cease and terminate as aforesaid. If such partial taking is not extensive enough to render the Leased Premises unsuitable for Tenant's operations, as reasonably determined by Tenant, then this Lease shall continue in effect except that the Base Rent and Additional Rent shall be reduced in the same proportion that the portion of the Leased Premises taken bears to the total area initially demised, and Landlord shall, upon receipt of the award in condemnation, make all necessary repairs or alterations to the Building in which the Leased Premises are located, provided that Landlord shall not be required to expend for such work an amount in excess of the amount received by Landlord as damages for the part of the Leased Premises so taken. "**Amount received by Landlord**" shall mean that part of the award in condemnation which is free and clear to Landlord of any collection by mortgage lenders for the value of the diminished fee.

**9.3   Landlord's or Tenant's Option to Terminate.** If more than 50% of the Building or the Property shall be taken as aforesaid, Landlord or Tenant may, by written notice to the other party within 30 days of such taking, terminate this Lease. If this Lease is terminated as provided in this Section, rent shall be paid up to the day that possession is so taken by public authority and Landlord shall make an equitable refund of any rent paid by Tenant in advance.

**9.4   Award.** The Landlord shall be entitled to all proceeds of any taking; provided, however, that this provision shall not prohibit Tenant from prosecuting by separate action against the condemning authority any claim it may have for business damages, provided that the prosecution of such claim by Tenant does not reduce the award to Landlord.

**9.5   Definition.** As used in this Article, the term "**condemnation proceeding**" means any action or proceeding in which any interest in the Leased Premises is taken for any public or quasi-public purpose by any lawful authority through exercise of eminent domain or right of condemnation or by purchase or otherwise in lieu thereof.

## X. FINANCING; SUBORDINATION

**10.1   Subordination.** Tenant's rights under this Lease are subordinate to Landlord's mortgagee who has a mortgage or deed of trust interest in the Property, provided that so long as Tenant continues to perform all of its obligations under this Lease, its tenancy shall remain in full

7

force and effect notwithstanding Landlord's default in connection therewith. To the fullest extent allowed by applicable law, the foregoing subordination is self-operative and no further interest of subordination is required. Upon request by Tenant, Landlord agrees to cause its existing mortgagee to execute a customary and reasonable subordination, non-disturbance and attornment agreement with respect to this Lease. At Landlord's request, Tenant will, without charge, execute, acknowledge and deliver to Landlord (or, at Landlord's request) a similar subordination, non-disturbance and attornment agreement for any future mortgage of Landlord. In no event will the Tenant be required to guarantee or be obligated on such mortgage or lien.

**10.2    Attornment**. Any sale, assignment, or transfer of Landlord's interest under this Lease or in the Leased Premises including any such disposition resulting from Landlord's default under a mortgage, shall be subject to this Lease and also Tenant shall attorn to Landlord's successor and assigns and shall recognize such successor or assigns as Landlord under this Lease, regardless of any rule of law to the contrary or absence of privity of contract.

## XI. EVENTS OF DEFAULT; REMEDIES

**11.1    Default by Tenant**. Upon the occurrence of any of the following "**Events of Default**", Landlord shall have the remedies set forth in Section 11.2:

(a)    Tenant fails to pay any installment of Base Rent or Additional Rent or any other sum due hereunder, within 10 days after Tenant receives written notice of sums due.

(b)    Tenant fails to perform any other obligation under this Lease within 30 days after written notice of such default shall have been given to Tenant by Landlord or, if cure would reasonably require more than 30 days to complete, if Tenant fails to commence performance within the 30-day period or fails diligently and continuously to pursue such cure to completion.

(c)    Tenant shall become bankrupt or insolvent or file any debtor proceedings or have taken against such party in any court pursuant to state or federal statute, a petition in bankruptcy or insolvency, reorganization, or appointment of a receiver or trustee; or Tenant petitions for or enters into an arrangement; or suffers this Lease to be taken under a writ of execution; or Tenant makes a transfer in fraud of creditors or an assignment for the benefit of credits; or there shall be a receiver or trustee appointed for the Leased Premises or for all or substantially all of the assets of Tenant.

**11.2    Remedies**. In the event of the occurrence of any of the Events of Default described in Section 11.1, Landlord, at its election, may exercise one or more of the following options, the exercise of any of which shall not be deemed to preclude the exercise of any others herein listed or otherwise provided by statute or general law at the same time or at subsequent times or actions:

(a)    Terminate this Lease by giving Tenant written notice of termination, in which event this Lease shall terminate on the date specified in such notice and all rights of Tenant under this Lease shall expire and terminate as of such date, Tenant shall remain liable for all obligations under this Lease up to the date of such termination and Tenant shall surrender the Leased Premises to Landlord on the date specified in such notice; and

8

if Tenant fails to so surrender, Landlord shall have the right, without notice, to enter upon and take possession of the Leased Premises and to expel and remove Tenant and its effects without being liable for prosecution or any claim of damages therefor;

(b)  Terminate this Lease as provided in the immediately preceding subsection and recover from Tenant, all damages Landlord may incur by reason of Tenant's Event of Default, including without limitation, the then present value (discounted at a rate equal to the then issued treasury bill having a maturity approximately equal to the remaining Term of this Lease had such Event of Default not occurred) of (i) the total Rent which would have been payable hereunder by Tenant for the period beginning with the day following the date of such termination and ending with the expiration date of the Term as originally scheduled hereunder, minus (ii) the aggregate reasonable rental value of the Leased Premises for the same period (taking into account all relevant factors including, without limitation, the length of the remaining Term, the then current market conditions in the general area, the likelihood of reletting for a period equal to the remainder of the Term, net effective rates then being obtained by landlords for similar type space in similar buildings in the general area, vacancy levels in the general area, current levels of new construction in the general area and how that would affect vacancy and rental rates during the period equal to the remainder of the Term and inflation), plus (iii) the costs of recovering the Leased Premises, and all other reasonable expenses incurred by Landlord due to Tenant's Events of Default, including, without limitation, reasonable attorneys' fees, plus (iv) the unpaid Rent earned as of the date of termination, plus interest at the lesser of 12% and the maximum rate permitted by law ("**Default Rate**"), all of which sum shall be immediately due and payable by Tenant to Landlord;

(c)  Without terminating this Lease, and without notice to Tenant, Landlord may in its own name, but as agent for Tenant enter into and take possession of the Leased Premises and re-let the Leased Premises, or any portion thereof, as agent of Tenant, upon any terms and conditions as Landlord may deem necessary or desirable. Landlord shall have no obligation to attempt to re-let the Leased Premises or any part thereof except to the extent required by applicable law. Upon any such re-letting, all rentals received by Landlord from such re-letting shall be applied first to the costs incurred by Landlord in accomplishing any such re-letting, and thereafter shall be applied to the Rent owed by Tenant to Landlord during the remainder of the Term of this Lease and Tenant shall pay any deficiency between the remaining Rent due hereunder and the amount received by such re-letting as and when due hereunder;

(d)  allow the Leased Premises to remain unoccupied, so long as Landlord satisfies any duty established by applicable law to mitigate its damages, and collect Rent from Tenant as it becomes due; or

(e)  pursue such other remedies as are available at law or in equity.

## XII. PROVISIONS APPLICABLE AT TERMINATION OF LEASE

**12.1     Surrender of Leased Premises**. Upon the expiration of this Lease, Tenant will surrender the Leased Premises in the same condition as they existed as of the Commencement Date, subject to ordinary wear and tear. Before surrendering the Leased Premises, Tenant shall remove all of its personal property and trade fixtures and such property or the removal thereof shall in no way damage the Leased Premises, and Tenant shall be responsible for all costs, expenses and damages incurred in the removal thereof.

**12.2     Holding Over**. In the event that Tenant remains in possession of the Leased Premises after the expiration of this Lease without the written permission of Landlord, and without the execution of a new lease, Tenant shall be deemed occupying the Leased Premises as a tenant at sufferance only, at a rental rate equal to (i) during the first 6 months of the holdover period, 125% of the Base Rent in effect upon the date of such expiration, and (ii) 150% of the Base Rent in effect upon the date of such expiration thereafter, together with the Additional Rent, subject to all the conditions, provisions and obligations of this Lease insofar as the same are applicable to such tenancy. Acceptance by Landlord of Base Rent or Additional Rent after such expiration shall not constitute a renewal of this Lease or permit Tenant to continue such holdover. The foregoing provisions of the Section are in addition to and do not affect Landlord's right of re-entry or any rights of Landlord hereunder or as otherwise provided by law. If Tenant fails to surrender the Leased Premises upon the expiration of this Lease despite demand to do so by Landlord, Tenant shall indemnify and hold Landlord harmless from all loss or liability, including, without limitation, any claim made by any succeeding tenant founded on or resulting from such failure to surrender.

## XIII. ATTORNEYS' FEES

If either party institutes a suit against the other for violation of or to enforce any covenant or condition of this Lease, or if either party intervenes in any suit in which the other is a party to enforce or protect its interest in or rights under this Lease, then the Prevailing Party shall be entitled to all of its costs and expenses, including reasonable attorneys' fees. The term **"Prevailing Party"** means the party, either Landlord or Tenant, that establishes a breach of this Lease by the other party or otherwise establishes liability of the other party for wrongful conduct, regardless of whether actual damages are awarded. In the case where both parties prevail on different claims, the Prevailing Party shall be the party that is awarded the greater amount of damages..

## XIV. ESTOPPEL CERTIFICATE

Tenant shall, within 30 days after Landlord's request, execute and deliver to Landlord a written certification (a) ratifying this Lease; (b) certifying whether or not this Lease is in full force and effect and whether or not it has been assigned, modified, supplemented or amended, except by such writing as shall be stated; (c) if all conditions under this Lease to be performed by Landlord have been satisfied or, if not, the manner in which they have not been satisfied; (d) that there are no defenses or offsets against the enforcement of this Lease by the Landlord, or stating those claimed by Tenant; (e) the amount of advance Rent, if any, (or none if such is the case) paid by Tenant; and (f) the date to which rental has been paid. Within 15 days after the request of Tenant, Landlord shall deliver a similar certificate in favor of Tenant.

## XV. MISCELLANEOUS PROVISIONS

**15.1    No Partnership.** Landlord does not by this Lease, in any way or for any purpose, become a partner or joint venturer of Tenant in the conduct of its business or otherwise.

**15.2    Force Majeure.** Landlord and Tenant shall be excused for the period of any delay in the performance of any obligations hereunder (except for the payment of money) when prevented from so doing by cause or causes reasonably beyond such performing party's control, including labor disputes, civil commotion, war, governmental regulations or controls, fire or other casualty, inability to obtain any material or service not related to such party's negligence, acts of God, or inclement weather.

**15.3    No Waiver.** Failure of either party to insist upon the strict performance of any provision or to exercise any option hereunder shall not be deemed a waiver of such breach. No provision of this Lease shall be deemed to have been waived unless such waiver be in writing signed by the waiving party.

**15.4    Notice.** Any notice required or desired to be given to a party hereto shall be valid and sufficient if in writing and addressed to the addresses listed below and delivered by personal delivery or overnight delivery or mailed by United States registered or certified mail, with postage and charges prepaid thereon. Any notice shall be deemed to have been given on the day delivered if personally delivered, the day after sending if delivered by overnight delivery, or 3 days after mailing (or the date of first refusal if earlier) if sent by registered or certified mail. Landlord or Tenant may designate the place to which notices shall be given and addressed by giving at least 15 days' prior written notice to the other party, such notice to be given in accordance with the foregoing provisions of this Section. The initial address for each party shall be as follows:

| | |
|---|---|
| As to Landlord: | DC Real Estate Holdings, LLC |
| | _____ |
| | _____ |
| | _____ |
| | |
| As to Tenant: | WHC STX, LLC |
| | c/o WHC Worldwide, LLC |
| | 1300 Lydia Ave. |
| | Kansas City, MO 64106 |

**15.5    Captions; Attachments; Defined Terms.** The captions to the Section of this Lease are for convenience of reference only and shall not be deemed relevant in resolving questions of construction or interpretation under this Lease. Exhibits referred to in this Lease, and any addendums and schedules attached to this Lease and initialed by the parties shall be deemed to be incorporated in this Lease as though part hereof.

**15.6    Partial Invalidity.** If any provision of this Lease or the application thereof to any person or circumstance shall to any extent be invalid, the remainder of this Lease or the application

11

of such provision to persons or circumstances other than those as to which it is held invalid shall not be affected thereby and each provision of this Lease shall be valid and enforced to the fullest extent permitted by law.

**15.7   Broker's Commissions**. Each party represents and warrants that there are no claims for brokerage commissions or finder's fees in connection with this Lease and agrees to indemnify the other party against and hold it harmless from all liabilities arising from such claim, including any attorneys' fees connected therewith.

**15.8   Use of Pronouns**. The use of the neuter singular pronoun to refer to Landlord or Tenant shall be deemed a proper reference even though Landlord or Tenant may be an individual, a partnership, a corporation, or a group of two or more individuals or corporation. The necessary grammatical changes required to make the provisions of this Lease apply in the plural sense where there is more than one Landlord or Tenant and to corporations, associations, partnerships, or individuals, males or females, shall in all instances be assumed as though in each case fully expressed.

**15.9   Provisions Binding, Etc**. Except as otherwise provided, all provisions herein shall be binding upon and shall inure to the benefit of the parties, their legal representative, heirs, successors, and assigns. Each provision to be performed by Tenant shall be construed to be both a covenant and a condition, and if there shall be more than one Tenant, they shall all be bound, jointly and severally, by such provisions.

**15.10   Entire Agreement, Etc.** This Lease and the Exhibits, Riders, and/or any Addenda, if any, attached hereto, constitute the entire agreement between the parties, and supersede all prior agreements, written or oral, between the parties. All Exhibits, Riders, and/or Addenda mentioned in this Lease are incorporated herein by reference. Any prior conversations or writings are merged herein and extinguished. No subsequent amendment to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed. Submission of this Lease for examination does not constitute an option for the Leased Premises and becomes effective as a lease only upon execution and delivery thereof by Landlord to Tenant. If any provision contained in Rider or Addenda is inconsistent with a provision in the body of this Lease, the provision contained in said Rider or Addenda shall control. The captions and Section numbers appearing herein are inserted only as a matter of convenience and are not intended to define, limit, construe, or describe the scope or intent of any Section or Paragraph.

**15.11   Choice of Law**. This Lease shall be governed by and construed in accordance with the laws of the State of Texas.

**15.12   Waiver of Jury Trial**. THE PARTIES HERETO SHALL, AND THEY HEREBY DO, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, FOR THEMSELVES, THEIR HEIRS, PERSONAL REPRESENTATIVES, SUCCESSORS OR ASSIGNS, WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER ON ANY MATTERS WHATSOEVER ARISING OUT OF, OR IN ANY WAY CONNECTED WITH, THIS LEASE, THE LEASED PREMISES, ACTIONS OF ANY PARTY, AND/OR CLAIM OF INJURY OR DAMAGE. THIS

PROVISION IS A MATERIAL INDUCEMENT TO THE PARTIES ENTERING INTO THIS LEASE.

**15.13  Counterparts**. This Lease may be executed in counterparts, each of which constitutes an original and all of which taken together shall constitute one agreement.

**15.14  Condition Precedent**. Notwithstanding anything herein to the contrary, this Lease will be conditioned on, and will not become effective until and unless, the transactions contemplated under the Asset Purchase Agreement, by and between Tenant, as purchaser, and various sellers, subject to the jointly administered bankruptcy Case Nos. 21-60064, 21-60065, 21-60066, 21-60067, and 21-60069 under Chapter 11 of Title 11 of the United States Code, as amended and the rules and regulations promulgated thereunder, in the United States Bankruptcy Court for the Southern District of Texas, are fully closed and consummated.

*[Signature Page Follows]*

13

IN WITNESS WHEREOF, Landlord and Tenant have duly executed this instrument as of the date first above written.

**"Landlord"**

**DC REAL ESTATE HOLDINGS, LLC**


By: _____
Name:
Title:

**"Tenant"**

**WHC STX, LLC**
By: WHC Worldwide, LLC, as sole member


By:_____
       William M. George, Managing Member

14

## Exhibit "A"

## Description of Property

**Exhibit "B"**

**Depiction of Leased Premises**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| TEXAS TAXI, INC., et al. | § | Case No. 21-60065 |
| | § | |
| Debtors.[1] | § | Jointly Administered |

<u>**NOTICE OF (I) PROPOSED SALE OF THE DEBTORS' ASSETS,
(II) AUCTION, AND (III) THE SALE HEARING**</u>

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.       On July 19, 2021, Debtors filed *Debtors' Emergency Motion Pursuant to 11 U.S.C. §§ 105, 363 and 365 and Bankruptcy Rules 2002, 6004 and 6006 for Entry of (i) AN Order : (A) Approving Auction and Bidding Procedures; (B) Approving Bid Protections for Proposed Purchaser; (C) Scheduling Auction and Sale Hearing; (D) Approving the Form and Manner of Service of Notice of Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (E) Granting Related Relief; and an Order : (A) Approving Purchase Agreement; (B) Authorizing Sale Free and Clear of All Liens, Claims and Encumbrances, and Other Interests, (C) Approving Form and Manner of Service of Notice of Sale Hearing; and (D) Granting Related Relief ("**Motion**")* [ECF # 4]. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2.       On July __, 2021, the United States Bankruptcy for the Southern District of Texas (the ***"Bankruptcy Court"***) entered the *Order: (B) Approving Bid Protections for Proposed Purchaser; (C) Scheduling Auction and Sale Hearing; (D) Approving the Form and Manner of Service of Notice of Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (E) Granting Related Relief; and an Order : (A) Approving Purchase Agreement; (B) Authorizing Sale Free and Clear of All Liens, Claims and Encumbrances, and Other Interests, (C) Approving Form and Manner of Service of Notice of Sale Hearing; and (D) Granting Related Relief (the "**Order**")*.

3.       Any Qualified Bidder interested in purchasing the Assets must submit a Bid conforming to the requirements set forth in the Bidding Procedures, attached hereto as <u>**Exhibit "A"**</u> by no later than **4:00 p.m., Central Standard Time, on July 28, 2021** (the ***"Bid Deadline"***).

4.       A Qualified Bidder that desires to make a Bid must deliver electronic copies of its Bid

---

[1] The debtors in these cases (the ***"Bankruptcy Cases"***), along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Texas Taxi, Inc. (#2786) (***"TTI"***), Fiesta Cab Company (#2084) (***"FCC"***), Greater Austin Transportation Company (#1038) (***"GATC"***), Greater Houston Transportation Company (#1348) (***"GHTC"***), and Greater San Antonio Transportation Company (#9823) (***"GSATC"***). The Debtors' mailing address is : John Bouloubsis, President, 9600 IH 35 North, San Antonio, Texas 78233.

EXHIBIT B

on or prior to the Bid Deadline to:   Debtors, attention: John Bouloubasis, President; email: johnb@yellowcabsa.com; with copy to counsel for the Debtors, Fuqua & Associates, P.C., Attn: Richard L. Fuqua (RLFuqua@FuquaLegal.com).

5.      In the event that Debtors receive more than one Qualified Bid by the Bid Deadline, the Debtors will conduct and auction sale (the *"Auction"*) with respect to the sale of the Assets.   The Debtors shall hold the Auction for the Assets at the offices of Debtors' counsel, Fuqua & Associates, P.C., 8558 Katy Freeway, Suite 119, Houston, Texas 77024 commencing on **August 3, 2021 at 11:00 a.m., Central Standard Time,** or at such other time and location as may be designated by the Debtors. All bidding for the Assets will be concluded at the Auction and there will be no further bidding at the Bankruptcy Court hearing held to approve the highest or best bid for the Assets (the *"Sale Hearing"*).

6.      If no Auction is held, the Sale Hearing shall commence on **August 5, 2021 at 3:00 p.m.** (Central Standard Time) before the Honorable Christopher M. Lopez, United States Bankruptcy Judge. The hearing will be held by audio and video.  The Dial-In Telephone Number is (832) 917-1510. Judge Lopez's conference room number is 590153.  Video participation: https://gotomeet.me/JudgeLopez. At the Sale Hearing, Debtors intend to present the Prevailing Bid for approval by the Bankruptcy Court pursuant to the provisions of sections 105, 363(b), 363(f), 363(m), 363(n) and 365 of the Bankruptcy Code.  The Debtors shall be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

7.      At the Sale Hearing, the Debtors will seek authorization to consummate  either the Prevailing Bid or that certain Asset Purchase Agreement by and between the debtors and the Proposed Purchaser (the *"Proposed Purchaser APA"*).  The Debtor will seek to sell and transfer the Assets and assume and assign certain executory contracts and unexpired lease, subject to the terms of the Prevailing Bid, to either the Prevailing Bidder or the Proposed Purchaser under the Proposed Purchaser APA, free and clear of any and all liens, claims, encumbrances, and other interests to the maximum extent permitted by the Bankruptcy Code.

8.      Objections, if any, to the approval of the sale of Assets to the Prevailing Bidder (the *"Sale Motion"*), including but not limited to the sale of the Assets free and clear of liens, claims, encumbrances and other interests pursuant to 11 U.S.C. § 363(f), shall be (a) in writing; (b) clearly specify the grounds for the objection; (c) conform to the Bankruptcy Rules and the Local Rules; and (d) be filed with the Court and served so as to be received by the following parties by email (Collectively, the *"Objection Notice Parties"*) by no later than 4:00 p.m. (Central Standard Time) two (2) days prior to the Prevailing Bidder Sale Hearing (the *"Objection Deadline"*): (1) counsel for the Debtors, Fuqua & Associates, P.C.; attention: Richard L. Fuqua (email: rlfuqua@fuqualegal.com); (2) counsel for Notre Capital (*"DIP Lender"*), Jackson Walker; attention: Bruce Ruzinsky (email: bruzinsky@jw.com); (3) counsel for the Official Committee of Unsecured Creditors (*"Committee"*), if any; (4) Office of the U.S. Trustee for the Southern District of Texas; attention: Ha Minh Nguyen (email: (ha.nguyen@usdoj.gov); and (5) counsel for Proposed Purchaser, Jones Murray & Beatty, LLP, attention: Erin Jones (email: erin@jmbllp.com).

9.      This Notice and the Auction are subject to the terms and conditions of the Bidding Procedures Order, which shall control in the event of any conflict with this Notice.  Copies of the Motion, the Bidding Procedures Order and the Proposed Purchaser APA can be obtained by sending a

written request to counsel for the Debtors, Fuqua & Associates, P.C.; attention: Richard L. Fuqua (email: rlfuqua@fuqualegal.com).

Dated:   July 22, 2021

FUQUA & ASSOCIATES, P.C.

By:   */s/ Richard L. Fuqua*
Richard L. Fuqua
State Bar #07552300
8558 Katy Freeway, Suite 119
Houston, Texas 77024
Phone: 713.960-0277
Email:  rlfuqua@fuqualegal.com

ATTORNEYS FOR DEBTORS

Exhibit A

**BIDDING PROCEDURES**

**Participation Requirements and Due Diligence**

1.      In order to participate in the bidding process, the Auction, or otherwise be considered for any purpose hereunder, a person interested in purchasing the Assets (a *"Potential Bidder"*) must first deliver the following materials to the Debtors and their counsel:

      a)      An executed confidentiality agreement in form and substance satisfactory to the Debtors and their counsel (the *"Confidentiality Agreement"*).  Without limiting the foregoing sentence, the Confidentiality Agreement will provide that all non-public information about the Debtors received by a Potential Bidder, or if the Bidder is qualified, a Qualified Bidder (as defined below), will be kept strictly confidential and used only in connection with analyzing a transaction for the purchase of the Assets.  The Confidentiality Agreement also will provide that the Debtors and their advisors will have access to information provided about a Potential Bidder by the Potential Bidder and that any confidential information received from a Potential Bidder will be qualified as a Qualified Bidder and a potential transaction for the Assets.

      b)      Written evidence that enables the Debtors and their advisors determine, in their sole discretion, whether the Potential Bidder has the financial and other ability to close the contemplated sale transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in connections therewith.

      c)      The Debtors shall provide these Bidding Procedures, together with a Microsoft Word copy of the Proposed Purchaser APA (as defined herein) (the *"APA"*), to each Potential Bidder.  All Potential Bidders, whether deemed Qualified Bidders, (as defined below) or not, consent to the jurisdiction of this Bankruptcy Court to determine matters concerning the sale, their Bid and otherwise with respect to the process and waive any right to any other venue.

2.      Any Potential Bidder wishing to conduct due diligence concerning a prospective acquisition transaction of the Assets shall be granted access to all relevant information regarding the Assets and the related business of each of the Debtors reasonably necessary to enable a Potential Bidder to evaluate the Assets and the prospective transaction.  The Debtors shall make such access available to Potential Bidders during normal business hours as soon as reasonably practicable following execution of the Confidentiality Agreement. Potential Bidders interested in conducting due diligence should contact John Bouloubasis, 9600 U-35, San Antonio, TX 78233, johnb@yellowcabsa.com, (210) 650-8666.  Notwithstanding the foregoing, the Debtors are not required to provide confidential or proprietary information to any person if the Debtors believe that such disclosure would be detrimental to the interests of the Debtors' estates.  All due diligence must be completed before the Bid Deadline (as defined below) unless the Debtors in their sole discretion agree otherwise.  No condition(s) allowing or regarding further due diligence will be accepted or authorized after the Bid Deadline. Potential Bidders are required to exercise their own discretion before relying on any information regarding the Assets provided by the Debtors.  Neither the Debtors nor their representatives are responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders pursuant hereto.

3.      The Debtors shall: (i) receive and evaluate any Bids (as defined below) from Potential Bidders; (ii) request information from Potential Bidders, engage in discussions with Potential Bidders, and take such other actions to determine whether any Bid constitutes or could lead to a Qualified Bid (as defined below); and (iii) take any other actions contemplated under these Bidding Procedures.

## Submission of Bids

1.      Any Qualified Bidder interested in purchasing the Assets must submit a proposal to purchase substantially all of the Debtors' assets (a *"Bid"*) prior to **4:00 p.m. Central Standard Time on July 28, 2021** (the *"Bid Deadline"*).

2.      For the avoidance of doubt, the asset purchase agreements (together the *"Proposed Purchaser APA"*), attached hereto as *Exhibit "1"* (Houston Assets), *Exhibit "2"* (Austin Assets), and *Exhibit "3"* (San Antonio Assets), respectively, by and between the Debtors and WHC HTX LLC (Houston Assets); WHC ATX LLC (Austin Assets), and WHC STX LLC (San Antonio Assets) (together the *"Proposed Purchaser"*), shall deemed to be a Qualified Bid and the Proposed Purchaser shall be a Qualified Bidder.

3.      Consistent with these Bidding Procedures, the Debtors and their advisors will determine if a Bid is a Qualified Bid based on the requirements herein.  A Potential Bidder will be deemed to be a *"Qualified Bidder"* if the Debtors, consistent with these Bidding Procedures and in their sole discretion, determine that such Potential Bidder submitted a Qualified Bid.

4.      A Bid will be considered a *"Qualified Bid"* only if the Bid fulfills the following requirements on or prior to the Bid Deadline (capitalized terms used in this section are defined later in the Bidding Procedures):

   a)      Provides that the Potential Bidder's Bid shall remain open and irrevocable until the earlier of (x) thirty (30) days following the date of entry of an order by the Bankruptcy Court, in a form agreed to by the Prevailing Bidder and the Debtors, that approves the sale of the Assets (the *"Prevailing Bidder Sale Order"*); or (y) the date of the closing of the sale of the Assets pursuant to the Prevailing Bidder Sale Order (the *"Bid Expiration Date"*);

   b)      Provides that the Qualified Bidder is obligated to perform as a Back-Up Bidder as defined below in the event such Qualified Bidder is not the Prevailing Bidder; provided however, that the Debtors may designate a *"Qualified Bid"* comprised of more than one Bid that in the aggregate with other Bids (that, except for this paragraph 4(b) meet the requirements of a Qualified Bid), yields a minimum purchase price as provided in this paragraph 4(b), to be a Back-Up Bidder;

   c)      Is made by a person or entity that demonstrates evidence of fully committed and firm financing for each component of debt or equity in support of such Bid and other ability to consummate the proposed transaction, in each case acceptable to the Debtors in their sole discretion;

   d)      Provides that the purchase price will be for a purchase price greater than : i) the Closing Purchase Price in the amount of $1,720,000 paid in cash; ii) the Post-Closing Purchase Price  in an amount calculated as 5% times Base Gross Revenue for the 12-month period immediately preceding (1) the first anniversary date, with respect to the first Post-Closing Purchase Price

Payment, and (2) the second anniversary date, with respect to the second Post-Closing Purchase Price Payment; and iii) the assumption of Driver Deposits under Section 1.3 of the Proposed Purchaser APA (the Capitalized terms referenced in this subparagraph (d) shall have the meaning ascribed to them in the Proposed Purchaser APA referenced in Debtors' Emergency Motion for Entry of An Order Approving Auction and Bidding Procedures, *et al.*) and paid in cash, cash equivalents, or such other consideration acceptable to the Debtors; provided, however, that the Debtors may consider as a *"Qualified Bid,"* more than one Bid that in the aggregate with other Bids (that, except for this paragraph 6(d) meet the requirements of a Qualified Bid), yields a minimum purchase price as provided in this paragraph 6(d);

e)      Provides by wire transfer or immediately available funds to the Debtors or an appropriate escrow agent before the Bid Deadline of an earnest money deposit equal to the greater of (X) 10% of the dollar amount of the purchase price of such Bid; or (Y) 10% of the value of such Bid, (the *"Deposit"*);

f)      Provides evidence satisfactory to the Debtors that the Qualified Bidder is reasonably likely to obtain prompt regulatory approval, if any is required, to purchase the Assets; and

g)      Is submitted in the form of a clean APA and a redline of the APA showing a comparison to the Proposed Purchaser APA, that :

      i.      Identifies the Potential Bidder any members of its investor group, if applicable;

      ii.     Identifies what Assets the Potential Bidder seeks to purchase, including an allocation of the purchase price by locale for any Bid to acquire less than all of the Assets of the Debtor;

      iii.    Is not subject to conditions, representations or terms that the Debtors determine to be unacceptable;

      iv.     Except as set forth in the Proposed Purchaser APA, is not conditioned upon the Bankruptcy Court's approval of any Bid protections, such as a break-up fee, termination fee, expense reimbursement, working fee or similar type of payment;

      v.      Does not contain any financing or due diligence contingencies to closing of the proposed transaction unless the Debtors otherwise agree that such contingencies are acceptable;

      vi.     Does not contain any condition to closing of the transaction relating to the receipt of any third-party approvals (excluding required Bankruptcy Court approval and any required governmental and/or regulatory approval);

      vii.    Expressly acknowledges and represents that the Potential Bidder: (A) has had an opportunity to conduct any and all due diligence regarding the Assets and the proposed transaction prior to making its Bid, (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and the Assets in making its Bid or that of any of its legal, financial or other advisors, and (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by

operation of law, regarding the business of the Debtors of the Assets or the proposed transaction, or the completeness or accuracy of any information provided in connection therewith, except as expressly stated in the representations and warranties contained in the APA ultimately accepted and executed by the Debtors.

viii.   Identifies each and every executory contract and unexpired lease that the Potential Bidder desires the Debtors to assume and assign to the Potential Bidder at the closing and provides evidence of such Potential Bidder's ability to provide adequate assurance of future performance of such contracts or leases (as required by section 365(f)(2)(B) of the Bankruptcy Code) along with the Bid; and

ix.   Contains other information reasonably requested by the Debtors.

5.      A Qualified Bidder that desires to make a Bid must deliver electronic copies of its Bid on or prior to the Bid Deadline to Texas Taxi, attention: John Bouloubasis; email: johnb@yellowcabsa.com, with copy to counsel for the Debtors, Fuqua & Associates, P.C., attention: Richard L Fuqua: email: rlfuqua@fuqualegal.com.

6.      After the Bid Deadline, the Debtors shall determine, in their sole discretion, which Qualified Bid represents the then-highest or otherwise best bid (the *"Initial Highest Bid"* and the entity submitting such Bid, the *"Initial Highest Bidder"*).  Prior to or at the start of the Auction, each Qualified Bidder that timely submitted a Qualified Bid will be advised of such Initial Highest Bid and the Debtors shall: (a) distribute copies of other Qualified Bids to other Qualified Bidders prior to or during the Auction; or (b) proceed with the Auction.

7.      If only one timely Qualified Bid (including the Proposed Purchaser's Bid) is received by the Bid Deadline or if the Proposed Purchaser's Bid is determined to be the Initial Highest Bid and there are no other Qualified Bids, the Debtors shall not hold an Auction.

**Due Diligence from Potential Bidders or Qualified Bidders**

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the acquisition transaction of the Assets.  Failure by a Potential Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a Potential Bidder is not a Qualified Bidder.  Similarly, each Qualified Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Qualified Bidder's financial wherewithal to consummate and perform obligations in connection with the acquisition transaction of the Assets as the Auction progresses.  Failure by a Qualified Bidder to comply with requests for additional information may be a basis for the Debtors to determine that the Qualified Bidder may no longer participate in the Auction.

**"As Is, Where Is"**

Except as otherwise provided in the Prevailing Bidder's APA, the sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or estates or any other party, except to the extent set forth in the APA between the Debtors and the Prevailing Bidder.  Except as otherwise provided in the Prevailing Bidder's APA, all

of the Debtors' right, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests therein pursuant to section 363(f) of the Bankruptcy Code, such Claims to attach to the net proceeds of the sale of the Assets, with the same validity and priority as existed immediately prior to such sale.

## The Auction

1. If more than one Qualified Bid has been submitted for the Assets in accordance with these Bidding Procedures, the Debtors will conduct the Auction on **August 3, 2021 at 11:00 o'clock a.m., Central Standard Time**, with respect to such Qualified Bids in order to determine the highest and best bid (the *"Prevailing Bid"*) to submit for approval by the Bankruptcy Court at the Prevailing Bidder Sale Hearing (as defined below).   The Auction shall be organized and conducted by the Debtors at the offices of Fuqua & Associates, LLP, 8558 Katy Freeway, Suite 119, Houston, Texas 77024, or such other location as may be announced prior to the Auction to all Qualified Bidders, the DIP Lender, the U.S. Trustee and the Committee.

2. Only the Proposed Purchaser and the other Qualified Bidders who have made a Qualified Bid shall be entitled to make any subsequent Qualifying Bids at the Auction (the *"Auction Participants"*).   At least one representative for each Auction Participant (as defined below) with written proof of authority to bind such Auction Participant is required to attend the Auction in person.   While only the Auction Participants may make Qualified Bids at the Auction, the Auction may be attended and viewed also by the Debtors and their respective counsel, and financial advisors.

3. The Debtors are authorized to conduct the Auction in a manner that is consistent with these Bidding Procedures in accordance with such procedures and requirements as may be established at the discretion of the Debtors and their counsel which may include, at any time, (a) the determination of the amount of time between Qualified Bids, (b) whether to adjourn the Auction at any time, and (c) the conducting of single or multiple rounds of open or sealed bidding with notice only to the parties entitled to attend the Auction, and to declare that the Auction has ended when no further Bids are timely made or otherwise.

4. The first Qualified Bid at the Auction shall be deemed to have been made by the Initial Highest Bidder in the amount of the Initial Highest Bid.   The next Qualified Bid at the Auction shall be an amount equal to or greater than the Initial Highest Bid plus the Minimum Bid Increment (as defined below).   Thereafter, the Auction will continue in the manner determined by the Debtors in the preceding paragraph; provided, however, (i) additional Bids must be Qualified Bids (except that subsequent Qualified Bids made at the Auction, although received from a Qualified Bidder that made a Qualified Bid prior to the Bid Deadline, need not be received by the Bid Deadline), and (ii) the first Qualified Overbid shall be in the amount of at least $200,000 in cash; thereafter, any Qualified Overbid shall be in the amount of at least $50,000 in cash (the *"Minimum Bid Increment"*).   The Debtors shall determine, in their discretion, whether a Qualified Bid by a Qualified Bidder at the Auction matches or is higher and better than the prior Qualified Bid.

5. The Proposed Purchaser shall be entitled to submit successive Qualified Bids s overbids at the Auction and, in calculating the amount of the Proposed Purchaser's overbid, the Proposed Purchaser shall be entitled to a credit in the amount of the Break-Up Fee and Expense Reimbursement (both as defined in the Proposed Purchaser's APA, and collectively, the *"Bid*

*Protections"*).  For example, if at the Auction a subsequent Qualified Bid submitted by the Proposed Purchaser is the Prevailing Bid (over another Qualified Bid that was submitted), then the purchase price that must be paid by the Proposed Purchaser pursuant to such Prevailing Bid shall be reduced by the amount of the Bid Protections.

6.     At the conclusion of each round of bidding, Auction Participants will be informed of the terms of the highest and best previous Bid.

7.     The Auction shall be transcribed by a court reporter.

8.     At the conclusion of the Auction: (i) the Debtors shall, in their sole discretion but in consultation with the DIP Lender and the Committee, select (X) the Prevailing Bid and (Y) the second highest or best offer for the Assets (the *"Back-Up Bid"*); (ii) the Debtors shall notify the Prevailing Bidder that such person's offer has been determined by the Debtors to be the Prevailing Bid and will be contingent only on Bankruptcy Court approval, and shall notify the person that made the Back-Up Bid (the *"Back-Up Bidder"*) that such person's offer has been determined by the Debtors to be a Back-Up Bid and will be contingent only on the failure of the Prevailing Bid to close as forth below and Bankruptcy Court approval; and (iii) the Debtors shall file a notice with the Bankruptcy Court announcing the Prevailing Bidder.  Prior to the commencement of the Prevailing Bidder Sale Hearing, the Prevailing Bidder shall complete and sign all agreements and documents as necessary to bind the Prevailing Bidder to all of the terms and conditions contemplated by the Prevailing Bid.

9.     The Deposit of the Prevailing Bidder or the Back-Up Bidder, as the case may be, shall be applied by the Debtors against the purchase price to be paid by the Prevailing Bidder or the Back-Up Bidder, as applicable, at the closing of the relevant transaction approved by the Bankruptcy Court.  To the extent consistent with the Prevailing Bidder's APA, the Prevailing Bidder's Deposit shall be held by the Debtors and forfeited to the Debtors if the Prevailing Bidder breaches its obligations to close under its APA.

10.    The Debtors shall not be deemed to have finally accepted any Qualified Bid unless and until such Qualified Bid and the Debtors' acceptance thereof have been authorized by order of the Bankruptcy Court following the conclusion of the Prevailing Bidder Sale Hearing.

**Back-Up Bidder**

If for any reason the Prevailing Bidder fails to consummate the acquisition of the Assets in accordance with the Prevailing Bid, and in any event no later than thirty (30) days from the entry of the Prevailing Bidder Sale Order, the Debtors are authorized to proceed with the sale of the Assets to the Back-Up Bidder in accordance with the Back-Up Bid without further order of the Bankruptcy Court.  If for any reason the Back-Up Bidder fails to consummate the acquisition of the Assets or in accordance with the Back-Up Bid, the Back-Up Bidder's Deposit shall be forfeited to the Debtors.

**Return of Deposit(s)**

No later than the third (3rd) business day following the entry of the Prevailing Bidder Sale Order, the Debtors shall return to each Qualified Bidder(s), other than the Prevailing Bidder and the Back-Up Bidder, their respective Deposit(s).  No later than the third (3rd) business day after the closing of the sale of the Assets to the Prevailing Bidder, the Debtors shall return the Back-Up Bidder's Deposit to the

Back-Up Bidder.

**Prevailing Bidder Sale Hearing and Objection Deadline**

1.      The sale hearing to consider the relief requested in this Motion and to consider whether to approve the Prevailing Bid and the Back-Up Bid (the *"Prevailing Bidder Sale Hearing"*) shall be held before the Bankruptcy Court on **August 5, 2021 at 3:00 p.m.**, Central Standard Time, at which time the Court will enter the *"Prevailing Bidder Sale Order."*

2.      Objections, if any, to the approval of the sale of Assets to the Prevailing Bidder (the *"Sale Motion"*) , other than an objection to the proposed assumption and assignment of the Designated Agreements or to any proposed Cure Costs, including, but not limited to, the sale of the Assets free and clear of Claims pursuant to 11 U.S.C. § 363(f) shall be (a) in writing; (b) clearly specify the grounds for the objection; (c) conform to the Bankruptcy Rules and the Local Rules; and (d) be filed with the Court and served so as to be received by the following parties by email (Collectively, the *"Objection Notice Parties"*) by no later than 4:00 p.m. (Central Standard Time) two (2) days prior to the Prevailing Bidder Sale Hearing (the *"Objection Deadline"*): (1) counsel for the Debtors, Fuqua & Associates, P.C.; attention: Richard L. Fuqua (rlfuqua@fuqualegal.com); (2) counsel for Notre Capital (*"DIP Lender"*), Jackson Walker; attention : Bruce Ruzinsky (email: bruzinsky@jw.com); (3) counsel for the Official Committee of Unsecured Creditors (the *"Committee"*); if any, (4) Office of the U.S. Trustee for the Southern District of Texas; attention: Ha Minh Nguyen (email: ha.nguyen@usdoj.gov); and (5) counsel for Proposed Purchaser, Jones Murray & Beatty, LLP, attention: Erin Jones: (email: erin@jmbllp.com).

3.      Any person objecting to the Sale Motion that has not filed an objection by the Objection Deadline shall not be heard at the Prevailing Bidder Sale Hearing and shall be barred from objecting to the Sale Motion.

**Modifications**

1.      The Debtors, in their sole discretion, may adopt, implement, and/or waive such other, additional or existing procedures or requirements that serves to further an orderly Auction and bid process, including, but not limited to, the imposition of a requirement that all Qualified Bidders submit sealed Qualified Bids during the Auction, all without further notice except to those parties that would be entitled to attend at an Auction or participated in the Auction, as appropriate; provided that any and all such procedures are consistent with the Bidding Procedures.

2.      Consistent with these Bidding Procedures, the Debtors, in their sole discretion, may (a) determine which Qualified Bid, if any, is the Prevailing Bid, and (b) reject at any time before entry of the Prevailing Bidder Sale Order approving the Prevailing Bid, any Bid that, in the discretion of the Debtors is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates and their creditors. At or before the conclusion of the Auction, the Debtors in their sole discretion, may impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in this case.